UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EUGENE LIGER, ANTHONY "TONY" MARTIN, ADAM NASH, JESSICA BERRY, CHRIS CARTER, MARCY PLANER MURRAY, SAMUEL TOBIAS STEINMETZ, and LESLIE SUMLER<br><br>Plaintiffs in a Collective Action<br><br>VERSUS<br><br>NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP<br><br>Defendant | CIVIL ACTION NO. 05-1969<br><br>SECTION<br><br>MAGISTRATE<br><br>**SECT. C MAG. 5** |

FILED:_____          _____
                                                                    DEPUTY CLERK

### COLLECTIVE ACTION COMPLAINT AND JURY TRIAL REQUEST

**NOW COMES PLAINTIFFS**, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Sam Steinmetz, and Leslie Sumler ("Collective Action Plaintiffs" or "Plaintiffs"), who submit the following Fair Labor Standards Act Overtime complaint against Defendant, the New Orleans Hornets NBA Limited Partnership ("New Orleans Hornets" or "Hornets").

### JURISDICTION

1.   This Honorable Court has jurisdiction over Plaintiffs' claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et seq</u>. This matter may proceed as a collective action under 29 U.S.C. 216.

N0017251.WPD

Fee____250._____
✓ Process_____
X Dktd_____
__ CtRmDep_____
__ Doc. No._____

## PARTIES

2. Plaintiff, Eugene Liger (hereinafter "Liger"), is a resident of the Parish of Jefferson, State of Louisiana and worked as an inside sales representative in The Hornet's organization.

3. Plaintiff, Anthony "Tony" Martin (hereinafter "Martin"), is a resident of the State of Virginia who at all times relevant worked in New Orleans, Louisiana as an inside sales representative in the Hornet's organization.

4. Plaintiff, Adam Nash (hereinafter "Nash"), is a resident of James City County, State of Virginia, and worked as an inside sales representative and as an sales account executive in The Hornet's organization.

5. Plaintiff, Jessica Berry (hereinafter "Berry"), is a resident of Orleans Parish, State of Louisiana, and worked as a group sales account representative in The Hornet's organization.

6. Plaintiff, Chris Carter (hereinafter "Carter"), is a resident of Hancock County, State of Mississippi, and worked as a Regional Account representative in The Hornet's organization.

7. Plaintiff, Marcy Planer-Murray (hereinafter "Planer-Murray"), is a resident of the Parish of St. Tammany, State of Louisiana and worked as an regional sales representative in the Hornet's organization.

8. Plaintiff, Samuel Tobias Steinmetz (hereinafter "Steinmetz"), is a resident of Jefferson Parish, State of Louisiana, and worked as a sales account executive in The Hornet's organization.

9. Plaintiff, Leslie Sumler (hereinafter "Sumler"), is a resident of Orleans Parish, State of Louisiana, and worked as a Fan Relations employee in The Hornet's organization.

10. Defendant, New Orleans Hornets NBA Limited Partnership, a National Basketball

17. Upon her return from this League meeting, the Director of Personnel/Payroll communicated to Hornets officers, directors, or managers that Plaintiffs and Similarly Situated Employees were entitled to received overtime compensation for all overtime hours.

18. Upon information and belief, there exists a document prepared in July or August of 2004 wherein the Hornets specifically identified and admitted that Plaintiffs and Similarly Situated Employees or "non-exempt" employees were entitled to receive overtime compensation for any overtime hours worked.

19. The New Orleans Hornets have not had any policies, procedures, or methods to track the amount of overtime hours worked by non-exempt employees since the team moved to New Orleans.

20. Upon information and belief, the Hornets' Director of Personnel and Payroll prepared documentation for use by the Hornets that would allow Defendant, its employees, managers, directors, and/or executives to track the number of hours worked by non-exempt employees during a workweek.

21. Upon information and belief, the New Orleans Hornets did not use the documentation prepared by the Director of Personnel/Payroll or any documentation that would have tracked the number of hours worked by non-exempt employees during a workweek.

22. Upon information and belief, the New Orleans Hornets took no action to track the overtime hours worked by Plaintiffs and Similarly Situated Employees, in violation of 29 U.S.C. § 211(c).

23. Through the actions and omissions of the Hornets, the Director of Personnel/Payroll was denied the necessary documentation required to calculate overtime compensation.

24. Although the Hornets officers, directors, or managers admitted that Plaintiffs and Similarly Situated Employees were non-exempt employees entitled to overtime compensation, the Hornets did not pay Plaintiffs and Similarly Situated Employees any overtime compensation to which they are entitled.

