UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EUGENE LIGER, ANTHONY "TONY" MARTIN, ADAM NASH, JESSICA BERRY, CHRIS CARTER, MARCY PLANER MURRAY, SAMUEL TOBIAS STEINMETZ, CHRIS STANT, and LESLIE SUMLER | CIVIL ACTION NO. 05-1969 <br><br> SECTION C <br><br> MAGISTRATE 05 |
| Plaintiffs in a Collective Action | |
| VERSUS | |
| NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP | |
| Defendant | |

FILED: _____     _____
                                                              DEPUTY CLERK

### FIRST AMENDED COLLECTIVE ACTION COMPLAINT AND JURY TRIAL REQUEST

**NOW COME PLAINTIFFS**, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Sam Steinmetz, Chris Stant, and Leslie Sumler ("Collective Action Plaintiffs" or "Plaintiffs"), who submit this First Amended Collective Action Complaint and Jury Trial Request against Defendant, the New Orleans Hornets NBA Limited Partnership ("New Orleans Hornets" or "Hornets"), because Defendant has not yet made an appearance in this matter, by amending, supplementing, and/or substituting the following as the original Collective Action Complaint and Jury Trial Request, as follows:

N0017895.WPD

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

Dockets.Justia.com

## JURISDICTION

1. This Honorable Court has jurisdiction over Plaintiffs' claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. This matter may proceed as a collective action under 29 U.S.C. 216.

## PARTIES

2. The following persons are named plaintiffs.

   A. Plaintiff, Eugene Liger (hereinafter "Liger"), a resident of the Parish of Jefferson, State of Louisiana, worked as an inside sales representative for the Hornets..

   B. Plaintiff, Anthony "Tony" Martin (hereinafter "Martin"), a resident of the State of Virginia, who at all times relevant worked in New Orleans, Louisiana as an inside sales representative for the Hornets.

   C. Plaintiff, Adam Nash (hereinafter "Nash"), a resident of James City County, State of Virginia, worked as an inside sales representative and as an sales account executive for the Hornets.

   D. Plaintiff, Jessica Berry (hereinafter "Berry"), a resident of Orleans Parish, State of Louisiana, worked as a group sales account representative for the Hornets.

   E. Plaintiff, Chris Carter (hereinafter "Carter"), a resident of Hancock County, State of Mississippi, worked as a Regional Account representative for the Hornets.

   F. Plaintiff, Marcy Planer-Murray (hereinafter "Planer-Murray"), a resident of the Parish of St. Tammany, State of Louisiana, worked as an regional sales representative for the Hornets.

   G. Plaintiff, Samuel Tobias Steinmetz (hereinafter "Steinmetz"), a resident of Jefferson

     Parish, State of Louisiana, worked as a sales account executive for the Hornets.

  H. Plaintiff, Leslie Sumler (hereinafter "Sumler"), a resident of Orleans Parish, State of Louisiana, worked as a Fan Relations employee for the Hornets.

  I. Plaintiff, Chris Stant (hereinafter "Stant"), a resident of St. Tammany Parish, State of Louisiana, worked as a Sales Account Executive for the Hornets.

3. The following persons or entities are parties Defendant in this collective action.

  A. Defendant, New Orleans Hornets NBA Limited Partnership, a National Basketball Association franchise, is a North Carolina Limited Partnership, domiciled in North Carolina, doing business in the Parish of Orleans, State of Louisiana and registered in the Parish of Orleans.

4. All named plaintiffs are adequate class representatives for this collective action.

## FACTS AND CAUSES OF ACTION

5. The New Orleans Hornets is an NBA franchise that operates twelve months a year and receives revenues twelve months a year.

6. The New Orleans Hornets regularly and consistently violated the Fair Labor Standards Act ("FLSA") because non-exempt employees, such as Plaintiffs and other former and current, similarly situated employees ("Similarly Situated Employees"), regularly and consistently worked in excess of a forty hour work week without being paid overtime wages.

7. Upon information and belief, the New Orleans Hornets pursued a policy and/or practice of refusing or failing to pay Plaintiffs and those Similarly Situated Employees proper overtime compensation for all hours worked in excess of 40 per week.

8. The hours worked by Plaintiffs and Similarly Situated Employees in excess of forty hours

during a work week are "overtime hours".

