UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUL 27 PM 3: 48

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| EUGENE LIGER, ET AL. | CIVIL ACTION NO. 05-1969 |
| Plaintiffs in a Collective Action | SECTION C |
| VERSUS | MAGISTRATE 05 |
| NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP | |
| Defendant | |
| FILED:_____ | _____ |
| | DEPUTY CLERK |

## MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION PURSUANT TO §216(b) OF THE FLSA AND TO APPROVE A PROPOSED NOTIFICATION TO ALL PUTATIVE COLLECTIVE ACTION MEMBERS

**NOW INTO COURT**, through undersigned counsel, come named Plaintiffs Eugene Liger,

Anthony "Tony" Martin, Adam Nash, Jessica Berry, Chris Carter, Marcy Planer-Murray, Sam

Steinmetz, Chris Stant, Ivan Hinson, Leslie Sumler, Amy Nicole Smith, and Latousha Brown

("Collective Action Plaintiffs" or "Plaintiffs"), who hereby move this Honorable court to recognize

this proceeding as a collective action pursuant to §216(b) of the Fair Labor Standards Act and,

further to conditionally certify this action and approve the attached proposed Notice and Consent

Form, to be sent to all potential collective action members and to order defendants to produce the

names and addresses of potential collective action members, all for the reasons more fully assigned

in the attached Memorandum of Authorities.

Plaintiffs further request a hearing on this matter be set for August 17, 2005. During the

Initial Scheduling Conference on July 19, 2005, Plaintiffs stated an intent to file this Motion and

N0019510.WPD

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

Dockets.Justia.com

have it heard on August 17, 2005, inasmuch as time is of the essence, and defense counsel offered no depositions.

As is set forth in the attached memorandum, the Hornets have made direct threats of retaliation against current and former employees who join this litigation. The president of the Hornets has forbidden current employees from contacting former employees, thereby limiting a source of information about this collective action. More recently, Hornets' management advised current employees that this Court had already taken adverse action against Plaintiffs and that the claim was about to be dismissed. Defendant's threats and misrepresentations will financially benefit Defendant as the applicable statute of limitations may expire on the claims of prospective class members each day. This Motion to Certify must be granted to notify prospective plaintiffs of their rights and to prevent Defendant from reaping the rewards of its inappropriate behavior at the expense of employees who have already been denied overtime compensation that they are due and owing.

Respectfully submitted, this _27th_ day of _JULY_, 2005.

Respectfully submitted,

**STEWART E. NILES, JR. (10004)**
**DANIEL E. BURAS, JR. (26226)**
**LAWRENCE J. CENTOLA (27402)**
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
Attorneys for Plaintiffs

**ALAN F. KANSAS (27725)**
Kansas & Kansas, L.L.C.
1743 Stumpf Blvd., Suite 200
Gretna, LA 70054-1330
Co-Counsel for Plaintiff, Samuel Tobias Steinmetz

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been mailed, postage prepaid and properly addressed, to all counsel of record in these proceedings, this _27_ day of ___July___, 2005.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **EUGENE LIGER, ET AL.** | | **CIVIL ACTION NO. 05-1969** |
| **Plaintiffs in a Collective Action** | | **SECTION C** |
| **VERSUS** | | **MAGISTRATE 05** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | | |
| **Defendant** | | |

FILED:_____          _____
                                                                              DEPUTY CLERK

## MEMORANDUM IN SUPPORT MOTION TO CERTIFY A COLLECTIVE ACTION PURSUANT TO §216(b) OF THE FLSA AND TO APPROVE A PROPOSED NOTIFICATION TO ALL PUTATIVE COLLECTIVE ACTION MEMBERS

**MAY IT PLEASE THE COURT:**

This is a collective action brought pursuant to §216(b) of the Fair Labor Standards Act ("FLSA"), 29 USC § 201 *et seq*. This motion addresses recognition of this matter as a collective action for purposes of §216(b) and requests approval of written notification to collective action members. This Motion also requests, if certification is granted, that defendants be ordered to produce the names and addresses of all potential collective action members for notice purposes. Finally, this Motion requests that the Notice contain provisions that will serve to counteract the inappropriate conduct of the Hornets in order to avoid the adverse impacts on the rights of prospective plaintiffs who are entitled to overtime compensation, as are more fully addressed in the Protective Order filed by Plaintiff and incorporated by reference herein.

N0019510.WPD

This action was filed by named Plaintiffs on their own behalf and on behalf of current and former employees of the New Orleans Hornets NBA Limited Partnership ("Hornets"), who were employed at any time from approximately August 2002 to the present, and who were non-exempt employees and consistently worked over 40 hours a week but were not paid overtime compensation as was required by 29 U.S.C. § 207(a). The named Plaintiffs have complied with all pleading requirements to assert a collective action under the FLSA.

**Request for Order Conditionally Certifying Collective Action**

As a result of the Hornets failure to pay overtime compensation to any non-exempt employee who worked over 40 hours in a week but were not paid overtime compensation, Plaintiffs seek an order from the Court certifying the following Collective Action:

> All current and former employees of the New Orleans Hornets NBA Limited Partnership at any time between August 2002 to present and who worked, at any time therein, more than 40 hours during a workweek.

