UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EUGENE LIGER, ET AL.** | **CIVIL ACTION NO. 05-1969** |
| **Plaintiffs in a Collective Action** | **SECTION C** |
| **VERSUS** | **MAGISTRATE 05** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | |
| **Defendant** | |

FILED:_____

_____
DEPUTY CLERK

## MOTION FOR LEAVE TO RECEIVE EXPEDITED RESPONSE FROM DEFENDANT ON REQUESTS FOR PRODUCTION OF DOCUMENTS RELATED TO PLAINTIFFS MOTION FOR PROTECTIVE ORDER, SANCTIONS, AND CORRECTIVE ACTION AND PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION

**NOW INTO COURT**, through undersigned counsel, come named plaintiffs Eugene Liger, et al, ("Collective Action Plaintiffs" or "Plaintiffs"), who hereby move this Honorable court for leave to receive an expedited response from Defendant, New Orleans Hornets NBA Limited Partnership ("Hornets"), regarding documents related to Plaintiffs Motion for Protective Order, Sanctions, and Corrective Action And Motion to Conditionally Certify a Collective Action Pursuant to §216(b) of the FLSA and to Approve a Proposed Notification to All Putative Collective Action Members.

Plaintiffs requested an August 5, 2005 production date. Defendant refuses to agree to a shortened discovery date.

For the reasons set forth herein, the limited nature of these requests for production of documents, the Hornets' refusal to produce timely and complete Rule 26 disclosures, and the

N0019835.WPD

catastrophic effect that delayed production will have on putative class members warrants an expedited response date from Defendants.

Respectfully submitted, this _27ᵗʰ_ day of ____July____, 2005.

_____

**STEWART E. NILES, JR. (10004)**
**DANIEL E. BURAS, JR. (26226)**
**LAWRENCE J. CENTOLA (27402)**
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35ᵗʰ Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
Attorneys for Plaintiffs

**and**

**ALAN F. KANSAS (27725)**
Kansas & Kansas, L.L.C.
1743 Stumpf Blvd., Suite 200
Gretna, LA 70054-1330
Co-Counsel for Plaintiff, Samuel Tobias Steinmetz

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been mailed, postage prepaid and properly addressed, to all counsel of record in these proceedings, this _27_ day of ____July____, 2005.

_____

N0019835.WPD

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EUGENE LIGER, ET AL** | **CIVIL ACTION NO. 05-1969** |
| **Plaintiffs in a Collective Action** | **SECTION C** |
| **VERSUS** | **MAGISTRATE 05** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | |
| **Defendant** | |

FILED:_____        _____

                                                              DEPUTY CLERK

### RULE 37(a)(2)(A) CERTIFICATION

Pursuant to Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure, undersigned counsel hereby certifies that he has attempted in good faith to confer with defense counsel to secure the requested expedited production of documents without Court action

Respectfully submitted,

DANIEL E. BURAS, JR. (26226)
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
Attorneys for Plaintiffs

**Certificate of Service**

I certify that a copy of the above and foregoing has been served upon opposing counsel by facsimile and first class mail, postage pre-paid, properly addressed, in the United States mail this 27 day of July , 2005.

N0019932.WPD

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EUGENE LIGER, ET AL. | | CIVIL ACTION NO. 05-1969 |
| **Plaintiffs in a Collective Action** | | SECTION C |
| VERSUS | | MAGISTRATE 05 |
| NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP | | |
| **Defendant** | | |

FILED:_____            _____
                                                    DEPUTY CLERK

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO RECEIVE EXPEDITED RESPONSE FROM DEFENDANT ON REQUESTS FOR PRODUCTION OF DOCUMENTS RELATED TO PLAINTIFFS MOTION FOR PROTECTIVE ORDER, SANCTIONS, AND CORRECTIVE ACTION AND PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION

**MAY IT PLEASE THE COURT**:

Federal Rule of Civil Procedure Rule 34 permits Plaintiffs to propound Requests for Production of Documents upon the Defendant, the New Orleans Hornets NBA Limited Partnership (hereinafter "Defendant" or "Hornets"). The time of production is usually 30 days, but the Rule expressly permit a shorter period of production. Rule 34(b) states:

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request. A shorter or longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties, subject to Rule 29. . .

See FRCP Rule 34(b). The facts and circumstances of this case require immediate disclosure of the attached Requests for Production of Documents to Plaintiffs by the Hornets to prevent irreparable

harm to prospective class members and to ensure that the facts necessary to decide the motions pending before the Court are available. <u>See</u> Request for Production of Documents, attached herein as Exhibit "A". A copy of said Requests for Production was forwarded to defendant on July 22, 2005.

