# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**EUGENE LIGER, ET AL**

    **Plaintiffs in a Collective Action**

**VERSUS**

**NEW ORLEANS HORNETS NBA
LIMITED PARTNERSHIP**

    **Defendant**

**CIVIL ACTION NO. 05-1969**

**SECTION C**

**MAGISTRATE 05**

FILED:_____     _____

                                DEPUTY CLERK

## RULE 26(f) MEETING REPORT

On June 24, 2005, counsel for Plaintiffs and Defendant conducted a Rule 26(f) meeting in compliance with Rules of Court.

## REASONS FOR FILING RULE 26(f) MEETING REPORT

### Plaintiffs

Plaintiffs contend that this Rule 26(f) report is necessary because Defendants have unnecessarily delayed Rule 26(a) initial disclosure exchanges and delayed discovery, thereby adversely affecting the rights and remedies of Plaintiffs and similarly situated employees for the financial benefit of Defendant. Defendant will benefit financially as the applicable statute of limitations expires on the overtime claims of prospective plaintiffs that Defendant has not identified.

Plaintiffs' position is the initial disclosure exchange is due, and that discovery must immediately begin. The rights of prospective class members who have not yet received notice of


Dockets.Justia.com

their right to participate in this collective action must be protected.  During the Rule 26(f) conference, Defendant proposed an exchange date of 10 days prior to the Preliminary Conference. Plaintiffs objected and requested an initial exchange on July 1, 2005.  Defendant objected and requested an exchange date on July 21, 2005.  Plaintiffs proposed an intermediate date of July 11, 2005. Counsel for the Defendant objected and insisted on a July 21, 2005 exchange.  However, considering the preliminary conference date of July 21, 2005, defendant's request to disclose 10 days prior to the Preliminary conference was acceptable, i.e., July 11, 2005.

### Defendant

This Rule 26(f) Report is not necessary under Local Rule 26.4E because the parties have agreed to exchange initial disclosures, although they do not agree as to the date of exchange. Plaintiffs are submitting this report for the improper purpose of making fallacious arguments and assertions about this case that are not the proper subject of a Rule 26(f) report. Nonetheless, to insure the Court receives a full and fair report on Rule 26(f) matters, Defendant has provided its position as to Rule 26(f) matters since Plaintiffs insist in filing this document with the Court over Defendant's objection. Finally, as explained below, and contrary to Plaintiffs' representations to the Court, July 11 is not the deadline for initial disclosures (indeed, Defendant does not have any such disclosures from Plaintiffs as of the time it provided its inserts for this report).  However, Defendant proposed and intends to comply with a July 21 date for providing its initial disclosures.

1.    **STATE WHEN THE PARTIES CONFERRED AS REQUIRED BY RULE 26(F), AND IDENTIFY THE COUNSEL WHO CONFERRED.**

On June 24, 2005, counsel for Plaintiffs and Defendant conducted a Rule 26(f) conference. Counsel for Plaintiffs were Stewart E. Niles, Jr., Daniel E. Buras, Jr., and Lawrence J. Centola, Jr.,

Counsel for Defendant were Jennifer L. Anderson and Jane H. Heidingsfelder.

2.    **LIST THE CASES RELATED TO THIS ONE THAT ARE PENDING IN ANY STATE OR FEDERAL COURT WITH THE CASE NUMBER AND COURT.**

None.

3.    **BRIEFLY DESCRIBE WHAT THIS CASE IS ABOUT.**

**Plaintiffs**

Plaintiffs assert a collective action for overtime compensation on behalf of current and former employees and Sales Representatives of Defendant, filed pursuant to the Fair Labor Standards Act of 1938 ("FLSA") (29 U.S.C. §201 et seq). Since 2002, the Hornets have ignored requirements to pay overtime to non-exempt employees. No Overtime exemptions apply to any plaintiff or similarly situated employee, and the Hornets are not an exempt employer. Plaintiffs seek overtime compensation, damages, liquidated damages, interest, attorneys fees and costs. Plaintiffs' well pled Complaint confirms that no FLSA exceptions are applicable, Department of Labor opinions are exactly on point and are favorable to Collective Action Plaintiffs. Overtime compensation calculations must include plaintiffs' salaries, benefits and commissions. Finally, Plaintiffs and similarly situated employees must be protected from existing threats of retaliation made by Defendant against current or former employees who join this collective action.

**Defendant**

Defendant, with a full reservation of all rights and defenses to be asserted in its responsive pleadings in accordance with applicable deadlines and rules, denies Plaintiffs' allegations and denies that this matter can proceed on a collective basis. More specifically, Defendant maintains that it is exempt as an enterprise from the requirements of the Fair Labor Standards Act ("FLSA") under, at

a minimum, the amusement and recreational enterprise exemption and the retail sales exemption. Defendant also maintains that the Plaintiffs, individually, are exempt from the overtime requirements of the FLSA and that some or all of the Plaintiffs did not work hours in excess of forty per workweek. Defendant also maintains that Plaintiffs are not similarly situated such that this action cannot proceed on a collective basis. Defendant denies allegations of retaliatory threats by Plaintiffs, all but one of whom were former employees of the Defendant at the time the original complaint was filed. Defendant further denies that any authority exists to support the relief referenced by Plaintiffs for such alleged retaliatory threats.

4. **SPECIFY THE ALLEGATION OF FEDERAL JURISDICTION.**

This matter is brought pursuant to the Fair Labor Standards Act of 1938 ("FLSA") (29 U.S.C. §201 et seq).

5. **NAME THE PARTIES WHO DISAGREE AND THE REASONS.**

Defendant maintains that it and the Plaintiffs are exempt under the FLSA, but agrees that this Court has jurisdiction to decide this FLSA dispute.

6. **LIST ANTICIPATED ADDITIONAL PARTIES THAT SHOULD BE INCLUDED, WHEN THEY CAN BE ADDED, AND BY WHOM THEY ARE WANTED.**

**Plaintiffs**

Plaintiffs will file a Motion to Certify the Collective Action to seek court approval for the notification of other similarly situated employees entitled to overtime compensation from the Hornets. They must be added as quickly as possible because Defendants will benefit financially at Plaintiffs' expense for each day of delay.

