Not Reported in F.Supp.2d                                                                    Page 13

Not Reported in F.Supp.2d, 2002 WL 31496661, 8 Wage & Hour Cas.2d (BNA) 477
**(Cite as: Not Reported in F.Supp.2d)**

Counsel Name, Address, and Signature
(if applicable)

_____

_____
SIGNATURE (Sign Your Name)

_____
(Print Name)                                                            _____

_____
(Street Address)

_____
(City, State, Zip)                                                       _____

(Telephone Number)

PLEASE RETURN THIS FORM IN TIME FOR
FILING    WITH    THE    COURT    BY
_____, TO:
    Jonathan M. Herman
    CRULL, CASTAING, LILLY & HERMAN
    601 Poydras Street, Suite 2323
    Pan American Life Center
    New Orleans, LA 70130
    (504) 581-5523

E.D.La.,2002.
Camp v. Progressivee Corp.
Not Reported in F.Supp.2d, 2002 WL 31496661, 8
Wage & Hour Cas.2d (BNA) 477

Briefs and Other Related Documents (Back to top)

• 2004 WL 2314951 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of
Plaintiffs' Motion for Approval of an
Attorney Fee Award (Jun. 30, 2004)
• 2004 WL 2314950 (Trial Motion, Memorandum
and Affidavit) The Progressive Defendants' Partial
Opposition to Class Counsel's Motion for Approval
of a Reasonable Attorneys' Fee and Reimbursement
for Costs Expended (Jun. 22, 2004)
• 2004 WL 2314948 (Trial Motion, Memorandum
and Affidavit) The Progressive Defendants'
Memorandum in Support of Preliminary Approval
of Settlement of Captioned Collective and Class
Actions (Jun. 16, 2004)
• 2004 WL 2314945 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of Joint

Motion for Preliminary Approval Settlement of
Captioned Collective and Class Action (Jun. 14,
2004)
• 2004 WL 2314943 (Trial Pleading) Third
Amended Complaint (Jun. 07, 2004)
• 2004 WL 2314941 (Trial Motion, Memorandum
and Affidavit) Supplemental Memorandum in
Support of the Progressive Defendants' Motion to
Compel Production of Resumes in Accordance with
This Court's 11/07/03 Order, Motion for Sanctions
and to Request Oral Argument (Mar. 15, 2004)
• 2004 WL 2314939 (Trial Motion, Memorandum
and Affidavit) Supplemental Memorandum in
Support of Third Motion for Partial Summary
Judgment Solely Addressing the Latest Decision in
Bell v. Farmers Insurance Exchange (Mar. 03, 2004)
• 2004 WL 2314937 (Trial Motion, Memorandum
and Affidavit) Memorandum in Opposition to the
Progressive    Defendants'    Motion    to    Compel
Production of Resumes in Accordance with this
Court's 11/07/03 Order, Motion for Sanctions and
to Request Oral Argument (Mar. 02, 2004)
• 2004 WL 2314934 (Trial Motion, Memorandum
and Affidavit) Memorandum in Opposition to the
Progressive Defendants' Motion to Submit a Copy
of Rundles v. Safeco Corp. (Feb. 09, 2004)
• 2004 WL 2314931 (Trial Motion, Memorandum
and Affidavit) Supplemental Memorandum in
Support of the Progressive Defendants' Third
Motion for Partial Summary Judgment (Feb. 06,
2004)
• 2004 WL 2314929 (Trial Motion, Memorandum
and Affidavit) Memorandum in Opposition to the
Progressive Defendants' Third Motion for Partial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dockets.Justia.com

Not Reported in F.Supp.2d                                                                 Page 14

Not Reported in F.Supp.2d, 2002 WL 31496661, 8 Wage & Hour Cas.2d (BNA) 477
**(Cite as: Not Reported in F.Supp.2d)**

Summary Judgment (Jan. 28, 2004)
• 2003 WL 23834943 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of the Progressive Defendants' First Motion for Partial Summary Judgment (Nov. 19, 2003)
• 2003 WL 23834937 (Trial Motion, Memorandum and Affidavit) Opposition to Motion to Strike Plaintiffs' Reply Memorandum (Nov. 18, 2003)
• 2003 WL 23834933 (Trial Motion, Memorandum and Affidavit) Progressive Defendants'%n1%n %ADCorrected%BD Response to Plaintiffs' Statement of Facts to Which There is No Genuine Dispute in Connection With the Motion to Strike (Nov. 14, 2003)
• 2003 WL 23834928 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to the Progressive Defendants' First Motion for Partial Summary Judgment (Nov. 13, 2003)
• 2003 WL 23834908 (Trial Motion, Memorandum and Affidavit) Opposition to the Progressive Defendants' Motion to Dismiss, Strike or Stay Class Allegations (Nov. 10, 2003)
• 2003 WL 23834912 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to the Progressive Defendants' Second Motion for Partial Summary Judgment (Nov. 10, 2003)
• 2003 WL 23834918 (Trial Motion, Memorandum and Affidavit) The Progressive Defendants'%n1%n Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment (Nov. 10, 2003)
• 2003 WL 23834922 (Trial Motion, Memorandum and Affidavit) Progressive Defendants' Memorandum in Opposition to Plaintiffs' Motion to Strike Defendants' Statute of Limitations Defense and to Equitably Toll the Limitations Period for Class Members Who Were Progressive Claims Adjuster Trainees During the Time P eriod April 29, 1996 Through December 31, 2001 (Nov. 10, 2003)
• 2003 WL 23834903 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of the Progressive Defendants' Motion to Compel Responses to Interrogatory No. 2 and Document Reouest No. 1 Propounded to Plaintiffs on February 28, 2003 (Nov. 04, 2003)
• 2003 WL 23834896 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to the Progressive Defendants' Motion to Compel

Responses to Interrogatory No. 2 and Document Request No. 1 Propounded to Plaintiffs on Feb. 28, 2003 (Oct. 28, 2003)
• 2003 WL 23834900 (Trial Motion, Memorandum and Affidavit) The Progressive Defendants'%n1%n Memorandum in Response to Plaintiffs' Motion to Compel Response to Request for Production of Documents Directed to Progressive Defendants Dated March 10, 2003, Seeking Production of Fourteen Personnel Files (Oct. 28, 2003)
• 2003 WL 23834891 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motion to Strike/Equitably Toll Defendants' Statute of Limitations Defense for Class Members Who Were Progressive Claims Adjuster Trainees During the Time Period April 1, 1996 Through December 31, 2001 (Oct. 16, 2003)
• 2003 WL 23834884 (Trial Motion, Memorandum and Affidavit) Progressive Defendants'%n1%n Response to Plaintiffs' Motion to Continue Hearing on Defendants' First and Second Motions for Partial Summary Judgment (Oct. 15, 2003)
• 2003 WL 23834877 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Progressive Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel Complete Answers to Certain of Plaintiffs' Third Set of Requests for Admissions and/or to Have Certain Requests for Admissions Deemed Admitted (Sep. 19, 2003)
• 2003 WL 23834871 (Trial Motion, Memorandum and Affidavit) Memorandum in Reply to the Progressive Defendants Response to Plaintiffs Motion to Compel Production, or Alternatively Restrict the Use of, Progressive Claims Files (Sep. 17, 2003)
• 2003 WL 23834859 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Compel Production of Damage Report (Sep. 16, 2003)
• 2003 WL 23834865 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Plaintiffs' Motion to Compel Complete Answers to Certain of Plaintiffs' Third Set of Requests for Admissions and/or to Have Certain Requests for Admissions Deemed Admitted (Sep. 16, 2003)
• 2003 WL 23834851 (Trial Motion, Memorandum and Affidavit) Progressive Defendants'%n1%n Response to Plaintiffs' Motion to Compel Production of, or Alternatively, Restrict the Use of,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 15

Not Reported in F.Supp.2d, 2002 WL 31496661, 8 Wage & Hour Cas.2d (BNA) 477
(Cite as: Not Reported in F.Supp.2d)

Progressive Claims Files (Sep. 11, 2003)
• 2003 WL 23834843 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Plaintiffs' Motion for Consideration of Plaintiffs' Motion for Partial Summary Judgment, Notwithstanding Case Management Order No. 2 (Sep. 10, 2003)
• 2003 WL 23834847 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to the Progressive Defendants' Motion to Continue Hearing on Plaintiffs' Motion to Strike Defendants' Statute of Limitations Defense and Motion for Expedited Hearing (Sep. 10, 2003)
• 2003 WL 23834839 (Trial Motion, Memorandum and Affidavit) The Progressive Defendants'%n1%n Response to Plaintiffs Motion to Compel Production of Damage Report (Sep. 09, 2003)
• 2003 WL 23834834 (Trial Motion, Memorandum and Affidavit) Progressive Defendants' Response to Plaintiffs' Ex Parte Motion for Consideration of Plaintiffs' Motion for Partial Summary Judgment, Notwithstanding Case Management Order No. 2 (Sep. 08, 2003)
• 2003 WL 23834827 (Trial Motion, Memorandum and Affidavit) Sur-Reply Memorandum in Opposition to the Progressive Defendants' Motion for Protective Order Concerning the Scope of Appropriate Questions in a Fair Labor Standards Act Case (Aug. 28, 2003)
• 2003 WL 23834820 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of the Progressive Defendants' Motion for Protective Order Concerning the Scope of Appropriate Questions in a Fair Labor Standards Act Case (Aug. 26, 2003)
• 2003 WL 23834815 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to the Progressive Defendants' Motion for Protective Order Concerning the Scope of Appropriate Questions in a Fair Labor Standards Act Case (Aug. 19, 2003)
• 2003 WL 23834805 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of the Progressive Defendants' Motion to Compel Adequate and Complete Responses to Their Second Requests for Admission, Second Set of Interrogatories and Second Requests for Production of Documents to Kelly Marie Ca mp and Each Opt-In (Jul. 30, 2003)

