

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    AUG   9 2005

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EUGENE LIGER, ET AL.**                        **CIVIL ACTION NO.  05-1969**

**VERSUS**                                       **SECTION "C"**

**NEW ORLEANS HORNETS NBA LIMITED**              **MAGISTRATE 05**
**PARTNERSHIP**

### DEFENDANT'S OPPOSITION TO PLAINTIFFS'
### MOTION FOR PROTECTIVE ORDER, SANCTIONS, AND CORRECTIVE ACTION

**MAY IT PLEASE THE COURT:**

Defendant, New Orleans Hornets NBA Limited Partnership ("Hornets"), oppose Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action because it is riddled with misleading statements, baseless accusations, and inadmissible hearsay.  Plaintiffs' motion, just like their pending motion seeking conditional certification and notice, is nothing more than an attempt to harass the Hornets with mindless rhetoric, which Plaintiffs apparently consider a substitute for admissible evidence, factual support, and legal authority.  As shown herein, a protective order is unwarranted, corrective action unnecessary, and sanctions should be imposed against Plaintiffs for their baseless motion and misrepresentations to this Court.

Fee
Process
X  /Dktd
✓  CTRmDep
Dec. No

Dockets.Justia.com

## I.    INTRODUCTION

The most obvious, undisputed fact militating against a protective order is that twelve **current** as well as former employees have joined the lawsuit, thus contradicting Plaintiffs' allegations that Defendant has engaged in alleged "threats," "misrepresentations," and harassing behavior "in an effort to dissuade potential plaintiffs from joining this litigation." Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action, p. 1; Plaintiffs' Memorandum in Support, p. 1. In fact, Plaintiff, Latousha Brown, opted in to this action on July 12, 2005, as a current employee and continues her employment to this day with the Hornets. As Plaintiffs are well aware, this action already has received substantial local and national media attention, no doubt having a greater reach and effect than any notice proposed by Plaintiffs with their motion for conditional certification and notice. In addition, corrective action is completely unwarranted as this action has not yet been certified to proceed as a collective action and no notice has been sent to prospective plaintiffs. Finally, under no circumstances are sanctions warranted. Plaintiffs' repetition of meritless allegations makes them no less meritless, and their venomous rhetoric makes their assertions no less vacuous. Plaintiffs have presented nothing more than rank speculation, inadmissible testimony, and disputed allegations of prior restraint of Defendant's First Amendment right to free speech to support their accusations that Defendant has acted inappropriately since the filing of this lawsuit. Thus, Plaintiffs' motion must be denied.

## II.    BACKGROUND

Plaintiffs filed this lawsuit on May 27, 2005, alleging that the Hornets failed to pay overtime compensation to various current and former employees. Both current and former employees have since joined the lawsuit, despite that Plaintiffs had yet to move this Court to conditionally certify this action to proceed collectively or to issue a notice to other potential

plaintiffs. This is not surprising because once the suit was filed, it was the subject of widespread media attention. Further, as previously stated by Chris Stant to a current Hornets' employee, Plaintiffs' counsel have apparently successfully contacted potential plaintiffs to join this lawsuit. Thus, the pendency of this lawsuit, Plaintiffs' counsel's efforts, media attention, and efforts such as those of former Hornets' employee, Penny Middleton, to encourage potential plaintiffs to assert alleged wage and hour claims,[1] have more than insured notice and a full and fair opportunity for potential plaintiffs to participate if they so desire.

Although Plaintiffs have riddled the record of this action with false allegations that have become the basis of media reports, they misconstrue and challenge the undeniable right of the Hornets to deny Plaintiffs' allegations, reiterating their compliance with federal law, and emphasizing their commitment to their employees. See Exhibit 1, Declaration of Paul Mott and Exhibit A thereto. Contrary to Plaintiffs' suggestion through this motion, the Hornets have the right to deny Plaintiffs' allegations, assert their exempt status, and communicate with their employees. See Exhibit 2, Declaration of Kristy Fitzpatrick. Paul Mott, President of the Hornets, exercised that right in an e-mail communication to Hornets' employees on May 30, 2005. Id. As the admissible evidence submitted by the Hornets shows, no member of Hornets' management has implied or stated current or former employees would be retaliated against if they jointed this lawsuit.

---

[1]    See Penny Middleton's Affidavits attached to Plaintiffs' pending motions (Rec. Docs. 18 and 19).

## III.    LAW AND ARGUMENT

### A.    Federal Rule of Civil Procedure 26(C) Governs the Issuance of a Protective Order and Plaintiffs Have Failed to Comply with the Rule

Plaintiffs improperly attempt to use a discovery rule to seek substantive, Rule 65-based

relief.  Rule 26(c), in relevant part, provides:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
>
> (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
>
> (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

Plaintiffs have failed to comply with the requirements Rule of 26(c).  First, they have not

certified that they have attempted in good faith to resolve this matter out of Court.  Indeed, the

Hornets viewed the affidavits for the first time with Plaintiffs' motion.  Second, Plaintiffs cannot

demonstrate any cause, much less good cause, for the protective order or other relief sought.

### B.    Courts Have the Discretion to Facilitate Notice to Plaintiffs in a Collective Action But Must Avoid the Appearance of Judicial Endorsement of the Merits of a Claim

Plaintiffs have made wild and outlandish allegations that the Hornets are attempting to

mislead its employees and dissuade them from joining this lawsuit.  Based on rank speculation

and erroneous arguments, Plaintiffs move this Court for an unprecedented order prohibiting the

Hornets from communicating with their employees about the pending litigation. Such an unnecessary and unwarranted order will only prejudice the Hornets if issued. While courts have discretion to facilitate notice to plaintiffs in collective actions and assist in the management of that notice, the United States Supreme Court has cautioned that such an order <u>must not impinge on the First Amendment rights of the parties nor can the order give the appearance that the Court is weighing in on the merits of the case.</u>

*Hoffman-La Roche Inc. v. Sperling* is the seminal case on this issue. 493 U.S. 165 (1989). *Hoffman-La Roche* involved a collective action filed under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). The "narrow question" before the court in *Hoffman-La Roche* was whether "district courts may play any role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members of the class on whose behalf the collective action has been brought." *Hoffman-La Roche*, 493 U.S. at 169. In holding that courts have discretion to facilitate notice to potential plaintiffs, the Supreme Court cautioned that the:

> [D]ecision does not imply that trial courts have unbridled discretion in managing [FLSA] actions. Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.

*Hoffman-La Roche*, 493 U.S. at 174.

Prior to the Supreme Court's decision in *Hoffman-La Roche*, the Court, in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), <u>affirmed an *en banc* decision of the Fifth Circuit reversing a district court order issuing a complete ban on all communications between the parties concerning the class action without the prior approval of the court. The Supreme Court held that a complete</u>

communications ban was an abuse of the district court's discretion. In so holding, the Court held

that:

> [A]n order limiting communications between parties and potential
> class members should be based on **a clear record and specific**
> **findings that reflect a weighing of the need for a limitation and**
> **the potential interference with the rights of the parties.** Only
> such a determination can ensure that the court is furthering, rather
> than hindering, the policies embodied in the Federal Rules of Civil
> Procedure, especially Rule 23. In addition, such a weighing –
> identifying the potential abuses being addressed – should result in
> a carefully drawn order that limits speech as little as possible,
> consistent with the rights of the parties under the circumstances.

452 U.S. at 101-102 (emphasis added). The Court also quoted, with approval, the language of

the Third Circuit's decision in *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir.), *cert. denied*, 434 U.S.

985 (1977), that a court should not restrict communications to prevent frustration of the policies

of the Federal Rules "without a specific record showing by the moving party of the particular

abuses by which it is threatened." *Bernard*, 452 U.S. at 102. Further, the Court held that "the

mere possibility of abuses does not justify routine adoption of a communications ban . . . " *Id.* at

104.

### C.     Required Factors for Issuance of a Protective Order Limiting the First Amendment Rights of a Party Are Not Present in this Case

The following factors must be present to justify entry of a protective order such as the

one sought by Plaintiffs in this case:

(1)     the severity and likelihood of the perceived harm,

(2)     the precision with which the order is drawn,

(3)     the availability of a less onerous alternative, and

(4)     the duration of the order.

*Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003) (citing *Kleiner v. First Nat'l*

*Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985); *Hampton Hardware, Inc.*, 156 F.R.D. at

663). Courts must first determine "whether there is a need for limitation on speech and then tailor[s] the limitations accordingly." *Belt*, 299 F. Supp. 2d at 668. In other words, "the Court first determines whether Defendants' speech is misleading, coercive, or an attempt to undermine the collective action." *Id.* Under no circumstances can any speech attributable to the Hornets be perceived as misleading, coercive, or an attempt to undermine the lawsuit. It is unrealistic to think that employees will not ask questions of management when their employer has been sued, especially when the lawsuit receives media attention. An employer has the absolute right to state what has happened, state the employer's position, and answer employees' questions without retaliating against employees who engage in protected activity or attempting to convince employees not to engage in protected activity. There is no admissible, reliable, or undisputed evidence that any Hornets' manager engaged in improper conduct in this case. In fact, the Hornets expressly refute Plaintiffs' conclusory allegations to the contrary. To preclude the Hornets from discussing this matter with its employees will have the inevitable effect of suggesting to employees that the Hornets have acted unlawfully or that the Hornets have no right to defend themselves. No rule of law permits such a result.

### D.    The Facts of This Case Do Not Warrant a Protective Order

The actual facts of this matter demonstrate that a protective order is not warranted, and, in fact, to do so would be prejudicial to Defendant and contrary to well-settled law. Plaintiffs rely on the affidavits of two former Hornets' employees, one of whom is a Plaintiff in this action, and the speculative and completely unsupportable allegation that the Hornets, through a May 30, 2005 e-mail from its President, Mr. Mott, urged its employees not to join the lawsuit. First, the affidavit testimony of Ms. Middleton is hearsay and, thus, is not competent evidence. In her affidavit, Ms. Middleton alleges that she was told by an unidentified current employee that Marie Parenti, Director of Guest Relations and Seating Services, "told her staff that this lawsuit was

going very poorly for the Plaintiffs and that fan relations employees were lucky that they had not joined the suit because it was about to be dismissed." Exhibit B, ¶ 8, Plaintiffs' Memorandum in Support of Motion for Protective Order. Ms. Middleton also alleges that "this employee told me she wanted to join the suit, but that she feared for her job and was scared that she would be fired if her name was revealed." Id., ¶ 9. Aside from the fact that Ms. Parenti has offered admissible testimony denying these allegations, Ms. Middleton's statements are clearly hearsay under Federal Rule of Evidence 801(c) and are, therefore, inadmissible. See Exhibit 3, Declaration of Marie Parenti. Similarly, Mr. Stant, a former Hornets employee who is a Plaintiff in this lawsuit, alleges:

> 14. Since this lawsuit was filed, I have been contacted by current Hornets employees who do not want to be identified because they are scared that they will get fired if they join this suit.
>
> 15. During one conversation with a current Hornets' employee, I was told that Steve Martin "hoped that I knew what I was doing" and that he was worried about my decision to join this litigation.

Exhibit A, ¶¶ 14 and 15 of Plaintiff's Memorandum in Support of Motion for Protective Order. Mr. Stant's statements also are inadmissible hearsay as he is testifying about an alleged statement made to him by an unidentified employee.

Second, Plaintiffs claim, without any support, that the Hornets' President sent an e-mail "prohibiting current employees from communicating with any employee who left the company in the last 60 days." Plaintiffs' Memorandum in Support, p. 2. Plaintiffs' also incredibly claim that this e-mail relayed Defendant's position that "any employee who contacted a former employee about the overtime suit would be terminated." Id., pp. 11-12. This is an outlandish statement for Plaintiffs to make considering that one Plaintiff is a current employee, the alleged e-mail was purportedly sent to all current employees, and the alleged e-mail has yet to have been seen (apparently even by Plaintiffs). Plaintiffs' suggestion that the Hornets have refused to produce

this e-mail is based on the false premise that it exists. **It does not. In fact, the only e-mail sent to employees by Paul Mott relating to this lawsuit was sent on May 30, 2005, and in reality states:**

> Colleagues,
>
> Most if not all of you probably have heard about a lawsuit filed Friday against our organization. All of the plaintiffs in the lawsuit are former, not current, employees. We want you to know that our organization denies any violation of federal labor law, and has always been committed to insuring compliance with applicable law. We have as qualified and motivated a staff as there is in professional sports. You are our greatest assets, and we strive to make sure you are treated as such. We are unable to comment on the details of this pending litigation, but we are confident in our position and hope to obtain a speedy dismissal of this suit. We hope – and will strive to insure – that this legal matter does not become a distraction from the good work we all do for our organization and the community. If you receive any inquiries from the media or others seeking information about the suit or the organization's position, please refer them to Harold Kaufman so they can be properly handled.
>
> Before starting our Wednesday Hornets Idea Factory session, I will talk with you about this situation and answer questions. In the meantime, thank you for your continued good work and your support.

See Exhibit 1, Declaration of Paul Mott and attached e-mail.

Finally, the only admissible evidence offered by Plaintiffs is the self-serving affidavit testimony of Plaintiff, Chris Stant, who makes the reckless allegation that Kristy McKearn, Vice President of Business Operations, told him employees who participated in the lawsuit would be retaliated against. Tellingly, there is no competent evidence of any actual alleged retaliation. Aside from the fact that Ms. McKearn plainly denies making such a statement, this single statement is insufficient as a matter of law to impinge on the First Amendment protections of

Defendant by issuing a protective order in the instant action.  See Exhibit 4, Declaration of Kristy McKearn.[2]

In *Basco v. Wal-Mart Stores, Inc.*, the plaintiffs in a class action for alleged wage abuses sought a protective order prohibiting Wal-Mart from unsupervised contact with potential class members.  2002 U.S. Dist. LEXIS 3780 (E.D. La. Feb. 22, 2002) (attached).  The plaintiffs filed a motion for protective order based on their belief that Wal-Mart was going to communicate with potential class members and that such communications would "misrepresent the status, purpose and effect of the action and will create impressions tending to reflect adversely on the plaintiffs' cause of action."  *Id.* at * 5.  In determining whether to issue a protective order, the court stated that an order limiting communications should be issued only "if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule."  *Id.* at * 9.  Noting that "[a] district court should only consider the narrowest possible relief 'that limits speech as little as possible consistent with the rights of the parties under the circumstances'" *Id.* (quoting *Burrell v. Crown Central Petroleum, Inc.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997)).  The court concluded that there was no evidence to justify "interference with defendant's speech."  *Id.* at * 11.

In a case involving similar allegations, *Burrell v. Crown Central Petroleum, Inc.*, the plaintiffs in a class action sought an order limiting the defendant's communications with class members.  At the time the motion was filed, the class had not been certified.  The motion was filed after the defendant sent an e-mail to employees, held informational meetings and posted announcements about the lawsuit.  The e-mail informed employees that lawsuits had been filed

---

[2]    Further undermining the reliability of Mr. Stant's self-serving allegation is Ms. McKearn's testimony regarding several blatant inconsistencies in Mr. Stant's positions taken thus far.

against the company and that the company was the target of a union campaign related to a labor dispute. 176 F.R.D. at 241. The plaintiffs submitted a declaration of a person who attended an informational meeting explaining what occurred. According to the declaration, company officials stated that "the lawsuit was generated by the union. The gist of the talk was that we should not be caught up in the discrimination lawsuit because it was tied to the union." *Id.* The declaration also stated the company "made generalizations that made it seem that by being part of the lawsuit we would be associating ourselves with [the union]." *Id.*

The district court concluded that:

> **[N]othing in the e-mail/announcement indicates that the company was threatening its employees if they decided to participate in the class action. (citations omitted). There are no explicit or implicit threats made in the announcement; the company simply states that it has been sued, and that it believes the lawsuit to be a union strategy. Plaintiffs have provided no evidence, other than argument and speculation, that implicit or explicit threats were attached to the e-mail or its paper copy.**

176 F.R.D. at 244-245 (emphasis added). The court also held that the declaration was insufficient to warrant limiting the defendant's speech with its employees concluding that "the court can only place a prior restraint on Crown's speech with a clear record and specific findings." Id. At 245. (citations omitted). No such clear record or specific findings could be made from the declaration, thus a protective order was inappropriate. The same type of e-mail communication is involved in this case.