25. Since the team first arrived in New Orleans, the Hornets have established a pattern and practice of requiring Plaintiffs and Similarly Situated Employees to work overtime hours without receipt of overtime compensation.

26. Plaintiffs and Similarly Situated Employees were regularly forced to work hours in excess of a regular work week that exceeded forty hours.

27. Although no overtime pay was offered or paid by the Hornets to these non-exempt employees and former employees, Plaintiffs and Similarly Situated Employees were admonished, suffered retaliatory action, and/or were otherwise treated with disfavor by Hornets officers, directors, or managers if they did not work overtime.

28. During a normal work week, Plaintiffs and Similarly Situated Employees were regularly forced, required, or encouraged to work through lunch, but did not receive compensation for the overtime hours that resulted.

29. Although no overtime pay was offered or paid by the Hornets to these non-exempt employees and former employees, Plaintiffs and Similarly Situated Employees were admonished, suffered retaliatory action, and/or were otherwise treated with disfavor by Hornets officers, directors, or managers if Plaintiffs or Similarly Situated Employees regularly elected to take a full lunch break.

30. Certain officers, directors, or managers within the Hornets organization threatened the job

security of Plaintiffs and Similarly Situated Employees if the employee failed to regularly and consistently work overtime hours in excess of the overtime hours required during an normal work week.

31. Certain officers, directors, or managers within the Hornets organization openly stated to Plaintiffs and Similarly Situated Employees that it would be detrimental to the employee's careers if they failed to work even longer than the overtime required during a normal work week.

32. Because of the overt threats to job security, Plaintiffs and Similarly Situated Employees regularly and consistently worked overtime hours that exceeded the overtime required by the Hornets during a normal work week. Plaintiffs and Similarly Situated Employees did not receive overtime compensation for these overtime hours worked.

33. In addition to the overtime hours actually worked by Plaintiffs and Similarly Situated Employees during a regular work week, Hornets officers, directors, or managers encouraged and often required employees to bring work home.

34. Plaintiffs and Similarly Situated Employees did not receive overtime compensation for the overtime hours worked at home.

35. Throughout the entire year, Plaintiffs and Similarly Situated Employees were regularly required to attend civic, social, and public events as Hornets representatives before normal working hours, after normal working hours, and on the weekends. This resulted in additional overtime hours.

36. Plaintiffs and Similarly Situated Employees did not receive overtime compensation for their overtime hours that resulted from their required attendance of civic, social, and public events

that took place before normal working hours, after normal working hours, and on the weekends.

37. Plaintiffs and Similarly Situated Employees were required to work no fewer than four additional overtime hours per night during each weekday home game. This resulted in additional overtime hours.

38. Plaintiffs and Similarly Situated Employees did not receive overtime compensation for the overtime hours worked on weekday game nights.

39. Plaintiffs and Similarly Situated Employees were required to work between six to twelve hours during each weekend home game. This resulted in additional overtime hours.

40. Plaintiffs and Similarly Situated Employees did not receive overtime compensation for the overtime hours worked on weekend home games.

41. Plaintiffs and Similarly Situated Employees were required to work additional hours answering sales calls when the team played away games. This resulted in additional overtime hours.

42. Plaintiffs and Similarly Situated Employees did not receive overtime compensation for the overtime hours worked answering sales calls after hours when the team played away games.

43. Plaintiffs and Similarly Situated Employees were forced to respond to sales calls before and after normal working hours. This resulted in additional overtime hours.

44. Plaintiffs and Similarly Situated Employees did not receive overtime compensation for the overtime hours worked answering sales calls before and after normal working hours.

45. Throughout their employment with the Hornets, Plaintiffs and Similarly Situated Employees worked overtime hours for the Hornets.

46. Throughout their employment with the Hornets, Plaintiffs and Similarly Situated Employees were entitled to receive overtime compensation for overtime hours worked.

47. Throughout their employment with the Hornets, Plaintiffs and Similarly Situated Employees did not receive overtime compensation for overtime hours worked.

48. Upon information and belief, the Hornets failed to maintain time sheets and/or records reflecting the amount of time worked for Plaintiffs and Similarly Situated Employees.

49. Upon information and belief, as recently as May 26, 2005, certain Hornets officers, directors, or managers have threatened Plaintiffs and Similarly Situated Employees with retaliatory action including termination and adverse job references if they seek overtime compensation through this or any legal action.