9. Under federal law, non-exempt employees are entitled to one and one half of their regular pay for all overtime hours, referred to as "overtime compensation".

10. The New Orleans Hornets knew or should have known that Plaintiffs and Similarly Situated Employees were entitled to overtime compensation for all overtime hours.

11. Upon information and belief, the Director of Personnel/Payroll was repeatedly denied the authority pay employees for overtime despite her efforts and repeated requests to compensate non-exempt employees for overtime hours worked.

12. Upon information and belief, in the summer of 2004, the Hornets' organization confirmed to the Director of Personnel/Payroll that Plaintiffs and Similarly Situated Employees were non-exempt employees.

13. In 2005, following a league meeting, non-exempt employee status for Plaintiffs and Similarly Situated Employees was reconfirmed.

14. Under the FLSA, a non-exempt employee is entitled to receive overtime compensation for all overtime hours worked.

15. Upon information and belief, the Hornets prepared a document in July or August of 2004 to specifically admit that Plaintiffs and Similarly Situated Employees were entitled to receive overtime compensation for any overtime hours worked and to specifically identify those employees as non-exempt.

16. Upon information and belief, after the Hornets admitted that Plaintiffs and Similarly Situated Employees were entitled to overtime, the Hornets denied the Director of Personnel/Payroll any authority to compensate any non-exempt employees for overtime hours.

17. The Hornets never provided the Director of Personnel/Payroll with necessary documentation and/or information required to calculate overtime compensation.

18. The Hornets have not had any policies, procedures, or methods to track the amount of overtime hours worked by non-exempt employees since the team moved to New Orleans.

19. Upon information and belief, the Hornets' Director of Personnel/Payroll prepared documentation that would allow the Hornets, its employees, managers, directors, and/or executives, to track the total number of hours worked by non-exempt employees during a workweek.

20. Upon information and belief, the New Orleans Hornets failed to use the documentation prepared by the Director of Personnel/Payroll or any other documentation that would have tracked the number of hours worked by non-exempt employees during a workweek.

21. Upon information and belief, the New Orleans Hornets took no action to track the overtime hours worked by Plaintiffs and Similarly Situated Employees, in violation of 29 U.S.C. § 211(c).

22. Upon information and belief, in late summer or early fall of 2004, representatives of the Hornets' organization and other employees of the Hornets attended a seminar on wage and hour law.

23. During this Wage and Hour law seminar, the attorney lecturers provided materials, information and opinions confirming that Plaintiffs and Similarly Situated Employees were non-exempt employees entitled to overtime compensation from the Hornets.

24. Upon information and belief, following this Wage and Hour seminar the Hornets again denied the Director of Personnel/Payroll the authority to pay Plaintiffs and Similarly Situated

Employees any overtime compensation to which they were entitled.

25. Upon information and belief, the Director of Personnel/Payroll advised employees to keep track of their overtime hours.

26. Upon information and belief, the Hornets failed to track the overtime hours worked by its employees.

27. The Hornets failed to pay non-exempt employees for all overtime hours to which Hornets employees were entitled.

28. The Hornets did not compensate employees who tracked their own overtime hours.

29. Since 2002, the Hornets have established a pattern and practice of requiring Plaintiffs and Similarly Situated Employees to work overtime hours without receipt of overtime compensation.

30. The regular work day for Plaintiffs and Similarly Situated Current and Former Employees, was from 8:00 a.m. to 6:00 p.m., with an hour for lunch, which was a minimum of nine hours per day.

31. Although no overtime pay was paid by the Hornets to Plaintiffs and Similarly Situated Employees, they were admonished, suffered retaliatory action, and/or were otherwise treated with disfavor by Hornets officers, directors, or managers if they did not work overtime.

32. Certain officers, directors, or managers within the Hornets organization threatened the job security of Plaintiffs and Similarly Situated Employees if the employee failed to regularly and consistently work overtime hours in excess of the overtime hours required during a normal work week.

33. Certain officers, directors, or managers within the Hornets organization openly stated to

Plaintiffs and Similarly Situated Employees that it would be detrimental to the employee's careers if they failed to work even longer than the overtime required during a normal work week.

34. Because of the overt threats to job security, Plaintiffs and Similarly Situated Employees regularly and consistently worked overtime hours that exceeded the overtime required by the Hornets during a normal work week, without receiving overtime compensation for these overtime hours worked.