A similar class designation was recently approved by Judge Barbier in Donohue v. Francis Services, Inc., 2004 WL 1161366 (E.D. LA 5/24/04). In Donohue, the Court found that Plaintiffs had met the requirements for conditional certification of a collective action class and defined the class as follows:

> All current and former employees of Francis Services Inc. and/or Francis Torque Services who were paid on an hourly basis at any time between January 15, 2001 to present, and who worked, at any time therein, over 40 hours per week without being paid time and a half for the hours worked over 40 per week; or, who were paid overtime for hours worked over 40, but whose overtime was calculated on a base rate which did not include regularly paid "discretionary bonuses."

See Donohue, 2004 WL 1161366, at *2 (E.D. La. 5/24/2004), attached hereto as Exhibit A. Judge Barbier dismissed Defendant's objection that the class was too broadly defined, stating:

Finally, with respect to the defendants' argument that the collective action class should not be certified because as defined, the class is simply too large, the Court notes that the definition includes only those individuals who have potential causes of action based on the allegations of the complaint; that is, individuals entitled to overtime who did not receive it. **If that turns out to be a large number, the fault lies with defendants for shorting so many of its employees. Adopting defendants' reasoning would lead to the absurd result that employers could escape FLSA liability by making sure to underpay vast numbers (rather than smaller numbers) of their employees**.

Donohue v. Francis, 2004 WL 1406080, *1 (E.D. LA 6/22/04)(emphasis added), attached hereto as

Exhibit B.

Accordingly, Plaintiffs request that the Court ordered notice be sent to the potential collective

action members so that each member can decide whether or not to opt into this matter.[1] See Exhibit

T. Finally, Plaintiffs seek an order requiring defendants to provide the names and addresses of

potential collective action members and prohibiting defendants from coercing or interfering with the

rights of those who wish to opt into this matter.

If the Court does not elect to incorporate Judge Barbier's rationale to allow all employees

owed overtime by the Hornets to receive Notice, Plaintiffs seek an alternative order from the Court

certifying the following subclasses through this Collective Action:

All current and/or former employees in any category designated as non-exempt in Exhibit "M" attached to Plaintiffs' Second Amended Complaint at any time between August 2002 to present and who worked, at any time therein, more than 40 hours during a workweek;

All current and former Sales Employees of the New Orleans Hornets

---

[1]Where a collective action is authorized the courts also approve the mailing of notice. See Judge Barbier's opinion in Donohue v. Francis Services, Inc., 2004 WL 1161366 (E.D. LA 5/24/04); Judge Wilkinson's opinion Camp v. The Progressive Corporation, 2002 WL 31496661 (E.D. La. 2002); and Mooney v. Aramco, 54 F. 3d 1207 (5th Cir. 1995).

NBA Limited Partnership at any time between August 2002 to present and who worked, at any time therein, more than 40 hours during a workweek;

All current and former Fan Relations Employees of the New Orleans Hornets NBA Limited Partnership at any time between August 2002 to present and who worked, at any time therein, more than 40 hours during a workweek;

All current and former Ticket Operation Assistant Employees of the New Orleans Hornets NBA Limited Partnership at any time between August 2002 to present and who worked, at any time therein, more than 40 hours during a workweek;

and

All current and former Receptionists of the New Orleans Hornets NBA Limited Partnership at any time between August 2002 to present and who worked, at any time therein, more than 40 hours during a workweek;

Plaintiffs also request court ordered notice to be sent to the potential collective action members so that each can decide whether or not to opt into this matter. Finally, Plaintiffs seek an order requiring defendants to provide the names and addresses of potential collective action members and prohibiting defendants from coercing or interfering with the rights of those who wish to opt into this matter.

If Plaintiffs' first and second requests for class determination are denied, Plaintiffs seek an order from the Court certifying the following subclasses through this Collective Action:

All current and former Inside Sales Employees of the New Orleans Hornets NBA Limited Partnership at any time between August 2002 to present and who worked, at any time therein, more than 40 hours during a workweek;

All current and former Regional Sales Employees of the New Orleans Hornets NBA Limited Partnership at any time between August 2002 to present and who worked, at any time therein, more than 40 hours during a workweek;

All current and former Group Sales Employees of the New Orleans
Hornets NBA Limited Partnership at any time between August 2002
to present and who worked, at any time therein, more than 40 hours
during a workweek;

All current and former Sales Account Executives of the New Orleans
Hornets NBA Limited Partnership at any time between August 2002
to present and who worked, at any time therein, more than 40 hours
during a workweek;

All current and former Fan Relations Employees of the New Orleans
Hornets NBA Limited Partnership at any time between August 2002
to present and who worked, at any time therein, more than 40 hours
during a workweek;

All current and former Ticket Operation Assistant Employees of the
New Orleans Hornets NBA Limited Partnership at any time between
August 2002 to present and who worked, at any time therein, more
than 40 hours during a workweek;

and

All current and former Receptionists of the New Orleans Hornets
NBA Limited Partnership at any time between August 2002 to
present and who worked, at any time therein, more than 40 hours
during a workweek;

Plaintiffs also seek court ordered notice to be sent to the potential collective action members so that

each can decide whether or not to opt into this matter.  Finally, Plaintiffs seek an order requiring

defendants to provide the names and addresses of potential collective action members and

prohibiting defendants from coercing or interfering with the rights of those who wish to opt into this

matter.