On July 22, 2005, counsel for Plaintiffs requested that Defendants agree to an expedited discovery schedule regarding documents necessary for Plaintiffs' Motion to Conditionally Certify a Collective Action and Emergency Protective Order, Sanctions, and Corrective Action. Defendant advised that it would take this matter under consideration, but did not respond to Plaintiffs' request as of the filing of this memorandum. <u>See</u> Letter of July 25, 2005 attached herein as Exhibit "H".

Without an expedited discovery schedule, Plaintiffs and prospective class members will be harmed to the financial benefit of the Hornets. Through a series of actions and inactions, the Hornets have delayed these proceedings, stalled the certification process, and failed to produce documents that should have been produced with their Rule 26 disclosures. Accordingly, Plaintiffs request that this Court grant this request for expedited production of documents to limit further harm to prospective plaintiffs.

A.    **THE HORNETS HAVE USED DELAYS IN AN EFFORT TO CAUSE PORTIONS OF THE CLAIMS OF PROSPECTIVE CLASS MEMBERS TO EXPIRE**.

The multiple delays caused by the Hornets are potentially allowing the Hornets to limit the team's liability to prospective Plaintiffs. Because the FLSA is, under § 216(b), an "opt-in" action instead of an "opt-out" action (like FRCP 23 actions), prescription, or the statute of limitation period, is not interrupted for potential collection action members by the mere filing of the lawsuit by the named plaintiffs. <u>See, e.g. Crown, Cork & Seal Co. v. Parker</u>, 103 S.Ct. 2392 (1983); <u>Eisen v.</u>

Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L Ed 2d 732 (1974). The Portal to Portal Act,

29 USC § 256 provides as follows:

> In determining when an action is commenced for the purposes of section 255 of this title, an action commenced on or after May 14, 1947 under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healy Act [41 U.S.C.A. § 35 et seq.], or the Bacon-Davis Act [40 U.S.C.A. § 276a et seq.], shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, or the Bacon-Davis Act, it shall be considered to be commenced in the case of any individual claimant -
>
> > (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> >
> > (b) if such written consent was not so filed or if his name did not so appear - on the subsequent date on which such written consent is filed in the court in which the action was commenced. (Emphasis added.)

In commenting on this language, courts have routinely held that the statute of limitations

continues to run against potential collective action members until they affirmatively opt into the

matter individually by filing a written consent form (after receipt of notice). See Perella v. Colonial

Transit, Inc., 148 FRD 147 (W.D. Penn. 1991); Kuhn v. Philadelphia Electric, 487 F. Supp. 974

(E.D. Penn. 1980); Kulik v. Superior Pine Specialties Co., 745 F. 2d 47 (3rd Cir. 1984); Lee v. Vance

Executive Protection, Inc. 7 Fed. Appx. 160 (4th Cir. 2001). Therefore, unlike a Rule 23 complaint,

the filing of the collective action lawsuit will itself not interrupt the statute of limitations from

running against potential collection action members. As a result, all delays achieved by a defendant

in a collective action inure to the defendant's benefit because there is no interruption of the running

N0019835.WPD                                          3

of the statute of limitations against prospective plaintiffs. Since the filing of this complaint, the Hornets have delayed all discovery efforts by Plaintiffs, deposition requests, and have not complied with required production deadlines.

The Hornets clearly intend to delay this matter as much as possible. This claim was first filed on May 27, 2005. Plaintiffs immediately requested and received a 30 day extension to respond to Plaintiffs' complaint.

On June 24, 2005, Plaintiffs requested depositions of several key witnesses employed by the Hornets, including Marie Parenti, a Hornets manager who provided misinformation to prospective Plaintiffs. See, Exhibit B. The Hornets refused to produce any defense witnesses for deposition. See Exhibit D, Rule 26(f) memorandum. The Hornets also refused to provide dates for a Rule 30(b)(6) deposition of the Hornets on any issues. Id.

On June 24, 2005, Plaintiffs requested an expedited discovery schedule to prevent the statute of limitations from tolling on the claims of prospective class members . Defendant not only refused to agree to an expedited discovery schedule, but Defendant expressly refused to answer any discovery pending exchange of the Rule 26 disclosures. See Exhibit D.

The Hornets then delayed production of Rule 26 disclosures, refusing, over Plaintiffs' objections, to produce these disclosures for nearly a month after the Rule 26(f) conference. When the Hornets finally made their Rule 26 disclosures on July 21, 2005, the documents and information identified was woefully inadequate for Rule 26 purposes. See Exhibit E. For example, although the Hornets have alleged multiple defenses that require the provision of financial evidence, not one financial document was identified and produced in the Hornets Rule 26 disclosures. The inadequacy of the Hornets' Rule 26 disclosure is sanctionable.

Although it has been over 60 days since this matter was first filed, the Hornets have not responded to one question or produced one document. In fairness to all prospective class members, discovery must now be expedited on the limited issues set forth in Plaintiffs' Request for Production, to ensure that the claims of prospective plaintiffs are not extinguished through procedural delays.