**Defendant**

Defendant denies that the referenced motion merits expedited treatment.

7.   **LIST ANTICIPATED INTERVENTIONS.**

N/A

8.   **DESCRIBE CLASS-ACTION ISSUES.**

**Plaintiffs**

With complete disregard for the Fair Labor Standards Act, jurisprudence, and Department of Labor Opinions, Defendant refused to pay its employees overtime compensation since the team moved to New Orleans in 2002. Plaintiffs are non-exempt ticket sales and fan relations employees of Defendant who are entitled to receive overtime compensation. Plaintiffs will move to certify this collective action on behalf of all current and former sales and fan relations employees. Plaintiffs will also move to certify this collective action on behalf of all current and former employees of Defendant who worked in a job category classified as "non-exempt" by Defendant as is evidenced in Exhibit M attached to Plaintiffs' Second Amended Complaint and Jury Demand.

**Defendant**

Defendant denies Plaintiffs' allegations and liability to Plaintiffs, and maintains that Plaintiffs are not similarly situated and cannot satisfy the requirements for proceeding on a collective basis.

9.   **STATE WHETHER EACH PARTY REPRESENTS THAT IT HAS MADE THE INITIAL DISCLOSURES REQUIRED BY RULE 26(A). IF NOT, DESCRIBE THE ARRANGEMENTS THAT HAVE BEEN MADE TO COMPLETE THE DISCLOSURES.**

**Plaintiffs**

Initial disclosures were due on July 11, 2005. Plaintiffs filed their Rule 26(a) initial disclosures and provided initial disclosure documents to Defendant on July 12, 2005 instead of July 11, 2005 because the Court was not open on July 11, 2005.

N0017742.WPD

Defendant has not provided initial disclosures and has unnecessarily delayed the discovery process.

### Defendant

Defendant's counsel has cooperated and acted reasonably in conferring regarding Rule 26(f) matters and attempting to reach sensible agreements regarding such matters, including initial disclosures. Plaintiffs' counsel has not reciprocated. Defendant has not received initial disclosures from Plaintiffs as of the time it provided its inserts for this report, and in fact, the deadline for initial disclosures is not July 11 because no such agreement was ever reached by the parties in this case.

The parties have agreed to exchange initial disclosures, but disagree as to the date of exchange. At the June 24 Rule 26(f) conference, Defendant's counsel proposed exchanging initial disclosures ten days before the preliminary conference, which at that time remained to be scheduled in accordance with the Civil Justice Expense and Delay Reduction Plan. Plaintiffs' counsel rejected this proposal and proposed July 1. Defendant's counsel proposed July 21 in response, which is ten days after the deadline for Defendant's responsive pleadings (it is noted that the Court closed on July 11 in anticipation of inclement weather, making the deadline for Defendant's responsive pleadings July 12). Plaintiffs' counsel also rejected this proposal. Unable to reach an agreement, Defendant's counsel remains willing to and intends to provide its initial disclosures on July 21. After having rejected Defendant's counsel's original proposal, Plaintiffs' counsel changed their position on July 11 and asserted (on July 11) that initial disclosures were due on that date, even though Plaintiffs have yet to provide any initial disclosures. Defendant disagrees with this last-minute change of position.

10. **DESCRIBE THE PROPOSED AGREED DISCOVERY PLAN, INCLUDING:**

A.    **Responses to all the matters raised in Rule 26(f).**

**Plaintiff**.  There exists a maximum of three years for a collective action plaintiff to opt-in as a plaintiff in an overtime claim. The three year statute of limitations begins to expire on the claims of similarly situated class members in August of 2005.  Defendant will benefit financially and to the detriment of plaintiffs that have already been harmed by Defendant from any further delays in the discovery process or through other steps taken by Defendant to delay these proceedings.

Defendant alone has the contact information that may prevent similarly situated class members from losing their rights and benefits in this overtime litigation. Moreover, Defendant is required by law to maintain all documentation substantiating and/or tracking the overtime hours worked by plaintiffs and similarly situated employees. Finally, Defendant has admitted through documentation and verbal admissions that it owes Plaintiffs overtime compensation. Thus, Defendant must allow the discovery process to move forward.

**Defendant**.  Defendant has not made any admissions such as those represented by Plaintiffs. Further, both current and former employees have joined this action, demonstrating that potential plaintiffs feel free to opt into this action if they choose, contrary to Plaintiffs' representations. The propriety of certification as a collective action and the identity and number of potential opt-in plaintiffs has yet to be determined, making a decision regarding discovery and scheduling needs premature. Defendant submits that this Court should address scheduling after a determination of the issues/facts referenced above. Regardless of whether this action is certified to proceed collectively, Plaintiffs' proposed deadline of October 15 is unreasonable in light of the nature of this action in its current posture and the current number of Plaintiffs.

N0017742.WPD

7

**B.**     **When and to whom the plaintiff anticipates it may send interrogatories.**

To avoid further delays caused by Defendant, Plaintiffs have made their Rule 26 initial disclosures and will send interrogatories to Defendant as soon as possible.

Plaintiffs requested agreement from Defendant to begin written discovery exchanges following the Rule 26(f) conference completed on June 24, 2005. Defendant objected and would not agree to any written discovery exchanges until the Rule 26(a) initial disclosure exchanges were due. Plaintiffs again explained the dangers of undue delay to the rights of prospective class members. Defendant again refused to waive the applicable statute of limitations. Again, since defendant agreed to disclose on the date Rule 26 initial disclosures 10 days before the preliminary conference, July 11, 2005, written discovery will be issued at that time. The parties could not reach agreement on this issue.

**C.**     **When and to whom the defendant anticipates it may send interrogatories.**

Defendant anticipates sending interrogatories to Plaintiffs upon the beginning of the discovery period in accordance with the Federal Rules of Civil Procedure. Plaintiffs face no such potential prejudice to their rights as this action has been publicized already in the media and both current and former employees have freely joined. Plaintiffs' efforts to expedite this process are, therefore, without merit.