• 2003 WL 23834810 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Plaintiffs' Motion to Compel More Complete Discovery Responses from the Progressive Defendants (Jul. 30, 2003)
• 2003 WL 23834796 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to the Progressive Defendants' Motion to Compel Adequate and Complete Responses to Their Second Requests for Admission, Second Set of Interrogatories and Second Requests for Production of Documents to Kelly Marie Camp and Each Opt-In (Jul. 22, 2003)
• 2003 WL 23834799 (Trial Motion, Memorandum and Affidavit) The Progressive Defendants' Opposition to Plaintiffs' Motion to Compel More Complete Discovery Responses from the Progressive Defendants (Jul. 22, 2003)
• 2003 WL 23834792 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Confirm Joinder of Plaintiffs With Opt-Ins Filed After March 10, 2003 (Jul. 16, 2003)
• 2003 WL 23834784 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motion of Progressive Defendants, Based on Contempt, to Dismiss Belatedly Filed Consents and to Suppress Plaintiffs' Fourth Set of Interrogatories (Jul. 15, 2003)
• 2003 WL 23834788 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motion for Status Conference (Jul. 15, 2003)
• 2003 WL 23834780 (Trial Motion, Memorandum and Affidavit) Response of Progressive Defendants to Plaintiffs' Request for Expedited Hearing and Oral Argument on Certain Pending Motions (Jul. 11, 2003)
• 2003 WL 23834773 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to the Progressive Defendants' Motion for Status Conference (Jul. 09, 2003)
• 2003 WL 23834767 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Motion of Progressive Defendants, Based on Contemp, to Dismiss Belatedly-Filed Consents and to Suppress Plaintiffs' Fourth Set of Interrogatories (Jul. 08, 2003)
• 2003 WL 23834764 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31496661, 8 Wage & Hour Cas.2d (BNA) 477
(Cite as: Not Reported in F.Supp.2d)

Page 16

Support of Motion to Compel (Jun. 24, 2003)
• 2003 WL 23834760 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to the Defendants' Motion to Compel (Jun. 20, 2003)
• 2003 WL 23834757 (Trial Pleading) Answer of the Progressive Defendants to the Second Amended Complaint (Feb. 28, 2003)
• 2003 WL 23834978 (Trial Pleading) Second Amended Complaint; Collective Action (Feb. 07, 2003)
• 2002 WL 32697663 (Trial Pleading) Second Amended Answer of the Progressive Defendants (Sep. 23, 2002)
• 2002 WL 32697640 (Trial Motion, Memorandum and Affidavit) The Progressive Defendants' Supplemental Memorandum in Opposition to Motion to Certify A Collective Class of Persons ""Similarly Situated" (Sep. 18, 2002)
• 2002 WL 32697625 (Trial Motion, Memorandum and Affidavit) Plaintiff's Second Supplemental Memorandum in Support of Plaintiff's Motion to Suppress and Nullify Attempts to Alter Certain Deposition Testimony (Sep. 05, 2002)
• 2002 WL 32697603 (Trial Motion, Memorandum and Affidavit) Progressive's Supplemental Memorandum in Opposition to Plaintiff's Motion to Suppress and Nullify Attempts to Alter Certain Deposition Testimony (Sep. 04, 2002)
• 2002 WL 32697586 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Plaintiff's Motion to Supress and Nullify Attempts to Alter Certain Deposition Testimony (Sep. 03, 2002)
• 2002 WL 32697570 (Trial Motion, Memorandum and Affidavit) Progressive's%n1%n Memorandum in Opposition to Plaintiff's Motion to Suppress and Nullify Attempts to Alter Certain Deposition Testimony (Aug. 27, 2002)
• 2002 WL 32697556 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Motion to Quash Notice of Records Only Deposition (Aug. 26, 2002)
• 2002 WL 32697545 (Trial Motion, Memorandum and Affidavit) Memorandum in Opposition to Motion to Quash Notice of Records Only Deposition (Aug. 20, 2002)
• 2002 WL 32697538 (Trial Motion, Memorandum and Affidavit) Motion to Strike Portions of Camp's Supplemental Memorandum in Support of Motion

to Certify a Collective Class of Persons ""Similarly Situated" Pursuant to 29 U.S.C. | 16(b) (Jul. 29, 2002)
• 2002 WL 32697527 (Trial Pleading) Answer of the Progressive Defendants to the First Amended Complaint (Jul. 26, 2002)
• 2002 WL 32697517 (Trial Pleading) First Amended Complaint (Jul. 08, 2002)
• 2002 WL 32697502 (Trial Pleading) Amended Answer of the Progressive Defendants (Mar. 27, 2002)
• 2001 WL 34673419 (Trial Pleading) Answer of the Progressive Defendants (Oct. 29, 2001)
• 2001 WL 34673412 (Trial Pleading) Complaint: Class Action (Aug. 31, 2001)
• 2:01CV02680 (Docket) (Aug. 31, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 1996 U.S. DIST. LEXIS 13335

**BARRY WYATT VERSUS PRIDE OFFSHORE, INC.**

**CIVIL ACTION NO. 96-1998 SECTION "A"**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
LOUISIANA**

*1996 U.S. Dist. LEXIS 13335; 3 Wage & Hour Cas. 2d (BNA) 892*

**September 6, 1996, Decided**
**September 6, 1996, FILED; September 9, 1996, ENTERED**

**DISPOSITION:** [*1] Motion to strike the claim with respect to FRCP 23 GRANTED and motion to dismiss with respect to § 216(b) DENIED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For BARRY WYATT, plaintiff: Philip Bohrer, Ramsey, Koederitz & Bohrer, Baton Rouge, LA. Michael Thomas Tusa, Jr., Michael T. Tusa, Jr., Attorney at Law, Metairie, LA.

For PRIDE OFFSHORE INC, defendant: Ernst Fredrick Preis, Jr., Mark N. Mallery, Anita Terese Lechner, John Oliver Pieksen, Jr., McGlinchey, Stafford & Lang, New Orleans, LA.

**JUDGES:** Judge Charles Schwartz, Jr.

**OPINIONBY:** Charles Schwartz, Jr.

**OPINION:**

This matter is before the Court on defendant Pride Offshore, Inc.'s Motion to Dismiss or, Alternatively, to Strike *FRCP 23* Class Action Allegations. The instant suit is brought under the Fair Labor Standards Act (FLSA). Plaintiff seeks, on his own behalf and on the behalf of others similarly situated, wages, damages, reasonable attorneys fees, and interest allegedly incurred as a result of certain uncompensated labor.

Defendant moves to dismiss pursuant to *FRCP 12(b)(6)* or, alternatively, to strike under *FRCP 12(f)*, plaintiff's allegations and request for certification of this action as a "class action" as envisioned by *FRCP 23*. The defendant correctly asserts that [*2] § 216(b) of the FLSA provides the exclusive means of bringing a collective action against an employer under the Act. *La-*

*Chapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975). FRCP 23* class actions are incompatible with actions brought under the FLSA. Id.

Plaintiff acknowledges that the sole vehicle for bringing a collective action in this suit is § 216(b). Plaintiff claims (1) that he does not seek certification of a class under *FRCP 23*, (2) that he has brought the action under § 216(b), and (3) that defendant's assertions are unfounded objections to semantics in that the courts themselves use interchangeably language inherent to *FRCP 23* actions when discussing § 216(b) actions. Defendant counters that the core of its objection lies not in semantics but, rather, is that this Court has no authority to conduct any type of "certification" as urged by the plaintiff.

The procedural devices established by *FRCP 23* and § 216(b) are distinct and incompatible. Id. It is well established that the provisions of *FRCP 23* are inapplicable to any action brought under the FLSA. Id. The controlling language of § 216(b) provides:

> [An FLSA action] may be [*3] maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which the action is brought.