### E.    Cases Relied on by Plaintiffs are Distinguishable and Not Applicable to the Instant Facts Before the Court

Although Plaintiffs no doubt wish that the facts of *Belt v. Emcare Inc.* (cited in their brief) support their position, they clearly do not. In *Belt,* the plaintiffs, a group of physician's assistants and nurse practitioners, filed a collective action alleging that they were not paid

overtime in violation of the FLSA. The court conditionally certified the class and approved a notice to send to potential plaintiffs. However, before the notice was mailed, the defendant company sent out a letter (unapproved by the court) to potential class members. 299 F. Supp. 2d 664. The court concluded that the notice misrepresented the issues, explaining: "the letter suggested that the current action was an attack on the potential plaintiffs' status as professionals;" it "misrepresented the amount of damages available" to potential plaintiffs; and it "incorrectly represented that Plaintiff sought only the overtime due for a forty-hour workweek as reduced by attorney's fees." 299 F. Supp. 2d at 666-667. In addition, the company equated the collective action to a medical malpractice lawsuit in efforts to play on the fears of medical professionals. *Id.* at 667. In reliance on *Bernard v. Gulf Oil*, the district court held that it must be careful to "tailor any restrictions on a party's ability to speak with absent class members" because of First Amendment concerns. *Belt*, 299 F. Supp. 2d at 667. The court noted, however, that "ex parte communications tending to discourage absent class members from joining the suit may be limited by orders grounded in good cause and issued with a heightened sensitivity for *First Amendment* Concerns." *Id.* at 668. Because the communications by the defendant were clearly misleading and an attempt to dissuade participation, a protective order was issued. The record here is clear that the facts of this case bear no resemblance to those in *Belt*.

Similarly, in *Erhardt v. Prudential Group, Inc.*, the defendant company sent letters to employees commenting on pending class action litigation and urging employees to disassociate themselves with the lawsuit. 629 F.2d 843 (2d Cir. 1980). The defendant company sent these letters after the class was certified and after notice to class members was mailed to potential class members. The court also had issued a prior order restricting unauthorized communications by the parties with class members. After the court was informed of the conduct, it found a member

of management to be in civil contempt for sending the letters and enjoined the company from further communicating with class members without prior approval from the court. On appeal, the only issue before the court was the appropriateness of the contempt order. The court concluded that the contempt order was inappropriate. However, the court noted that "[u]napproved notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice." *Id.* at 846. Any competent evidence of communications by the Hornets in this case is drastically different than that in *Erhardt and Belt*.

The case of *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, also relied on by Plaintiffs, is distinguishable as it too involved letters being sent to potential Rule 23 class members urging them not to participate in a lawsuit. 156 F.R.D. 630 (N.D. Tex. 1994). The letters cautioned potential plaintiffs about the potential costs they could face if they participated in the suit. The district court concluded that the message of the letters was "that if they participate in this 'improper' lawsuit . . . they will pay." *Id.* at 633. The court therefore concluded that this type of misleading communication warranted court intervention. There is no competent evidence of such conduct in this case.

*Abdallah v. Coca-Cola Co.*, involved a Rule 23 class action wherein the local rules expressly prohibited any communication with prospective class members regarding the substance of the lawsuit and is thus clearly distinguishable. 186 F.R.D. 672 (N.D. Ga. 1999). Although the court limited the speech in this case, it also held that "banning all such communication is a draconian measure because the danger of coercion can be abated easily." *Id.* at 679. Thus, the court concluded that communications between the employer and its employees was permitted, and it could share its views about the lawsuit as long as it included a statement in any such

communication that the statements represented Coke's opinion of the lawsuit and that it was illegal to retaliate against those who participate in the lawsuit. *Id.*

Likewise *Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782 (E.D. La. 1977), involved a constitutional challenge to a local rule regulating and prohibiting communications with potential class members in a Rule 23 class action. No such rule exists for Section 216(b) actions; therefore, this case is also distinguishable.

Plaintiffs devote a great deal of paper to the Eleventh Circuit's decision in *Kleiner v. The First Nat'l Bank of Atlanta,* 751 F.2d 1193. First, this case is not controlling, and the Fifth Circuit has not relied on it for its analysis on the relevant issue. Second, that case involved a Rule 23 class action wherein the defendant company initiated a campaign <u>after</u> the class had been certified and notice sent to potential class members in an attempt make sure that the potential plaintiffs "understood the merits of the dispute and their right to opt out." *Id.* at 1198. Though the company argued that the point of the campaign was to "alleviate customer confusion," the court concluded that the purpose of the campaign was "to solicit as many exclusions as possible before the court was alerted to the operation." *Id.* at 1201, n. 16. This case has not been certified, and no notice has been sent to potential plaintiffs. Furthermore, none of the conduct that occurred in *Kleiner* has occurred, or been alleged to have occurred, in the instant case.

Finally, Plaintiffs rely on a protective order issued in *Davis v. Metro Networks, Inc.* H-99-1128, Protective Order (S.D. Tex. Sept. 9, 1999). In that collective action, the court entered a protective order prohibiting the defendants from communicating with current or former employees about the settlement of their wage claims, unpaid compensation, the number of hours the employees believe they are owed, and payment for unpaid overtime. Protective Order, p. 5.

However, the order was entered after the defendants were found to have attempted to settle with potential plaintiffs for less than the law required. The defendant argued that they were permitted to settle the claims of their employees who were not party to the lawsuit. In other words, the defendant admitted that it engaged in the conduct of which they were accused. Again, no similar facts are before this Court.

None of the cases relied on by Plaintiffs have any factual relevance to this case. Thus, they present no basis for issuing a protective order, particularly in light of the competent testimony presented by the Hornets through the Declarations of Paul Mott, Kristy Fitzpatrick, Marie Parenti, Kristy McKearn, Steve Martin, Barbara Booth, and Sam Russo, attached as Exhibits 1 through 7, respectively.

### F.    Sanctions Should Be Imposed on Plaintiffs

Federal Rule of Civil Procedure § 37(a)(4) governs the imposition of sanctions relative to this motion. See Fed. R. Civ. P. § 26(c). Rule 37(a)(4)(B) provides:

> If the motion is denied, the court . . . shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party . . . who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

As explained *infra*, Plaintiffs have failed to comply with the requirements of Rule 26 in filing this motion. In addition, they prematurely have based this motion on the rank speculation that the Hornets' President, Paul Mott, issued an e-mail forbidding communication with former employees and the self-serving affidavits of former employees filled with inadmissible hearsay testimony. Such a baseless filing and misrepresentations are reprehensible and should not be tolerated. Plaintiffs have no grounds for an award of sanctions in the instant case.

Plaintiffs cite the Eleventh Circuit's decision in *Kleiner* in support of their position that sanctions should be imposed in the instant case. In *Kleiner*, the district court imposed sanctions against counsel for the defendant in the amount of $50,000. The court found that the imposition of sanctions was appropriate because <u>counsel for the defendant had been issued orders on two occasions by the district court directing them not to contact the class</u>. *Id.*, 751 F.2d at 1207. <u>Counsel for the defendant recommended that his client disregard the court orders</u>. Aside from the obvious fact that no such court orders have been issued in this action, *Kleiner* has no relevance here. Under no circumstances is the conduct present in *Kleiner* – direct defiance of multiple court orders – present in this case. It is knowingly misleading for Plaintiffs to rely on this decision in support of its motion for sanctions. If anything, sanctions should be awarded against Plaintiffs, and/or their counsel, for filing this motion without accurately representing the facts to the Court and for basing the motion on self-serving statements made by former employees and speculation as to what the Hornets may be communicating to their employees. It is clear that the purpose of this motion as well as others is to attempt to use this proceeding to publicly harass the Hornets.

### G.    Corrective Action is Inappropriate

Plaintiffs also have asked this Court for corrective action. Since they do not ever explain what that corrective action should be, none should be issued. First, the Hornets have not engaged in any misleading or coercive tactics. Second, this action has not been conditionally certified as Plaintiffs filed their motion to conditionally certify the same day they filed the instant motion and thus no notice has been sent to potential opt-in plaintiffs. In other words, there is nothing to correct.