50. Upon information and belief, one of the Hornets officers, directors, or managers who have made these threats to at least one former Hornets employee is the Hornets Chief Strategic Officer, Kristy McKearn, who has represented herself to be an attorney.

51. The unlawful and threatening statements made by Hornets officers, directors, or managers is unlawful and will have a chilling effect on current and former employee participation in this lawsuit if the Hornets are not enjoined or otherwise ordered to stop engaging in this conduct.

52. Plaintiffs and Similarly Situated Employees seek the protection from the court against any retaliatory action that may be taken by the Hornets against current and former employees who participate in this collective action.

53. Plaintiffs and Similarly Situated Employees seek immediate relief from retaliatory action, whether threatened or actual.

## COUNT I

### Failure to Pay Overtime Wages to Non-Exempt Sales Employees

54. Plaintiffs incorporate by reference Paragraphs 1-53 above.

55. Plaintiffs, Liger, Martin, Nash, Berry, Carter, Planer-Murray and Steinmetz, collectively, bring this action on behalf of themselves and other similarly situated sales employees (collectively referred to as "the Sales Employees") of the Hornets pursuant to 29 U.S.C. § 216(b). The Sales Employees are current and former sales employees of the Hornets.

56. The Hornets frequently refer to sales persons as account executives.

57. During the statutory period, the Sales Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

58. The Hornets failure to pay overtime to the Sales Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 <u>et seq.</u>, specifically § 207(a)(1). As a result of this unlawful practice, the Sales Employees suffered a loss of wages.

59. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Sales Employees was in violation of law.

60. Plaintiffs, Liger, Martin, Nash, Berry, Carter, Planer-Murray and Steinmetz, and other similarly situated employees demand that the court certify the Sales Employees as a collective action class;

61. The Sales Employees are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written

consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT II:

### Failure to Pay Overtime Wages to Non-exempt Fan Relations Employees

62. Plaintiffs incorporate by reference paragraphs 1-62 above.

63. Sumler brings this collective action on behalf of herself and similarly situated fan relations employees (collectively referred to as "Fan Relations Employees") of the Hornets pursuant to 29 U.S.C. § 216(b). Fan Relations Employees are individuals who were, or are, fan relations employees of the Hornets.

64. During the statutory period, Fan Relations Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

65. The Hornets failure to pay overtime to the Fan Relations Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Fan Relations Employees suffered a loss of wages.

66. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Fan Relations Employees was in violation of law.

67. Plaintiff, Sumler, and other similarly situated far relations employees demand that the court certify Fans Relations Employees as a collective action class;

68. The Fan Relations Employees are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred

prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT III

### Failure to Pay Wages to Inside Sales Employees

69. Plaintiffs incorporate by reference Paragraphs 1-68 above.

70. In the event that Count I is considered insufficient for any reason, Plaintiffs, Liger, Martin and Nash, bring this action on behalf of themselves and similarly situated inside sales employees (collectively referred to as the "Inside Sales Employees") pursuant to 29 U.S.C. § 216(b). Inside Sales Employees are individuals who were, or are, employed by the Hornets as inside sales representatives.

71. During the statutory period, the Inside Sales Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

72. The Hornets failure to pay overtime compensation to the Inside Sales Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Inside Sales Employees suffered a loss of wages.

73. The Hornets knew, or showed reckless disregard for the fact that, its failure to pay overtime compensation to the Inside Sales Employees was in violation of law.

74. Plaintiffs, Liger Martin, and Nash, and other similarly situated employees demand that the court certify Inside Sales Employees as a collective action class, that there be judgment

against Defendant for an amount equal to Plaintiffs unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

### COUNT IV.

### Failure to Pay Wages to Regional Sales Employees

75. Plaintiffs incorporate by reference Paragraphs 1-74 above.

76. In the event that Count I is considered insufficient for any reason, Plaintiffs Carter and Planer-Murray bring this action on behalf of themselves and similarly situated employees (collectively referred to as "Regional Sales Employees") pursuant to 29 U.S.C. § 216(b). Regional Sales Employees are individuals who were, or are, employed by Defendant as regional sales representatives.

77. During the statutory period, Regional Sales Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

78. The Hornets failure to pay overtime to the Regional Sales Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Regional Sales Employees suffered a loss of wages.

79. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Regional Sales Employees was in violation of law.

80. The Regional Sales Employees are entitled to Judgment against the Hornets for an amount

equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT V.