35. During a normal work week, Plaintiffs and Similarly Situated Employees were regularly forced, required, or encouraged to work through lunch, but did not receive compensation for the overtime hours that resulted.

36. In addition to the overtime hours actually worked by Plaintiffs and Similarly Situated Employees during a regular work week, Hornets officers, directors, or managers encouraged and often required employees to bring work home, without receiving overtime compensation for overtime hours worked.

37. Throughout the year, Plaintiffs and Similarly Situated Employees were regularly required to attend civic, social, and public events as Hornets representatives before normal working hours, after normal working hours, and on the weekends, without receiving overtime compensation for overtime hours worked.

38. Plaintiffs and Similarly Situated Employees were required to work no fewer than four additional overtime hours per night during each weekday home game, without receiving overtime compensation for overtime hours worked.

39. Plaintiffs and Similarly Situated Employees were required to work between six to twelve

hours during each weekend home game, without receiving overtime compensation for overtime hours worked.

40. Plaintiffs and Similarly Situated Employees were required to work additional hours answering sales calls when the team played away games, without receiving overtime compensation for overtime hours worked.

41. Plaintiffs and Similarly Situated Employees were required to respond to sales calls before and after normal working hours, without receiving overtime compensation for overtime hours worked.

42. Throughout their employment with the Hornets, Plaintiffs and Similarly Situated Employees worked overtime hours for the Hornets and are entitled to receive compensation for overtime hours worked.

43. Upon information and belief, the Hornets failed to maintain time sheets and/or records reflecting the amount of time worked by Plaintiffs and Similarly Situated Employees.

44. Upon information and belief, as recently as May 26, 2005, certain Hornets officers, directors, or managers have threatened Plaintiffs and Similarly Situated Employees with retaliatory action including termination and adverse job references if they seek overtime compensation through this or any legal action.

45. Upon information and belief, one of the Hornets officers, directors, or managers who have made these threats to at least one former Hornets employee is the Hornets' Chief Strategic Officer, Kristy McKearn, who has represented herself to be an attorney.

46. The unlawful and threatening statements made by Hornets officers, directors, or managers is unlawful and will have a chilling effect on current and former employee participation in

this lawsuit if the Hornets are not enjoined or otherwise ordered to stop engaging in this conduct.

47. Plaintiffs and Similarly Situated Employees seek immediate relief and the Court's protection from any retaliatory action that may be taken by the Hornets against current and former employees who participate in this collective action.

48. Upon information and belief, the Hornets' organization allowed certain executives, directors, and/or managers to modify sales records to deny commission compensation to Plaintiffs and Similarly Situated Employees who were entitled to overtime compensation.

49. The Hornets were contractually obligated to pay Plaintiffs and Similarly Situated Employees an agreed salary plus commission compensation and other benefits; however, certain Plaintiffs and Similarly Situated Employees were systematically underpaid.

50. Plaintiffs and Similarly Situated Employees are entitled to receive overtime compensation based on full and accurate salary, commission compensation, and other benefits.

51. Any overtime compensation calculation must include the amount of any sales commissions paid or duly owing.

## COUNT I

### Failure to Pay Overtime Wages to Non-Exempt Sales Employees

52. Plaintiffs incorporate by reference Paragraphs 1-51 above.

53. Plaintiffs, Liger, Martin, Nash, Berry, Carter, Planer-Murray, Steinmetz and Stant, collectively, bring this action on behalf of themselves and other similarly situated sales employees (collectively referred to as "the Sales Employees") of the Hornets pursuant to 29 U.S.C. § 216(b). The Sales Employees are current and former sales employees of the

Hornets.

54. The Hornets frequently refer to sales persons as account executives.

55. During the statutory period, the Sales Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

56. Sales Employees are entitled to receive overtime compensation based upon full and accurate salary plus commission compensation and other benefits, including the salary the Hornets were obligated to pay.

57. Sales Employees are entitled to receive overtime compensation based on all sales commissions to which they were entitled, including those that were not paid by the Hornets.

58. The Hornets failure to pay overtime to the Sales Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Sales Employees suffered a loss of wages.

59. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Sales Employees was in violation of law.