1.    **FACTUAL BACKGROUND.**

At this phase of Plaintiffs' request for certification, the affidavits and documents submitted

by Plaintiffs overwhelmingly satisfy the lenient standard mandated for certification for notice

purposes. See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995); Donohue,

supra, at *1,2.  The named Plaintiffs and those similarly situated were, or are, employees of the Hornets.  See Exhibits C,D, F-N. The named Plaintiffs, and those similarly situated, were classified by defendant as non-exempt employees under the FLSA.[2]  See Exhibits O-P.  In fact, the Hornets have repeatedly admitted that Plaintiffs and similarly situated employees were Non-Exempt employees, both in an overtime classification spreadsheet prepared in August of 2004, and through an admission by the Hornets' former CEO, Jack Cappella, who confirmed that Plaintiffs are entitled to overtime compensation and that the Hornets were aware Plaintiffs and similarly situated employees were entitled to overtime compensation. See Exhibits I, O-Q.

Nevertheless, since 2002 the Hornets have established a pattern and practice of routinely requiring Plaintiffs and similarly situated employees to work overtime hours without receipt of overtime compensation. All named Plaintiffs and similarly situated employees are sales and/or other non-exempt business office employees of the Hornets who were required by the Hornets to work more than 40 hours per work week. See Exhibits C-D, F-O.  However, the Hornets failed to pay overtime compensation to non-exempt employees, and in most cases failed to track the overtime worked by non-exempt employees. See Exhibits C-D, F-O.

Moreover, the Hornets knew or should have known about their obligation to pay overtime for several years.  See Exhibits I, O, P, Q.  The Hornets admitted and identified non-exempt employees who were entitled to overtime compensation, but then refused to pay those employees. See Exhibit O-P.  The Hornets directed managers and directors to withhold information about

---

[2]The significance of the classification as nonexempt is that under the FLSA it is undisputed that nonexempt employees (with rare exceptions which are not applicable here) are entitled to be paid at overtime rates when they worked in excess of 40 hours in a workweek.  29 USC 207(a); 29 CFR 778.100-101.

employee rights to overtime compensation from the employees. See Exhibit O. Hornets managers refused to submit time sheets prepared by Plaintiffs and similarly situated employees who requested overtime. See Exhibits C, D, L, O. Further, although the Hornets have accepted concessions and payments from the taxpayers of the State of Louisiana, the Hornets refused to monitor the overtime worked by its Louisiana employees, although the Hornets monitored overtime while the team was in Charlotte. See Exhibit I, O. The policy and practices alleged by Plaintiffs are clearly not individual to any specific employee because all non-exempt Hornets employees have been overworked and underpaid in violation of the FLSA. Accordingly, this Court must certify this collective action and allow all Hornets employees who worked more than 40 hours per week to receive notice of this collective action.

**2.    PREREQUISITES FOR COLLECTIVE ACTION STATUS UNDER THE FLSA.**

Under the Fair Labor Standards Act, a collective action can ultimately be maintained if two requirements are met.[3] First, the named Plaintiffs and the members of the potential FLSA collective action must be "similarly situated." See Wyatt v. Pride Offshore, 1996 W.L. 509654 (E.D. La. 1996). Second, the action of the employer at issue, like a policy of nonpayment of overtime, must be one of general effect ". . . not one which is purely personal to plaintiff." Wyatt, supra.

Judge Barbier explained the lenient standard necessary for granting Plaintiffs' request for conditional certification of this collective action in Donohue, supra.

> To resolve the question whether putative collective action members are similarly situated, courts may employ a two-step analysis for conditional certification as established by the Fifth Circuit in Mooney v. Aramco Servs. Co., 54 F.3d 1207,

---

[3]The basis for a collective action is found in 29 USC 216(b). It is under this section which collective actions must proceed. See *Alix v. Shoneys Inc.*, 1997 WL 66771 (E.D. La. 1997).

1213-14 (5th Cir.1995). First, at the so-called "notice stage," the district court decides whether notice of the action should be given to potential class members. 54 F.3d at 1213-14. This decision is usually based only on the pleadings and any affidavits which have been submitted. Id. It is made applying a fairly lenient standard, and usually results in "conditional certification" of a representative class. Id. "At the notice stage, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." Id. at 1213-14 & n. 8 (citations and quotations omitted) (emphasis added). Following conditional certification, putative class members are given notice and the opportunity to opt in to the collective action. Id. at 1214. The case then proceeds throughout discovery as a collective action. Id.

A second step takes place later on, when and if the defendant files a motion for decertification, after more extensive discovery has taken place. Id. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives--i.e. the original plaintiffs--proceed to trial on their individual claims.   Id. at 1214.

Donohue v. Francis Services, Inc., 2004 WL 1161366, *1-2 (E.D. LA 5/24/04), attached hereto as

Exhibit A. Both of those elements are satisfied by Plaintiffs, especially at the lower level of proof

required during this phase of certification.

A.    **The Similarly Situated Requirement Is Satisfied.**

Plaintiffs satisfy the "similarly situated" requirement of the FLSA. Unlike the numerous

prerequisites for a FRCP 23 class action, (i.e. numerosity, commonality, typicality, etc.), the

definition of "similarly situated" under the FLSA, in this circuit, is much more liberal and much

easier for named Plaintiffs to prove. Under the FLSA, "similarly situated" means merely that there

is "some factual nexus which binds the named Plaintiffs and the potential class members together

as a victim of a particular alleged policy or practice." Heagney v. European American Bank, 122

FRD 125, 127 (E.D. NY 1988). This standard of proof is **minimal**. See Mooney v. Aramco Servs.