B.    **AN EXPEDITED DISCLOSURE IS REQUIRED BECAUSE OF MISREPRESENTATIONS MADE BY THE HORNETS TO THEIR EMPLOYEES**.

In addition to the delays achieved through legal maneuvering, the Hornets have undermined the purpose of this collective action through threats, isolation, and the provision of misinformation to its employees. The Hornets then used the delays achieved by their attorneys to dissuade Hornets' employees from learning about this litigation through these inappropriate means. The Supreme Court has already held that an employer is not allowed to act in this manner. In Hoffman-LaRoche v. Sperling, 493 U.S. 165 (1989). When an employer provides misinformation to current or prospective class members, a district court has both the duty and broad authority to exercise control over the class action. See Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. at 171. A district court should take corrective action when evidence of misrepresentations are confirmed. Id. Requiring expedited production of documents is within this authority.

On May 25, 2005, two days before this litigation was filed, Kristy McKearn, the Chief Strategic Officer for the Hornets, told Chris Stant that any current employees who joined this litigation would be terminated. See Exhibit F, Affidavit of Chris Stant. 29 U.S.C. § 215 of the FLSA expressly prohibits such overt retaliatory threats.

On or around May 30, 2005, Paul Mott, the president of the New Orleans Hornets, issued either a letter, memo, or email to many Hornets employees, including all sales employees, forbidding

those employees from speaking with any employee who left the Hornets since March of 2005. A copy of this letter was requested from counsel for the Hornets, but the letter was not produced. <u>See</u> Exhibit G. A request for production was forwarded to the Hornets requesting this memo, but no response has been received to date. <u>See</u> Exhibit D.

Following Paul Mott's message to Hornets' employees, several Hornets managers and executives embarked on a disinformation campaign that provided inaccurate information about this lawsuit to Hornets' employees. Marie Parenti, the Hornets Director of Fan Relations and Premium Seat Services, told the employees under her direction and control that they are lucky that they did not join this litigation because the court already dealt Plaintiffs adverse rulings and that the case was about to be dismissed. <u>See</u> Exhibit B. Upon information and belief, other Hornets managers have erroneously advised the sales staff that they are entitled to damages only from August of 2004 to the present, when the text of the FLSA clearly allows recovery of all overtime for the past two to three years. Requested discovery may confirm or disprove this allegation.

This Court cannot allow the Hornets to benefit from their threatening and manipulative conduct. The intent of each of the aforementioned inappropriate action will effectively limit the number of prospective class members who will elect to join this litigation in a timely fashion. By "poisoning the well" early and often, the Hornets can financially benefit from each day joinder is delayed. The Hornets must not be allowed to encourage absent class members not to join by preying on the fears and concerns of its employees. <u>See, e.g.,</u> <u>Belt v. Emcare</u>, 299 F. Supp. 2d 664 (W. D. Tex. 2003). The Hornets must not be allowed to undermine the judicial process through their misconduct. <u>See</u> <u>Waldo v. Lakeshore Estates, Inc.</u>, 433 F. Supp. 782, 790-91 (E.D. La. 1977)

**THE EXPEDITED DISCOVERY REQUESTED IS LIMITED AND NARROWLY TAILORED.**

The discovery sought by Plaintiffs on an expedited basis is limited in nature and is narrowly tailored to the issues before the court on Plaintiffs' motion to certify the collective action and a Protective Order related to inappropriate conduct by the Hornets towards their employees. See Exhibit A.

On the Motion to Certify, Plaintiffs must satisfy the "similarly situated" requirement of the FLSA. Under the FLSA, "similarly situated" means merely that there is "some factual nexus which binds the named plaintiffs and the potential class members together as a victim of a particular alleged policy or practice." Heagney v. European American Bank, 122 FRD 125, 127 (E.D. NY 1988). This standard of proof is **minimal**.

Plaintiffs must prove that the circumstances alleged in the Complaint are not purely personal to that plaintiffs, but instead result from rules, policies or practices of the employer generally applicable to the category of workers identified in the Complaint. See also Burt v. Manville Sales Corp., 116 FRD 276, 277 (D.Colo. 1987); Whitworth v. Chiles Offshore Corp., 1992 WL 235907, 1.Wage & Hour Case. 2d 134 (E.D. La. 1992); 1992 Dist. Lexis 13405; Wyatt, supra. The discovery requested on an expedited basis will establish that Plaintiffs' requirement to work overtime was common to all employees and that the Hornets have not paid overtime since 2002.