**D.**     **Of whom and by when the plaintiff anticipates taking oral depositions.**

It is necessary for Plaintiffs to identify Defendant's employees so that similarly situated employees can be notified of this collective action before their rights are adversely affected by the statute of limitations. Plaintiff requested dates for a Rule 30(b)(6) deposition of Defendant during the Rule 26(f) conference. Plaintiffs also requested deposition dates of several individuals employed

by Defendant; Chris Zaber, Brendan Donohue, Kristy McKearn, Steve Martin, Sam Russo, Patty Cox, Marie Parenti, J.L. Brooks, and Paul Mott. Plaintiffs will also request to take the depositions of current and former managers and supervisors of Defendant, as well as former executives and the former owner of Defendant. Counsel for Defendant refused to provide dates, claiming that all Plaintiffs must be deposed before Defendant or any Defendant employee or representative is deposed. Plaintiffs complained about the deprivation of rights of prospective class members and sought to avoid undue hardship on potential class members since their rights would be adversely affected and/or deprived by unnecessary delays because of the applicable statute of limitations. To avoid undue prejudice, Plaintiffs requested, but Defendant refused, to waive the applicable statute of limitations.

### E.      Of whom and by when the defendant anticipates taking oral depositions.

Defendant anticipates taking the oral depositions of the Plaintiffs and witnesses after receiving full and complete responses from Plaintiffs to Defendant's written discovery requests. Defendant objects to Plaintiffs' suggestion that that Defendant and/or its employees submit to depositions before Plaintiffs provide written discovery responses or their depositions. Plaintiffs instituted this action and bear the burden of proof, and custom, fairness, and the interests of justice entitle Defendant to the Plaintiffs' discovery and depositions as to the allegations and claims against Defendant before it or its employees are required to respond with their depositions. Defendant has not refused to provide deposition dates, but rather disagreed with Plaintiffs' demands regarding the sequencing and attempt to expedite discovery unnecessarily.

**F.** **When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.**

**Plaintiffs**

Plaintiffs may utilize expert witnesses on any issue to which it may have the burden of proof, for example, to help quantify and otherwise support their claims and that may be necessary to defeat any defenses alleged by Defendant. No such expert have yet been retained. Plaintiffs will disclose any such witnesses if and when identified in accordance with any applicable rules and scheduling order.

**Defendant**

At this time, Defendant does not anticipate expert witnesses as to any issue on which it may have the burden of proof. Defendant will disclose any such witnesses if and when identified in accordance with any applicable rules and scheduling order.

**G.** **List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

**Plaintiffs**

Plaintiffs will take the deposition of any expert witness identified by Defendant within 45 days of the deadline for Defendant to identify experts.

**Defendant**

Defendant anticipates taking the deposition of any expert witnesses identified by the Plaintiffs within 45 days after the deadline for Plaintiffs to identify same.

**H.** **List expert depositions the opposing party anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

See G above.

11. **IF THE PARTIES ARE NOT AGREED ON A PART OF THE DISCOVERY PLAN, DESCRIBE THE SEPARATE VIEWS AND PROPOSALS OF EACH PARTY.**

**Plaintiff.**

Plaintiff has proposed to file written discovery and to schedule depositions regarding all witnesses and/or information which bears upon any issue or fact related to Plaintiffs' burden of proof or any defense raised by Defendant. Plaintiffs anticipate interrogatories, requests for admissions, and requests for production of documents. Additionally, Plaintiffs contemplate depositions of current and former Hornets employees in addition to those set forth in 10(D).

Threats of retaliation and delays that will financially benefit Defendant mandate an expedited discovery schedule and disclosure of the identities of prospective and similarly situated employees. As was previously discussed in section 10(A), the statute of limitations is expiring on the claims of prospective class members each day. Defendant is financially benefiting from continued delays in the discovery of this matter. Defendant alone has the contact information that may prevent similarly situated class members from losing their rights and benefits in this overtime litigation. It is imperative that Defendant identify prospective class members as soon as possible.

Moreover, not only will the statute of limitations adversely affect the rights of plaintiffs, but Defendant has also attempted to thwart Plaintiffs from opting into this collective action through threats of retaliation. Plaintiffs advised that the adverse effects of continued discovery delays and persistent threats of retaliation against current Hornets employees necessitated the filing of a Motion for Expedited Hearing on the Motion to Certify the Class, to Expedite Discovery Exchanges, to set depositions of Defendants, including a 30(b)(6) deposition, and a Protective Order to Compel

N0017742.WPD

11

Defendant to Cease and Desist from Retaliatory Threats and Actions. Defense counsel suggested ordinary proceedings.

To limit the adverse affects that delayed identification of similarly situated employees will have on this litigation, Plaintiffs requested an October 15, 2005 discovery cutoff for the initial phase of discovery .

**Defendant.** Defendant disagrees with Plaintiffs' proposed plan, including Plaintiffs' proposed October 15, 2005, deadline for the completion of discovery. The propriety of certification as a collective action and the identity and number of potential opt-in plaintiffs has yet to be determined, making a determination of discovery and scheduling needs premature. However, regardless of whether this action is certified to proceed collectively, Plaintiffs' proposed deadline of October 15 is unreasonable in light of the nature of this action in its current posture and the current number of Plaintiffs. Defendant submits that this Court should address scheduling after a determination of the issues/facts referenced above. Further, given the publicity this action has already received and the fact that current and former employees have freely joined this action, Plaintiffs' representations regarding the need for expedited processes and the alleged potential prejudice to rights of potential plaintiffs lack merit.

12. **SPECIFY THE DISCOVERY BEYOND INITIAL DISCLOSURES THAT HAS BEEN UNDERTAKEN TO DATE.**

   None

13. **STATE THE DATE THE PLANNED DISCOVERY CAN REASONABLY BE COMPLETED.**

   **Plaintiffs.**

Following Defendant's immediate identification of all prospective class members, discovery should be completed by October 15, 2005, but not later than the ten month window suggested by Defendant.

**Defendant**

Plaintiffs incorrectly state that Defendant suggested a ten month window for the completion of discovery in this case. See Defendant's response to Numbers 10.A. and 11 above. As Defendant's counsel explained during the Rule 26(f) conference, the uncertainty as to the identity and number of plaintiffs and the status (ordinary or collective) of this action, and the absence of factual detail in the Plaintiffs' Complaint, makes a determination of the discovery needs of this case impractical and impossible at this time.