1996 U.S. Dist. LEXIS 13335, *; 3 Wage & Hour Cas. 2d (BNA) 892

29 U.S.C.A. § 216(b) (West Supp. 1996). Although the statute nowhere mentions "class," "class actions," or "certifications," courts have repeatedly employed *FRCP 23* terminology when determining issues relating to § 216(b). See, e.g., *Whitworth v. Chiles Offshore Corp., 1992 U.S. Dist. LEXIS 14003, 1 Wage & Hour Cas.2d (BNA) 134 (E.D. La. 1992); Crain v. Helmerich & Payne Intn'l Drilling Co., 1992 U.S. Dist. LEXIS 5367, 30 Wage & Hour Cas. 1452 (E.D. La. 1992); Garner v. G.D. Searle Pharmaceuticals & Co., 802 F. Supp. 418 (M.D. Ala. 1991); Leyva v. Buley, 125 F.R.D. 512 (E.D. Wash. 1989); Heagney v. European Am. Bank, 122 F.R.D. 125 (E.D.N.Y. 1988); Burt v. Manville Sales Corp, 116 F.R.D. 276 (D. Colo. 1987); Riojas v. Seal Produce, Inc., 82 F.R.D. 613 (S.D.* [*4] *Tex. 1979).*

Section 216(b) does not provide a formal certification process as is found in *FRCP 23*. "Certification" in the FLSA context means that the Court allows the suit to proceed as a collective action in accordance with the requirements of § 216(b). Two conditions must be met: (1) the named representatives and the members of the prospective FLSA "class" must be similarly situated, and (2) the action must be one of general effect, not one which is purely personal to the plaintiff. See *Heagney, 122 F.R.D. at 127; Burt 116 F.R.D. at 277.* For prospective plaintiffs to be similarly situated, there must be a factual nexus which binds them together as victims of an alleged policy or practice. *Heagney, 122 F.R.D. at 127.* Each prospective plaintiff must also consent in writing to be a party to the suit. This written "opt-in" requirement is a fundamental distinction between actions governed by § 216(b) and those governed by *FRCP 23. LaChapelle, 513 F.2d at 288.* The Court, of course, can always consider challenges to the validity of any proposed consent which fails to meet these requirements. *Garner, 802 F. Supp. at 421.*

The Court agrees with the defendant that some [*5] of the language contained in plaintiff's complaint mimics the prerequisites for a *FRCP 23* class action certification. Some of the language, specifically paragraph 6 in which plaintiff apparently alleges satisfaction of a numerosity requirement, is of dubious import. However, most of the language which the defendant objects to is relevant to actions brought under § 216(b) as well as those governed by *FRCP 23.* For example, defendant objects to plaintiff's assertion in paragraph 7 that a common question of law and fact exists and that defenses raised by the defendant would be similar. Although this language follows that found in *FRCP 23(a),* it also supports the contention that the plaintiff and other prospective parties under § 216(b) are similarly situated.

Defendant objects to plaintiff's request in paragraph 8 that this Court certify or recognize this matter as a class or collective action. As discussed above, there is no formal certification procedure for § 216(b) actions. Nevertheless, courts routinely "certify" § 216(b) actions. Such "certification" does not, however, relieve prospective plaintiffs from satisfying the § 216(b) prerequisites for joining the action. Such "certification," [*6] as it is, allows continuation of the action as a collective action.

Accordingly,

IT IS ORDERED that defendant Pride Offshore, Inc.'s Motion to Dismiss or, Alternatively, to Strike *FRCP 23* Class Action Allegations is hereby DENIED IN PART. Although it is quite clear plaintiff seeks only certification allowing continuation of the action as a "collective action" within the meaning of § 216(b), the motion to strike the claim with respect to *FRCP 23* is GRANTED and the motion to dismiss with respect to § 216(b) is DENIED.

Charles Schwartz, Jr.

LEXSEE 2003 U.S. DIST. LEXIS 25092

**EDUARDO TORRES et al, Plaintiffs, -vs- CSK AUTO, INC., Defendant.**

**Civil No. EP-03-CA-113(KC)**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, EL PASO DIVISION**

*2003 U.S. Dist. LEXIS 25092*

**December 17, 2003, Decided**

**DISPOSITION:** [*1] Plaintiffs' motion for judicially certified notification of potential plaintiffs granted in part. Defendant's motion to strike plaintiffs affidavits in support of petition for judicially certified notification denied. Plaintiffs' motion to vacate deadline to join additional parties granted.

**LexisNexis(R) Headnotes**

**COUNSEL:** For EDUARDO TORRES, HECTOR TOVAR, plaintiffs: Mike Milligan, Attorney at Law, El Paso, TX. David L. Kern, Peticolas, Shapleigh, Brandys & Kern, P.L.L.C., El Paso, TX.

For CSK AUTO, INC., defendant: Charles C. High, Jr., Kemp, Smith, Duncan & Hammond, P.C., El Paso, TX. Walker F. Crowson, Kemp Smith, El Paso, TX USA.

**JUDGES:** Kathleen Cardone, United States District Judge.

**OPINIONBY:** Kathleen Cardone

**OPINION:**

**ORDER**

Pending before this Court are plaintiffs' motion for judicially certified notification of potential plaintiffs (Doc. No. 12), defendant's motion to strike plaintiffs affidavits in support of petition for judicially certified notification (Doc. No. 18) and plaintiffs' motion to vacate the deadline to join additional parties (Doc. No. 42).

I. MOTION FOR JUDICIALLY CERTIFIED NOTIFICATION OF POTENTIAL PLAINTIFFS

The present action involves alleged [*2] violations of the Fair Labor Standards Act of 1938 (FLSA), 52 Stat.

1060, as amended, *29 U.S.C. § 201*. n1 Plaintiffs' motion includes a tripartite request: (1) authorization to proceed as a collective action, (2) authorization for mailing of proper notice to all of defendants employees elsewhere whose hours of work were regulated by the matrix program over the past three years, and (3) issuance of an order to produce a computer-readable data file containing personnel data to facilitate notice.

n1 The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *29 U.S.C. § 207(a)(1)*. This prohibition does not apply to persons employed in a bona fide executive, administrative, or professional capacity. *29 U.S.C. § 213(a)(1)*.

[*3]

Unlike many class actions, FLSA collective actions are not certified pursuant to the present version of *Federal Rule of Civil Procedure 23. Donovan v. Univ. of Tex., 643 F.2d 1201, 1208 (5th Cir. 1981)*. Unlike *Rule 23*'s class "opt-out" provision, the FLSA follows an "opt-in" procedure, *Mooney v. Aramco Servs., 54 F.3d 1207, 1212 (5th Cir. 1995)*, through which a subsequent judgment binds only those consenting to inclusion as a plaintiff, *29 U.S.C. § 256(b)*. The "opt-in" procedure of the FLSA permits certification of a collective action under *§ 216(b)*, allowing one or more employees to pursue an action on behalf of others similarly situated. *29 U.S.C. § 216(b)*.

While the Fifth Circuit has discussed two different procedures that may be employed in certifying collective actions, it has not placed its imprimatur on any particular procedure. *Mooney, 54 F.3d at 1216* ("we find it unnecessary to decide which . . . of the competing methodologies should be employed in making [a] . . . class certification decision"). A review of the procedures employed in [*4] cases addressing whether to certify a collective action reveals that a two-tiered approach tends to be the method of choice. n2 *Accord Wynn v. NBC, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)*. Under this approach, a court applies a fairly lenient standard, conditionally certifying a class based only on the pleadings and affidavits submitted, provided plaintiff can meet the substantive requirements of *29 U.S.C. § 216(b)*. *Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)*. Once conditionally certified, putative class members are afforded notice and an opportunity to "opt-in". *Id.* Later, a final decision is made on proceeding as a collective action based on all evidence gathered through discovery. *Id.*

n2 The second procedure, discussed in *Mooney*, is the spurious class action procedure eliminated from *Rule 23*. *Mooney, 54 F.3d at 1214*. Through such procedure, a court considers the general *Rule 23* requirements of "numerosity", "commonality", "typicality" and adequacy of representation to determine whether a class should be certified, and the procedure is distinguishable from *Rule 23* class actions only by virtue of the non-binding effect of the judgment on those who elect not to "opt-in". *Id.* There appear also to be a variety of other procedures not discussed in *Mooney* representative of the variety of potential approaches available to a court in resolving *§ 216(b)*'s similarly situated requirement. *See, e.g., Bayles v. Am. Med. Response, 950 F. Supp. 1053, 1058 (D. Col. 1996); Krueger v. N.Y. Tel. Co., 163 F.R.D. 433, 445 (S.D.N.Y. 1995)* (limiting analysis to commonality and typicality requirement of *Rule 23*). As this Court concludes that the ad hoc determination described in *Mooney* is the appropriate procedure in the present case, it need not analyze the facts under these alternative procedures.

[*5]

The threshold issue in deciding whether to conditionally certify a collective action in an FLSA action is whether the plaintiff has demonstrated that potential class members are similarly situated. *Id.* Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Jackson v. N.Y. Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)* (at the preliminary notice stage, plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme). In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate over the merits of the claims in this case.

The gravamen of the present complaint is that plaintiffs were made to work in excess of 40 hours without receiving the overtime rate required by the FLSA. The consent forms of Hector Tovar and Eduardo Torres, attached to the complaint, and the later filed forms of Manuel Torres, Jr., and Maria Montenegro, [*6] indicate only that the plaintiffs "believe [they] are entitled to additional straight time and overtime wages [from defendant] for the hours [they] have worked in excess of forty hours per week." In their brief, plaintiffs indicate that 20 potential plaintiffs have been identified in El Paso. Pls Br. at 6. The affidavits submitted attest to the existence of a software based program known as "matrix", which authorizes work hours in proportion to sales volume and thereby discourages stores from claiming unauthorized overtime hours. Tovar aff. at 3; E. Torres aff. at 1. As such, time cards were edited to reflect fewer hours than actually were worked. Tovar aff. at 3; E. Torres aff. at 2. Furthermore, both Tovar and Eduardo Torres attest to nationwide violations, having been notified of such violations through encounters with other employees employed by defendant outside El Paso. Tovar aff. at 4; E. Torres aff. at 2.