## IV.    CONCLUSION

Plaintiffs' motion is nothing but an attempt to create a dispute and suggestion of impropriety where none exits. There is no basis in fact or law for this Court to restrict the Hornets from communicating with its employees about this lawsuit. Plaintiffs filed this motion based on speculative, inadmissible, and self-serving testimony in clear violation of the rules of this Court. Thus, Defendant respectfully requests that this motion be denied and that appropriate sanctions be imposed on Plaintiffs, including but not limited to attorneys' fees and costs.

Respectfully submitted,

*Jennifer L. Anderson*

SIDNEY F. LEWIS, V (Bar No. 17026)
JENNIFER L. ANDERSON, T.A. (Bar No. 23620)
JANE H. HEIDINGSFELDER (Bar No. 28604)
***Jones, Walker, Waechter, Poitevent,***
  ***Carrère & Denègre, L.L.P.***
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Telefax: (504) 582-8015
e-mail: slewis@joneswalker.com
e-mail: janderson@joneswalker.com
e-mail: jheidingsfelder@joneswalker.com
***COUNSEL FOR DEFENDANT,***
    ***NEW ORLEANS HORNETS NBA L.P.***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a copy of the above and foregoing *Defendant's Opposition to Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action* has been served on all counsel of record by facsimile, and by placing same in the United States mail, postage prepaid and properly addressed this _9th_ day of August, 2005 upon:

Stewart E. Niles, Jr., Esq.
Niles, Salas, Bourque & Fontana L.C.
909 Poydras Street - Suite 3500
New Orleans, Louisiana  70112
Telefax:  (504) 310-8590

Jennifer L. Anderson

LEXSEE 2002 U.S. DIST. LEXIS 3780

**DERRIN BASCO, ET AL. VERSUS WAL-MART STORES, INC. ET AL.**

**CIVIL ACTION NO: 00-3184 SECTION: "K" (4)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*2002 U.S. Dist. LEXIS 3780*

**February 22, 2002, Decided**
**February 25, 2002, Filed, Entered**

**DISPOSITION:** [*1] Motion for Reconsideration of Ruling on Plaintiffs' Motion for Protective Order GRANTED. Motion for Protective Order Preventing Defendants from Unsupervised Contact with Potential Class Members DENIED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For DERRIN BASCO, DOROTHY ENGLISH, COLBY LAGRUE, REGINA GEASON, BETTY MATTHEWS, plaintiffs: Morris Bart, III, Morris Bart, PLC, New Orleans, LA.

For DERRIN BASCO, DOROTHY ENGLISH, COLBY LAGRUE, REGINA GEASON, BETTY MATTHEWS, plaintiffs: Michael X. St. Martin, Conrad S. P. Williams, III, St. Martin & Williams, Houma, LA.

For DERRIN BASCO, DOROTHY ENGLISH, COLBY LAGRUE, REGINA GEASON, BETTY MATTHEWS, plaintiffs: Jim S. Adler, Jim S. Adler, Attorney at Law, Houston, TX.

For DERRIN BASCO, DOROTHY ENGLISH, COLBY LAGRUE, REGINA GEASON, BETTY MATTHEWS, plaintiffs: Franklin D. Azar, Franklin D. Azar & Associates, Aurora, CO.

For DERRIN BASCO, DOROTHY ENGLISH, COLBY LAGRUE, plaintiffs: John M. O'Quinn, Russell T. Lloyd, O'Quinn, Laminack & Pirtle, Houston, TX.

For REGINA GEASON, BETTY MATTHEWS, plaintiffs: Russell T. Lloyd, O'Quinn, Laminack & Pirtle, Houston, TX.

For DERRIN BASCO, DOROTHY ENGLISH, COLBY LAGRUE, REGINA GEASON, BETTY MATTHEWS, [*2] plaintiffs: Gerald L. Bader, Jr., Renee B. Taylor, Bader & Associates, PC, Denver, CO.

For WAL-MART STORES INC, JAMES BANKS, CHRIS MARTIN, WAYNE GORDON, PAT CURRAN, CHARLES LANCLOS, CHARLES RINEHART, defendants: Robert K. McCalla, Lawrence Joseph Sorohan, II, McCalla, Thompson, Pyburn & Shapiro, New Orleans, LA.

For MICHELLE STEELE, movant: Morris Bart, III, Morris Bart, PLC, New Orleans, LA.

For MICHELLE STEELE, movant: Michael X. St. Martin, Conrad S. P. Williams, III, St. Martin & Williams, Houma, LA.

For MICHELLE STEELE, movant: Jim S. Adler, Jim S. Adler, Attorney at Law, Russell T. Lloyd, O'Quinn, Laminack & Pirtle, Houston, TX.

For MICHELLE STEELE, movant: Franklin D. Azar, Franklin D. Azar & Associates, Aurora, CO.

For MICHELLE STEELE, movant: Gerald L. Bader, Jr., Renee B. Taylor, Bader & Associates, PC, Denver, CO.

**JUDGES:** KAREN WELLS ROBY, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** KAREN WELLS ROBY

**OPINION:**

On January 3, 2002, the defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), filed a **Motion for Reconsideration**

of Ruling on Plaintiffs' Motion for Protective Order (doc. # 52). Wal-Mart requests that the Court reconsider its December 21, 2001 ruling in [*3] which it granted he plaintiffs' **Motion for Protective Order Preventing Defendants from Unsupervised Contact with Potential Class Members (doc. # 40)**. The plaintiffs do not oppose the motion.

### I. Factual Background

### A. Request for Reconsideration

The plaintiffs in this action represent a class of hourly employees working for Wal-Mart in Louisiana from September 5, 1990 to the present. They filed this class action suit seeking redress for themselves and all other similarly situated who suffered harm as a result of Wal-Mart's pattern of wide-spread wage abuses, including failing to record and pay for all of the time it requires its employees to work or remain in the store, failing to permit or require employees to take promised rest or lunch breaks, and forcing them to work during breaks without compensation.

On December 12, 2001, the plaintiffs filed a Motion for Protective Order Prohibiting Defendants from Unsupervised Contact with Potential Class Members. On December 21, 2001, the undersigned issued an order pursuant to Local Rule 7.5E n1 granting the plaintiffs' motion as unopposed. n2 Also, on December 21, 2001, Wal-Mart filed its opposition to the plaintiffs' Motion [*4] for Protective Order. n3 On January 3, 2002, Wal-Mart filed the instant motion requesting that the Court reconsider its December 21, 2001 ruling. Having been fully briefed on the issues, the Court will reconsider its ruling.

n1 Local Rule 7.5E requires that:

"each party opposing a motion shall file, in duplicate, a memorandum of the reasons advanced in opposition to the motion and a list of... authorities ....[relied upon]...no later than the eighth calendar day prior to the noticed hearing and shall at the same time serve a copy thereof on the opposing parties."

n2 Rec. Doc. # 46.

n3 Rec. Doc. # 45.

### B. Request for Protective Order

The plaintiffs seek a protective order because they believe that Wal-Mart may attempt to communicate with potential members of the class about the subject matter of this lawsuit, either to solicit affidavit testimony in opposition to class certification or to encourage class members to "opt out" of the class after it is certified. Plaintiffs further [*5] contend that any communication with potential class members initiated by Wal-Mart will misrepresent the status, purpose and effect of the action and will create impressions tending to reflect adversely on the plaintiffs' cause of action. This type of one-sided communication, the plaintiffs contend, will interfere with their rights to bring their claims as a class action under *Rule 23 of the Federal Rules of Civil Procedure.*

Wal-Mart opposed the motion contending that the plaintiffs' motion should be denied due to the plaintiffs' failure to provide any evidence of threatened or actual abuses concerning contacts with putative class members. Wal-Mart contends that the plaintiffs are attempting to prevent Wal-Mart from obtaining the same type of evidence the plaintiffs use in support of their request for certification. Wal-Mart further contends that it has no plans of interviewing any more hourly employees prior to hearing on certification but requests that the Motion for Protective Order be denied on the merits as opposed to being denied as moot.

### II Analysis

### A. Protective Order

*Rule 26(c) of the Federal Rules of Civil Procedure* governs the issuance of protective orders.  [*6]  It provides that:

Upon motion by a party or by the person from whom discovery is sought....and for good cause shown, the court in which the action is pending...may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had;

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

(5) that discovery be conducted with no one present except persons designated by the court;

If the motion for a protective order is denied in whole or in part, the court, may, on such terms and conditions as are just, order that any party or other person provide or permit discovery.