### Failure to Pay Wages to Group Sales Employees

81. Plaintiffs incorporate by reference Paragraphs 1-80 above.

82. In the event that Count I is considered insufficient for any reason, plaintiff Berry brings this action on behalf of herself and similarly situated employees (collectively referred to as "Group Sales Employees") pursuant to 29 U.S.C. § 216(b). Group Sales Employees are individuals who were, or are, employed by Defendant as group sales representatives.

83. During the statutory period, Group Sales Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

84. The Hornets failure to pay overtime to the Group Sales Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Group Sales Employees suffered a loss of wages.

85. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Group Sales Employees was in violation of law.

86. Group Sales Employees are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid

overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT VI.

### Failure to Pay Wages to Sales Account Executive

87. Plaintiffs incorporate by reference Paragraphs 1-86 above.

88. In the event that Count I is considered insufficient for any reason, plaintiff Steinmetz brings this action on behalf of himself and similarly situated employees (collectively referred to as "Sales Account Executives") pursuant to 29 U.S.C. § 216(b), Sales Account Executives are individuals who were, or are, employed by Defendant as sales account executives.

89. Sales Account Executive is a name used by the Hornets for sales persons.

90. During the statutory period, Sales Account Executives routinely worked in excess of forty (40) hours per week without overtime compensation.

91. The Hornets failure to pay overtime to the Sales Account Executives violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Sales Account Executives suffered a loss of wages.

92. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Sales Account Executives was in violation of law.

93. Sales Account Executives are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid

overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

**WHEREFORE,** Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Leslie Sumler, and Sam Steinmetz, individually and on behalf of all Similarly Situated Employees, pray that after due proceedings are had, there be a judgment recognizing this matter as a collective action pursuant to § 216(b) of the FLSA and that there be a judgment in favor of the Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Leslie Sumler, and Sam Steinmetz, individually and on behalf of Similarly Situated Employees, and against defendant, New Orleans Hornets NBA Limited Partnership, awarding all overtime compensation, liquidated damages, other expenses incurred as a result of the policies and practices of New Orleans Hornets NBA Limited Partnership, attorneys fees, costs, and all other general, legal and equitable relief, with legal interest as allowed by law on all amounts owed hereon.

**WHEREFORE,** Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Leslie Sumler, and Sam Steinmetz, individually and on behalf of all Similarly Situated Employees, pray that the court recognize that these claims are a Collective Action, and that Sales Employees, Fan Relations Employees, Inside Sales Employees, Regional Sales Employees, Group Sales Employees, and/or Sales Account Executives are Collective Action Class(es), and that Plaintiffs are granted leave to notify Similarly Situated Employees of this

Collective Action and/or to add Similarly Situated Employees as additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court.

**WHEREFORE,** Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Leslie Sumler, and Sam Steinmetz, individually and on behalf of all Similarly Situated Employees, pray for leave to amend to add all claims permitted under applicable state or federal law

**WHEREFORE,** Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Leslie Sumler, and Sam Steinmetz, individually and on behalf of all Similarly Situated Employees, pray for trial by jury on all issues raised herein.

Respectfully submitted,

_____
**STEWART E. NILES, JR.  (10004)**
**DANIEL E. BURAS, JR. (26226)**
**LAWRENCE J. CENTOLA (27402)**
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595

Attorneys for Plaintiffs


**ALAN F. KANSAS (27725)**
Kansas & Kansas, L.L.C.
1743 Stumpf Blvd., Suite 200
Gretna, LA 70054-1330

Co-Counsel for Plaintiff, Samuel Tobias Steinmetz

**PLEASE SERVE**

**NEW ORLEANS HORNETS**
**NBA LIMITED PARTNERSHIP**
through its registered
**William Hines**
Jones, Walker
201 St. Charles Avenue 51st Floor
New Orleans, LA 70170

# CIVIL COVER SHEET

**05-1969**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
EUGENE LIGER, ETAL

## DEFENDANTS
NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP

**SECT. C MAG. 5**

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Jefferson Parish
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Mecklingburg
(EXCEPT IN U.S. PLAINTIFF CASES) / (IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Stewart E. Niles, Jr., Daniel E. Buras, jr., Lawrence J. Centola, Niles, Salas, Bourque &Fontana, 909 Poydras New Orleans

ATTORNEYS (IF KNOWN): Jones, Walker, 201 ST. charles Ave, 51st Floor, New Orleans, LA 70117

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [x] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury — Med. Malpractice | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 830 Patent | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | [ ] 840 Trademark | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [x] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | | [ ] 864 SSID Title XVI | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **HABEAS CORPUS:** | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS — Third Party 26 USC 7609 | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

29USC 201, et seq

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] YES [ ] NO

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____