60. Plaintiffs, Liger, Martin, Nash, Berry, Carter, Planer-Murray and Steinmetz, and other Similarly Situated Employees demand that the court certify the Sales Employees as a collective action class;

61. The Sales Employees are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under

state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT II:

### Failure to Pay Overtime Wages to Non-exempt Fan Relations Employees

62. Plaintiffs incorporate by reference Paragraphs 1-51 above.

63. Sumler brings this collective action on behalf of herself and similarly situated fan relations employees (collectively referred to as "Fan Relations Employees") of the Hornets pursuant to 29 U.S.C. § 216(b). Fan Relations Employees are individuals who were, or are, fan relations employees of the Hornets.

64. During the statutory period, Fan Relations Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

65. The Hornets failure to pay overtime to the Fan Relations Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Fan Relations Employees suffered a loss of wages.

66. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Fan Relations Employees was in violation of law.

67. Plaintiff, Sumler, and other similarly situated far relations employees demand that the court certify Fans Relations Employees as a collective action class;

68. The Fan Relations Employees are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written

consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT III

### Failure to Pay Wages to Inside Sales Employees

69. Plaintiffs incorporate by reference Paragraphs 1-51 above.

70. In the event that Count I is considered insufficient for any reason, Plaintiffs, Liger, Martin and Nash, bring this action on behalf of themselves and similarly situated inside sales employees (collectively referred to as the "Inside Sales Employees") pursuant to 29 U.S.C. § 216(b). Inside Sales Employees are individuals who were, or are, employed by the Hornets as inside sales representatives.

71. During the statutory period, the Inside Sales Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

72. Inside Sales Employees are entitled to receive overtime compensation based upon full and accurate salary plus commission compensation and other benefits, including the salary the Hornets were obligated to pay.

73. Inside Sales Employees are entitled to receive overtime compensation based on all sales commissions to which they were entitled, including those that were not paid by the Hornets.

74. The Hornets failure to pay overtime compensation to the Inside Sales Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Inside Sales Employees suffered a loss of wages.

75. The Hornets knew, or showed reckless disregard for the fact that, its failure to pay overtime compensation to the Inside Sales Employees was in violation of law.

76. Plaintiffs, Liger Martin, and Nash, and other Similarly Situated Employees demand that the court certify Inside Sales Employees as a collective action class, that there be judgment against Defendant for an amount equal to Plaintiffs unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT IV.

### Failure to Pay Wages to Regional Sales Employees

77. Plaintiffs incorporate by reference Paragraphs 1-51 above.

78. In the event that Count I is considered insufficient for any reason, Plaintiffs Carter and Planer-Murray bring this action on behalf of themselves and Similarly Situated Employees (collectively referred to as "Regional Sales Employees") pursuant to 29 U.S.C. § 216(b). Regional Sales Employees are individuals who were, or are, employed by Defendant as regional sales representatives.

79. During the statutory period, Regional Sales Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

80. Regional Sales Employees are entitled to receive overtime compensation based upon full and accurate salary plus commission compensation and other benefits, including the salary the

Hornets were obligated to pay.

81. Regional Sales Employees are entitled to receive overtime compensation based on all sales commissions to which they were entitled, including those that were not paid by the Hornets.

82. The Hornets failure to pay overtime to the Regional Sales Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Regional Sales Employees suffered a loss of wages.

83. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Regional Sales Employees was in violation of law.

84. The Regional Sales Employees are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT V.

### Failure to Pay Wages to Group Sales Employees

85. Plaintiffs incorporate by reference Paragraphs 1-51 above.

86. In the event that Count I is considered insufficient for any reason, plaintiff Berry brings this action on behalf of herself and Similarly Situated Employees (collectively referred to as "Group Sales Employees") pursuant to 29 U.S.C. § 216(b). Group Sales Employees are individuals who were, or are, employed by Defendant as group sales representatives.

87. During the statutory period, Group Sales Employees routinely worked in excess of forty (40) hours per week without overtime compensation.

88. Group Sales Employees are entitled to receive overtime compensation based upon full and accurate salary plus commission compensation and other benefits, including the salary the Hornets were obligated to pay.

89. Group Sales Employees are entitled to receive overtime compensation based on all sales commissions to which they were entitled, including those that were not paid by the Hornets.

90. The Hornets failure to pay overtime to the Group Sales Employees violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Group Sales Employees suffered a loss of wages.

91. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Group Sales Employees was in violation of law.