Co., 54 F.3d 1207, 1213-14 (5th Cir.1995); Donohue, supra. As the Court noted in Allen v. Marshall Field Co., 93 FRD 438, 443 (USDC N.D. ILL. 1982):

> Defendants contend that the *named* plaintiff and the class they seek to represent are not similarly situated. The plaintiffs, however, need only show that their positions are similar, not identical. See Calabrese v. Chiumento, 3 FRD 435, 437 (USDC N.J. 1944).[4]

It is clear that "similarly situated" does not mean "identically situated."

Plaintiffs are twelve of approximately 100 employees who were required to work overtime, but were not paid overtime compensation. As a result, it is of no import in a claim such as the one defendant are expected to assert herein whether named Plaintiffs and potential collective action members hold the same exact job or have the same exact job title. See Donohue, supra., at *2-3. Indeed, the courts have held that in a wage/overtime claim it is not necessary that the potential claimants all hold the same job. See Judge Feldman's opinion in Crain v. Helmerich & Payne International Drilling Company, 1992 U.S. Dist. Lexis 5367 (E.D. La. 1992) or Judge McNamara's opinion in Whitworth v. Chiles Offshore, 1992 WL 235907 (E.D. La. 1992). Nevertheless, event if this Court elects to limit the class definition, the affidavits and documents submitted by the identified Plaintiffs are more than sufficient to define the necessary class for non-exempt employees. See, e.g., Donohue v. Francis, supra.

---

[4]See also Burt v. Manville Sales Corporation, 116 FRD 276, 277 (USDC D.Colo. 1987) wherein the court wrote: "Potential plaintiffs need only show their positions are similar, not identical to named plaintiffs." In Wyatt, infra; Crain v. Helmerich & Payne, 1992 U.S. Dist. Lexis 5367 (E.D. La. 1992) and Whitworth v. Chiles Offshore, 1992 WL 235907 (E.D. La. 1992) the plaintiffs and collective action members held various jobs offshore (roustabout, roughneck and other positions). Despite holding different jobs, and having different job duties, all collective actions were certified because all employees were subjected to the same company policy/practice on pay.

B.    **The"general effect" criteria is satisfied.**

This court may deny a plaintiff's right to proceed collectively only if the action arises from

circumstances purely personal to that plaintiff, and not from any generally applicable rule, policy or

practice of the employer. See also Burt v. Manville Sales Corp., 116 FRD 276, 277 (D.Colo. 1987);

Whitworth v. Chiles Offshore Corp., 1992 WL 235907, 1.Wage & Hour Case. 2d 134 (E.D. La.

1992); 1992 Dist. Lexis 13405; Wyatt, supra. In this case, the Hornets required approximately 100

employees to work hundreds of hours of compensated time. This policy of the Hornets, in effect

since 2002, required all employees to work overtime without compensation. Thus, the conduct of

the Hornets is one of general effect ". . . not one which is purely personal to plaintiff." Wyatt, supra.

In Burt, supra, the court described it as follows:

> Section 216(b) states the opportunity to proceed as an opt-in class on
> behalf of similarly situated individuals is a 'right'. As such, only if
> we determine the action relates to specific issues and circumstances
> personal to the plaintiff rather than any generally applicable policy or
> practice can we foreclose the right to proceed as a class (Page 277).

In Whitworth, supra, plaintiffs alleged unpaid overtime was owed for mandatory participation

in safety meetings, drills and training of employees in various nonexempt job categories. Plaintiffs

showed that the failure to pay was a matter of company policy and/or practice, and was not made on

the basis of separate, employee by employee, decisions. Judge McNamara, therefore, found that

collective action status should be granted and ordered that notice be sent to all potential Collective

Action members. The same result was reached by Judge Schwartz in Wyatt, supra.

In Crain v. Helmerich & Payne International Drilling Company, 1992 U.S. Dist. Lexis

5367;30 Wage and Hour Cases 1452 (E.D. La. 1992), plaintiffs alleged entitlement to unpaid

overtime for participation in work-related activities similar to that alleged in Whitworth, supra.

Judge Feldman granted the motion to certify a collective action on behalf of current and former

employees of various nonexempt job positions, and held that:

> Similarly situated does not mean identically situated. [citation omitted] Rather, an FLSA class determination is appropriate where there is "a demonstrated similarity among the individual situations. [and] . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." Heagney, supra; (citing Palmer, supra). Thus a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice."[5] Burt, supra, page 277.

In the present case, the named Plaintiffs can easily show that they are similarly situated with

other non-exempt employees who were not properly paid for hours worked in excess of 40 per week.

All were employees who were required to work more than 40 hours each week. Overtime was

required by the Hornets during the attendance of some marketing event, public appearances, on

weekends, at night, and during regular working hours that frequently exceeded 40 hours. See

Exhibits C-D, F-O. These facts are sufficient as a matter of law for this conditional certification of

the class. See Donohue, supra, attached as Exhibits A-B. Accordingly, Plaintiffs have met their

burden, which now shifts to the Hornets to justify why the Court should not notify all current and

---

[5]In *Heagney, infra*, the court phrased the question in this fashion:

> The question facing the court is whether numbers of the proposed class are 'similarly situated' (cite). The plaintiffs 'need not be identically situated to potential class members. Nevertheless, there must be a demonstrated similarity among the individual situations . . . some identifiable factual nexus which binds the named plaintiffs and the potential class members together. . . .'(page 127).

former employees who are entitled to overtime compensation about this case. Defendants' defenses to the claim-in-chief, if any, is not a basis to deny class certification.