Upon information and belief, requests for information from the Hornets regarding hours worked will be difficult to obtain in this case because the Hornets did not track the hours worked by their employees from 2002 until after this claim was filed. Accordingly, Plaintiffs cannot simply request time tickets, sign in sheets, or other documents setting forth the hours worked by Plaintiffs

because those documents do not exist. This failure to maintain documentation of hours worked by non-exempt employees is in direct violation of the FLSA and its regulations. 29 C.F.R. § 779.512 et seq.

Among the limited types of documents sought by Plaintiffs include copies of their own employee files - items which the Hornets identified in their Rule 26 disclosures, but which Plaintiffs have not received as of the date of this filing. See Exhibit "E".

Plaintiffs are also requesting copies of documents as basic as documents used by the Hornets to track the overtime worked by Plaintiffs. This is an overtime case, and the Hornets were obligated to maintain these records as a matter of law.

Plaintiffs are requesting copies of written job descriptions for each category of plaintiff identified in the collective action petition, information necessary to move this case through the initial certification.

Plaintiffs are requesting copies of the e-mail sent by Paul Mott to Hornets employees on or around May 30, 2005, including the identities of any employees who received this communication.

Plaintiffs are requesting copies of payroll records for each plaintiff.

Plaintiffs are requesting copies of any contracts between the Hornets and any plaintiff.

Plaintiffs are requesting copies of the financial information that the Hornets relied upon when they asserted a recreation and amusement exemption and the retail sales exemption.

Plaintiffs are requesting information regarding the job duties of Plaintiffs and similarly situated employees during Hornets home games and information about the work schedules.

Plaintiffs are requesting the identities and job descriptions of any Hornets employees who were paid overtime since 2002.

N0019835.WPD                                            8

Plaintiffs are requesting copies of all information relied upon by the Hornets when they prepared the spreadsheet identifying their employees as non-exempt or exempt, attached as Exhibit M to Plaintiffs' Second Amended Complaint.

The discovery requests related to the Emergency Motion for Protective Order are even more limited. Plaintiffs have identified one specific document, the May 30th e-mail from Paul Mott. Plaintiff have also identified one narrowly tailored request for a limited category of documents; any document related to any e-mails, memorandum, documents, or meeting notes where this overtime litigation was discussed or mentioned to any employee. Accordingly, there should be no burdensome requirement for the production of these documents.

## CONCLUSION

For the aforementioned reasons, Plaintiffs request that this court shorten the time period for the Hornets to respond to the limited discovery requests attached to this Motion by August 5, 2005, or within 5 days of the granting of this Motion, whichever is sooner.

Respectfully submitted, this 27th day of     JULY          , 2005.

**STEWART E. NILES, JR. (10004)**
**DANIEL E. BURAS, JR. (26226)**
**LAWRENCE J. CENTOLA (27402)**
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
Attorneys for Plaintiffs

**and**

**ALAN F. KANSAS (27725)**
Kansas & Kansas, L.L.C.
1743 Stumpf Blvd., Suite 200
Gretna, LA 70054-1330
Co-Counsel for Plaintiff, Samuel Tobias Steinmetz

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been mailed, postage prepaid and properly addressed, to all counsel of record in these proceedings, this _27_ day of ___July___, 2005.

N0019835.WPD

10

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EUGENE LIGER, ET AL.** | **CIVIL ACTION NO. 05-1969** |
| **Plaintiffs in a Collective Action** | **SECTION C** |
| **VERSUS** | **MAGISTRATE 05** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | |
| **Defendant** | |

FILED:_____

_____
DEPUTY CLERK

## ORDER

Considering the foregoing Motion for Leave to Receive Expedited Response from Defendant on Requests for Production of Documents Related to Plaintiffs Motion for Protective Order, Sanctions, and Corrective Action and Plaintiffs' Motion to Conditionally Certify a Collective Action;

**IT IS HEREBY ORDERED** that leave of court is hereby granted to plaintiffs, Eugene Liger, et al., and that Defendant, New Orleans Hornets NBA Limited Partnership, shall produce the requested documents by August 5, 2005 or within 5 days of the signing of this Order.

**NEW ORLEANS, LOUISIANA**, this _____ day of _____, 2005.

_____
THE HONORABLE ALMA A. CHASEZ
CHIEF MAGISTRATE JUDGE, DIVISION 5
U.S. DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA

N0019835.WPD

____ Fee_____
____ Process_____
X   Dktd_____
____ CtRmDep_____
____ Doc. No_____

```
***********************
***   TX REPORT   ***
***********************


TRANSMISSION OK

TX/RX NO             1931
RECIPIENT ADDRESS    7302#543#1659#5898414
DESTINATION ID
ST. TIME             07/25 15:43
TIME USE             03'22
PAGES SENT           11
RESULT               OK
```

# NILES, SALAS, BOURQUE & FONTANA, L.C.

### ATTORNEYS AND COUNSELORS AT LAW

**DANIEL E. BURAS, JR.**
**(504) 310-8555**
DBURAS@NILESSALAS.COM

July 22, 2005

Jennifer Anderson, Esq. -*Via Fax 589-8414 & First Class Mail*
Jane Heidingsfelder, Esq. -*Via Fax-589-8306 & First Class Mail*
Jones, Walker, Waechter,
    Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Ave., 47th Floor
New Orleans, Louisiana 70170-5100

    Re:   New Orleans Hornets Litigation
          Our File No. 1659/543

Dear Counsel:

    Enclosed please find a copy of Plaintiffs' Request for Expedited Production of Documents Related to Emergency Protective Order and Plaintiffs' Motion to Certify the Collective Action prepared in connection with the above-captioned matter.