14.    **DESCRIBE THE POSSIBILITIES FOR A PROMPT SETTLEMENT OR RESOLUTION OF THE CASE THAT WERE DISCUSSED IN YOUR RULE 26(F) MEETING.**

**Plaintiff**. Defendant has not yet identified all prospective plaintiffs. Resolution of the claims of unidentified class members is not yet possible. Previous attempts to negotiate with Defendant have not been successful. Nevertheless, Plaintiffs will provide Defendant with a good faith settlement proposal on behalf of each named Plaintiff prior to the Preliminary Conference. In the very first telephone call to counsel for Defendant, Plaintiffs' counsel offered to meet with Defense counsel to discuss immediate settlement. Defense counsel refused to participate.

**Defendant**. Plaintiffs made no proposal or attempt to negotiate any resolution with Defendant thus far. Defendant will discharge its obligation to in good faith consider any proposals by Plaintiffs.

15. **STATE WHETHER A JURY DEMAND HAS BEEN MADE AND IF IT WAS MADE ON TIME.**

Plaintiff demanded a jury trial in their Complaint.

16. **SPECIFY THE NUMBER OF HOURS IT WILL TAKE TO PRESENT THE EVIDENCE IN THIS CASE.**

It is not possible at this time, pending a determination of the propriety of collective action

status and the number of Plaintiffs, to make this assessment.

17. **LIST PENDING MOTIONS THAT COULD BE RULED ON AT THE INITIAL PRETRIAL AND SCHEDULING CONFERENCE.**

Plaintiffs' Motion for Leave to File Second Amended Complaint and Jury Trial Request.

18. **LIST OTHER MOTIONS PENDING.**

None.

19. **INDICATE OTHER MATTERS PECULIAR TO THIS CASE, INCLUDING DISCOVERY, THAT DESERVE THE SPECIAL ATTENTION OF THE COURT AT THE CONFERENCE.**

**Plaintiffs**

Of primary importance is the need for immediate disclosure of prospective class members

to avoid the expiration of any statute of limitations because of further delays created by Defendant.

Of equal importance is the continuing series of direct and indirect threats made by Defendant

to Plaintiffs and prospective plaintiffs. Plaintiffs advised Defendant that Defendant continues to

make threats of retaliation against current and former employees who seek to exercise their right to

join the Collective Action and collect overtime pay. Defendant's executives are spreading

misinformation. At least one manager has advised Defendant's employees that this Court ruled

adversely against Plaintiffs already. Other managers have contacted current plaintiffs through third

parties to express "concern" for their decision to join the suit. These actions have scared prospective

class members and have had the same effect as the original threats of retaliation identified in

Plaintiffs' complaint. Plaintiffs will seek a protective order and/or a cease and desist order as a result of their Defendant's continued action and will seek any and all equitable relief available, including a stay of any applicable statute of limitations because of Defendant's inappropriate conduct.

Moreover, Defendant has engaged in a series of actions that has modified and/or altered financial information necessary to calculate overtime payments owed to certain Plaintiffs. Plaintiffs demand assurances from Defense counsel that Defendant's Archtics computer systems and databases will not be further modified or altered by Defendant. Plaintiffs also demand assurances that all e-mail communications be retained and that Defendant take steps to prevent the destruction of electronic evidence that will prove Plaintiffs' claims.

Defendant requested a Protective Order before certain financial documents are produced. Plaintiffs agreed to work with defense counsel regarding the language and scope of any proposed Protective Order; however, Plaintiffs reserved the right to review the purpose of and definition of financial documentation. To date, Plaintiffs' counsel has not received a proposed draft of the Protective Order.

### **Defendant**

Plaintiffs have offered nothing more than generalized, fact-barren, and conclusory allegations of retaliatory threats and concerns over preservation of evidence. These vague allegations, and the proposed relief, lacks any basis in fact or law. As explained by Defendant above, both current and former employees have joined this action, which refutes Plaintiffs' alleged concerns. Further, this action has received more publicity than the notice Plaintiffs indicate they intend to seek, which undermines Plaintiffs' alleged need for expedited consideration of its yet-to-be filed motions for notice and protection. Defendant also has rights to be protected in this case, not the least of which

N0017742.WPD                                    15

is a full and fair opportunity to defend itself against Plaintiffs' illegitimate allegations. Further, the interests of justice require that the Court be presented with a full and fair presentation of the parties' positions and evidence so it can make informed decisions, which interests are not served by the special treatment proposed by Plaintiffs.

Respectfully submitted,

STEWART E. NILES, JR. (10004)
DANIEL E. BURAS, JR. (26226)
LAWRENCE J. CENTOLA (27402)
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
Attorneys for Plaintiffs

**Certificate of Service**

I certify that a copy of the above and foregoing has been served upon opposing counsel by placing same, postage pre-paid, properly addressed, in the United States mail this 15th day of July, 2005.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

EUGENE LIGER, ET AL.                         CIVIL ACTION

VERSUS                                       NO. 05-1969

NEW ORLEANS HORNETS NBA LIMITED              SECTION "C" 5
PARTNERSHIP

<u>INITIAL DISCLOSURES</u>

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)-(D), Defendant, New Orleans Hornets NBA Limited Partnership (referred to as "Defendant" and/or "Hornets"), hereby submits its Initial Disclosures, which may be supplemented and/or amended pursuant to the Federal Rules of Civil Procedure and as required by the Court.

A.   **<u>INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION THAT DEFENDANT MAY USE TO SUPPORT ITS DEFENSES.</u>**

1.   Kristy McKearn
Vice President of Corporate Affairs & Strategic Planning
1615 Poydras Street – 20th Floor
New Orleans, Louisiana 70113

Ms. McKearn may have information related to the Defendant's and/or Plaintiffs' exempt status, Plaintiffs' work schedules and hours, Plaintiffs' compensation and/or facts refuting Plaintiffs' allegations of threatened retaliation.



2.    Dave Burke
      Inside Sales Manager
      1615 Poydras Street – 20th Floor
      New Orleans, Louisiana 70113

      Mr. Burke may have information related to the Defendant's and/or Plaintiffs'
      exempt status, Plaintiffs' work schedules and hours, Plaintiffs' compensation
      and/or facts refuting Plaintiffs' allegations of threatened retaliation.