Having considered the allegations in the complaint and supporting affidavits, this Court concludes that plaintiffs have adduced sufficient evidence to justify conditional certification of a collective action by defendants El Paso employees consistent with the FLSA violation [*7] alleged. As will be discussed below, the El Paso employee affidavits submitted do not justify a multi-state collective action. Plaintiffs argument that the nature of the software itself tends to support a pervasive problem throughout the country is not well-founded. It could just as easily be said the allegations may be indicative of one or a few of defendants locations that flout working hour standards incorporated into distributed payroll software.

Plaintiffs second request is for notice to other potential litigants. Notice is hereby ordered for all of defendants El Paso employees. Plaintiffs have not carried their burden of justifying a national collective action. While the authority of district courts to authorize the sending of

notice to potential class members in a collective action brought pursuant to § 216(b) is not disputed, *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)*, there is no requirement that a court order notification of potential plaintiffs and should do so only in the appropriate case, *id. at 169.*

Left to determine whether the present case is an appropriate case for a broader action, this Court must conclude that the **[\*8]** affidavits of local employees who restate, without attribution, the concerns of distant employees and theorize that the problem is widespread will not suffice. Mere allegations will not suffice; some factual evidence is necessary to justify an action on a national scale. *Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).* While this Court does not necessarily agree with defendants reference to *Federal Rule of Civil Procedure 56(e)* for the contents of an affidavit outside the context of a motion for summary judgment, the principle espoused therein, that an affiant have personal knowledge of the facts to which he or she attest, is neither inappropriate under the present procedure nor inconsistent with general rules of evidence in federal proceedings. *See FED. R. EVID. 602* ("[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter")

With that said, the above collective action and order requiring notice to potential plaintiffs shall be limited to defendants El Paso employees. **[\*9]** Plaintiffs are granted leave to move for reconsideration of the scope of the collective action and notice order within thirty days provided they can produce some evidence of the practices outside of El Paso, at which time this Court will determine whether the scope of the orders should be modified accordingly.

Plaintiffs third request is for a computer-readable data file containing the names, addresses, social security numbers and telephone numbers of potential "opt-in" plaintiffs. Plaintiffs argue that such is necessary to avoid extensive discovery. This Court is disinclined to grant this request as made, given privacy concerns implicit in information derived from personnel records, *Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir. 1994)*, and will instead require that defendant itself issue notice to its employees as follows.

Defendant shall send a letter to all El Paso employees employed since January 2000, notifying such employees of the specific FLSA violation alleged and providing that any affected employee may "opt-in" to the present action within forty-five days of mailing by contacting plaintiffs counsel at a designated address. The letter shall be a form **[\*10]** letter approved by plaintiffs counsel, with form fields completing the name and ad-

dress of employees and a respond deadline forty-five days beyond the date of mailing. Defendant will not be ordered to produce detailed information of its El Paso employees, but will instead provide a list of all employees to whom the letters were sent, the date of mailing, which should be the same day unless good cause is shown for a longer period and a certificate of mailing signed by counsel of record. This procedure should both avoid the promulgation of confidential information outside the office and preclude concerns inherent in the direct solicitation of prospective clients by attorneys through mass mailings.

Upon completion of the mailing, the parties shall notify this Court of the deadline date for response. At that time, the parties shall submit a revised scheduling order compliant with this Courts order on pretrial deadlines.

## II.    DEFENDANT'S    MOTION    TO    STRIKE PLAINTIFFS AFFIDAVITS

Defendant argues that the affidavits submitted in support of a collective action should be stricken for lack of personal knowledge. As stated in the above ruling, to the extent the affidavits attest to facts **[\*11]** for which the affiant lacks personal knowledge, they are not considered as supporting plaintiffs case for a national collective action or for expansive notice to potential plaintiffs. Much of the remaining substance of the affidavits is, however, not improper and based on personal knowledge and thus the affidavits will not be ordered stricken *en toto.* The motion to strike is denied.

## III. PLAINTIFFS' MOTION TO VACATE DEADLINE TO JOIN ADDITIONAL PARTIES

In light of the scheduling issues discussed in Part I *supra,* plaintiffs' motion to vacate the deadline for joining additional parties is hereby vacated.

## IV. CONCLUSION

Plaintiffs' motion for judicially certified notification of potential plaintiffs (Doc. No. 12) is **granted in part** consistent with the foregoing opinion. Defendant's motion to strike plaintiffs affidavits in support of petition for judicially certified notification (Doc. No. 18) is **denied.** Plaintiffs' motion to vacate the deadline to join additional parties (Doc. No. 42) is **granted.**

SO ORDERED.

Dated at El Paso, Texas, December 17, 2003.

Kathleen Cardone

United States District Judge

LEXSEE 1992 U.S. DIST. LEXIS 5367

### JAMES D. CRAIN, ET AL v. HELMERICH AND PAYNE INTERNATIONAL DRILLING COMPANY

### CIVIL ACTION No. 92-0043, SECTION "F"

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

*1992 U.S. Dist. LEXIS 5367; 124 Lab. Cas. (CCH) P35,754; 30 Wage & Hour Cas. (BNA) 1452*

**April 16, 1992, Decided**
**April 16, 1992, Filed; April 17, 1992, Entered**

**LexisNexis(R) Headnotes**

**JUDGES:** [*1] FELDMAN

**OPINIONBY:** MARTIN L. C. FELDMAN

**OPINION:**

ORDER AND REASONS

Before the Court is plaintiff's motion to certify a class action under the Fair Labor Standards Act, *29 U.S.C. § 216*(b), and to certify a class of Louisiana law claimants under *Federal Rule of Civil Procedure 23*. For the reasons that follow, plaintiff's motion to certify an FLSA class action is GRANTED. Plaintiff's motion to certify a Rule 23 class is DENIED without prejudice.

I. BACKGROUND

The original named plaintiffs sued the defendant, H&P International Drilling Co., on their own behalf and on behalf of others similarly situated, under the Fair Labor Standards Act for wages allegedly owed. The plaintiffs are all present and former H & P employees who are or were paid by the hour and engaged in non-exempt work at the company from January 1, 1989 to present.

The plaintiffs claim to represent a class of H&P employees like themselves who were required to participate in certain job-related activities for which they were not compensated. Specifically, plaintiffs contend that defendant forced them (and the other potential class members) to engage in tour meetings, safety classes, evacuation drills and self-study programs, [*2] and did not pay them their hourly wage rates or overtime wage rates for the time they spent at these programs.

Based on these same allegations, plaintiffs contend that a "sub-class" of the FLSA class can additionally recover wages owed, penalty wages and attorney's fees under La. Rev. Stat. art. 23:631.

As of now, five plaintiffs have joined the suit.

LAW AND APPLICATION

I.

The plaintiffs have moved for certification of two classes under quite different procedural rules. First, plaintiffs ask the Court to certify this case as an FLSA class action on behalf of:

> All current and former employees of Helmerich & Payne International Drilling Company, who were classified as nonexempt under the Fair Labor Standards Act and who at any time during the time period of January 1, 1989 to present were required to attend safety meetings, tower meetings, evacuation drills, training meetings or to take self study programs.

Second, regarding some of the plaintiffs' additional claims under the Louisiana wage statute, plaintiffs seek Court certification under *Federal Rule of Civil Procedure 23* of a class that comprises:

> All members of the principle class who worked in Louisiana [*3] at any time during the period of January 6, 1989 to pre-

1992 U.S. Dist. LEXIS 5367, *; 124 Lab. Cas. (CCH) P35,754;
30 Wage & Hour Cas. (BNA) 1452

sent and while working in Louisiana were separated from employment, for any reason, at Helmerich & Payne International Drilling Company.

The FLSA, provides that one or more representative plaintiffs can pursue a collective action alleging violations of the Act's provisions. See *29 U.S.C. § 216*(b). Under § 216(b), an FLSA action

> may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. (emphasis supplied).