*See Fed. R. Civ. P. 26(c).*

The decision to enter a protective order is within the court's [*7] discretion. *Thomas v International Bus. Mach., 48 F.3d 478, 482 (10th Cir. 1995).* Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." See *In re:* Terra International, Inc. *, 134 F.3d 302, 306 (5th Cir. 1998)* (citing *United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978))*.

## B. Class Actions

*Rule 23 of the Federal Rules of Civil Procedure* governs class actions in federal court. Class actions serve an important function in our system of civil justice. *Gulf Oil Co. v Bernard, 452 U.S. 89, 99, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981).* They present, however, opportunities for abuse as well as problems for courts and counsel in the management of cases. *Id. at 99-100.* Communications that misrepresent the status or effect of the pending action also have been found to have a potential for confusion and/or to adversely affect the administration [*8] of justice. *Id. at 101 n. 12.* Courts have condemned attempts in a communication to affect a class member's decision to participate in the litigation, or to undermine a class plaintiff's cooperation with confidence in class counsel. *In re School Asbestos Litigation, 842 F.2d 671, 682 n. 23 (3rd Cir.1988).* Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of

counsel and parties. *Gulf Oil, 452 U.S. at 99.* However, this discretion is not unlimited, and indeed is bounded by the relevant provisions of the Federal Rules. *Id.*

Communications found violative of the principles of Rule 23 include misleading communications to the class members concerning the litigation. *Hampton Hardware, Inc. v. Cotter & Co., Inc., 156 F.R.D. 630, 632 (N.D.Tex.1994).* Unlimited contacts by defendants with class members or potential class members may serve to undermine the purposes of Rule 23, by allowing defendants to reduce their liability by encouraging potential class members not to join the litigation. [*9] Thus, where an alleged class action has been filed but certification has not yet been decided, a court may issue a limitation on ex parte contact under Rule 23, if it is clear the defendant is attempting to engage in conduct which would undermine the purposes of the rule. *Burrell v Crown Central Petroleum, Inc., 176 F.R.D. 239, 243 (E.D. Tex. 1997).*

An order limiting communications between parties and class members however, is a prior restraint on speech. *Id.* A district court should only consider the narrowest possible relief "that limits speech as little as possible consistent with the rights of the parties under the circumstances." *Gulf Oil, 452 U.S. at 102.* The movant does not have to show specific detriments to plaintiffs or the plaintiff class. *Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1206 (1985).* A showing of actual harm is not necessary. *Hampton Hardware, 156 F.R.D. at 633.* "It is unnecessary for a trial court to issue particularized findings of abusive conduct when a given form of speech is inherently conducive to overreaching and duress." *Kleiner, 751 F.2d at 1206.* [*10]

Nonetheless, an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. *See Gulf Oil, 452 U.S. at 101.* Such a weighing should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances. Courts should not limit communications without a specific record showing by the moving party of the particular abuses by which it is threatened. *Id. at 102.* Absent a clear record and specific findings of realized or threatened abuses, an order cannot be justified under the relevant standard. *Burrell, 176 F.R.D. at 244.*

In the instant case, while it is evident that there is an ongoing business relationship between employee and employer, it is not enough that a potentially coercive situation exists. *Burrell, 176 F.R.D. at 244.* The Court must have "a clear record and specific findings that reflect a weighing of the need for a limitation and the po-

tential interference [*11] with the rights of the parties." *Id.* (citing *Gulf Oil, 452 U.S. at 101*). While actual harm does not have to be shown, there must be some evidence that justifies an interference with defendant's speech. The Court cannot issue an order without evidence that a potential for serious abuse exists. *Id.*

The cases cited by the plaintiffs illustrate the evidentiary requirement necessary for an order restricting communication. For example, in *Kleiner* and *Hampton Hardware*, the actual abuse or potential for abuse was clearer. In *Kleiner*, the defendant entered into a telephone campaign in which it contacted its customers in an effort to reduce the size of the potential class by encouraging possible claimants to opt out of the litigation. Evidence showed that counsel for the defendant instructed the defendant's sales force to "do the best selling job they had ever done" in order to get customers to opt out of the class action. *Kleiner, 751 F.2d at 1198.*

Similarly, in *Hampton Hardware*, a member of a cooperative association of hardware stores filed a class action against the association. In response, the association sent letters to the individual [*12] members, urging them not to join the lawsuit. All three letters were before the court in its consideration of the ex parte motion. The first letter stated that joining the lawsuit would be at an "enormous potential cost to your Company" and that "all of this will cost you precious dollars and us precious time from our mission." *Hampton Hardware, 156 F.R.D. 631.* The second letter stated: "By not participating in this suit, you will help save your Company expense in dollars and time." *Id. at 632.* The third letter stated, in part: "By asking you to join the class, plaintiff is asking you to sue yourself." *Id.*

In contrast, the plaintiffs here have not provided the Court with evidence to show that Wal-Mart has abused the process or attempted to undermine the purposes of Rule 23. They only state that they believe Wal-Mart may attempt to communicate with potential members of the class about the lawsuit. The plaintiffs also state that Wal-Mart has taken or may take affidavits of potential class members. However, the plaintiffs, a class of hourly employees, have only provided the Court with non-probative evidence of Wal-Mart's communications with a managerial [*13] employee. Thus, the plaintiffs have failed to make the necessary showing that the affidavits taken by Wal-Mart is an abusive action against potential class members that requires protection from the Court.

Further, assuming arguendo that the affidavits were taken of hourly employees, there is no evidence that the method used to obtain the affidavit was an abusive practice requiring the protection of the Court. The affidavits do not indicate that Wal-Mart was explicitly or implicitly attempting to discourage or prevent the employees from participating in the lawsuit, nor do they indicate that any threats were made. Therefore, the plaintiffs have provided no evidence, other than speculation, that Wal-Mart is attempting to coerce it employees to not participate in or "opt out" of the suit. Accordingly,

**IT IS ORDERED** that the **Motion for Reconsideration of Ruling on Plaintiffs' Motion for Protective Order (doc. # 52) is GRANTED.**

**IT IS FURTHER ORDERED** that the **Motion for Protective Order Preventing Defendants from Unsupervised Contact with Potential Class Members (doc. # 40) is DENIED.**

**KAREN WELLS ROBY**

**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EUGENE LIGER, ET AL.**                    **CIVIL ACTION NO.  05-1969**

**VERSUS**                                   **SECTION "C"**

**NEW ORLEANS HORNETS NBA LIMITED**          **MAGISTRATE 05**
**PARTNERSHIP**

### DECLARATION OF PAUL MOTT

Pursuant to 28 USC § 1746, I, Paul Mott, a person at least eighteen years of age, declare under penalty of perjury that the following statements are true and correct and are based on my personal knowledge:

1.      I was named President of the New Orleans Hornets April 2005, and currently hold that position.

2.      I personally know Chris Stant, formerly an account executive for the Hornets.

3.      I have reviewed Chris Stant's Affidavit attached as Exhibit A to Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action.

4.      Stant's Affidavit contains false statements.

5.      Stant resigned his employment with the Hornets voluntarily. As reflected on his exit interview form, which is attached hereto as Exhibit A, Stant stated that he was leaving for a college general manager job with a better salary.

6.      I never told any employees, verbally or in writing, not to communicate with people who participate in this lawsuit.

7.      I have not recommended nor would I take or recommend any adverse job action against any employee because of participation in this lawsuit or the assertion of alleged rights under wage and hour law.

Exhibit
1

8.     I have not discouraged nor would I discourage any employee from participating in

such a lawsuit or asserting alleged rights under wage and hour law.

9.     I have not threatened any employee with any type of retaliation for participating

in this lawsuit, nor would I do so.