92. Group Sales Employees are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

## COUNT VI.

### Failure to Pay Wages to Sales Account Executives

93. Plaintiffs incorporate by reference Paragraphs 1-51 above.

94. In the event that Count I is considered insufficient for any reason, plaintiffs Steinmetz and Stant bring this action on behalf of themselves and Similarly Situated Employees (collectively referred to as "Sales Account Executives") pursuant to 29 U.S.C. § 216(b), Sales Account Executives are individuals who were, or are, employed by Defendant as sales account executives.

95. Sales Account Executive is a name used by the Hornets for sales persons.

96. During the statutory period, Sales Account Executives routinely worked in excess of forty (40) hours per week without overtime compensation.

97. Sales Account Executives are entitled to receive overtime compensation based upon full and accurate salary plus commission compensation and other benefits, including the salary the Hornets were obligated to pay.

98. Sales Account Executives are entitled to receive overtime compensation based on all sales commissions to which they were entitled, including those that were not paid by the Hornets.

99. The Hornets failure to pay overtime to the Sales Account Executives violates the provisions of the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., specifically § 207(a)(1). As a result of this unlawful practice, the Sales Account Executives suffered a loss of wages.

100. The Hornets knew, or showed reckless disregard for the fact, that its failure to pay overtime compensation to the Sales Account Executives was in violation of law.

101. Sales Account Executives are entitled to Judgment against the Hornets for an amount equal to unpaid overtime compensation at the applicable overtime rate, an amount equal to unpaid overtime compensation as liquidated damages, all costs and attorney's fees incurred prosecuting this claim, leave to add additional Plaintiffs by motion, the filing of written

consent forms, or any other methods approved by the Court, any other relief afforded under state and federal law, and for such further equitable and legal relief as the Court deems just and equitable.

102. Plaintiffs pray for all equitable relief.

**WHEREFORE,** Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Sam Steinmetz, Chris Stant, and Leslie Sumler, individually and on behalf of all Similarly Situated Employees, pray that after due proceedings are had, there be a judgment recognizing this matter as a collective action pursuant to § 216(b) of the FLSA, confirm salary, commission compensation and other benefits, including a full accounting of ticket sales for commission compensation, and that there be a judgment in favor of the Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Sam Steinmetz, Chris Stant, and Leslie Sumler individually and on behalf of Similarly Situated Employees, and against defendant, New Orleans Hornets NBA Limited Partnership, awarding all overtime compensation, liquidated damages, expenses, attorneys fees, costs, and all other general, legal and equitable relief, with legal interest as allowed by law on all amounts owed hereon.

**WHEREFORE,** Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Sam Steinmetz, Chris Stant, and Leslie Sumler, individually and on behalf of all Similarly Situated Employees, pray that the court recognize that these claims are a Collective Action, and that Sales Employees, Fan Relations Employees, Inside Sales Employees, Regional Sales Employees, Group Sales Employees, and/or Sales Account Executives are Collective Action Class(es), and that Plaintiffs are granted leave to notify Similarly

Situated Employees of this Collective Action and/or to add Similarly Situated Employees as additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court.

**WHEREFORE,** Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Sam Steinmetz, Chris Stant, and Leslie Sumler, individually and on behalf of all Similarly Situated Employees, pray for leave to amend to add all claims permitted under applicable state or federal law

**WHEREFORE,** Plaintiffs, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Sam Steinmetz, Chris Stant, and Leslie Sumler, individually and on behalf of all Similarly Situated Employees, pray for trial by jury on all issues raised herein.

Respectfully submitted,

_____
**STEWART E. NILES, JR. (10004)**
**DANIEL E. BURAS, JR. (26226)**
**LAWRENCE J. CENTOLA (27402)**
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
Attorneys for Plaintiffs

**ALAN F. KANSAS (27725)**
Kansas & Kansas, L.L.C.
1743 Stumpf Blvd., Suite 200
Gretna, LA 70054-1330
Co-Counsel for Plaintiff, Samuel Tobias Steinmetz

N0017895.WPD                                       18

**PLEASE SERVE**

**NEW ORLEANS HORNETS**
**NBA LIMITED PARTNERSHIP**
through its registered agent for service of process
**William Hines**
Jones, Walker
201 St. Charles Avenue 51st Floor
New Orleans, LA 70170

N0017895.WPD                                   19