3.    **THE CONDITIONAL APPROACH TO CERTIFICATION.**

Defendant may attempt to confuse Plaintiffs' burden of proof for this initial and conditional certification with final certification. The two standards are entirely different. During this conditional certification stage the burden of proof on Plaintiffs is extremely lenient. There is a two-step approach which governs the Fair Labor Standards Act, with respect to certification of a collective action. See See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995); Hipp v. Liberty National Life Ins., 252 F. 3d 1208 (11th Cir. 2001);Donohue, supra; Carter v. Indianapolis Power and Light Co., 2003 WL 23142183 (S.D. Inc. 2003); Camp v. The Progressive Corporation, 2002 WL 31496661 (E.D. La. 2002). This approach was approved in this circuit by the court in Mooney v. Aramco Services Co., and must be applied to this case.[6]

Under this two step approach, the court first determines whether a collective action should be certified for notice purposes using this very lenient standard for class certification; then, after discovery is completed and the case is ready for trial, the certification issue may be revisited if defendant chooses to do so. See Mooney, supra; Donohue, supra; Camp, supra; Vaszlavik v. Storage Technology Corp., 175 FRD 672 (D. Colo. 1997).

The conditional certification method requires the court to determine if the named Plaintiffs are similarly situated to the proposed collective action members. Camp, supra, page 2. However,

---

[6]As Magistrate Wilkinson noted in Camp, infra, citing Mooney, infra, and the conditional certification process:

> That process has been approved by the Fifth Circuit in Mooney....(page *2)

the similarly situated determination at the conditional certification stage is, as Magistrate Wilkinson

has written, "...usually based only on the pleadings and affidavits which have been submitted...."

Camp, page 2. It is an extremely lenient standard. Camp, supra.

At the conditional certification stage, the courts, following this method, "require nothing

more than substantial allegations that the putative class members were together the victims of a

single decision, policy or plan." See Camp, supra; see also Mooney, supra, pages 1213-1214.

Typically, this results in the court granting conditional certification of a representative class and

ordering that notice be sent out. See, e.g., Donohue, supra; Hipp v. Liberty National Life Ins. Co.,

252 F. 3D 1208, 1217-1219 (11th Cir. 2001); Mooney, supra, pages 1213-1214; White v. Osmose

Inc., 204 F. Sup 2d 1309, 1313-1314 (M.D. Ala. 2002); Harper v. Lovett's Buffet, 185 FRD 358,

362-64 (M.D. ala. 1999); Tucker v. Labor Leasing Inc., 872 F. Supp 941, 947-948 (M.D. Fla. 1994);

Moss v. Crawford & Co., 201 FRD 398, 400 (W.D. Pa. 2000); Champneys v. Ferguson Enterprises,

Inc., 2003 WL 1562219 (S.D. Inc. 2003); Kreig v. Pells, Inc., 2001 WL 548394 (S.D. Inc. 2001);

Bontempo .v Metro Networks, 2002 WL 1925911*1 (N.D. Ill. 2002).

If the district court conditionally certifies the case as a collective action pursuant to §216(b),

the putative class members are given written notice of their rights and the opportunity to "opt-in"

to the case to protect their potential rights. Nothing in this approach prohibits the defendants from

moving to decertify this matter as a collective action at any time prior to trial on the merits if facts

are discovered showing Plaintiffs are not similarly situated. See Bayles v. American Medical

Response of Colorado, Inc., 950 F. Supp. 1053, 1066 (D. Colo. 1996); Sperling v. Hoffman-

LaRoche, Inc. 118 FRD 392, 407 (D. N.J.) Judgment affirmed in part, appeal dismissed in part, 862

F.2d 439 (3rd Cir. 1988), Judgment affirmed and remanded, 493 U.S. 165, 110 S.Ct. 482, 107

L.Ed.2d 480 (1989).

In Mooney v. Aramco Services Company, 54 F.3d 1207 (5th Cir. 1995), plaintiffs were former

managerial and skilled employees terminated under a reduction of force program who sued under

the ADEA.[7] The court affirmed early conditional certification of collective action status and

approved notice being sent to potential collective action members.  In describing the conditional

certification process, the Mooney court found that:

> Because the court has minimal evidence, this determination is made
> using a fairly lenient standard, and typically results in "conditional
> certification" of a representative class.   If the district court
> "conditionally certifies," the putative class members are given notice
> and the opportunity to "opt-in."    The action proceeds as a
> representative action throughout discovery.
>
> This Honorable Court, assuming a "conditional certification" of this
> action as a collective action is granted, reserves the right to make a
> second determination as to the continued viability of the collective
> action after discovery on the merits have been completed and the case
> is ready for trial.  Page 1214.

In other circuits, this lenient standard has been described as plaintiffs having to merely:

> ...submit evidence establishing at least a colorable basis for their
> claim that a class of similarly situated plaintiffs exists. Kreig v. Pells,
> Inc., 2001 WL 548394 *1 (S.D. Ind. 2001).