    Thank you very much for your cooperation in this matter.

Very truly yours,

Daniel E. Buras, Jr.



DEB.JR /mac

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EUGENE LIGER, ET AL** | | **CIVIL ACTION NO. 05-1969** |
| **Plaintiffs in a Collective Action** | | **SECTION C** |
| **VERSUS** | | **MAGISTRATE 05** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | | |
| **Defendant** | | |

FILED:_____        _____
                                                                                DEPUTY CLERK

### PLAINTIFFS REQUEST FOR EXPEDITED PRODUCTION OF DOCUMENTS RELATED TO EMERGENCY PROTECTIVE ORDER AND PLAINTIFFS' MOTION TO CERTIFY A COLLECTIVE ACTION

TO:    The New Orleans Hornets
         Through its Counsel of Record
         Jennifer Anderson
         Jones Walker
         201 St. Charles Avenue
         New Orleans, LA 70170

Pursuant to Rules 34(b) of the Federal Rules of Civil Procedure and the governing scheduling order, the appearing Plaintiffs request that the following Request for Expedited Production of Documents Related to Emergency Protective Order and Plaintiffs' Motion to Certify a Collective Action be answered under oath by Defendants and the response and responsive documents be delivered to the office of Niles, Salas, Bourque & Fontana, L.C., 909 Poydras St., Suite 3500, New Orleans, Louisiana, 70112, within ten business days, or by August 5, 2005.

Compliance must be made in the way provided by the Federal Rules of Civil Procedure.

N0019845.WPD                                            1

Information requested in these Requests for Production are based on documents or categories of documents whose existence was not previously disclosed to Plaintiff.

Plaintiff hereby requests copies of computer files containing spreadsheets or other documentation that will facilitate discovery of this matter.

Wherever used in these Requests for Production, the term "plaintiff" shall refer to and include each and every named plaintiff, whether one or more, and all answers to these Interrogatories shall be answered with reference to each such named defendant.

Wherever used in these Requests for Production, the term "Defendants" shall refer to and include each and every named Defendant, whether one or more, and all answers to these Interrogatories shall be answered with reference to each such named defendant.

"Document" is meant to include any written, graphic, photographic, or sound-recorded information, notice or material, whether originals or copies. It includes, but is not limited to, all writings or other recorded, electronic, computer, digital, or graphic matter, of any nature of kind whatsoever, including, without limitation, any correspondence, medical records, e-mail, electronic drafts, letters, cables, telegrams, or other communications, personal or office diaries, outlook databases, computer databases, journals, travel records, expense account records, ledgers, accounts, books, office, computerized, digital or personal and/or typewritten memoranda or notes, telephone records or logs or bills or memoranda, bank statements or other bank records, cancelled checks, spreadsheets, or check stubs, receipts, notes, notations, memoranda, file cards, tape recordings, tapes, computer input or output, e-mail, photographs, charts, listings, schedules, graphs, forms, data, compilations, worksheets, invoices, bills, contracts, agreements, forms, memorials, information, plans specifications, periodicals, pamphlets, reports, records, studies and any other written, recorded

(sound or video), transcribed, punched, taped, filmed or graphic matter, whoever produced or reproduced. "Documents" also means all drafts and non-identical copies of any of the foregoing.

If any information requested is contained in a document that has been destroyed, and/or no copy exists within Defendant's possession, custody or control, identify the information and document, the date of its destruction, the reason for its destructions, the person responsible for ordering its destruction and produce any policy that called for the destruction thereof. In any event, please identify all documents that refer or relate in any way to the Plaintiff's claim that no longer exist.

If a privilege is asserted to any information contained in any document referenced herein, please provide counsel with a copy of a privilege log identifying the nature of the information or document, who prepared the document, and the privilege asserted.

If any records or information referenced in these responses have previously been produced, please direct undersigned counsel to the date of production and any identifying labels such as Bates stamps or exhibit numbers that will direct counsel to the previously disclosed documents.