3.    Brendan Donohue
      Director of Ticket Sales
      1615 Poydras Street – 20th Floor
      New Orleans, Louisiana 70113

      Mr. Donohue may have information related to the Defendant's and/or Plaintiffs'
      exempt status, Plaintiffs' work schedules and hours, Plaintiffs' compensation
      and/or facts refuting Plaintiffs' allegations of threatened retaliation.

4.    Marie Parenti
      Director of Guest Relations & Seating Services
      1615 Poydras Street – 20th Floor
      New Orleans, Louisiana 70113

      Ms. Parenti may have information related to the Defendant's and/or Plaintiffs'
      exempt status, Plaintiffs' work schedules and hours, Plaintiffs' compensation
      and/or facts refuting Plaintiffs' allegations of threatened retaliation.

5.    Chris Zaber
      Group Sales Manager
      1615 Poydras Street – 20th Floor
      New Orleans, Louisiana 70113

      Mr. Zaber may have information related to the Defendant's and/or Plaintiffs'
      exempt status, Plaintiffs' work schedules and hours, Plaintiffs' compensation
      and/or facts refuting Plaintiffs' allegations of threatened retaliation.

The above listed individuals are managers and employees of Defendant, a represented party to

this action. Therefore, all communications to such individuals must be directed to counsel for

Defendant.

**B.**    **DOCUMENTS THAT DEFENDANT MAY USE TO SUPPORT ITS DEFENSES.**

Defendant may use the following documents to support its defenses:

1.    Personnel and payroll records for Jessica Berry, numbered D001 through D027, D215 through 216, and attached hereto.

2.    Personnel and payroll records for Chris Carter, numbered D038 through D060, D217 through D222, and attached hereto.

3.    Personnel records for Ivan Hinson, numbered D061 through D075, and attached hereto.[1]

4.    Personnel and payroll records for Eugene Liger, numbered D076 through D082, D223 through D225, and attached hereto.

5.    Personnel and payroll records for Anthony Martin, numbered D083 through D091, D226 through D228, and attached hereto.

6.    Personnel and payroll records for Adam Nash, numbered D092 through D111, D229 through D231, and attached hereto.

7.    Personnel and payroll records for Christopher Stant, numbered D146 through D183, D235 through D240, and attached hereto.

8.    Personnel and payroll records for Samuel Steinmetz, numbered D184 through D204, D241 through D244, and attached hereto.

9.    Personnel and payroll records for Marcy Planer Murray, numbered D112 through D142, D232 through D234, and attached hereto.

10.    Personnel and payroll records for Leslie Sumler, numbered D205 through D214, D245 through D250, and attached hereto.

11.    Personnel records for Amy Nicole Smith, numbered D144 through D145, and attached hereto.[1]

12.    Personnel records for Latousha Brown, numbered D028 through D037, and attached hereto.[1]

---

[1]    We will provide payroll records for Plaintiffs, Ivan Hinson, Amy Nicole Smith, and Latousha Brown upon receipt of them.

13. Certain revenue records for Defendant during the relevant time period, to be made available upon entry of an appropriate protective order by agreement or otherwise by the Court.

14. Game schedules for Defendant during the relevant time period, which are publicly available and already in Plaintiffs' possession.

## C. **DAMAGES**

Not applicable.

## D. **INSURANCE AGREEMENT**

Defendant has no responsive information regarding any policy that would provide coverage given the facts and damages alleged.

Respectfully submitted,

_[signature]_

SIDNEY F. LEWIS, IV (Bar No. 17026)
JENNIFER L. ANDERSON, T.A. (Bar No. 23620)
JANE H. HEIDINGSFELDER (Bar No. 28604)
*Jones, Walker, Waechter, Poitevent,*
 *Carrère & Denègre, L.L.P.*
201 St. Charles Avenue, 50th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Telefax: (504) 582-8015
e-mail: slewis@joneswalker.com
e-mail: janderson@joneswalker.com
e-mail: jheidingsfelder@joneswalker.com
*COUNSEL FOR DEFENDANT,*
  *NEW ORLEANS HORNETS NBA L.P.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a copy of the above and foregoing *Initial Disclosures* has been

served on all counsel of record by placing same in the United States mail, postage prepaid and

properly addressed this _21st_ day of July, 2005 upon:

Stewart E. Niles, Jr., Esq.
Niles, Salas, Bourque & Fontana L.C.
909 Poydras Street - Suite 3500
New Orleans, Louisiana 70112
Telefax: (504) 310-8590

*[signature]*

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**EUGENE LIGER, ET AL.**

    **Plaintiffs in a Collective Action**

**VERSUS**

**NEW ORLEANS HORNETS NBA**
**LIMITED PARTNERSHIP**

    **Defendant**

**CIVIL ACTION NO. 05-1969**

**SECTION C**

**MAGISTRATE 05**

FILED:_____

_____
                      DEPUTY CLERK

### AFFIDAVIT OF CHRIS STANT FOR ATTACHMENT TO
### PLAINTIFFS' EMERGENCY PROTECTIVE ORDER

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

    **BEFORE ME**, the undersigned Notary, personally came and appeared:

### CHRIS STANT

who after being duly sworn, did depose and state:

1.      I was a sales employee for the New Orleans Hornets NBA Limited Partnership (hereinafter

       "New Orleans Hornets" or "Hornets").

2.      My job title was Sales Account Executive for the New Orleans Hornets.

3.      I was employed by the Hornets from June 1, 2003 until May 25, 2005.

4.      On or about May 10, 2005, I tendered my resignation to Chris Zaber. Chris told Brendan

       Donohue. Tim McDougall and Paul Mott learned about my resignation shortly thereafter.

N0019888.WPD

5.    During several hours of meetings on May 11, 12, and 13, 2005, Paul Mott, Tim McDougall, and other Hornets executives, repeatedly asked me to remain with the Hornets because of my superior sales performance.

6.    I advised Tim, Paul and the others that I could not work with Brendan Donohue because of the unbearable work hours he required, his credibility issues, and his questionable business practices.