It is well-settled that whether a court should certify an FLSA class n1 (that is, determine that the case can proceed as a collective action), depends upon whether the named plaintiffs and the members of the FLSA class the plaintiffs seek to represent are similarly situated. See, e.g., *Leyva v. Buley, 125 F.R.D. 512, 515 (E.D. Wash. 1989);* [*4] *Heagney v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988); Riojas v. Seal Produce, Inc., 82 F.R.D. 613, 617 (S.D. Tex. 1979).* The procedural prerequisites for Rule 23 certification are simply inapplicable in the FLSA setting. See *Kinney Shoe v. Vorhes, 564 F.2d 858, 862, 64 (9 Cir. 1977); Leyva, supra.*

> n1 Although this measure creates a device quite different from a traditional Rule 23 class action and does not mention "classes" and "certification," courts have used these familiar Rule 23 terms in determining whether a case can be maintained as an FLSA collective action. See *Sperling v. Hoffman-LaRoche, 118 F.R.D. 392, 399 (D.N.J. 1988).*

Similarly situated does not mean identically situated. See *Heagney, supra; Palmer v. Readers Digest Association, 42 Fair Empl. Prac. 212, 213 (S.D.N.Y. 1986); Riojas, supra.* Rather, an FLSA class determination is appropriate when there is "a [*5] demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class

members together as victims of a particular alleged [policy or practice]." *Heagney, supra* (citing *Palmer, supra).* Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp., 116 F.R.D. 276, 277 (D. Colo. 1987).*

The Court holds that the plaintiffs have adequately demonstrated that they are similarly situated to the potential plaintiffs they seek to represent. All the named plaintiffs and putative class members are current and former non-exempt H & P employees. Plaintiffs contend that they and the potential class members all were required to attend various types of job-related meetings and training sessions, and were required to participate in other "self-study" programs and were not paid their hourly and overtime wages for the time they spent engaged in these activities. Further, plaintiffs do not allege isolated personal incidents [*6] of failures to pay, but rather, contend that they and the potential class members were victims of a company-wide policy that employees would not be paid for this time.

Plaintiffs' support their allegations with affidavits and documentary evidence. See *Sperling, 118 F.R.D. at 406* (Plaintiffs sufficiently developed the similarly situated issue with detailed allegations in their pleadings, supported by "affidavits which successfully engage defendant's affidavits to the contrary."). Plaintiffs point to H & P internal memoranda which provide that all H & P "rig personnel" had to complete a self-study program within six weeks of their employment. In affidavits, three of the named plaintiffs say that they had to attend various job-related safety meetings, drills, and tour meetings and they were not paid for their time in participating in these activities. These plaintiffs also maintain that to their knowledge, all non-exempt H & P employees on the rigs to which they were assigned had to attend the meetings and training. Further, federal regulations require that employees on offshore rigs be trained in, among other things, pollution control and crane operation. [*7] See generally 30 C.F.R. 250.210, et seq. (1991).

That the plaintiffs and the potential claimants may have worked in different areas of the country, on different types of rigs, and performed different jobs is not dispositive. See *Heagney, supra; Burt, supra.* The Court accepts defendant's contention that the number of meetings or training sessions attended or the actual amount of time spent engaged in these activities may have varied from place to place, rig to rig, or hitch to hitch. But what matters is that the fundamental allegation-that according to company policy the time spent in job related meetings and training was uncompensated-is "common to all the

Case 2:05-cv-01969-HGB-ALC    Document 26-2    Filed 08/09/2005    Page 13 of 25

Page 3

1992 U.S. Dist. LEXIS 5367, *; 124 Lab. Cas. (CCH) P35,754;
30 Wage & Hour Cas. (BNA) 1452

[FLSA] plaintiffs and dominates each of their claims."
Id. n2

n2 Indeed, defendant does not contend that in some places, or in some jobs, there were no meetings, training sessions or self-study programs for the non-exempt employees.

In the complaint and with the supporting evidence, the plaintiffs go well beyond conclusory allegations that they are similarly situated to the proposed class members. Plaintiffs have provided evidence that engages defendant's contrary evidence and supports [*8] their claim that H & P had a widespread company practice by which it required rig personnel to attend job-related meetings and training sessions but did not pay them for their time in these endeavors. See Sperling, supra; Burt, supra. Plaintiffs have carried their burden of demonstrating that they are similarly situated to the potential class members the seek to represent, and the Court will permit them to maintain this action on behalf of themselves and the members of the potential class they have identified. n3

n3 The Court points out that, although it has "certified" this case as a collective action under the FLSA, no potential plaintiff is an FLSA class member until he has opted into the case. See Schmidt v. Fuller Brush Co., 527 F.2d 532 (8 Cir. 1975). The Court's certification of this case "establishes nothing more than the right of plaintiffs to 'maintain' a collective action." Sperling, 118 F.R.D. at 407. That is, the similarly situated finding allows for unified trial preparation, prosecution and defense of this case. Id.

[*9]

II.

Plaintiffs also ask the Court to certify, under Federal Rule of Civil Procedure 23, a second class comprising "all members of the principle class" (the FLSA class) who have additional claims under the Louisiana wage statute. (emphasis supplied). The Fifth Circuit has held that the resolution of the certification question is driven entirely by "whether the proposal satisfies the requirements of [Rule 23]." Garcia v. Gloor, 609 F.2d 156, 163 (5 Cir. 1980).

In this case, the plaintiffs have limited the proposed Rule 23 class of claimants who have Louisiana law claims to those aggrieved parties who are already members of the FLSA class. One is not actually a member of an FLSA class until one has affirmatively opted into the case. See Schmidt, supra. Thus, the Court will not be able to evaluate the composition and scope of the proposed class and effectively apply Rule 23's procedural requirements until the deadline has passed for opting into the FLSA class. n4 See Sperling, 118 F.R.D. at 412. The Court will, therefore, deny plaintiffs' motion to certify a Rule 23 class without prejudice. See Id.

n4 For example, until the Court knows how many people have opted into the FLSA class and where they live it will be impossible to determine whether the Rule 23 class will be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); Garcia, supra ("Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion.").

[*10]

Accordingly, the plaintiffs' motion to certify a class action under the FLSA is GRANTED. Any member of the potential FLSA class who wants to participate in this case must opt in by May 20, 1992. The plaintiffs' motion to certify a class of Louisiana law claimants under Rule 23 is DENIED without prejudice. The disposition of this motion will be considered with prejudice if the plaintiff does not bring another motion to certify the proposed Rule 23 class within 10 days of the deadline for filing of consent forms with respect to the FLSA case. n5

n5 The Court points out that thus far, only five plaintiffs have opted into the FLSA class. The Court reminds counsel for plaintiffs to bear in mind their obligations under Rule 11 of the Federal Rules of Civil Procedure when considering whether to file another Rule 23 motion to certify.

New Orleans, Louisiana, April 16, 1992.

MARTIN L. C. FELDMAN

UNITED STATES DISTRICT JUDGE



Not Reported in F.Supp.                                                      Page 1

Not Reported in F.Supp., 1993 WL 603552
**(Cite as: Not Reported in F.Supp.)**

**H**
Not Reported in F.Supp., 1993 WL 603552
Only the Westlaw citation is currently available.
United States District Court, D. Arizona.
Pat WERTHEIM, on behalf of himself and others
similarly situated, Plaintiff,
v.
STATE OF ARIZONA; Arizona Department of
Public Safety, Defendants.
**No. CIV 92-453 PHX RCB.**

Sept. 30, 1993.

Joseph W. Bell , Fredrick P. Furth , Daniel S. Mason
, Furth Fahrner & Mason , San Francisco, CA, and
R. Chip Larsen and James J. Farley , Farley
Robinson & Larsen, Mesa, AZ, for plaintiff.
Michael K. Kennedy , Gallagher & Kennedy,
Phoenix, AZ, for defendants.

ORDER

BROOMFIELD, District Judge.
**\*1** Plaintiff Pat Wertheim has filed a motion
requesting the court to approve and authorize notice
to potential opt-in class members. Defendant
Arizona Department of Public Safety (DPS) has
filed a response and Wertheim has replied. The
court heard oral argument on the motion on April
12, 1993. After Wertheim filed his motion to
authorize notice, DPS filed a motion to strike the "
Consent to Join Lawsuit" forms and opt-in lists
already filed with the court. According to DPS,
these attempts to increase the plaintiffs in this suit
are technically deficient as well as procedurally
improper.

I. BACKGROUND

This case is brought under the Fair Labor Standards
Act (FLSA), 29 U.S.C. §§ 207 -216 (1988).
Plaintiff Wertheim serves DPS in the capacity of

Latent Prints Examiner (LPE) III; he formerly
served DPS as an LPE II. Wertheim alleges that
DPS wrongfully deprived him and others similarly
situated of overtime pay in violation of the FLSA.
*See id.* § 207(a)(1) (requiring overtime pay at a rate
of one and one-half times normal pay for hours
worked by employees in excess of forty per week).

The primary issue addressed by this order is
whether to authorize notice to other past and present
employees of DPS who allegedly are similarly
situated to Wertheim. Section 216(b) of the FLSA
provides for a special kind of opt-in class action in
FLSA cases. Pursuant to section 216(b), courts
may authorize notice to a class that is "similarly
situated" to the named plaintiff. *See Hoffman-LA
Roche v. Sperling,* 493 U.S. 165, 110 S.Ct. 482,
486 (1989). The requisite showing of similarity of
claims under the FLSA is considerably less
stringent than the requisite showing under Rule 23
of the Federal Rules of Civil Procedure. *See, e.g.,
Partlow v. Jewish Orphans' Home,* 645 F.2d 757,
758 (9th Cir.1981) ; *Church v. Consolidated
Freightways, Inc.,* 137 F.R.D. 294, 306
(N.D.Cal.1991). All that need be shown by the
plaintiff is that some identifiable factual or legal
nexus binds together the various claims of the class
members in a way that hearing the claims together
promotes judicial efficiency and comports with the
broad remedial policies underlying the FLSA.