_____

Paul Mott, President

_____

NOTARY PUBLIC SIGNATURE

_____

Printed or Typed Name of Notary
Commission No: _23620 LA Bur_

**Kristy McKearn**

| | |
|---|---|
| **From:** | "Paul Mott" <Paul.Mott@hornets.com> |
| **To:** | <all@hornets.com> |
| **Sent:** | Monday, May 30, 2005 10:41 PM |
| **Subject:** | Important Message |

May 30, 2005

Colleagues,

Most if not all of you probably have heard about a lawsuit filed Friday
against our organization. All of the plaintiffs in the lawsuit are former,
not current, employees. We want you to know that our organization denies
any violation of federal labor law, and has always been committed to
insuring compliance with applicable law. We have as qualified and motivated
a staff as there is in professional sports. You are our greatest assets,
and we strive to make sure you are treated as such. We are unable to
comment on the details of this pending litigation, but we are confident in
our position and hope to obtain a speedy dismissal of this suit. We hope -
and will strive to insure - that this legal matter does not become a
distraction from the good work we all do for our organization and the
community. If you receive any inquiries from the media or others seeking
information about the suit or the organization's position, please refer them
to Harold Kaufman so they can be properly handled.

Before starting our Wednesday Hornets Idea Factory session, I will talk with
you about this situation and answer questions. In the meantime, thank you
for your continued good work and your support.

Paul

```
<p> <a href="http://web.hornets.com/redirect.asp">
<img border="0" src="http://www.nba.com/media/hornets/emailbanner.gif" ></a></p>
```

Exhibit A

D 994
Liger, et al. v. Hornets

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EUGENE LIGER, ET AL.**                    **CIVIL ACTION NO. 05-1969**

**VERSUS**                                  **SECTION "C"**

**NEW ORLEANS HORNETS NBA LIMITED**         **MAGISTRATE 05**
**PARTNERSHIP**

## DECLARATION OF KRISTY FITZPATRICK

Pursuant to 28 USC § 1746, I, Kristy Fitzpatrick, a person at least eighteen years of age, declare under penalty of perjury that the following statements are true and correct and are based on my personal knowledge:

1.      I have been employed by the ("Hornets") since April 2004 and currently hold the position of Executive Assistant (formerly Jack Capella).

2.      I personally know Chris Stant, formerly an account executive for the Hornets.

3.      I have reviewed Chris Stant's Affidavit attached as Exhibit A to Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action.

4.      Stant's Affidavit contains false statements.

5.      After Stant voluntarily resigned from his position with the Hornets, he called me to confirm the time for his going away party provided by the Hornets.

6.      During that conversation, Stant told me he was contacted by an attorney to join a lawsuit against the Hornets for overtime pay.

7.      Stant stated he did not want to be involved and was not going to join the lawsuit as the attorney requested.

{N1325518.1}

Exhibit 2

8.    Stant told me he told the attorney he was not interested in joining the lawsuit.

Kristy Fitzpatrick, Executive Assistant

NOTARY PUBLIC SIGNATURE

_Jennifer L. Anderson_
Printed or Typed Name of Notary
Commission No: 23620 LABar

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EUGENE LIGER, ET AL.                    CIVIL ACTION NO. 05-1969

VERSUS                                  SECTION "C"

NEW ORLEANS HORNETS NBA LIMITED         MAGISTRATE 05
PARTNERSHIP

## DECLARATION OF MARIE PARENTI

Pursuant to 28 USC § 1746, I, Marie Parenti, a person at least eighteen years of age, declare under penalty of perjury that the following statements are true and correct and are based on my personal knowledge:

1.    I have been employed by the ("Hornets") since October 2002 and currently hold the position of Director of Fan Relations and Premium Seating.

2.    I personally know Penny Middleton ("Middleton"), formerly the Director of Personnel/Payroll for the Hornets.

3.    I have reviewed Middleton's Affidavit attached as Exhibit B to Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action.

4.    Middleton's Affidavit contains false statements.

5.    Specifically, I did not tell any member of my staff that this lawsuit was going very poorly for the plaintiffs or that fan relations employees were lucky that they had not joined the suit because it was about to be dismissed.

6.    I have not recommended nor would I take or recommend any adverse job action against any employee because of participation in this lawsuit or the assertion of alleged rights under wage and hour law.

Exhibit
3

7.    I have not discouraged nor would I discourage any employee from participating in such a lawsuit or asserting alleged rights under wage and hour law.

8.    I have not threatened any employee with any type of retaliation for participating in this lawsuit, nor would I do so.

_Marie Parenti_

Marie Parenti, Director of Fan Relations
and Premium Seating

_Jennifer L. Anderson_
NOTARY PUBLIC SIGNATURE

_Jennifer L. Anderson_
Printed or Typed Name of Notary
Commission No: _23620 LA Bur_

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

EUGENE LIGER, ET AL.                    CIVIL ACTION NO.  05-1969

VERSUS                                  SECTION "C"

NEW ORLEANS HORNETS NBA LIMITED         MAGISTRATE 05
PARTNERSHIP

## DECLARATION OF KRISTY McKEARN

Pursuant to 28 USC § 1746, I, Kristy McKearn, a person at least eighteen years of age, declare under penalty of perjury that the following statements are true and correct and are based on my personal knowledge:

1.      I have been employed by the ("Hornets") since June of 2003, and currently hold the position of Vice President of Business Operations.

2.      I personally know Penny Middleton ("Middleton"), formerly the Director of Personnel/Payroll for the Hornets.

3.      I have reviewed Middleton's Affidavit attached as Exhibit O to Plaintiffs' Memorandum in Support [sic] Motion to Certify a Collective Action Pursuant to § 216(b) of the FLSA and to Approve a Proposed Notification to all Putative Collective Action Members ("Middleton Affidavit 1") and the table attached as Exhibit P to that Motion.



Exhibit
4

4.    I have reviewed Middleton's Affidavit attached as Exhibit B to Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action.

5.    The Middleton Affidavits contain false statements.

6.    I did not prepare Exhibit P.

7.    I did not conduct any investigation into the job responsibilities of any Hornets employees to be used in the preparation of Exhibit P.

8    On or about May 2, 2005, Middleton gave me a table similar to, but not the same as, Exhibit P.

9    In August of 2005, I personally reviewed the documents on the "p:/" drive referenced by Middleton in Paragraph 17 of Middleton Affidavit 1. Although the document Middleton identified as a "table" and referenced as "Exhibit C" in that Affidavit is not attached thereto, as incorrectly stated therein, the only table I located on Middleton's "p:/" drive is the document attached hereto as Exhibit A. The table attached hereto as Exhibit A is the table Middleton previously gave me and bears the following comment by Middleton:

> "This is [sic] my views on the status of each employee based on
> what the State of Louisiana defines as exempted – Penny."

10.    I personally know Chris Stant, formerly an account executive for the Hornets.

11.    I have reviewed Chris Stant's Affidavit attached as Exhibit A to Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action.

12.    Stant's Affidavit contains false statements.

13.    I have never been licensed to practice law in any jurisdiction in the United States, engaged in the practice of law, or represented to the contrary. I have never referred to or represented myself as an "attorney" to any employee of the Hornets.

{N1325518.1}

14.    Stant voluntarily resigned from the Hornets. I conducted his exit interview May 2005 by providing him with a form and requesting that he complete it. He completed the form.  I personally reviewed his exit interview form, wherein he stated that "[t]he Hornets have made the right moves in the past months and moving [sic] in the right direction." He stated he would recommend the Hornets as an employer.

15.    I did not highlight a list of names during Stant's exit interview as alleged in Paragraph 9 of his Affidavit.

16.    I did not make the statements attributed to me by Stant in Paragraph 9 of his Affidavit. At the time of Stant's exit interview, I had no knowledge of this lawsuit against the Hornets, which was not filed until May 27, 2005, when my office was closed.

17.    I did not "confirm" any allegation that any Hornets employee was entitled to overtime pay to Stant.

18.    Stant informed me that he had received a phone call from an attorney about joining the lawsuit.

19.    Stant stated he did not plan to join the lawsuit.

20.    I have not discouraged nor would I discourage Stant or any other former or current employee from participating in such a lawsuit or asserting alleged rights under wage and hour law.

21.    I have not taken or recommended nor would I take or recommend any adverse job action against any employee because of participation in this lawsuit or the assertion of alleged rights under wage and hour law.

22.    I have not threatened any employee with any type of retaliation for participating in this lawsuit, nor would I do so.