See also Carter, supra; Severtson v. Phillips Beverage Co., 137 FRD 264, 267 (D. Minn. 1991);

Koren v. Supervalu Inc., 2003 WL 1572002 (D. Minn. 2003).  The key point at this early state is

that:

---

[7]The ADEA is governed by §216(b) of the FLSA for collective action purposes and the
same rationale is therefore appropriate therein.  See Camp, infra.

> Before notice is authorized, the court is not required to come to a
> 'final determination' that the similarly situated requirement has been
> met. Carter, supra, *3.

The Plaintiffs in this case easily meet the standard necessary for conditional certification. All were

required to work overtime by the Hornets. Thus, the minimal standard for conditional class

certification is met. Further, the Hornets identified these employees as non-exempt, and then refused

to pay these employees overtime.

There is an additional, more tangible benefit to early conditional certification. The reason

for this early recognition of a collective action and mailing of a notice of the right to opt into the

case, is that unlike a FRCP 23 class action, the statute of limitations continues to run against possible

FLSA collective action members until they affirmatively opt into this matter.[8]

Because the FLSA is, under § 216(b), an "opt-in" action instead of an "opt-out" action (like

FRCP 23 actions) prescription, or the statute of limitation period, is not interrupted for potential

collection action members by the mere filing of the lawsuit by the named Plaintiffs. See as examples

Crown, Cork & Seal Co. v. Parker, 103 S.Ct. 2392 (1983); Eisen v. Carlisle & Jacquelin, 417 U.S.

156, 94 S.Ct. 2140, 40 L Ed 2d 732 (1974).  Under 29 USC 256 (portal to Portal Act), it provides

as follows:

> In determining when an action is commenced for the purposes of
> section 255 of this title, an action commenced on or after May 14,
> 1947 under the Fair labor Standards Act of 1938, as amended [29
> U.S.C.A. § 201 et seq.], the Walsh-Healy Act [41 U.S.C.A. § 35 et
> seq.], or the Bacon-Davis Act [40 U.S.C.A. § 276a et seq.], shall be
> considered to be commenced on the date when the complaint is filed;
> except that in the case of a collective or class action instituted under
> the Fair Labor Standards Act of 1938, as amended, or the Bacon-

---

[8]In a FRCP 23 action, prescription is interrupted against all potential class members when
the suit if filed.  That is not the case under the FLSA.

> Davis Act, <u>it shall be considered to be commenced in the case of any</u>
> <u>individual claimant</u> -
>
>> (a) on the date when the complaint is filed, if he is
>> specifically named as a party plaintiff in the complaint
>> and his written consent to become a party plaintiff is
>> filed on such date in the court in which the action is
>> brought; or
>>
>> (b) if such written consent was not so filed or if his
>> name did not so appear - <u>on the subsequent date on</u>
>> <u>which such written consent is filed in the court in</u>
>> <u>which the action was commenced.</u> (Emphasis added.)

In commenting on this language, the courts have routinely held that the statute of limitations continues to run against potential collective action members until they affirmatively opt into the matter individually by filing a written consent form (after receipt of notice). <u>See</u> <u>Perella v. Colonial</u> <u>Transit, Inc.</u>, 148 FRD 147 (W.D. Penn. 1991); <u>Kuhn v. Philadelphia Electric</u>, 487 F. Supp. 974 (E.D. Penn. 1980); <u>Kulik v. Superior Pine Specialties Co.</u>, 745 F. 2d 47 (3rd Cir. 1984); <u>Lee v. Vance</u> <u>Executive Protection, Inc.</u> 7 Fed. Appx. 160 (4th Cir. 2001).  As the Court wrote in <u>Perella</u>, <u>supra</u>, page 149:

> The statutory language makes it clear that the filing of the consent
> may come after the filing of the complaint, but that a claim is not
> asserted, for purposes of the state of limitations, until both the
> complaint and the claimant's individual written consent are filed.[9]

<u>See also</u> <u>Wertheim v. State of Arizona</u>, 1993 WL 603552 (D. Ariz. 1993).  Therefore, unlike a Rule 23 complaint, the filing of the collective action lawsuit will itself <u>not</u> interrupt the statute of limitations from running against potential collection action members.  As a result, an early conditional certification with an approval of notice allows potential collective action members to opt

---

[9]The same rule applies to actions under the ADEA.  <u>Sperling v. Hoffman-LaRoche, Inc.</u>, 24 F. 3d 463 (3rd. Cir. 1994).

into the case, file their consent form, and interrupt the running of the statute of limitations against them. Thus, there is no harm to Defendants if this matter is certified at this point in the litigation, while there may be extreme prejudice to prospective plaintiffs if this matter is not conditionally certified.

### 4.    THE COMPANY POLICIES AT ISSUE AND PLAINTIFFS' PROOF OF BEING SIMILARLY SITUATED.

The Hornets knew that they owed overtime compensation to Plaintiffs and similarly situated employees, but refused to pay overtime to any employee. See Exhibits O-P. Multiple representatives of Defendant have admitted overtime was owed, but not paid.  Thus, the policy in question concerning nonpayment of overtime was applied company wide and are not unique to the named Plaintiffs.