**Demand is hereby made for Defendant to notify all necessary employees, agents, consultants, contractors and/or all other necessary persons or entities to cease and desist all document destruction, purges, computer dumps, e-mail destruction, sale or destruction of computer hard drives, modification of saved documentation, and all other actions that will cause or may likely cause the destruction or modification of information relevant to this litigation.**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  Please produce copies of materials and information used or relied upon by the Hornets when preparing the spreadsheet prepared by the Hornets in July or August of 2004 identifying which employees were exempt and which employees were not exempt from overtime laws, attached as Exhibit M to Plaintiffs Second Amended Complaint.

    Please produce a complete copy of the complete employee files for each Plaintiff, including, but not limited to personnel records; employment contracts, compensation agreements, or other contracts between Defendant and any plaintiff; all termination letters provided to any Plaintiff, whether signed or unsigned.; all payroll registers and payroll logs reflecting wage payments of any kind made to each Plaintiff; all documents distinguishing or otherwise identifying which amounts paid to any Plaintiff resulted from commission sales as opposed to any other form of wages; all payroll or other records setting forth the regular rate of pay for each named plaintiff for each relevant pay period of their employment.

3.  Please produce a copy of all documents describing or setting forth the job duties of each plaintiff during each plaintiffs' term of employment with the Hornets and all documents substantiating Defendant's description of each Plaintiff's job duties.

    Please produce a copy of all documents substantiating the percentage of the time allegedly spent by each Plaintiff performing each of the job duties described in Request For Production No. 3.

5.  Please produce a copy of all time sheets, sign in sheets, or documents tracking or documenting the hours worked by each Plaintiff from their first date of employment through their last date of employment. For any current employee, provide the documentation through

N0019845.WPD                                4

the last pay period.

6.    Please produce copies of all documents and evidence that the Hornets will rely upon to

substantiate the following claims set forth as Defenses in the Hornets' Answer to Plaintiffs'

Complaint:

A.    The Hornets' claim that any plaintiff is exempt from the FLSA's overtime provisions

as is set forth in the Second Defense in the Hornets's Answer to Plaintiffs'

Complaint.

B.    The Hornets' claim that any plaintiff lacks standing to assert claims under the FLSA

as is set forth in the Third Defense in the Hornets's Answer to Plaintiffs' Complaint;

C.    The Hornets' claim that any plaintiff's claims are time-barred, in whole or in part,

under the applicable statute of limitations as is set forth in the Fifth Defense in the

Hornets's Answer to Plaintiffs' Complaint.

D.    The Hornets' claim that any plaintiff's claims "may be barred, in whole or in part,

from recovery because they have made statements or taken actions that estop them

from asserting their claims or that constitute waiver of their claims", as is set forth

in the Sixth Defense in the Hornets's Answer to Plaintiffs' Complaint.

E.    The Hornets' claim that any plaintiff's claims "may be barred by prior arbitration,

settlement, payment, fraud, release, discharge of obligations, preemption, and/or the

doctrines of collateral estoppel, res judicata and/or accord and satisfaction", as is set

forth in the Seventh Defense in the Hornets's Answer to Plaintiffs' Complaint.

F.    The Hornets' claim that "Defendant is not a covered employer or enterprise under the

FLSA", as is set forth in the Eighth Defense in the Hornets's Answer to Plaintiffs'

Complaint.

G.   The Hornets' claim that it is entitled to "offset gratuitous and other pay provided to employees for non-compensable activities", as is set forth in the Twelfth Defense in the Hornets's Answer to Plaintiffs' Complaint.

7.   Please produce copies of all documents identifying all sources of revenue received by the New Orleans Hornets for each month from 2002 to the present.

8.   Please produce copies of all documents identifying the amount of revenue received from each revenue source and the date of receipt for each month from 2002 to the present.

9.   Please produce copies of all documents describing, discussing, or otherwise identifying all recreational and/or amusement activities open to the public that take place in the Hornet's business or sales offices at any locations.

10.   Please produce copies of all documents describing, discussing, or otherwise identifying all retail functions engaged in by any plaintiff, including all documents identifying the specific goods and services offered by Defendant.

11.   Please produce copies of all invoices, receipts, bills of lading, or other documents of any kind evidencing that the Hornets purchased New Orleans Hornets basketball tickets from another source.

12.   Please produce copies of all documents describing, discussing, or otherwise identifying all facts that the Hornets will rely upon to substantiate a claim that they are exempt from overtime law under the recreational or amusement exemption.

13.   Please produce copies of all documents describing, discussing, or otherwise identifying all facts that the Hornets will rely upon to substantiate their claim that the Hornets are exempt

from overtime laws under the retail sales exemption.

14. For each plaintiff, please produce copies of all documents describing, discussing, or otherwise identifying the representative compensation period used by the Hornets to calculate whether that plaintiff qualifies for the sales commission exemption.

15. For each quarter that the draw system of payment was implemented by the Hornets, please produce copies of all documents describing, discussing, or otherwise identifying all employees who received additional commission payments above the draw amount.