7.    On May 17, 2005, after several meetings where the Hornets asked me not to resign, I told Chris Zaber to accept my resignation. He did.

8.    On May 26, 2005, I went to the Hornets for an exit interview. Christy McKearn was initially the only person at the meeting. In the past, Christy McKearn represented herself to be an attorney. If any Hornets employees had legal questions, we were directed to Christy McKearn. I was also told by a Hornets executive that Christy McKearn was a licensed attorney in another state.

9.    Upon meeting Christy McKearn for the exit interview, I saw she was highlighting names from a list of employees. She asked me to check the list with her. The list identified sales, promotions and Fan Relations Employees, which were the names she was highlighting.

I asked: "So what is this about?"

Ms. McKearn said, "This is about people who could come back on us for overtime pay."

I said: "So this is about the Class Action?"

Ms. McKearn said: "What do you know about this?"

I said: "I talked to some people about the Class Action. I did not have much to say."

Ms. McKearn said: "This is not something you want to put your name on, because you will

never get a good reference of this place."

I said: "I heard there are some past and present employees involved in this."

Ms. McKearn said: "Whoever the present employees are, they won't be here for long."

10.    Soon after Christy made this statement, she asked me to speak to a man named Sid Lewis questioned me about whether I was aware of any attorney investigating overtime litigation against the Hornets. I learned that Sid Lewis was the Hornet's outside attorney from the Jones Walker law firm.

11.    During the remainder of my exit interview, Christy McKearn reviewed a document that appeared to be a table with names of current and former employees. Christy McKearn asked me which of the employees were current and which were no longer with the company. I asked why she wanted to know. Christy McKearn confirmed that those employees were entitled to overtime pay.

12.    I did not tell Ms. McKearn or Mr. Lewis that I contacted Mr. Buras and the other attorneys because I did not want them to know, at that time, that I was involved. I was especially reluctant to say anything after they threatened me and anyone else who might join the suit. Also, I had not received my final check, and I did not want to have my check delayed.

13.    I later recognized the sheet that Kristy McKearn went over with me during my exit interview to be Exhibit M attached to Plaintiffs' Second Amended Complaint.

14.    Since this lawsuit was filed, I have been contacted by current Hornets employees who do not want to be identified because they are scared that they will get fired if they join this suit.

15.    During one conversation with a current Hornets' employee, I was told that Steve Martin "hoped that I knew what I was doing" and that he was worried about my decision to join this

litigation. This comment was repeated to me on several occasions.

_____

**CHRIS STANT**

**SWORN TO AND SUBSCRIBED**

**BEFORE ME THIS** _25_ **DAY OF**

_July_ , **2005.**

_____

**NOTARY PUBLIC**

LA BAR # 26226

DANIEL E. BURAS, JR

N0019888.WPD

```
        ***********************
        ***   TX REPORT   ***
        ***********************


        TRANSMISSION OK

        TX/RX NO              1918
        RECIPIENT ADDRESS     7302##543#1659#5898306
        DESTINATION ID
        ST. TIME              07/22 16:45
        TIME USE              00'23
        PAGES SENT               1
        RESULT                OK
```

# NILES, SALAS, BOURQUE & FONTANA, L.C.

ATTORNEYS AND COUNSELORS AT LAW

NILES / SALAS

**DANIEL E. BURAS, JR.**
**(504) 310-3555**
**DBURAS@NILESSALAS.COM**

July 22, 2005

Jennifer Anderson, Esq. -*Via Fax 589-8414*
Jane Heidingsfelder, Esq. -*Via Fax-589-8306*
Jones, Walker, Waechter,
 Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Ave., 47th Floor
New Orleans, Louisiana 70170-5100

  Re: New Orleans Hornets Litigation
    Our File No. 1659/543

Dear Counsel:

  My office recently learned that on or around May 29, 30, or 31, Mr. Paul Mott, president of the New Orleans Hornets, issued either a letter, memo, or email to many Hornets employees, including all sales employees, forbidding those employees from speaking with any employee who left the Hornets since March of 2005. Please produce a copy of this communication from Mr. Mott, as well as a list of recipients of this communication.

  Thank you very much for your cooperation in this matter.

    Very truly yours,

    Daniel E. Buras, Jr.