In an order dated July 29, 1992, the court denied
Wertheim's initial motion for class approval without
prejudice. The court concluded that Wertheim had
not made even a prima facie case that the class
members in his proposed class were similarly
situated to him. FN1 Wertheim since has submitted
a renewed motion, requesting court approval and
authorization of notice to a class and two
sub-classes of former and present DPS employees.

II. WERTHEIM'S PROPOSED CLASS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                   Page 2

Not Reported in F.Supp., 1993 WL 603552
**(Cite as: Not Reported in F.Supp.)**

Wertheim requests that the court authorize notice to "[a]ll present or former employees of DPS who worked overtime hours since March 10, 1989 in job titles which were classified as exempt from the FLSA." He contends that the members of this class are similarly situated to each other and to him for two reasons.

**\*2** First, Wertheim contends that the entire proposed class was misclassified as exempt from the FLSA at the same time and by the same centralized decisionmaking authority, the Law Enforcement Merit Systems Council (LEMSC). According to Wertheim, the LEMSC misclassified the entire proposed class as exempt in the Summer of 1985 in response to the Supreme Court's decision in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528 (1985), which held that the FLSA applies to state and local governments. Wertheim further asserts that no DPS job title has been changed from exempt to nonexempt status since 1985.

Second, Wertheim argues that the proposed class members not only were misclassified by the same body, but are misclassified for essentially the same reasons. Specifically, Wertheim contends that certain DPS policies applicable to all of the proposed class members make clear that the class members are not paid on a salary basis, which is a prerequisite for an employee to be exempted from the FLSA's overtime provision.

The FLSA sets forth exemptions to its scope and accompanying regulations set forth criteria that must be met for the exemptions to apply. *See* 29 U.S.C. § 213(a)(1) (setting forth exemptions for executive, administrative, and professional employees); 29 C.F.R. § 541 (1992) (setting forth criteria for determining whether an employee is an executive, administrative, or professional employee). One of the criteria that must be met for the exemptions to apply is that the employee must be paid "on a salary basis," as opposed to on an hourly basis. *See* 29 C.F.R. §§ 541.1(f) , 541.2(e)(1) , and 541.3(e). The regulations and applicable case law further delineate standards to be used for determining whether an employee indeed is paid on a salary basis. *See id.* § 541.118 ; *Abshire*

*v. County of Kern,* 908 F.2d 483 (9th Cir.1990), *cert. denied,* 498 U.S. 1068 (1991). Wertheim takes the position that DPS did not pay him and the other proposed class members on a salary basis.

Wertheim's claim that he and the proposed class members have not been paid on a salary basis rests in part on certain DPS policies. Wertheim has submitted evidence tending to establish that (1) all DPS employees must fill out reports that account for their time at work down to one-tenth of an hour; (2) that exempt employees receive "overtime" pay at their regular hourly rate or "comp" time on a one-for-one basis; (3) that employees must obtain permission before working overtime; and (4) that employees must use either accrued comp time or leave time to the extent they work less than forty hours per week. In a companion order issued this date, the court holds that these policies establish that DPS has not paid its exempt employees on a salary basis.

DPS's arguments as to why notice should not be authorized to the proposed class are not persuasive. DPS argues that the DPS orders which Wertheim relies upon have nothing to do with LEMSC, the administrative body which Wertheim claims wrongfully classified him and the other class members as exempt. This argument, however, misses the point. It simply is not relevant that the LEMSC does the classifying while DPS allegedly enacts and enforces policies that establish that the LEMSC's classifications are legally inaccurate.

**\*3** DPS also argues that the DPS policies cannot serve as a sufficient basis for notice to issue because the policies are only guidelines. Wertheim has sufficiently rebutted this argument for class certification purposes by submitting a number of affidavits that allege that the pay policies generally are in effect throughout DPS. Furthermore, all DPS alleges is that the Guidelines are applied flexibly, not that they are not generally followed or that employees are not subject to the requirements of the Guidelines.

DPS further asserts that the proposed class is not similarly situated because individual supervisors within DPS allegedly control work requirements

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 3

Not Reported in F.Supp., 1993 WL 603552
**(Cite as: Not Reported in F.Supp.)**

and adjust work schedules. This conclusory assertion is not sufficient given that the question before the court is merely whether to authorize notice. Moreover, as Wertheim notes, his and the proposed class members' claims are strengthened to the extent that individual supervisors control work schedules and must authorize overtime pay. As discussed in the court's order of this date which rules on the parties' summary judgment motions, such control is not consistent with salaried status.

Finally, DPS's reliance on *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J.1988) is misplaced. DPS relies on the following language from *Lusardi* for the proposition that the members of plaintiff's proposed class are not similarly situated:

The members of the proposed class come from different departments, groups, organizations, suborganizations, units and local offices within the Xerox organization. The opt in plaintiffs perform different jobs at different geographical locations and were subject to different job actions concerning reductions in work force which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis.

*Id.* at 465. This language, when read in context, provides very little support for DPS. The *Lusardi* court, in an age discrimination case, certified a class that already had received notice after it became apparent that case involved over 1300 employee firings that were conducted by individual supervisors on a "decentralized employee-by-employee basis." As discussed, Wertheim has provided evidence that he and the proposed class members all were incorrectly classified as exempt at the same time and for many of the same reasons. Thus, the court authorizes notice to the proposed class without yet commenting on the proper starting date for the class, a matter which is discussed *infra*.

### III. THE PROPOSED SUB-CLASSES

A. *The Proposed Sub-Class of All Civilian DPS Employees Who Allegedly Were Reclassified as Exempt in Response to Garcia*

Wertheim requests the court to authorize notice to a sub-class consisting of "[a]ll civilian DPS employees who have worked overtime hours since March 10, 1989 in job titles which the LEMSC reclassified as exempt in response to the *Garcia* decision." Wertheim alleges that the LEMSC changed "scores of job titles" from nonexempt to exempt status in response to *Garcia* in an attempt to avoid having to pay nonexempt employees time-and-a-half for overtime work.

*4 Wertheim has almost no evidence that the LEMSC's reclassification of job titles in 1985 was done on an improper basis. Instead, Wertheim argues that DPS has failed to produce information uniquely within its control which would explain the basis upon which the employees were reclassified. Wertheim also contends that in January of 1984 the LEMSC once used pay grade as the sole factor when determining when determining who was exempt for purposes of overtime pay. Under these circumstances, Wertheim argues that a reasonable inference is that the reclassifications after *Garcia* were done simply to avoid overtime pay.

At this time, the court will not authorize notice to what the parties refer to as the *Garcia* sub-class. Even if the LEMSC made the changes in an attempt to avoid liability for overtime pay, that does not necessarily establish that any particular employee was wrongfully classified. Improper basis, not improper intent, is the relevant standard and plaintiff has put forth no evidence of improper basis with respect to this sub-class that is not addressed by plaintiff's proposed class, which focuses upon the salary test, and plaintiff's duties-based sub-class.

### B. *The Duties-Based Sub-Class*

Wertheim further requests the court to authorize notice to a duties-based sub-class of all exempt civilians who process evidence within DPS. This sub-class would include exempt LPEs, Criminalists, Laboratory Technicians, Questioned Document Analysts, Polygraph Examiners, and Criminal Intelligence Analysts.

An employee may be exempted under the FLSA if

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 4

Not Reported in F.Supp., 1993 WL 603552
**(Cite as: Not Reported in F.Supp.)**

the employee's job duties are of such a nature as to implicate certain specific exemptions. In this case, Wertheim contends that all the members of this proposed sub-class analyze evidence for DPS by using techniques learned primarily on the job. Wertheim argues that similar considerations will guide the court when determining whether the duties these employees perform are of the type that implicate the FLSA exemptions which have been invoked by the defendant.

As evidence of the similarity between the various positions, Wertheim has submitted general job descriptions. In addition, Wertheim has submitted the affidavits of individuals who hold some of the positions within the proposed sub-class.

DPS argues that notice should not be authorized to this proposed sub-class because plaintiff has submitted insufficient evidence as to what the employees actually do on the job. The court disagrees. Again, the only issue before the court is whether notice should issue. The evidence presented by Wertheim, and not controverted through evidence by DPS, establishes for present purposes that the members of the proposed sub-class are similarly situated.

### IV. THE CLASS PERIOD

#### A. *The Applicable Statute of Limitations*

The FLSA statute of limitations is two years for an inadvertent violation and three years for a wilful violation. *See* 29 U.S.C. § 255. Under the FLSA, the limitations period is not tolled until an individual opts-in to the class. *Id.* § 256. Of all the papers submitted by the parties, only Wertheim's reply brief provides any significant discussion as to what the proper starting date of the class should be.

**\*5** Wertheim argues that sufficient evidence exists that DPS's violation of the FLSA has been wilful for notice to issue to a class going back three years. A violation is wilful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681 (1988). As evidence of wilfulness, Wertheim first asserts that the State of Arizona certainly has been aware of the FLSA's standards since *Garcia.* Wertheim notes that in *Drollinger v. State of Arizona,* 962 F.2d 956 (9th Cir.1992) , the Ninth Circuit held that the State of Arizona had violated the FLSA by reducing the hourly rate of firefighters in response to *Garcia.*

Second, Wertheim has submitted the affidavit of Robert Tavernaro, an LPE, who asserts that when he asked about his right to time-and-a-half overtime pay he was told by his supervisors that he would lose his job if he further pursued the matter.