Kristy McKearn, Vice President of
Business Operations

Dated:    8/9/2005

| New Orleans Hornets-Annual Salary Report As of August 2004 | | This is my views on the status of each employee based on what the state of LA defines as exempted--Penny |
|---|---|---|
| **Department Head** | **Job Description** | Employees O.T. Status |
| | | |
| **Sam Russo** | | |
| Russo, Sam | Executive Vice President/Business Operations | X-Executive Exemption |
| Spero, Timothy Casey | Director of Technology | X-Executive Exemption |
| Bowles, Christopher J. | IT Support Specialist | X-Computer Exemption |
| Pierce, Ryan | IT Support Specialist | X-Computer Exemption |
| Dippel, Jessica | Director of Promotions & Special Events | X-Executive Exemption |
| Quintana, Cristobal | Special Events Coordinator | **NON-EXEMPT** |
| Richardson, Lyn Joshua | Director of Game Day Operations | X-Executive Exemption |
| Jason Quintero | Promotions and Events Asst | **NON-EXEMPT** |
| Williams, Andrea | Manager/Choreographer | Contracted |
| Felsen, David | Director of Ticket Operations | X- Executive Exempt |
| BeBout, Josua James | Ticket Operations Assistant | **NON-EXEMPT** |
| Brown, Latousha M. | Ticket Operations Assistant | **NON-EXEMPT** |
| Zerrillo, Michael E. | Mascot | Contracted |
| Wyatt, Sean | Mascot Assistant | **NON-EXEMPT** |
| | | |
| | | |
| **Jack Capella** | | |
| Capella, Jack | Executive VP/Chief Operating Officer | X-Executive Exemption |
| Shubert, Phyllis | Assistant to Ray Wooldridge | X-Administrative Exemption |
| Silmon, Meredith | Assistant to George Shinn | X-Administrative Exemption |
| Fitzpatrick, Kristy | Assistant to Jack Capella | X-Administrative Exemption |
| MCGraw, Kevin P. | Chief Pilot | X-Executive Exempt |
| Cobb, James A. | Pilot | less than 40 hours |
| Maschio, Michael N. | Flight Engineer | less than 40 hours |
| O'Connor, Phyllis K. | Flight Attendant | less than 40 hours |
| Newton, Marcia Ann | Flight Attendant | less than 40 hours |
| Davis, Francis H. | Flight Attendant | less than 40 hours |
| | | |
| | | |
| **Kristy McKearn** | | |
| Kristy McKearn | VP Corporate Affairs & Strategic Planning | X-Executive Exemption |
| Brenneman, Douglas Scott | Researcher | X-Administrative Exemption |
| | | |
| | | |
| **John Lee** | | |
| Lee, John | Senior Vice President of Marketing/Sales | X-Executive Exemption |
| Rutherford, Jo Ann | Media Buyer | X-Administrative Exemption |
| Deese, Brian A. | Director of Creative | X-Creative Professional Exempt. |
| Coe, Edward III | Graphic Designer | X-Creative Professional Exempt. |
| Dupree, Christopher J. | Creative Services | X-Creative Professional Exempt. |
| J L Brooks | Mgr. Fan Development Program | X- Executive Exempt |
| Parenti, Marie | Director of Guest Services | X- Executive Exempt |
| Richard Johnson | Fan Development Representative | **NON-EXEMPT** |
| Sumler, Leslie J. | Senior Guest Relations Rep | **NON-EXEMPT** |
| Spruille, Freddie | Fan Development Representative | **NON-EXEMPT** |
| Donohue, Brendan | Director of Ticket Sales | X- Executive Exempt |
| Robinson, William | Ticket Sales Manager(Senior AE's +AE's) | X- Executive Exempt |
| Kreig, Louis | Senior Account Executive | **NON-EXEMPT** |
| Witmeyer, Richard L. | Senior Account Executive | **NON-EXEMPT** |
| Napoli, Melanie A. | Senior Account Executive | **NON-EXEMPT** |
| Kliebert, Ken | Account Executive | **NON-EXEMPT** |

D 1054

iger, et al. v. Hornets

Exhibit A

| Department Head | Job Description | Employees O.T. Status |
|---|---|---|
| **John Lee Continued** | | |
| Vallejos, Julio | Account Executive | **NON-EXEMPT** |
| Carter, Cardell | Account Executive | **NON-EXEMPT** |
| Bryant, William | Account Executive | **NON-EXEMPT** |
| Stant, Chris | Account Executive | **NON-EXEMPT** |
| Steinmetz, Sam | Account Executive | **NON-EXEMPT** |
| Zuniga, Cristina | Office Mgr./Receptionist | **NON-EXEMPT** |
| Burke, David | Inside Ticket Sales Manager | X- Executive Exempt |
| Nash, Adam | Inside Ticket Sales Representative | **NON-EXEMPT** |
| Martin, Tony | Inside Ticket Sales Representative | **NON-EXEMPT** |
| Maxwell, Bryan | Inside Ticket Sales Representative | **NON-EXEMPT** |
| Miller, Robert | Inside Ticket Sales Representative | **NON-EXEMPT** |
| Tipton, Megan | Inside Ticket Sales Representative | **NON-EXEMPT** |
| Liger, Eugene | Inside Ticket Sales Representative | **NON-EXEMPT** |
| Drummond, Garrett | Inside Ticket Sales Representative | **NON-EXEMPT** |
| Chandler, Tyson | Inside Ticket Sales Representative | **NON-EXEMPT** |
| Carter, Chris | Regional Account Executive-MS | X-Outside Sales Exemption |
| Holmes, Lynn | Regional Account Executive-Baton Rouge | X-Outside Sales Exemption |
| Planer-Murray, Mandy | Regional Account Executive-Northshore | X-Outside Sales Exemption |
| Zaber, Christopher L. | Group Sales Manager | X- Executive Exempt |
| Berry, Jessica | Group Sales Executive | **NON-EXEMPT** |
| Granger, Chris | Group Sales Executive | **NON-EXEMPT** |
| Snider, Patricia Bryan | Group Sales Executive | **NON-EXEMPT** |
| DiPizzo, Frank | Group Sales Executive | **NON-EXEMPT** |
| | | |
| **Todd Santino** | | |
| Santino, Anthony Todd | Vice President of Sponsorship Sales | X-Executive Exemption |
| Wyatt, Ward | Manager of Sponsorship Sales | X-Administrative Exempt |
| Hubbell, Nathan | Sponsorship Sales-Account Executive | **NON-EXEMPT** |
| Jones, Robert Chase | Sponsorship Services | **NON-EXEMPT** |
| Whitley, Stacy Lynn | Sponsor Services Coordinator | **NON-EXEMPT** |
| | | |
| **Harold Kaufman** | | |
| Kaufman, Harold | Vice President of Public Relations | X- Executive Exempt |
| Hall, Kenneth Scott | Assistant Director of Public Relations | X-Administrative Exempt |
| Fedders, Kurt T. | Public Relations Assistant | X-Administrative Exempt |
| Rogers, Dennis | Intern | **NON-EXEMPT** |
| | | |
| **Lew Shuman** | | |
| Shuman, Lewis A. | Director of Broadcasting | X- Executive Exempt |
| McGregor, Gilbert | TV Commentator | X-Creative Professional Exempt |
| Harden, Bryan J. | Videographer/Editor | X-Creative Professional Exempt |
| Stewart, Tracey | Broadcast Coordinator | **NON-EXEMPT** |
| Vaillancourt, Gerald E. | Broadcaster | X-Creative Professional Exempt |
| Licht, Robert A. | Radio Play-by-Play | X-Creative Professional Exempt |
| | | |
| **Steve Martin** | | |
| Martin, Steven B. | Senior VP of Communication & Public Affairs | X- Executive Exempt |
| Werdann, Suzanne C. | Vice President of Community Relations | X- Executive Exempt |
| Levine, Meredith | Community Relations Assistant | **NON-EXEMPT** |
| Turner, Victor | Community Relations Assistant | **NON-EXEMPT** |
| Thompson, Michael W. | Director of Public Relations | X-Administrative Exempt |