#### (a)    Named Plaintiffs and those similarly situated are all nonexempt employees.

As previously noted, named Plaintiffs and those they allege are similarly situated were all nonexempt employees of defendants.  See Exhibits C, D, F-O. The Hornets have admitted that Plaintiffs and those they allege are similarly situated are non-exempt employees entitled to overtime pay. See Exhibits I, O-Q. Exhibit M attached to Plaintiffs' second amended complaint was prepared by the Hornets and specifically identified non-exempt employees by name and job category.  The Hornets admitted that Plaintiffs and other similarly situated employees are non-exempt employees entitled to overtime compensation. See Exhibit O-P. The CEO admitted that Plaintiffs and similarly situated employees, are entitled to overtime.  See Exhibit I.  All Plaintiffs and similarly situated employees were required as a condition of employment to work during all home basketball games. See Exhibits C, D, F-O. All Plaintiffs and similarly situated employees were required as a condition

of employment to work in excess of 40 hours per week in preparation for the basketball season and

numerous other marketing and promotional events that took place throughout the year. See Exhibit

C, D, F-O. This was a policy and practice of the defendant employer which was applied uniformly

to all nonexempt employees. This is sufficient for certification process. Thus, this court should find

that similarly situated employees are all current and former employees specifically identified by

name or job category as non-exempt by the Hornets. As such, all are entitled, under the FLSA, to

receive overtime pay when they work more than 40 hours in a workweek. 29 USC § 207(a); 29 CFR

778.100-101.

From the standpoint of the similarly situated analysis, that means that defendants were

supposed to calculate the regular rate of pay for each plaintiff or collective action member and when

they actually worked more than 40 hours in a week defendants were to pay time and a half the

regular rate of pay. In other words, the calculation of the remedy is similar, if not identical, for all

named Plaintiffs and collective action members.

(b)    **Failure to pay time and a half for all hours worked in excess of forth per week**.

It cannot be disputed that the Hornets have required Plaintiffs and similarly situated

employees to work substantially in excess of 40 hours per week since 2002. It cannot be disputed

that the Hornets required Plaintiffs and similarly situated employees to work nights and weekends

in addition to regularly scheduled hours. It cannot be disputed that the Hornets encouraged, and

sometimes threatened Plaintiffs and similarly situated employees to work more than regularly

scheduled hours. It cannot be disputed that the Hornets encouraged Plaintiffs and similarly situated

employees to work at home and/or away from the office, and in fact facilitated this extra work by

providing marketing materials, promotional materials, and cell phones. See Exhibits C, D, F-K.

Remarkably, the Hornets did not pay employees time and a half for all hours worked in excess of 40 per week even after a formal admission was made that Plaintiffs and similarly situated employees were non-exempt and entitled to overtime compensation. See Exhibit O. In fact, the evidence clearly indicates that managers who reduced the hours worked by their employees were discouraged from doing so. Clearly, the Hornets chose to ignore the laws requiring the team to pay nonexempt employees who worked more than forty hours in a workweek at the rate of one and one half time their regular rate of pay for each hour over forty. 29 USC § 207.

Both Plaintiffs and similarly situated employees are alike in this critical respect - neither Plaintiffs nor similarly situated employees received pay at the rate of one and one half times their regular rate of pay for each hour over forty. Further, Plaintiffs were forced to work overtime by the Hornets during basketball games. Thus, Plaintiffs are similarly situated with the collection action members. They are similarly situated because all were subjected to the same company policies of nonpayment of overtime and non-inclusion of bonuses in calculating overtime rates. Under the jurisprudence certification is therefore appropriate. See Donohue, supra; Wyatt, supra; Crain, supra.

## 5.    **THE NOTICE PROCESS.**

Plaintiffs request that notice be approved and sent to all potential collective action members along with an approved consent form, attached hereto as Exhibit R. In form and substance, it is modeled on the notice approved by Judge Barbier in Donohue and Magistrate Wilkinson in Camp, supra. If the Motion to Certify and Notice are approved defendants should be ordered to provide the names and address of potential collective action members to plaintiff's for the mailing.[10] Plaintiffs

---

[10]Plaintiffs have requested this information in discovery but have not yet received a response (Exhibit 19). Plaintiff's also forwarded a draft of the Notice to Defendants counsel to solicit input but defendant's counsel has not yet indicated if there is any objection to the notice

suggest a time period after mailing within which consent forms must be returned. Plaintiffs propose

the following schedule:

(a)     within ten (10) days of the order certifying this matter defendants must provide Plaintiffs

        with the names and addresses of all potential collective action members;

(b)     Plaintiffs shall have ten (10) days from receipt of the names and addresses within which to

        mail the notices and consent forms to potential collective action members; and

(c)     consent forms of those who decide to opt into this action must be filed with the court within

        one hundred twenty (120) days of the court's original order certifying the matter.

(d)     As consent forms are returned to Plaintiffs counsel these will be filed without opposition by

        defendant.

6.      **AN ORDER PROHIBITING RETALIATION OR COERCION**.

        Plaintiffs also request an order prohibiting defendants from retaliating or attempting to coerce

individuals receiving the Notice into not opting into the case. There presently exists is a solid basis

for such an order. At the time this lawsuit was filed, on or about May 27, 2005, Kristy McKearn,

the New Orleans Hornets Chief Strategic Officer, had already threatened retaliatory action against

any current or former employee who joined any overtime lawsuit filed against the company. Current

Plaintiffs have been warned that joining this suit was not in their best interests, while other plaintiffs

and prospective plaintiffs whom the Hornets have apparently targeted as likely plaintiffs have had

benefits revoked, received adverse job reviews, and have otherwise been retaliated against.