16. Please produce copies of all documents describing, discussing, or otherwise identifying each Sponsorship, sales, marketing, and/or Select-A-Seat event, where the Hornets allowed or required any Plaintiffs to attend, including the date of the event and the identities of any employees in attendance.

17. Please produce copies of all documents describing, discussing, or otherwise identifying all facts explaining why the Hornets failed to maintain records of hours worked by non-exempt employees.

18. Please produce a copy of all documents reflecting any overtime payments made to any current or former personnel employed by the New Orleans Hornets since June of 2002 in any of the following categories.

a. inside salespersons;

b. sales associates;

c. group account salespersons;

d. regional account salespersons;

e. account executive salespersons;

f.     fan relations personnel;

g.     ticket operations personnel;

h.     receptionists;

i.     each category of employee identified as "Non-Exempt" in Exhibit "M" attached to Plaintiffs' Second Amended Complaint.

19.    Please produce all time and earnings cards or sheets, wage rate tables, work time schedules, or order, ~~shipping and billing records, and similar records~~ for each of the identified Plaintiffs.

20.    Please produce all payroll or other records setting forth or explaining the basis of pay for each named plaintiff by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis.

21.    Please produce all payroll or other records setting forth the amount and nature of each payment to each named Plaintiff which Defendant believes is excluded from the "regular rate" of pay.

22.    Please produce all payroll or other records setting forth the hours worked each workday and total hours worked each workweek for each named Plaintiff, including if applicable the total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation, for each Plaintiff.

23.    Please produce copies of all communications or documents between the Hornets and any representative, executive or employee of the National Basketball Association regarding overtime pay for employees.

24.    Please produce copies of all documents provided to any Hornets personnel by Penny Middleton regarding overtime compensation or tracking employee hours.

25.  Please produce copies of any and all documents describing, discussing, or setting forth Hornet overtime policies, practices and procedures since 2002, including, but not limited to, Hornet policies, procedures, practices and/or controls in place to track the overtime worked by non-exempt employees.

26.  Please produce copies of any and all documents describing, discussing, or setting forth Hornet overtime policies, practices and procedures while the team was in Charlotte.

27.  Please produce copies of any and all documents describing, discussing, or containing communications from the Hornets to employees regarding overtime compensation and/or comp time.

28.  Please produce copies of any and all documents describing, discussing, or containing communications regarding all complaints made by any current or former employee regarding payment of overtime compensation.

29.  Please produce a copy of all e-mail communication sent on around May 30, 2005 by Paul Mott to his employees regarding this lawsuit.

30.  Please produce a copy of all documents, including e-mails, memorandum, computer notes, or other written, recorded, or electronic communications, disseminated by any Hornets manager, supervisor, director, executive, or owner to any employee regarding this overtime litigation since May 27, 2005.

Respectfully submitted,

STEWART E. NILES, JR. (10004)
DANIEL E. BURAS, JR. (26226)
LAWRENCE J. CENTOLA (27402)
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595

Attorneys for Plaintiffs

**Certificate of Service**

I certify that a copy of the above and foregoing has been served upon opposing counsel by facsimile and first class mail, postage pre-paid, properly addressed, in the United States mail this 25th day of July , 2005.

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EUGENE LIGER, ET AL.** | **CIVIL ACTION NO. 05-1969** |
| **Plaintiffs in a Collective Action** | **SECTION C** |
| **VERSUS** | **MAGISTRATE 05** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | |
| **Defendant** | |

FILED:_____          _____
                                        DEPUTY CLERK

### <u>AFFIDAVIT OF PENNY MIDDLETON</u>

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

    **BEFORE ME**, the undersigned notary, personally came and appeared:

### PENNY MIDDLETON

who after being duly sworn, did depose and state:

1.    I am a person of the full age of majority and reside in Metairie, Louisiana.

2.    I have personal knowledge of the facts and circumstances described herein.

3.    In December, 2003, I was hired by the New Orleans Hornets (hereinafter the "Hornets") to be the Director of Personnel/Payroll.

4.    On or about April 29, 2005, I tendered my resignation as the Hornets' Director of Personnel/Payroll.

5.    My last day of employment with the Hornets was May 13, 2005.

N0019882.WPD



6.    In July of 2004, Brendan Donohue, the Hornets' Director of Ticket Sales (hereinafter "Donohue"), notified me that he hired seven inside salespersons from Game Day, a training company in Oregon.

7.    These inside sales persons were Anthony "Tony Martin; Eugene Liger; Adam Nash; Bryan Maxwell; Robert Miller; Megan Tipton; Garrett Drummond; and Tyson Chandler.

8.    I was initially told by Brendan Donohue and John Lee that the inside sales persons were promised an annual salary of $13,000.00 plus commissions.