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              1939
RECIPIENT ADDRESS     7302#543#1659#5898306
DESTINATION ID
ST. TIME              07/25 17:35
TIME USE              00'25
PAGES SENT            1
RESULT                OK
```



# NILES, SALAS, BOURQUE & FONTANA, L.C.

### ATTORNEYS AND COUNSELORS AT LAW

**DANIEL E. BURAS, JR.**
**(504) 310-8555**
**DBURAS@NILESSALAS.COM**

July 25, 2005

Jennifer Anderson, Esq. -*Via Fax 589-8414*
Jane Heidingsfelder, Esq. -*Via Fax-589-8306*
Jones, Walker, Waechter,
    Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Ave., 47th Floor
New Orleans, Louisiana 70170-5100



    Re:    New Orleans Hornets Litigation
              Our File No. 1659/543

Dear Counsel:

    On July 22, 2005 I spoke with Jane Heidingsfelder and requested that the Hornets agree to Plaintiffs' expedited request for production of documents. I did not receive a response from Ms. Heidingsfelder.

    This afternoon I propounded the requested discovery to Defendant with a requested production date of August 5, 2005. As of the drafting of this correspondence, I have not received any response from Defendant regarding this issue.

    Please confirm that August 5, 2005 is acceptable by close of business today to avoid the necessity of requesting an expedited production date from the Court.

    Thank you very much for your cooperation in this matter.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EUGENE LIGER, ANTHONY "TONY" MARTIN, ADAM NASH, JESSICA BERRY, CHRIS CARTER, MARCY PLANER MURRAY, SAMUEL TOBIAS STEINMETZ, CHRIS STANT, and LESLIE SUMLER | CIVIL ACTION NO. 05-1969 SECTION C MAGISTRATE 05 |

**Plaintiffs in a Collective Action**

**VERSUS**

**NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP**

**Defendant**

FILED:_____        _____

DEPUTY CLERK

**AFFIDAVIT OF PENNY MIDDLETON FOR ATTACHMENT
TO PLAINTIFFS' MOTION TO CERTIFY**

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

**BEFORE ME**, the undersigned notary, personally came and appeared:

**PENNY MIDDLETON**

who after being duly sworn, did depose and state:

1.   I am a person of the full age of majority and reside in Metairie, Louisiana.

2.   I have personal knowledge of the facts and circumstances described herein.

3.   In December, 2003, I was hired by the New Orleans Hornets (hereinafter the "Hornets") to

be the Director of Personnel/Payroll.

N0019861.WPD

4.  On or about April 29, 2005, I tendered my resignation as the Hornets' Director of Personnel/Payroll.

5.  My last day of employment with the Hornets was May 13, 2005.

6.  Throughout my tenure as Director of Personnel/Payroll, the Hornets regularly and consistently required employees to work in excess of a forty hour work week without being paid overtime wages. This included fan relations employees, sales employees, receptionists, and numerous other categories of employees.

7.  I cannot think of any categories of non-exempt employees who were not required to work during Hornets home games.

8.  The Hornets' failure to pay overtime to non-exempt employees is an organizational wide problem that the team knew about, but refused to address. The Hornets refused to pay overtime compensation to its employees during my tenure with the Hornets.

9.  When I first became the Director of Personnel/Payroll, the Hornets did not have personnel records for any employees. I was forced to recreate personnel records based on the information available.

10. The records I inherited as Director of Personnel/Payroll did not show that any Hornets' employees received proper overtime compensation prior to my employment with the team.

11. It is my understanding that the hours worked by a "non-exempt" employee in excess of forty hours during a work week are "overtime hours".

12. It is my understanding that non-exempt employees are entitled to overtime compensation equal to one and one half of their regular pay for all overtime hours worked.

N0019861.WPD

2

13.    In the summer of 2004, I provided Sam Russo, the Hornets' Executive Vice President of Business (hereinafter "Russo"), and my boss, Barbara Booth, with materials I received about overtime compensation that might be owed to Hornets' employees. (See attached Exhibit "A").

14.    After I provided these materials to Booth and Russo, I provided Barbara Booth with a list of all Hornets employees

15.    In August of 2004, Russo provided me with a table identifying each employee then working for the Hornets with a label of "exempt" or "non-exempt" next to each employee setting forth their overtime exemption status. Employees with the word "non-exempt" in the far right hand column in this document are the employees that the Hornets knew were entitled to overtime compensation. (See attached Exhibit "B").

16.    I saved a copy of the document provided to me by Russo and Booth identifying numerous Hornets employees as non-exempt workers to my hard drive. (See attached Exhibit "C").

17.    On May 13, 2005, my last date of employment with the Hornets, Exhibit C was located on the "P" drive on the computer that I used in my office.

18.    I was told my Russo and/or Booth that Booth, Russo, John Lee, and Kristy McKearn prepared the document based on their investigation of job responsibilities of Hornets employees.

19.    I requested a copy of any information or documents relied upon by the Hornets regarding the various job duties of the employees because I had no written description of any job duties in my records.

20.    I was never provided with this documentation or information.

21.    In Exhibit B, the following employees were identified as non-exempt employees entitled to

overtime pay:

A.    Cristobal Quintana;
B.    Jason Quintero;
C.    Josua James BeBout;
D.    Latousha M. Brown;
E.    Sean Wyatt;
F.    Richard Johnson;
G.    Leslie J. Sumler;
H.    Freddie Spruille;
I.    Louis Krieg;
J.    Richard Witmeyer;
K.    Melanie Napolie;
L.    Ken Kliebert;
M.    Julio Vallejos;
N.    Cardell Carter;
O.    William Bryant;
P.    Chris Stant;
Q.    Sam Steinmetz;
R.    Cristina Zuniga;
S.    Adam Nash;
T.    Tony Martin;
U.    Bryan Maxwell;
V.    Robert Miller;
W.    Megan Tipton;
X.    Eugene Liger;
Y.    Garrett Drummond;
Z.    Tyson Chandler;
AA.    Jessica Berry;
BB.    Chris Granger;
CC.    Patricia Bryan Snider;
DD.    Frank DiPizzo;
EE.    Nathan Hubbell;
FF.    Robert Chase Jones;
GG.    Stacy Lynn Whitley;
HH.    Dennis Rogers;
II.    Tracey Stewart;
JJ.    Shawn M. Morrow;
KK.    JoAnn Lacaze;
LL.    Brian Hagen;, and
MM.    Andrew H. Loomis.

22.    I agree that each of these employees are entitled to overtime compensation.

23.    In Exhibit B prepared by Booth, Russo, and Lee, all Hornets' employees with the

following job titles were designated as non-exempt workers entitled to overtime pay:

    A.    Special Events Coordinator;
    B.    Promotions and Events Assistant;
    C.    Ticket Operations Assistants;
    D.    Mascot Assistants;
    E.    Fan Development Representatives;
    F.    Senior Guest Relations Representatives;
    G.    Senior Account Executives;
    H.    Account Executives;
    I.    Receptionists;
    J.    Inside Ticket Sales Representatives;
    K.    Group Sales Executives;
    L.    Sponsorship Sales Account Executive;
    M.    Sponsorship Services;
    N.    Sponsor Services Coordinator;
    O.    Public Relations Intern;
    P.    Inter-Office Courier;
    Q.    Executive Asssistant Basketball Operations;
    R.    Video Coordinator; and
    S.    Administrative Assistant Basketball Operations.

24.    I agree that each of these job categories are non-exempt and are entitled to overtime

compensation.

25.    After the Hornets identified to me the names of individuals who should receive

overtime compensation, I was not authorized to pay overtime to these non-exempt

employees.

26.    During conversations about overtime pay, Sam Russo admitted to me that the

Hornets were obligated to pay the aforementioned employees for overtime worked,

but that the Hornets wanted to give the employees time off rather than paying