Third, Wertheim has submitted evidence tending to establish that in November of 1990 the Department of Labor alerted DPS to the overtime issue and that on February 20, 1991 the Department informed DPS that DPS was not in compliance with the FLSA. In addition, Wertheim has submitted an interoffice memorandum from a DPS staff attorney dated March 1, 1991, which states that DPS will have a difficult time meeting the requirements of the salary test. The memorandum recommended that DPS pay backpay to LPEs as suggested by the Department of Labor.

Fourth, Wertheim has submitted a DPS committee report dated March 19, 1991, which explained that DPS likely was not in full compliance with the FLSA and issued recommendations to bring DPS into compliance. According to Wertheim, DPS never took any action on these recommendations.

Finally, Wertheim argues that DPS expended little or no effort to ensure compliance with the FLSA before 1991. Wertheim contends that very little documentation can be found concerning compliance or even as to how classification decisions were made.

The court concludes that, for purposes of authorizing notice, Wertheim has put forth sufficient evidence of wilfulness to implicate the three-year limitations period within 28 U.S.C. § 255.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5

Not Reported in F.Supp., 1993 WL 603552
(Cite as: Not Reported in F.Supp.)

### B. *The Applicable Starting Date*

The law is clear that the statute of limitations in
FLSA cases does not stop running until an opt-in
class member files his consent to opt in. Thus,
even assuming a three-year limitations period,
Wertheim's proposed starting date for the class,
March 10, 1989, is well over one year too early.
Wertheim argues that the court should apply the
doctrine of equitable estoppel to permit class
members to file suit for damages accruing after
March 10, 1989, which was three years before the
complaint was filed in this case.

The court is not persuaded to apply the doctrine of
equitable estoppel in this case. Wertheim has cited
no judicial decision in which a court discusses
whether and how the doctrine applies in FLSA
cases. The asserted grounds for Wertheim's
invocation of the doctrine are that DPS allegedly
threatened to fire Tavernaro if he asserted his rights
under the FLSA, that delay occurred as a result of
the Department of Labor investigation in 1991, and
because DPS did not change its policies even after
its own counsel suggested that it do so in 1991.
This evidence, though sufficient to support an
inference that DPS's alleged violation of the FLSA
has been wilful, is not sufficient to require
application of the doctrine of equitable estoppel.

**\*6** Application of the doctrine of equitable estoppel
requires proof that the defendant engaged in
conduct with the intent of altering the plaintiff's
conduct as well as proof that the plaintiff relied
upon the defendant's conduct. *See Stallcop v.
Kaiser Found. Hosp.,* 820 F.2d 1044, 1050 (9th
Cir.), *cert. denied,* 484 U.S. 986 (1987) ;
*Operating Engineers Pension Trust v. Cecil
Backhoe Serv., Inc.,* 795 F.2d 1501, 1507 (9th
Cir.1986). With the possible exception of the
allegation regarding Tavernaro, Wertheim's
arguments do not allege misconduct on DPS's
behalf designed to prevent class members from
filing suit. Tavernaro's vague assertion, by itself, is
not sufficient to toll the statute of limitations as it
applies to all DPS employees for more than a year.

Thus, the starting date of the class should be
September 28, 1990, which is three years prior to

the date on which this order is signed.

### V. THE FORM OF NOTICE

Wertheim's renewed motion to authorize notice
attaches as an exhibit a proposed form of notice
with an accompanying sample consent form. DPS
has filed objections to a number of portions of the
proposed notice and consent forms. The court
rules on DPS's objections as follows.

1. The date in the headnote should be changed to
September 28, 1990.

2. The language in Paragraph A of the notice that
reads "This is an official court Notice" should be
changed to "This is a Notice." The words "advise
you of how your rights may be affected by this
lawsuit, and to" within Paragraph A should be
deleted.

3. On page two, the words "classified as exempt"
should be inserted on the second line of Paragraph
2(a) between the words "employees" and "at." The
words "classified as exempt" also should be
inserted in the first line of Paragraph 2(d) between
the words "employees" and "in."

4. The date in Paragraph C on page two should be
changed to September 28, 1990.

5. On page two, Paragraph D, the word "above" in
the first line should be removed and in its place
should be inserted "in Paragraph C".

6. On page three, the second sentence of the second
paragraph-i.e., "To learn more about your rights...."
-should be deleted.

7. The blanks within Paragraph H on page four
should be replaced by a date forty-five (45) days
from the date this order was signed.

8. On page four, lines 17 and 19, the words "State"
and "State's" should be deleted and replaced by the
words "DPS" and "DPS's" respectively.

9. On page four, the last paragraph about contacting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                          Page 6

Not Reported in F.Supp., 1993 WL 603552
**(Cite as: Not Reported in F.Supp.)**

plaintiff's law firms for further information should be deleted.

10. On page five, Paragraph K should be amended to read: "The Fair Labor Standards Act prohibits anyone from discriminating or retaliating against you if you choose to take part in this lawsuit."

11. On the actual consent form submitted by Wertheim, the March 10, 1989 date in the last sentence of paragraph 2 should be deleted and replaced with the date of September 28, 1990.

### VI. DPS' MOTION TO STRIKE CONSENTS ALREADY FILED

**\*7** The following assertions set forth in plaintiff's response to DPS' motion to strike do not appear to be controverted. In 1990, LPEs employed by DPS filed complaints with the Department of Labor regarding overtime pay. The Department then conducted an investigation and eventually recommended that DPS pay the LPEs their overtime pay. After a settlement could not be reached, the LPEs contacted the Associated Highway Patrolmen of Arizona (AHPA) for assistance, which then referred the LPEs to plaintiff's counsel.

After plaintiff's counsel could not reach a settlement with DPS on behalf of the LPEs, plaintiff Wertheim decided to bring his own action and providing this suit on March 10, 1992. The AHPA then sent a letter to AHPA members, informing them of the nature of Wertheim's action and providing them with a consent form to fill out and submit if they wished to join in Wertheim's suit. A number of AHPA members filled out the consent forms and sent them to plaintiff's counsel. Plaintiff's counsel then periodically filed opt-in lists with the court, listing the names and addresses of those who had submitted consent forms. These lists were served on defendants at the same time they were filed with the court.

After the court denied Wertheim's initial request to authorize notice on July 29, 1992, Wertheim submitted his renewed motion to authorize notice which this order addresses. In papers submitted on

February 19, 1993 in conjunction with his renewed motion, Wertheim's counsel submitted the opt-in consent forms of twenty-nine of the employees listed on the previous opt-in lists.

DPS contends that all of the opt-in lists, as well as the opt-in forms filed by plaintiff's counsel in conjunction with plaintiff's renewed motion, should not be considered by the court because they allegedly are an inappropriate attempt to avoid the FLSA's statute of limitations. The FLSA provides some guidance as to the proper procedure for commencing an action under the Act. *See* 29 U.S.C. § 256. Section 256 provides in relevant part:

> In determining when an action is commenced for the purposes of section 255 of this title, an action . .. shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the [FLSA] ... it shall be considered to be commenced in the case of any individual claimant-
> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> (b) if such written consent was not so filed or if his name did not so appear-on the subsequent date on which such written consent is filed in the court in which the action was commenced.

DPS first argues that the lists and consent forms filed with the court include DPS employees who are outside of the LPE class allegedly established by the court. Given that the court now has authorized notice to a broader class, this argument fails in large part. However, to the extent that the lists and consent forms include employees who do not fall within the class and sub-class recognized by the court, their names must be stricken on that basis alone.

**\*8** DPS next appears to argue that the consent forms and lists all should be struck because they were submitted before the court authorized notice to the proposed class and approved the form of notice submitted by plaintiff. Section 256(b), however, requires only that a "written consent [be] filed in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                Page 7

Not Reported in F.Supp., 1993 WL 603552
(Cite as: Not Reported in F.Supp.)

court in which the action was commenced." There is no express statutory requirement that consents may only be filed after the court authorizes notice. Moreover, given that, as a general rule, the statute of limitations runs until a claimant files a consent form, and given that a court later can strike consents if a basis for doing so is established, the court is reluctant to conclude that section 256(a) per se forbids the filing of consents until after the court authorizes notice.

DPS also argues that the opt-in lists filed with the court are insufficient because they are not signed by the persons wishing to opt in. In addition, DPS contends that many of the consent forms received by plaintiff's counsel were not signed because, due to an alleged clerical error, the second page of the consent forms were not sent to many potential opt-in candidates. DPS asserts that the consent forms were inadequate because they were unsigned when submitted. Plaintiff responds that by reading the letter accompanying the consent forms, filling out the first page of the consent forms, and sending the forms to plaintiff's counsel, the opt-ins consented to join this suit.