D 1055

Liger, et al. v. Hornets

| Department Head | Job Description | Employees O.T. Status |
|---|---|---|
| | | |
| **Barbara Booth** | | |
| Booth, Barbara | Vice President of Finance | X- Executive Exempt |
| Yamamura, Frances | Senior Accountant | X-Administrative Exempt |
| Middleton, Penny | Director of Personnel/Payroll | X-Administrative Exempt |
| Johnson, Adrianna F. | Senior Accountant | X-Administrative Exempt |
| Arteaga, Deina | Staff Accountant | X-Administrative Exempt |
| Virgil, Sheryl Deneen | Accounts Payable Associate | X-Administrative Exempt |
| Ford, Shelly Montague | Receptionist | X-Administrative Exempt |
| Morrow, Shawn M. | Inter-office Courier | **NON-EXEMPT** |
| | | |
| | | |
| **Allan Bristow** | | |
| Scott, Byron | Head Coach | Contracted |
| Walker, Darrell | Assistant Coach | Contracted |
| Gattison, Kenny | Assistant Coach | Contracted |
| Cleamons, Jim | Assistant Coach | Contracted |
| Boff, Marc Harris | Strength & Conditioning | less than 40 hours |
| Manson, Jack | Strength & Core Conditioning | less than 40 hours |
| Kofler, Terry | Trainer | X-Creative Professional Exempt |
| Jovanovic, David S. | Equipment Manager | X-Administrative Exempt |
| Johnson, Kory F. | Assistant Equipment Manager | X-Administrative Exempt |
| Bass, Kip E. | College/Pro Scout | Contracted |
| Bass, Kelly E. | College Scout | Contracted |
| Werdann, Robert | College/Pro Scout | Contracted |
| Bass, Bob | Consultant | Contracted |
| Reed, Willis | VP of Basketball Operations | Contracted |
| Bristow, Allan | General Manager | Contracted |
| Bower, Jeff | Assistant General Manager | Contracted |
| LaCaze, JoAnn | Executive Assistant Basketball Operations | **NON-EXEMPT** |
| Hagen, Brian | Video Coordinator | **NON-EXEMPT** |
| Loomis, Andrew H. | Administrative Assistant Basketball Operations | **NON-EXEMPT** |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

D 1056

Liger, et al. v. Hornets

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EUGENE LIGER, ET AL.                    CIVIL ACTION NO. 05-1969

VERSUS                                  SECTION "C"

NEW ORLEANS HORNETS NBA LIMITED         MAGISTRATE 05
PARTNERSHIP

### DECLARATION OF STEVE MARTIN

Pursuant to 28 USC § 1746, I, Steve Martin, a person at least eighteen years of age, declare under penalty of perjury that the following statements are true and correct and are based on my personal knowledge:

1.    I have been employed by the ("Hornets") since August 2002 and currently hold the position of Senior Vice President of Business Development.

2.    I personally know Chris Stant, formerly an account executive for the Hornets.

3.    I have reviewed Chris Stant's Affidavit attached as Exhibit A to Plaintiffs' Motion for Protective Order, Sanctions, and Corrective Action.

4.    Stant's Affidavit contains false statements.

5.    I did not tell any Hornets employee in reference to Stant's participation in this lawsuit that I hope he knows what he is doing or that I am worried about his participation in this lawsuit.

6.    I have not recommended nor would I take or recommend any adverse job action against any employee because of participation in this lawsuit or the assertion of alleged rights under wage and hour law.

7.    I have not discouraged nor would I discourage any employee from participating in such a lawsuit or asserting alleged rights under wage and hour law.

{N1325518.1}

Exhibit
5

8.    I have not threatened any employee with any type of retaliation for participating

in this lawsuit, nor would I do so.

_Steve Martin_

Steve Martin, Senior Vice President of
Business Development

_Jennifer L. Anderson_
NOTARY PUBLIC SIGNATURE

_Jennifer W. Anderson_
Printed or Typed Name of Notary
Commission No: _23620 LA Bar_

<div align="center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

</div>

EUGENE LIGER, ET AL.          CIVIL ACTION NO. 05-1969

VERSUS          SECTION "C"

NEW ORLEANS HORNETS NBA LIMITED          MAGISTRATE 05
PARTNERSHIP

<div align="center">

**DECLARATION OF BARBARA BOOTH**

</div>

Pursuant to 28 USC § 1746, I, Barbara Booth, a person at least eighteen years of age, declare under penalty of perjury that the following statements are true and correct and are based on my personal knowledge:

1.     I was employed by New Orleans Hornets NBA Limited Partnership ("Hornets") from January 2003 until April 2005, and last held the position of Vice President of Finance or Chief Financial Officer.

2.     I personally know Penny Middleton ("Middleton"), formerly the Director of Personnel/Payroll for the Hornets during the time I served as Vice President of Finance.

3.     I have reviewed Middleton's Affidavit attached as Exhibit O to Plaintiffs' Memorandum in Support [sic] Motion to Certify a Collective Action Pursuant to § 216(b) of the FLSA and to Approve a Proposed Notification to all Putative Collective Action Members ("Middleton Affidavit 1"), and the table attached as Exhibit P to that Motion.

Exhibit
6

4.    I have reviewed Middleton's Affidavit attached as Exhibit B to Plaintiffs' Motion for

Protective Order, Sanctions, and Corrective Action. ("Middleton Affidavit 2").

5.    The Middleton Affidavits contain false statements.

6.    I did not prepare Exhibit P.

7.    I did not conduct any investigation into the job responsibilities of any Hornets employees

to be used in the preparation of Exhibit P.

8.    I personally attended the seminar referenced by Middleton in Paragraph 28 of Middleton

Affidavit 1. Neither the materials nor the speakers addressed whether the amusement and

recreation exemption or the retail sales exemption to the Fair Labor Standards Act applies to the

Hornets. The materials relating to the FLSA portion of the seminar bear the following disclaimer

in capital letters:

> THIS OUTLINE IS FOR INFORMATIONAL PURPOSES ONLY. IT IS NOT
> DESIGNED TO RENDER ANY LEGAL OR PROFESSIONAL ADVICE.
> THESE WRITTEN MATERIALS SHOULD NOT BE USED AS A
> SUBSTITUTE FOR PROFESSIONAL SERVICES. IF LEGAL OR
> PROFESSIONAL ADVICE IS NEEDED, PLEASE CONSULT WITH YOUR
> ATTORNEY OR PROFESSIONAL ADVISOR.

9.    I did not receive legal advice from any attorney at the seminar as to whether the Hornets

were exempt from the FLSA or whether the Hornets had any obligation to pay overtime under

the FLSA.

10.    I did not give Middleton the instructions stated in Paragraphs 32 and 33 of Middleton

Affidavit 1.

11.    Middleton reported to me when she was the Director of Personnel/Payroll.

12.    I defined Middleton's job duties when she held that position.

13.    Middleton did not have the responsibility or authority as Director of Personnel/Payroll to express or adopt any opinion on behalf of the Hornets as to its status or obligations under any laws, including federal wage and hour laws.

14.    Middleton was permitted to offer her personal views regarding such matters.

_____
Barbara Booth

Dated:    _8/9/2005_____

<div align="center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

</div>

**EUGENE LIGER, ET AL.**                    **CIVIL ACTION NO.  05-1969**

**VERSUS**                                  **SECTION "C"**

**NEW ORLEANS HORNETS NBA LIMITED**         **MAGISTRATE 05**
**PARTNERSHIP**

<div align="center">

**DECLARATION OF SAM RUSSO**

</div>

Pursuant to 28 USC § 1746, I, Sam Russo, a person at least eighteen years of age, declare under penalty of perjury that the following statements are true and correct and are based on my personal knowledge:

1.      I have been employed by the New Orleans Hornets NBA Limited Partnership ("Hornets") since August of 1988, and currently hold the position of Senior Vice President of Special Projects.

2.      I personally know Penny Middleton ("Middleton"), formerly the Director of Personnel/Payroll for the Hornets.

3.      I have reviewed the table attached as Exhibit P to Plaintiffs' Memorandum in Support [sic] Motion to Certify a Collective Action Pursuant to § 216(b) of the FLSA and to Approve a Proposed Notification to all Putative Collective Action Members.

Exhibit
7

4.      I did not prepare Exhibit P.

5.      I have not taken or recommended nor would I take or recommend any adverse job action against any employee because of participation in this lawsuit or the assertion of alleged rights under wage and hour law.

6.      I have not discouraged nor would I discourage any employee from participating in such a lawsuit or asserting alleged rights under wage and hour law.

7.      I have not threatened any employee with any type of retaliation for participating in this lawsuit, nor would I do so.

_____
Sam Russo, Senior Vice President of Special
Projects

Dated: _____8/9/05_____