        A portion of those receiving notices will be current employees. These individuals are most

susceptible to this type of coercion and/or retaliation. As a result Plaintiffs ask for a specific order

---

language (Exhibit 20).

N0019510.WPD                                20

prohibiting such actions by or on behalf of defendants. See, e.g., Belt v. Emcare, Inc., 299 F. Supp.

2d 664 (W.D. Tex. 2003); Donohue, supra; Brock v. Casey Truck Sales, Inc., 839 F2d 872, 876-878

(2nd Cir. 1988); Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (19th Cir. 1997). A Protective

Order has been filed by Plaintiffs seeking redress of the inappropriate conduct of the Hornets.

Plaintiffs' counsel and defense counsel have already discussed the benefits the Hornets have

received because of the delays and uncertainty that they have instilled into the minds of prospective

plaintiffs. See Exhibit S.[11] See also Wertheim v. State of Arizona, 1993 WL 603552 (D. Ariz. 1993).

Unlike a Rule 23 complaint, the filing of he collective action lawsuit will itself not interrupt the

statute of limitations from running against potential collection action members. Thus, a two year

statute of limitations may be applicable to a plaintiffs' recovery of unpaid overtime benefits.

Plaintiffs contend that the evidence will show that the Hornets knew that Plaintiffs and similarly

situated employees were entitled to overtime pay, or acted with reckless and/or wilful ignorance of

their obligation to pay overtime compensation. Because of the Hornets' actual knowledge and/or

willful or reckless disregard of their obligation to pay overtime, the applicable statute of limitations

should be expanded to three years.

Whether a two or three year statute of limitations applies, the Hornets are receiving a

financial benefit from the threatening and/or misleading statements made to current and former

employees. The statute of limitations is expiring on a daily basis. Thus, each day that the Hornets

can delay production of the names, addresses, and contact information of current and former

employees for notification purposes is a day that the statute of limitations will run on those claims.

---

[11] Facts supporting these allegations are set forth in the Protective Order filed by
Plaintiffs, incorporated herein by reference.

What makes the delays sought by the Hornets more egregious is the active manipulation of prospective class members by the Hornets to coerce and discourage current and former employees from joining this litigation.   As the court recognized in <u>Kleiner</u> and <u>Belt</u>, "where the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive." <u>Kleiner</u>, 751 F.2d at 1202; <u>Belt</u>, 299 F. Supp. 2d at 668. Without advising these employees and prospective plaintiffs of their rights, the Hornets have isolated, threatened, and provided grossly inaccurate information about this litigation. Because of the statute of limitations, the practical effect of this misconduct is that the Hornets will owe less money to similarly situated employees who join the suit after those prospective plaintiffs are accurately advised of their rights.[12] The United States Supreme Court expressly authorized district courts to address and protect against such conduct by employers. See <u>Hoffmann-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 171 (1989); Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 667-68 (E.D. Tex. 2003). Courts must act immediately and decisively to limit communications to absent class members where the communications are misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. See <u>Kleiner v. First Nat. Bank of Atlanta</u>, 751 F.2d 1193, 1206 (11th Cir. 1985); <u>Burrell v. Crown Central Petroleum</u>, 176 F.R.D. 239, 244-45 (E.D. Tex. 1997); <u>Hampton Hardware, Inc. v. Cotter & Co., Inc.</u>, 156 F.R.D. 630, 632-33 (N.D. Tex. 1994). Accordingly, an expedited hearing is necessary.

---

[12]  Of note, counsel for the Hornets would not agree to waive the statute of limitations defense to those plaintiffs who join the suit after the Hornets made threats and misrepresentations discouraging them from joining this litigation in a more timely fashion. Plaintiffs do not represent that current counsel for the Hornets have played any role in the threats and misrepresentations made by the Hornets to similarly situated employees.

In this case, the Court must protect this collective action against the abuses of the Hornets. Direct threats, overt threats, and misleading statements are precisely the type of conduct that the Court must prevent. The protection of innocent class members must be of tantamount importance when a Defendant engages in this type of inappropriate conduct. At a minimum, the Court must grant an expedited hearing on this Motion to allow Plaintiffs to attempt to minimize the harmful effects of the Hornets' misconduct.

## CONCLUSION

For the reasons assigned, Plaintiffs request that this matter be certified as a collective action. Further, Plaintiffs request that defendant's be ordered to produce the names and addresses of all potential collection action members and that the proposed notices and consent forms be sent out.

Finally, Plaintiffs request an order prohibiting defendants from retaliating against, coercing, or communicating with prospective collective action members as to the decision of whether to join this litigation or about this litigation outside of the presence of Plaintiffs' counsel.

Respectfully submitted, this 27th day of _____July_____, 2005.

_____
STEWART E. NILES, JR. (10004)
DANIEL E. BURAS, JR. (26226)
LAWRENCE J. CENTOLA (27402)
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
Attorneys for Plaintiffs

**and**

**ALAN F. KANSAS (27725)**

Kansas & Kansas, L.L.C.
1743 Stumpf Blvd., Suite 200
Gretna, LA 70054-1330
Co-Counsel for Plaintiff, Samuel Tobias Steinmetz

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been mailed, postage

prepaid and properly addressed, to all counsel of record in these proceedings, this 27ᵀᴴ day of

_____ JULY ____, 2005.

# SEE RECORD FOR

# EXHIBITS

# OR

# ATTACHMENTS

# NOT SCANNED