9.    I thought that this amount was extremely low, but drafted the paperwork confirming this amount of wages.

10.   Many of the inside salespersons moved to New Orleans from all parts of the country.

11.   Tony Martin and Adam Nash moved to New Orleans from Virginia. Eugene Liger moved to New Orleans from Mississippi.

12.   In August of 2004, I learned that the inside sales employees were complaining that they were not being paid the proper amount of salary.

13.   I investigated these complaints by communicating with the Director of Ticket Sales, Brendan Donohue.

14.   Donohue admitted to me in front of my boss, Barbara Booth, that he promised the inside salespersons that they would receive an annual salary of $13,000.00 plus commissions for the first month of their employment, with an increase in their annual salary to $26,000 plus commissions after the first month of their employment.

15.   Donohue made several statements to the effect of "since I did not put it in writing, we will deny that I ever said this."

N0019882.WPD

16.     Donohue admitted that those inside salespersons had been misled by the Hornets and that he never had any intention of giving the inside sales employees the salary that he promised.

17.     Despite this clear admission by Donohue, I was never authorized to pay any inside sales employee based on an annual salary of $26,000 after the first month of their employment.

18.     The Hornets owe all inside sales employees hired by Brendan Donohue in July of 2004 back wages based on an annual salary of $26,000 per year from August of 2004 to the date of termination for each employee.

PENNY MIDDLETON

SWORN TO AND SUBSCRIBED BEFORE
ME, NOTARY, ON THIS ___ DAY OF
_____ July _____, 2005

DANIEL E. BURAS, JR.
LA BAR # 26226

N0019882.WPD

STEWART E. NILES, JR.
Direct Dial: (504) 310-8551
e-mail: sniles@nilessalas.com

June 24, 2005

Jennifer Anderson, Esq.                                   **VIA FAX 582-8010**
Jones, Walker, Waechter, Poitevent,
    Carrere & Denegre, L.L.P.
201 St. Charles Ave., 47th Floor
New Orleans, LA 70170-5100

        RE:    New Orleans Hornets Litigation
               Our File No. 1659/543

Dear Jennifer:

        Thank you for confirming the Rule 26 conference scheduled for 3:00 P.M. on June 24, 2005. Your office advised that you will call my office at 504-310-8590.

        Pursuant to the representations set forth in your June 23, 2005 correspondence, we will direct future communications regarding the Hornets' violations of state and federal labor laws to your attention, except as otherwise required by law.

        Please confirm defenses, if any, to be urged by your client, including all documents supporting any defense that may or will be urged.

        Please confirm the date for production of all documents relevant to:

•       Classification of Hornets employees as non-exempt employees under FLSA;

•       Payroll Records;

•       Policies and procedures, if any, regarding record keeping, maintenance, and calculation of time, including overtime and/or compensatory time;

•       Time sheets, punch clocks records, and/or scheduling records for work days, events, functions, or games attended by any Plaintiff;

•       Policies and procedures regarding expected or required work hours, attendance of work functions, events, and/or games;

•       Policies and procedures related to computation of commissions for departed employees;

N0018854.WPD

- List of all documents, written or electronic, destroyed in anticipation of litigation on or after May 27, 2005;

- Copy of corporate document retention and/or destruction policies in effect prior to May 27, 2005;

- List of all conferences or meetings between Hornets' employees who have had any discussions with any other Hornets' employee, manager, supervisor, or director about this overtime lawsuit, the collective action, filing a claim or lawsuit for overtime and the effect of these or other such other actions on current or future employment and/or career of the employee;

- All communications to or from any named Plaintiff;

- Personnel records and/or administrative files of each plaintiff;

- The e-mail sent by Paul Mott on or about May 30, 2005 to Hornets' employees restricting all communications with former employees, including the identities of all recipients of that communication, and all responses to or explanations regarding that communication;

- Overtime policies and procedures of the Hornets while the team was in Charlotte;

- The overtime policies and procedures of the Hornets from start of operations in New Orleans to the present;

- All documents, including correspondence, notes or e-mails, discussing or mentioning complaints or requests for overtime pay for any Hornets' employee;

Please confirm available dates for a 30(b)(6) deposition and requests for production of documents.

Please confirm dates for a Motion for Expedited Hearing on Motion to Certify Collective Action and Motion to Compel the Hornets to Cease and Desist from Retaliatory Actions.

Please confirm available deposition dates for Chris Zaber, Brendan Donohue, Kristy McKearn, Steve Martin, Sam Russo, Patty Cox, Marie Parenti, J.L. Brooks and Paul Mott.

Please identify the date the Hornets were advised by counsel to retain any and all written and/or electronic records related to any issue in this litigation, including e-mails.

I look forward to discussing these and other issues with you today.

Very truly yours,


Stewart E. Niles, Jr.

SEN,JR./DEB,JR./pac/mt