overtime compensation. Russo told me that this is how the Hornets handled overtime while the team was in Charlotte.

27. I repeatedly requested that the Hornets' track, record, and monitor the hours worked by non-exempt employees. My efforts were rebuffed by the Hornets.

28. In or around October of 2004, Booth and I attended a wage and hour law seminar sponsored by Hibernia. The speakers at this seminar included members, partners, associates, and/or employees of Jones Walker.

29. During this seminar, the attorney lecturers provided materials and information confirming that the persons designated as "non-exempt" employees by Booth, Russo and Lee in August of 2004 were entitled to overtime compensation. (See attached Exhibit "D")

30. Materials received during this seminar indicate that an attorney named Sid Lewis prepared the documents confirming that the Hornets should have paid overtime compensation to its employees.

31. After the conference, I again requested that the Hornets authorize me to pay overtime compensation to non-exempt employees. I was again denied authority to pay overtime compensation to non-exempt employees.

32. I was instructed by Booth, Russo, and other Hornets executives that I was to tell any employees who inquired about overtime to track their own hours.

33. I was told by the Hornets not to notify employees of their right to receive overtime pay unless the employees approached me about this subject.

N0019861.WPD

6

34.   Even if an employee approached me about overtime pay, I was not given permission to pay the employee any overtime.

35.   I am aware that other directors, executives, and managers were angered by my insistence that the Hornets pay employees for overtime, including Brendan Donohue, the Director of Ticket Sales.

36.   One fan relations employee was ultimately paid for a small portion of the overtime that she worked, but was fired less than one month after she received her overtime pay. This employee is named Leslie Sumler.

37.   At or around the same time that Leslie Sumler first requested overtime, other employees in the Fan Relations department also sought overtime hours.

38.   All requests for overtime from the fan relations department stopped after Leslie Sumler was fired.

39.   After several months of pressing the need for the team to pay overtime to its employees, management began denying my requests with more consternation and disapproving comments. It became apparent that my job might be in jeopardy if I continued to request that the Hornets pay overtime compensation.

40.   Despite my concerns for job stability, I continued to advise employees who approached me that they should keep track of their overtime hours.

41.   I advised various fan relations employees that they should track their overtime hours and submit them to their manager.

42.   I provided Latousha Brown with a form to track her overtime hours in October of 2004.

43. I provided at least one inside salesperson with documents to enable the employees to track their overtime hours.

44. I instructed the inside sales employee(s) to track their overtime on the documents and to provide the document with overtime information to their manager, director, and/or supervisor.

45. No manager, supervisor, executive, or director ever submitted any document to me tracking the overtime pay of any sales employees.

46. I later learned from the Inside Sales Employees that David Burke, the Inside Sales Manager, and Brendan Donohue, the Director of Ticket Sales, did not provide documents to my office tracking the overtime hours worked by Hornets' sales employees despite requests from the sales employees.

47. On no occasion did I receive from any department manager or director a form or document of any kind tracking the hours worked by any employee.

48. Page 12 of the Hornets' employee manual acknowledges that the Hornets are covered by the FLSA.

49. Throughout my tenure with the Hornets, the team did not and would not maintain any records tracking the overtime hours worked by its employees

50. The Hornets have not had any verbal policies, procedures, or methods to track the amount of overtime hours worked by non-exempt employees since the team moved to New Orleans.

51. The Hornets have not had written any policies, procedures, or methods to track the amount of overtime hours worked by non-exempt employees since the team moved to New Orleans.

52. When I first began working with the Hornets, the personnel department was in deplorable condition. The Hornets maintained no employee files on any past or present employee.

53. The Hornets maintained no records of any kind tracking the hours worked by any employees.

54. The Hornets elected not to use my payroll tracking documents or any other documentation that would have tracked the number of hours worked by non-exempt employees during a workweek.

55. The Hornets took no action to track the overtime hours worked by any non-exempt employees.

56. The Hornets regularly and consistently required employees to work more than 40 hours a week, but would not authorize me to pay these employees overtime compensation.

57. I am aware that the Hornets had numerous civic, social, and public events throughout the year that Hornets employees were required to attend before normal working hours, after normal working hours, and on the weekends.

58. Non-exempt employees did not receive overtime compensation for any overtime that resulted from their required attendance of these events.

59.    I am aware that the Hornets required all sales and fan relations personnel to work each weekday and weekend home game. No sales or fan relations employees received overtime compensation for any overtime that resulted from their required attendance at the Hornets' games.

60.    After the Hornets prepared the August, 2004 spreadsheet identifying the Regional Account Representatives as outside sales persons, I attempted to obtain the information used by the Hornets when they reached this conclusion.

61.    I was never provided with any information regarding job duties of Regional Account Representatives.

62.    I then interviewed the following Regional Sales Representatives about their job duties: Marcy Planer-Murray; Chris Carter; Sam Steinmetz; and Lynn Holmes.

63.    The primary duty of all Regional Sales Representatives employed by the New Orleans Hornets is no different from any other sales employee - telemarketing.

64.    The only difference between Regional Sales Representatives and other sales employees with the Hornets is that the Regional Sales Representatives are physically located in a different building in a different city; however, the Hornets' Director of Sales maintains the same type of control and management authority over the Regional Sales Representatives as they do with any other sales employee.

65.    Since December of 2003, I interviewed all departed inside sales representatives during their exit interviews. The primary duty of all Inside Sales Representatives employed by the New Orleans Hornets is telemarketing.

66.    I interviewed all departed Group Sales Representatives who left the Hornets since I began working for the Hornets. The primary duty of all Group Sales Representatives employed by the New Orleans Hornets is telemarketing.

67.    Since I began working for the Hornets, I interviewed all departed Account Executives who left the Hornets during my tenure. The primary duty of all Account Executives employed by the New Orleans Hornets is telemarketing.

68.    The Hornets use the word "account executive" and "sales" interchangeably. There is no distinction of merit between the two terms within the Hornets organization.

69.    The New Orleans Hornets knew that they owed overtime to their employees, yet refused to pay their employees overtime compensation.

70.    I am aware that the Hornets are now tracking the hours worked by its non-exempt employees, and that non-exempt employees are having their hours limited to 40 hours per week.

**PENNY MIDDLETON**

**SWORN TO AND SUBSCRIBED BEFORE ME, NOTARY, ON THIS 25th DAY OF July, 2005**

**DANIEL E. BURAS, JR.**
**LA BAR # 26226**