With respect to DPS' claim that the lists filed by plaintiff are defective, the court notes that section 256(b), does not require persons wishing to opt in to submit signed consent forms. At least one court has stated that section 256(b) is satisfied when a plaintiff files lists of persons wishing to opt in, instead of actual consent forms, after receiving consent forms from those wishing to opt in. *See Canfield v. United States,* 14 Cl.Ct. 687, 688, 692 (Cl.Ct.1988). *But see Kulik v. Superior Pipe Specialties Co.,* 203 F.Supp. 938, 940-41 (N.D.Ill.1962) (holding that a typewritten list of names and without signatures was insufficient to constitute "written consent" to join the suit). The court also rejects DPS' arguments with respect to the fact that some of the consent forms were not signed. That the opt-in forms were filled out then sent to plaintiff's counsel clearly indicates consent by the opt-ins to join this lawsuit. The statute of limitations, therefore, was tolled when the opt-ins filed the unsigned consent forms.

DPS also argues that plaintiff Wertheim has not

adequately included himself in this lawsuit for purposes of tolling the statute of limitations. According to DPS, Wertheim had to file a consent form with his complaint to properly include himself. Although this reasoning strikes the court as somewhat strange and unfair because defendants had notice, it is supported by the language of section 256(a). Section 256(a) requires a party named in a complaint to also file a written consent before the statute of limitations ceases to run.

*9 Plaintiff argues that he should be found to have included himself in this suit for statute of limitations purposes on the day he filed his complaint. He argues that the purpose underlying section 256(a)-to protect defendants and employees alike from suits brought by employee organizations, unnamed plaintiffs, or lists of named plaintiffs-does not apply in this case given that Wertheim was the sole plaintiff named in the complaint. In the alternative, plaintiff argues that the limitations period was tolled when he filed an affidavit on May 11, 1992, verifying the allegations in the complaint.

The court must reject plaintiff's contention that he is not required to submit a written consent pursuant to section 256(a). Although Wertheim perhaps is correct that the purposes underlying section 256(a) are not implicated in this case, the language of that section is applicable and controlling. With respect to plaintiff's argument that the court should construe his affidavit submitted on May 11, 1992 as a written consent, DPS has not replied. The court, therefore, holds that the statute of limitations tolled with respect to plaintiff Wertheim on May 11, 1992.

In sum, the court holds that the statute of limitations was tolled (1) for plaintiff on May 11, 1992, and for claimants Tavernaro and Anderson on that same date because they filed affidavits verifying the allegations within the complaint, (2) for those individuals who fall within the class or sub-class recognized by the court in this order on the date that the individuals' names appeared on the various opt-in lists filed with the court, and (3) the limitations period is hereby held to have ceased running on February 19, 1993 for those individuals who filed consent forms with the court on that date and who fall within the class or sub-class

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 8

Not Reported in F.Supp., 1993 WL 603552
**(Cite as: Not Reported in F.Supp.)**


recognized by the court in this order.

IT IS ORDERED granting plaintiff's motion to
authorize notice to potential class members and to
approve of the notice and consent form submitted
by plaintiff to the extent consistent with the terms of
this letter (Doc. 38). Defendant is directed to
provide plaintiff with the names and addresses of
those individuals who fall within the class and
sub-class recognized in this order as soon as is
reasonably possible.

IT IS FURTHER ORDERED granting in part and
denying in part consistent with the terms of this
order defendant's motion to strike the allegedly
improper consents to join this suit (Doc. 54).


>          FN1. Wertheim contended at that time that
>          the opt-in class should include:
>          All present or former employees of the
>          State of Arizona who, at any time since
>          March 10, 1989, worked overtime hours
>          without receiving overtime pay and/or
>          were not paid for time spent in restricted
>          on-call status.

D.Ariz.,1993.
Wertheim v. State of Arizona
Not Reported in F.Supp., 1993 WL 603552

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EUGENE LIGER, ET AL.                          CIVIL ACTION NO. 05-1969

VERSUS                                        SECTION "C"

NEW ORLEANS HORNETS NBA LIMITED               MAGISTRATE 05
PARTNERSHIP

## NOTICE

TO:     All current and former employees of The New Orleans Hornets NBA Limited Partnership ("Hornets") between August 2002 and the present who held or hold the positions of Fan Relations Representative, Sales Account Executive, Inside Sales Representative, Regional Sales Account Executive, Group Sales Account Executive, Receptionist, and/or Ticket Operations Assistant, and who worked, at any time therein, more than 40 hours in any workweek without being paid one and one half times his or her regular hourly rate for each hour worked in excess of 40 in such workweek.

Re:     Fair Labor Standards Act Lawsuit Filed Against The New Orleans Hornets NBA Limited Partnership ("Hornets")

## 1.    INTRODUCTION

The purpose of this Notice is to inform you of the existence of a collective action lawsuit in which you potentially are "similarly situated" to the named Plaintiffs, to advise you of how your rights may be affected by this lawsuit, and to instruct you on the procedure for participating in this lawsuit, if you fit the definition of the class described in this Notice, should you decided that it is appropriate and should you chose to do so.

## 2.    DESCRIPTION OF THE LAWSUIT

In May 2005 former and current employees of the Hornets brought this ("Plaintiff") lawsuit against the Hornets on behalf of themselves and all other past and present employees of the Hornets in the United States District Court for the Eastern District of Louisiana, alleging that they and other similarly situated are owed unpaid overtime under the Fair Labor Standards Act. After the lawsuit was filed, other current and former employees joined the lawsuit as named Plaintiffs and have asserted the same claims.

The Plaintiffs allege that the Hornets willfully failed to properly calculate overtime for themselves and other similarly situated. The Plaintiffs seek overtime pay and an equate amount of pay as liquidated damages, as well as prejudgment interest, attorneys' fees and costs. This lawsuit is current in the early pretrial stage.



EXHIBIT
1

The Hornets deny Plaintiffs' allegations and maintain that they are an amusement and recreation establishment operating on a seasonal basis and, therefore, are exempt from the requirements of the Fair Labor Standards Act. The Hornets also maintain that they are a retail sales establishment, which is also exempt from the requirements of the Fair Labor Standards Act. The Hornets will seek the dismissal of the Plaintiffs' claims and will seek costs and any other relief to which they may be entitled.

## 3.    DEFINITION OF THE CLASS

The named Plaintiffs seek to sue on behalf of themselves and also on behalf of:

> All current and former employees of The New Orleans Hornets NBA Limited Partnership ("Hornets") between August 2002 and the present who held or hold the positions of Fan Relations Representative, Sales Account Executive, Inside Sales Representative, Regional Sales Account Executive, Group Sales Account Executive, Receptionist, and/or Ticket Operations Assistant, and who worked, at any time therein, more than 40 hours in any workweek without being paid one and one half times his or her regular hourly rate for each hour worked in excess of 40 in such workweek.

## 4.    YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the definition above, you may join this suit (that is, you may "opt in") by mailing the attached "Consent to Become Party Plaintiff" form to Plaintiffs' counsel at the following address:

Niles, Salas, Bourque & Fontana, L.C.
909 Poydras Street, Thirty-Fifth Floor
New Orleans, Louisiana 70112

as soon as possible and in sufficient time to have Plaintiffs' counsel file it with the federal court on or before _____. If you fail to return the "Consent to Become Party Plaintiff" form to Plaintiffs' counsel in sufficient time to have it filed by the date above, you may not be able to participate in this lawsuit.

If you file a "Consent to Become Party Plaintiff" form, your right to participate in this lawsuit may depend on a later decision by the District Court that you and the Plaintiffs are actually "similarly situated" in accordance with federal law.

{N1325834.1}

5.    **EFFECT OF JOINING THIS SUIT**

If you choose to join in the suit, you will be bound by the judgment, whether it is favorable or unfavorable. While this suit is proceeding, you may be required to respond to written questions, sit for depositions and/or testify in court.

The attorneys for the class Plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee. Your interest will be represented by the named Plaintiffs though their attorney as counsel for the class. The class could (not would) be liable for costs if there is no recovery. If there is a recovery, the attorneys for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. By joining this lawsuit, you designate the named Plaintiffs as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the named Plaintiffs will be binding on you if you join this lawsuit.

6.    **LEGAL EFFECT OF NOT JOINING THIS SUIT**

If you chose not to join this suit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class. If you choose not to join in this lawsuit, you are free to file your own lawsuit. However, because the passage of time may result in part or all of your claim being barred by the applicable statute of limitations, if you wish to participate in this lawsuit, it is important that you sign, date and mail the attached consent form in sufficient time to have it filed by the date above in Section 4.

7.    **NO RETALIATION PERMITTED**

The Fair Labor Standards Act prohibits an employer from discharging you or taking any other adverse employment action against you for the purpose of retaliating against you because you have exercised your rights under that law.

8.    **YOUR LEGAL REPRESENTATION IF YOU JOIN**

If you choose to join this lawsuit, your interest will be represented by the named Plaintiffs though their attorneys, as counsel for the class. Counsel for the class are:

Niles, Salas, Bourque & Fontana, L.C.
909 Poydras Street, Thirty-Fifth Floor
New Orleans, Louisiana 70112

**9.    FURTHER INFORMATION**

Further information about this Notice, the deadline for filing a "Consent to Become Party Plaintiff," or questions concerning this lawsuit may be obtained by writing or telephoning Plaintiffs' counsel at the number and address stated above.

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, HONORABLE HELEN G. BERRIGAN.  THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR DEFENDANTS' DEFENSES.**