# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EUGENE LIGER, ET AL.** | **CIVIL ACTION NO. 05-1969** |
| **Plaintiffs in a Collective Action** | **SECTION C** |
| **VERSUS** | **MAGISTRATE 05** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | |
| **Defendant** | |

FILED:_____

_____
DEPUTY CLERK

### PLAINTIFFS' REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION TO MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION

MAY IT PLEASE THE COURT

Plaintiffs filed the instant Reply Memorandum to Defendant's Opposition to Motion to Conditionally Certify, to-wit:

**I. THE HORNETS CONFIRMED IN WRITING TO MAGISTRATE CHASEZ THAT THEY WITHDREW THEIR OPPOSITION TO CERTIFICATION OF THIS COLLECTIVE ACTION AT THIS STAGE OF THE PROCEEDINGS.**

On August 2, 2005, counsel met with Magistrate Alma Chasez to discuss discovery issues related to Plaintiffs' Protective Order and the Motion to Conditionally Certify the Class set for August 17, 2005. Plaintiffs requested documents on an expedited basis to address various issues that might arise in connection with these motions. During the August 2, 2005 hearing, counsel for the Hornets repeatedly confirmed that the Hornets would not raise the Amusement and Recreational Enterprise Exemption and/or the Retail Sales Establishment Exemption in any of the motions before

N0020518.WPD

the court on August 17, 2005. Magistrate Chasez specifically and directly asked counsel for the

Hornets to confirm that the Hornets would not raise any exemption arguments in their opposition.

Counsel for the Hornets again confirmed that the Hornets would not claim that the team was exempt

from the FLSA in its opposition to any of the pending motions. Accordingly, Magistrate Chasez

made the following minute entry on August 2, 2005:

> The Court this date took up the motion filed by plaintiffs to receive expedited responses to requests for production.
>
> That motion is DENIED as to the following item numbers: 1, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 24, and 26. **It is the understanding of the Court that defense counsel will not claim at the hearing scheduled for August 17th before the District Judge, that defendant is exempt from the provisions of the FLSA, although this will be a defense at other stages of the proceedings**.

See August 2, 2005 Order of Magistrate Chasez, attached as Exhibit "A". Defendant's opposition

memorandum directly violated this Order no fewer than three times.[1]

On August 12, 2005, Magistrate Chasez conducted a telephone conference with counsel to

discuss the Hornets' multiple violations of the Court's August 2, 2005 Order. During this conference,

counsel for the Hornets stated that the Hornets were not opposing Plaintiffs' Motion to Conditionally

Certify this collective action. Magistrate Chasez ordered the Hornets to set forth in writing their

withdrawal of opposition to Plaintiffs' Motion to Certify. Attached as Exhibit B is the

---

[1] In the introductory paragraph of Defendant's Opposition to the Motion to Conditionally Certify the Collective Action, the Hornets make the following statement:

> ... The Defendant, New Orleans Hornets NBA Limited Partnership ("Hornets"), which is an amusement and recreational enterprise and a retail sales establishment that is exempt from the requirements of the Fair Labor Standards Act ("FLSA") ...

See Defendant's Opposition Memorandum, page 1. Again, on page 3 of Defendant's Opposition memorandum, the Hornets alleged that they are not obligated to pay overtime because it is allegedly an exempt organization. Furthermore, the Hornets attempted to insert language into the Notice to Prospective Class Members expressly stating that the team is covered by various exemptions.

correspondence sent by the Hornets at the direction of Magistrate Chasez.

Accordingly, the sole issue pending before the Court is whether the Hornets should be allowed to prevent numerous employees who are owed overtime compensation from receiving notice of their rights to assert a claim in this overtime litigation. Thus, although the Hornets "...do not object to conditional certification or issuance of notice at this time..." the Hornets seek to prevent this Court from notifying all potentially non-exempt employees that the Hornets failed to pay overtime compensation for the overtime worked by these employees. The Hornets clearly intend to deny and/or delay notification of prospective plaintiffs who are entitled to receive overtime compensation for the team's own procedural and economic advantages.

II.    **NO DOCUMENTATION SUPPORTS THE HORNETS OBJECTIONS TO NOTIFICATION OF ALL NON-EXEMPT EMPLOYEES**.

The Hornets either do not have any documentation supporting their objections to Plaintiffs' class definition or the Hornets are in further violation of Magistrate Chasez' August 2, 2005 Order. During the status conference conducted by Magistrate Chasez on August 2, 2005, the Court made the following ruling:

> The information sought in items 24 and 28 shall be produced by Monday, August 8, 2005; all other items for which production has been ordered shall be produced before Friday, August 5, 2005. **In addition, defendant has agreed that any documents which it will use at the hearing scheduled before the District Judge on August 17, 2005 will be produced on or before Friday, August 5th.**

See Exhibit A, at page 3. The only documentation produced by the Hornets in connection with this Order were incomplete copies of the employee files of each of the named Plaintiffs. The Hornets produced no documentation supporting any of the arguments set forth in their opposition based on the allegedly "overbroad" definition of the class and produced no definition distinguishing Plaintiffs

from any other category of non-exempt employee working for the team. The Hornets must be prohibited from relying on any facts or documents other than those produced to Plaintiffs prior to this hearing. Accordingly, this Court must take judicial notice of the fact that there exists <u>no</u> <u>documents</u> supporting the Hornets' objections to Plaintiffs' class definition or supporting the Hornets' proposed class definition. In fact, the only documents produced by the Hornets support plaintiffs' position.

III.    **DOCUMENTS PREPARED BY THE HORNETS DIRECTLY SUPPORT PLAINTIFFS' CLASS DEFINITION**.

There is no dispute that the Hornets prepared a document identifying numerous categories of employees entitled to overtime compensation. Plaintiffs have asked the court to notify all prospective non-exempt employees who worked overtime without payment of overtime compensation to be notified by the Court of their rights under the Fair Labor Standards Act ("FLSA"). Plaintiffs submitted an affidavit from the Hornets' former Director of Personnel/Payroll, Penny Middleton, confirming that she and other Hornets executives evaluated the classifications of employees identified in Exhibit M attached to the Motion to Certify.[2] The Hornets executives and personnel discussed overtime compensation of employees entitled to overtime. The Hornets elected not to pay overtime to all non-exempt employees. **The Hornets have admitted that the team prepared this document.** Plaintiffs are representative of the employees identified as non-exempt by the Hornets. Thus, as a matter of law, Plaintiffs have satisfied their burden for defining the class.

The Hornets have presented no analysis or rational basis upon which this Court should distinguish plaintiffs from other non-exempt employees. Interestingly, Defendant's objections

---

[2]Ms. Middleton's Affidavit, previously attached as Exhibit "O", is resubmitted herein as Exhibit "O" to incorporate and attach Exhibits "A" through "C" referred to therein.

revolve around which high ranking employee prepared Exhibit M, not whether a high ranking

employee prepared exhibit M. Defendant concedes that, at a minimum, the document was prepared

by the Director of Personnel/Payroll of the New Orleans Hornets.[3] Any suggestion to the Court that

a Director of Human Resources is not allowed to evaluate the job descriptions and/or overtime status

of an employee during the routine performance of her duties is absurd.

**As a matter of law, it is irrelevant to the definition of the class whether the Court**

**accepts the facts of Plaintiffs or Defendant regarding Exhibit "M".** If the Court fully accepts

the version of events underlying the preparation of this document set forth by the Hornets, the Court

must make the following findings supporting the class definition propounded by Plaintiffs:

1) the Director of Personnel/Payroll for the New Orleans Hornets prepared Exhibit M.

2) the Director of Personnel/Payroll for the New Orleans Hornets classified the following categories of employees as non-exempt: Special Events Coordinator; Promotions and Events Assistant; Ticket Operations Assistants; Mascot Assistants; Fan Development Representatives; Senior Guest Relations Representatives; Senior Account Executives; Account Executives; Receptionists; Inside Ticket Sales Representatives; Group Sales Executives; Sponsorship Sales Account Executive; Sponsorship Services; Sponsor Services Coordinator; Public Relations Intern; Inter-Office Courier; Executive Assistant Basketball Operations; Video Coordinator; and Administrative Assistant Basketball Operations.

3) No documents, minutes of meetings, e-mails, or other documents were prepared by the Hornets objecting to, rejecting, or otherwise criticizing the classifications made by the Director of Personnel/Payroll when Exhibit M was presented to Hornets executives.

4) Regardless of who prepared the document, Sam Russo and Barbara Booth do not deny that they received, reviewed, and/or discussed the contents of Exhibit M.

5) Prior to the creation of Exhibit M, the Hornets had a policy whereby they refused to

---

[3] The self serving denials of Barbara Booth, Sam Russo, and Kristy McKearn regarding the preparation of this document do not absolve the team of the fact that, under their version of events, the Director of Personnel and Payroll prepared this document.

pay overtime to any and all employees.

6)    The Hornets had no system for tracking overtime hours.[4]

7)    Following the creation of Exhibit M, the Hornets still refused to pay of its employees overtime.

The Hornets did not pay overtime compensation earned by the employees designated as non-exempt on Exhibit M. Moreover, if the Hornets refuse to pay overtime when one of its executives and/or director of human resources created a documents classifying employees as non-exempt and entitled to overtime, how can we trust that other employees listed as exempt are not in fact non-exempt?

The Hornets have proposed a class definition that is so limiting that it would possibly exclude current Plaintiffs. Defendants agree that, at a minimum, the class definition should include current and former employees of the Hornets who held or hold the positions of:  Fan Relations Representative, Sales Account Executive, Inside Sales Representative, Regional Sales Account Executive, Group Sales Account Executive, Receptionist, and Ticket Operations Assistant.

The Hornets' proposed designation ignores multiple "job name" changes that the Hornets have implemented that would, under Defendant's notice, exclude Leslie Sumler, a current plaintiff who worked as a "Fan Development" representative during her tenure with the Hornets - the former title of Fan Relations Employees. Hence, the Hornets' definition is unreliable and unduly restrictive.

The Hornets' proposed designation would exclude secretaries or assistants like Amy Nicole Smith, another name used by the Hornets to describe receptionist duties.

---

[4] Magistrate Chasez ordered the Hornets to produce copies of "any and all documents describing, discussing, or setting forth Hornets' overtime policies, practices and procedures since 2002, including, but not limited to, Hornet policies, procedures, practices, and/or controls in place to track the overtime worked by non-exempt employees." The Hornets produced no policies, procedures, practices and/or controls in response to this request for production, referring plaintiffs only to the personnel files of the various plaintiffs that contained no policies, procedures, practices and/or controls.

The Hornets' proposed designation would excluded other sales representatives not expressly identified by sub-sales classifications, despite overwhelming evidence suggesting that there was an institutional crossover amongst the various categories of sales persons. The Hornets' proposed definition attempts to eliminate suite sales persons and corporate and sponsorship sales employees, although most sales personnel were permitted to engage in sales of suites and in sponsorship. Moreover, the Hornets unreasonably restrictive distinction purposefully excludes the following numerous positions listed on Exhibit "M" as non-exempt: Special Events Coordinator, Promotions and Events Assistant, Mascot Assistant, Fan Development Representative, Guest Relations Representative, Senior Account Executive, Sponsorship Sales Account Executive, Sponsors Services Coordinator, Intern, Broadcast Coordinator, Community Relations Assistant, Inter-Office Courier, Video Coordinator, Administrative Assistant Basketball Operations. **It is absurd for defendant to argue that the non-exempt representative plaintiffs do not have a factual nexus connecting them to the other employees already classified as non-exempt by the Hornets.** Clearly, the Hornets' attempt to limit the class is merely an attempt to permanently withhold the overtime compensation owed to Hornets' employees.

## IV.    PLAINTIFFS HAVE SHOWN AN IDENTIFIABLE NEXUS WITH PROPOSED CLASS MEMBERS AND PLAINTIFFS HAVE REQUESTED A REASONABLE NOTICE.

Plaintiffs are required to show "some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged" violation. Heagney v. European AM Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) as cited on the 6th page of defendants' brief. Plaintiffs have satisfied this burden, proving that all potential class members are bound by the following facts:

1.    Employment by the Hornets in Louisiana;

2.    Forced to work more than 40 hours a week;

3.    Not paid overtime;

4.    Non-exempt under the FLSA.

These four facts are sufficient to establish the requisite nexus, as described by <u>Heagney</u>. Based on the pleadings, Affidavits, and documentation produced by the Hornets, plaintiffs have proven that notice should be given to potential collective action members that includes all current and former employees who worked longer than 40 hours during a workweek but who did not receive overtime compensation.  <u>See Mooney v. Ramco Services Co.</u>, 54 F. 3d. 1207 (5th Cir. Texas 1995).

Plaintiffs proposed notice is almost identical to the notice approved by Judge Barbier in <u>Donohue v. Francis Services, Inc.</u>, 2004 WL 1161366 (ED La. 5/24/04)  and by Magistrate Wilkinson in <u>Camp v. The Progressive Corp.</u>, 2002 WL 31496661 (ED La. 2002). The Hornets have cited no law or facts in support of their "overbroad" contention.

At all relevant times, the Hornets did not track the hours worked by Hornets employees; did not limit employees to 40 hour work weeks; required employees to attend out-of-office functions; and paid no employees who worked more than 40 hours a week overtime compensation.  In short, the Hornets made no attempt to comply with the FLSA since the team moved to New Orleans in 2002. Accordingly, plaintiffs must be entitled to notify any and all employees of the Hornets who worked over 40 hours a week and were not paid overtime that they may in fact have an overtime claim.  If in fact an employee and/or former employee of the Hornets receives a notice of the collective action, contacts counsel for plaintiffs, and after due diligence, counsel for plaintiffs determine that the employee/former employee is an exempt employee, then that employee/former

employee will not remain as a member of the collective action.

The Hornets correctly note that the Court in <u>Camp</u> mandated that the paragraph referring to retaliation and/or discrimination by the defendant was to be written in "ordinary type". However, there were no allegations of retaliation and/or discrimination against the defendant in <u>Camp</u>, as there are such allegations in the instant matter. Hence, highlighting the section informing the plaintiffs that the Hornets may not retaliate and/or discriminate against them from joining the lawsuit is warranted in the instant matter given the prior actions of retaliation and discrimination already undertaken by the Hornets thus far.

The 120 day period for potential plaintiffs to file consent forms is reasonable, especially in light of Defendants' threats and intimidation of current employees. Moreover, this Court in <u>Camp</u> allowed 120 days for potential plaintiffs to join the collective action. In light of the tactics employed by the Hornets to encourage prospective Plaintiffs from joining this litigation, a 120 day notice period is not unreasonable.

## V.   **DEFENDANT CANNOT BE ALLOWED TO DISCOURAGE PLAINTIFFS FROM JOINING THE SUIT THROUGH THE INCLUSION OF UNPROVEN DEFENSES IN THE NOTICE.**

This Court should be guided by the notices approved by this Court in <u>Donohue</u> and <u>Camp</u> that allowed the defendants to state that they deny plaintiffs' allegations and maintain that their employees were properly compensated and that the defendant complied with the Fair Labor Standards Act. In both <u>Donohue</u> and <u>Camp</u>, the defendants were not allowed to describe any of their defenses.

Defendant must be prevented from including any reference to unproven defenses in the Notice. Defendants represented to Magistrate Chasez that the Hornets would not claim that the team

was exempt from the FLSA during this proceeding. Plaintiffs were denied access to documents that would disprove the applicability of any exemptions asserted by the Hornets, because the Hornets asserted that any defenses would not be a part of this Motion. As was previously discussed, Defendant then submitted arguments and a proposed notice that seeks to include language identifying the specific exemptions claimed by the team. Defendant should not be allowed to achieve a procedural advantage because defendant now wants to assert these defenses without Plaintiffs receiving any relevant documentation..

Moreover, Defendant has cited no cases permitting any defendant to discuss its defenses in a Notice to prospective plaintiffs. This is most likely because a Defendant in an overtime suit is not harmed by the exclusion of the possible defenses in a notice. The defendant is permitted to raise these defenses later in the litigation after prospective plaintiffs learn of the claim. It is likely that Courts sought to prevent an unknowledgeable and unrepresented plaintiff employed by a defendant from abandoning potential legal rights and remedies based on an erroneous interpretation of legal defenses merely suggested by the employer. Including the defenses in the notice serves no practical purpose other than to afford Defendant yet another opportunity to intimidate or dissuade prospective Plaintiffs from asserting their overtime rights.

Respectfully submitted, this _15_ day of _August_____, 2005.

_____
**STEWART E. NILES, JR. (10004)**
**DANIEL E. BURAS, JR. (26226)**
**LAWRENCE J. CENTOLA (27402)**
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
Attorneys for Plaintiffs

**and**

**ALAN F. KANSAS (27725)**
Kansas & Kansas, L.L.C.
1743 Stumpf Blvd., Suite 200
Gretna, LA 70054-1330
Co-Counsel for Plaintiff, Samuel Tobias Steinmetz

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has this day been faxed or mailed, postage prepaid and properly addressed, to all counsel of record in these proceedings, this 15th day of August, 2005.

_____

N0020518.WPD

MINUTE ENTRY
CHASEZ, M.J.
AUGUST 2, 2005

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EUGENE LIGER, ET AL.

VERSUS

NEW ORLEANS HORNETS NBA
LIMITED PARTNERSHIP

CIVIL ACTION

NUMBER: 05-1969

SECTION: "C"(5)

A status conference was conducted in the above matter this date.

PRESENT:  Stewart Niles, Jr., Daniel Buras, Jr., Jane Heidingsfelder, Jennifer Anderson

The Court this date took up the motion filed by plaintiffs to receive expedited responses to requests for production.

That motion is DENIED as to the following item numbers: 1, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 23 and 26. It is the understanding of the Court that defense counsel will not claim at the hearing scheduled for August 17th before the District Judge, that defendant is exempt from the provisions of the FLSA, although this will be a

MJSTAR: 1 : 30

*A*

___ Fee_____
___ Process_____
___ Dktd_____
___ CtRmDep_____
___ Doc. No._____

defense at other stages of the proceedings.

The motion is GRANTED as to the following item numbers: 2, 3, 5, 15, 16, 20, 21, 22, 24, 25, 28, 29 and 30.

As to item 17, defendant is to provide any policy which might exist explaining why the Hornets failed to maintain records of hours worked by non-exempt employees.

As to item 18, the information sought in items (a) through (h) is to be produced but defendant is relieved of the obligation of producing the information sought in item (i). This information shall be exchanged subject to a protective order. Should the parties be unable to agree upon such a protective order, the Court shall be notified.

As to item 19, defendant is to produce all time and earnings cards or sheets, wage rate tables, work time schedules, or orders for each of the identified plaintiffs.

As to item 27, any memorandum or other written communication wherein management communicated to employees information pertaining to overtime shall be produced.

The information sought in items 24 and 28 shall be produced by Monday, August 8, 2005; all other items for which production has been ordered shall be produced on or before Friday, August 5, 2005. In addition, defendant has agreed that any documents which it will use at the hearing scheduled before the District Judge on August 17th will be produced on or before Friday, August 5th.

2

To the extent that the Court has declined to order defendant's response on an expedited basis to plaintiffs' requests, those requests are DENIED WITHOUT PREJUDICE. It is the understanding of the Court that plaintiffs intend to re-work and re-propound another set of discovery to defendant shortly.

The Court advised the parties that depositions will be scheduled after all written discovery has been exchanged. Plaintiffs are to issue whatever additional discovery they intend to propound on or before August 10th. Defendant is to file objections thereto on or before August 15th. Any party not receiving answers to written discovery in a timely fashion are instructed to immediately file the appropriate motion to compel.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

3



# JONES WALKER

# FACSIMILE

| | | | |
|---|---|---|---|
| **From:** | Jennifer L. Anderson | **Date:** | August 12, 2005 |
| **Direct Dial** | 504-582-8414 | **Reference:** | 105190-00 |

**Number of pages being transmitted including the cover page:  3**

| TO | Fax No. | Phone No. |
|---|---|---|
| Honorable Alma L. Chasez<br>USDC for the Eastern District of Louisiana | 589-7613 | |
| **CC:** | | |
| Stewart Niles | 310-8595 | |

**Message/Document(s) faxed:**

**Please call us if all pages are not received at 582-8395.**

ORIGINAL DOCUMENTS:  Will follow by ☐ mail ☐ courier – OR - ☒ Will not follow unless requested.



**CONFIDENTIALITY NOTE:** The documents accompanying this facsimile transmission contain information which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone to arrange for return of the original documents to us.

{N1325232.1}    JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 ST. CHARLES AVENUE ● NEW ORLEANS, LOUISIANA 70170-5100 ● 504-582-8000 ● FAX 504-582-8583 ● E-MAIL info@joneswalker.com ● www.joneswalker.com
BATON ROUGE    HOUSTON    LAFAYETTE    MIAMI    NEW ORLEANS    WASHINGTON, D.C.



# JONES
# WALKER

Jennifer L. Anderson
Direct Dial 504-582-8414
Direct Fax 504-589-8414
janderson@joneswalker.com

August 12, 2005

**Via Facsimile to 589-7613**
The Honorable Alma L. Chasez
United States District Court
Eastern District of Louisiana
501 Magazine Street
B347 Hale Boggs Federal Building
New Orleans, Louisiana 70130

   Re: Liger, et al. v. New Orleans Hornets
     USDC, Eastern District of Louisiana, Case No. 05-1969 "C" 5
     Our File No. 105190-00

Dear Judge Chasez:

   In accordance with the telephone conference conducted today at Plaintiffs' counsel's request, I am submitting the following language approved by Defendant to reiterate, or clarify for Plaintiffs' counsel's benefit, its position concerning Plaintiffs' pending Motion to Conditionally Certify a Collective Action Pursuant to § 216(b) of the FLSA, *et al.,* set for hearing before Chief Judge Berrigan on August 17, 2005:

    Defendant disputes that Plaintiffs have carried or can carry their burden of proving entitlement to conditional certification of this action under § 216(b) of the FLSA. While Defendant does not object to conditional certification or the issuance of a notice at this time, it reserves all objections and rights to challenge the certification of this action until after appropriate discovery has been conducted. At this time, Defendant opposes the class definition(s) and notice proposed by Plaintiffs (on the grounds stated in Defendant's Opposition, Rec. Doc. 26), and submits that the Court, if it approves conditional certification and the issuance of a notice at this time, should adopt the Defendant's class definition and notice attached as Exhibit 1 to its Opposition.

   In this language, we have accounted for the possibility that the Court may have, and certainly is entitled to raise, any objections of its own to conditional certification and notice, and the terms and conditions thereof.

{N1327712.1}

JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 ST. CHARLES AVENUE ● NEW ORLEANS, LOUISIANA 70170-5100 ● 504-582-8000 ● FAX 504-582-8583 ● E-MAIL info@joneswalker.com ● www.joneswalker.com

BATON ROUGE  LAFAYETTE  NEW ORLEANS  WASHINGTON, D.C.

Letter to Judge Chasez
August 12, 2005
Page 2

      If you have any questions or if we can provide any additional information, please do not hesitate to call upon me.

                      Very truly yours,

                      Jennifer L. Anderson


cc:    Mr. Stewart E. Niles (via fax to 310-8595)

{N1327712.1}

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

EUGENE LIGER, ANTHONY "TONY"
MARTIN, ADAM NASH, JESSICA
BERRY, CHRIS CARTER, MARCY
PLANER MURRAY, SAMUEL TOBIAS
STEINMETZ, CHRIS STANT, and
LESLIE SUMLER

**Plaintiffs in a Collective Action**

CIVIL ACTION NO. 05-1969

SECTION C

MAGISTRATE 05

VERSUS

NEW ORLEANS HORNETS NBA
LIMITED PARTNERSHIP

**Defendant**

FILED:_____

_____

DEPUTY CLERK

### AFFIDAVIT OF PENNY MIDDLETON FOR ATTACHMENT
### TO PLAINTIFFS' MOTION TO CERTIFY

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

  **BEFORE ME**, the undersigned notary, personally came and appeared:

### PENNY MIDDLETON

who after being duly sworn, did depose and state:

1.    I am a person of the full age of majority and reside in Metairie, Louisiana.

2.    I have personal knowledge of the facts and circumstances described herein.

3.    In December, 2003, I was hired by the New Orleans Hornets (hereinafter the "Hornets") to

    be the Director of Personnel/Payroll.

N0019861.WPD



4.    On or about April 29, 2005, I tendered my resignation as the Hornets' Director of Personnel/Payroll.

5.    My last day of employment with the Hornets was May 13, 2005.

6.    Throughout my tenure as Director of Personnel/Payroll, the Hornets regularly and consistently required employees to work in excess of a forty hour work week without being paid overtime wages. This included fan relations employees, sales employees, receptionists, and numerous other categories of employees.

7.    I cannot think of any categories of non-exempt employees who were not required to work during Hornets home games.

8.    The Hornets' failure to pay overtime to non-exempt employees is an organizational wide problem that the team knew about, but refused to address. The Hornets refused to pay overtime compensation to its employees during my tenure with the Hornets.

9.    When I first became the Director of Personnel/Payroll, the Hornets did not have personnel records for any employees. I was forced to recreate personnel records based on the information available.

10.    The records I inherited as Director of Personnel/Payroll did not show that any Hornets' employees received proper overtime compensation prior to my employment with the team.

11.    It is my understanding that the hours worked by a "non-exempt" employee in excess of forty hours during a work week are "overtime hours".

12.    It is my understanding that non-exempt employees are entitled to overtime compensation equal to one and one half of their regular pay for all overtime hours worked.

13.  In the summer of 2004, I provided Sam Russo, the Hornets' Executive Vice President of Business (hereinafter "Russo"), and my boss, Barbara Booth, with materials I received about overtime compensation that might be owed to Hornets' employees. (See attached Exhibit "A").

14.  After I provided these materials to Booth and Russo, I provided Barbara Booth with a list of all Hornets employees

15.  In August of 2004, Russo provided me with a table identifying each employee then working for the Hornets with a label of "exempt" or "non-exempt" next to each employee setting forth their overtime exemption status. Employees with the word "non-exempt" in the far right hand column in this document are the employees that the Hornets knew were entitled to overtime compensation. (See attached Exhibit "B).

16.  I saved a copy of the document provided to me by Russo and Booth identifying numerous Hornets employees as non-exempt workers to my hard drive. (See attached Exhibit "C").

17.  On May 13, 2005, my last date of employment with the Hornets, Exhibit C was located on the "P" drive on the computer that I used in my office.

18.  I was told my Russo and/or Booth that Booth, Russo, John Lee, and Kristy McKearn prepared the document based on their investigation of job responsibilities of Hornets employees.

19.  I requested a copy of any information or documents relied upon by the Hornets regarding the various job duties of the employees because I had no written description of any job duties in my records.

20.  I was never provided with this documentation or information.

21.    In Exhibit B, the following employees were identified as non-exempt employees entitled to

overtime pay:

A.    Cristobal Quintana;
B.    Jason Quintero;
C.    Josua James BeBout;
D.    Latousha M. Brown;
E.    Sean Wyatt;
F.    Richard Johnson;
G.    Leslie J. Sumler;
H.    Freddie Spruille;
I.     Louis Krieg;
J.    Richard Witmeyer;
K.    Melanie Napolie;
L.    Ken Kliebert;
M.    Julio Vallejos;
N.    Cardell Carter;
O.    William Bryant;
P.    Chris Stant;
Q.    Sam Steinmetz;
R.    Cristina Zuniga;
S.    Adam Nash;
T.    Tony Martin;
U.    Bryan Maxwell;
V.    Robert Miller;
W.    Megan Tipton;
X.    Eugene Liger;
Y.    Garrett Drummond;
Z.    Tyson Chandler;
AA.    Jessica Berry;
BB.    Chris Granger;
CC.    Patricia Bryan Snider;
DD.    Frank DiPizzo;
EE.    Nathan Hubbell;
FF.    Robert Chase Jones;
GG.    Stacy Lynn Whitley;
HH.    Dennis Rogers;
II.    Tracey Stewart;
JJ.    Shawn M. Morrow;
KK.    JoAnn Lacaze;
LL.    Brian Hagen;, and
MM.    Andrew H. Loomis.

4

22.    I agree that each of these employees are entitled to overtime compensation.

23.    In Exhibit B prepared by Booth, Russo, and Lee, all Hornets' employees with the
following job titles were designated as non-exempt workers entitled to overtime pay:

A.    Special Events Coordinator;
B.    Promotions and Events Assistant;
C.    Ticket Operations Assistants;
D.    Mascot Assistants;
E.    Fan Development Representatives;
F.    Senior Guest Relations Representatives;
G.    Senior Account Executives;
H.    Account Executives;
I.    Receptionists;
J.    Inside Ticket Sales Representatives;
K.    Group Sales Executives;
L.    Sponsorship Sales Account Executive;
M.    Sponsorship Services;
N.    Sponsor Services Coordinator;
O.    Public Relations Intern;
P.    Inter-Office Courier;
Q.    Executive Asssistant Basketball Operations;
R.    Video Coordinator; and
S.    Administrative Assistant Basketball Operations.

24.    I agree that each of these job categories are non-exempt and are entitled to overtime
compensation.

25.    After the Hornets identified to me the names of individuals who should receive
overtime compensation, I was not authorized to pay overtime to these non-exempt
employees.

26.    During conversations about overtime pay, Sam Russo admitted to me that the
Hornets were obligated to pay the aforementioned employees for overtime worked,
but that the Hornets wanted to give the employees time off rather than paying

overtime compensation. Russo told me that this is how the Hornets handled overtime while the team was in Charlotte.

27.   I repeatedly requested that the Hornets' track, record, and monitor the hours worked by non-exempt employees. My efforts were rebuffed by the Hornets.

28.   In or around October of 2004, Booth and I attended a wage and hour law seminar sponsored by Hibernia. The speakers at this seminar included members, partners, associates, and/or employees of Jones Walker.

29.   During this seminar, the attorney lecturers provided materials and information confirming that the persons designated as "non-exempt" employees by Booth, Russo and Lee in August of 2004 were entitled to overtime compensation. (See attached Exhibit "D")

30.   Materials received during this seminar indicate that an attorney named Sid Lewis prepared the documents confirming that the Hornets should have paid overtime compensation to its employees.

31.   After the conference, I again requested that the Hornets authorize me to pay overtime compensation to non-exempt employees. I was again denied authority to pay overtime compensation to non-exempt employees.

32.   I was instructed by Booth, Russo, and other Hornets executives that I was to tell any employees who inquired about overtime to track their own hours.

33.   I was told by the Hornets not to notify employees of their right to receive overtime pay unless the employees approached me about this subject.

34.    Even if an employee approached me about overtime pay, I was not given permission to pay the employee any overtime.

35.    I am aware that other directors, executives, and managers were angered by my insistence that the Hornets pay employees for overtime, including Brendan Donohue, the Director of Ticket Sales.

36.    One fan relations employee was ultimately paid for a small portion of the overtime that she worked, but was fired less than one month after she received her overtime pay. This employee is named Leslie Sumler.

37.    At or around the same time that Leslie Sumler first requested overtime, other employees in the Fan Relations department also sought overtime hours.

38.    All requests for overtime from the fan relations department stopped after Leslie Sumler was fired.

39.    After several months of pressing the need for the team to pay overtime to its employees, management began denying my requests with more consternation and disapproving comments. It became apparent that my job might be in jeopardy if I continued to request that the Hornets pay overtime compensation.

40.    Despite my concerns for job stability, I continued to advise employees who approached me that they should keep track of their overtime hours.

41.    I advised various fan relations employees that they should track their overtime hours and submit them to their manager.

42.    I provided Latousha Brown with a form to track her overtime hours in October of 2004.

7

43. I provided at least one inside salesperson with documents to enable the employees to track their overtime hours.

44. I instructed the inside sales employee(s) to track their overtime on the documents and to provide the document with overtime information to their manager, director, and/or supervisor.

45. No manager, supervisor, executive, or director ever submitted any document to me tracking the overtime pay of any sales employees.

46. I later learned from the Inside Sales Employees that David Burke, the Inside Sales Manager, and Brendan Donohue, the Director of Ticket Sales, did not provide documents to my office tracking the overtime hours worked by Hornets' sales employees despite requests from the sales employees.

47. On no occasion did I receive from any department manager or director a form or document of any kind tracking the hours worked by any employee.

48. Page 12 of the Hornets' employee manual acknowledges that the Hornets are covered by the FLSA.

49. Throughout my tenure with the Hornets, the team did not and would not maintain any records tracking the overtime hours worked by its employees

50. The Hornets have not had any verbal policies, procedures, or methods to track the amount of overtime hours worked by non-exempt employees since the team moved to New Orleans.

51. The Hornets have not had written any policies, procedures, or methods to track the amount of overtime hours worked by non-exempt employees since the team moved to New Orleans.

52. When I first began working with the Hornets, the personnel department was in deplorable condition. The Hornets maintained no employee files on any past or present employee.

53. The Hornets maintained no records of any kind tracking the hours worked by any employees.

54. The Hornets elected not to use my payroll tracking documents or any other documentation that would have tracked the number of hours worked by non-exempt employees during a workweek.

55. The Hornets took no action to track the overtime hours worked by any non-exempt employees.

56. The Hornets regularly and consistently required employees to work more than 40 hours a week, but would not authorize me to pay these employees overtime compensation.

57. I am aware that the Hornets had numerous civic, social, and public events throughout the year that Hornets employees were required to attend before normal working hours, after normal working hours, and on the weekends.

58. Non-exempt employees did not receive overtime compensation for any overtime that resulted from their required attendance of these events.

59.  I am aware that the Hornets required all sales and fan relations personnel to work each weekday and weekend home game. No sales or fan relations employees received overtime compensation for any overtime that resulted from their required attendance at the Hornets' games.

60.  After the Hornets prepared the August, 2004 spreadsheet identifying the Regional Account Representatives as outside sales persons, I attempted to obtain the information used by the Hornets when they reached this conclusion.

61.  I was never provided with any information regarding job duties of Regional Account Representatives.

62.  I then interviewed the following Regional Sales Representatives about their job duties: Marcy Planer-Murray; Chris Carter; Sam Steinmetz; and Lynn Holmes.

63.  The primary duty of all Regional Sales Representatives employed by the New Orleans Hornets is no different from any other sales employee - telemarketing.

64.  The only difference between Regional Sales Representatives and other sales employees with the Hornets is that the Regional Sales Representatives are physically located in a different building in a different city; however, the Hornets' Director of Sales maintains the same type of control and management authority over the Regional Sales Representatives as they do with any other sales employee.

65.  Since December of 2003, I interviewed all departed inside sales representatives during their exit interviews. The primary duty of all Inside Sales Representatives employed by the New Orleans Hornets is telemarketing.

66.    I interviewed all departed Group Sales Representatives who left the Hornets since I began working for the Hornets. The primary duty of all Group Sales Representatives employed by the New Orleans Hornets is telemarketing.

67.    Since I began working for the Hornets, I interviewed all departed Account Executives who left the Hornets during my tenure. The primary duty of all Account Executives employed by the New Orleans Hornets is telemarketing.

68.    The Hornets use the word "account executive" and "sales" interchangeably. There is no distinction of merit between the two terms within the Hornets organization.

69.    The New Orleans Hornets knew that they owed overtime to their employees, yet refused to pay their employees overtime compensation.

70.    I am aware that the Hornets are now tracking the hours worked by its non-exempt employees, and that non-exempt employees are having their hours limited to 40 hours per week.

**PENNY MIDDLETON**

**SWORN TO AND SUBSCRIBED BEFORE ME, NOTARY, ON THIS 25ᵗʰ DAY OF July, 2005**

**DANIEL E. BURAS, JR.**
**LA BAR # 26226**

N0019861.WPD

11

 **U.S. Department of Labor**
*in the* **21st Century**



### www.dol.gov/elaws

Searc

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organizatio

**August 23, 2004**    DOL Home > elaws Advisors > FLSA Hours Worked Advisor

## **elaws** - FLSA Hours Worked Advisor

# Introduction

The Fair Labor Standards Act (FLSA) requires that all covered, nonexempt employees be paid at least the minimum wage for all hours worked. The FLSA also provides that covered, nonexempt employees who work more than 40 hours in the workweek must receive at least one and one-half times their regular rate of pay for the overtime hours (hours worked over 40 in a workweek). A workweek, which can begin on any day of the week, is 7 consecutive 24-hour periods or 168 consecutive hours.

To review coverage or exemptions under the FLSA, click on the underlined text.

The amount of pay due an employee cannot be determined without knowing the total number of hours actually worked by that employee in each workweek. An employee must be paid for all of the time considered to be hours worked and all time that is hours worked must be counted when determining overtime hours worked.

The Hours Worked Advisor will help employees and employers determine which hours an employee spends in work related activities are hours worked. The Advisor applies the principles involved in making that determination under the FLSA to common situations occurring in the workplace.

The Advisor does not include every possible situation. No conclusion should be drawn from the fact that a subject or an illustration may not be included.

## Continue                                                    Disclaimer

 **Back to Top**                    **www.dol.gov/elaws**

**Frequently Asked Questions | Freedom of Information Act | Customer Survey
Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                                              1-
Frances Perkins Building                                                  TTY:
200 Constitution Avenue, NW
Washington, DC 20210



# U.S. Department of Labor

**Employment Standards Administration Wage and Hour Division**

### *www.dol.gov/esa*



Searc

Find It!: By Topic | By Audience | By Top 20 Requested Items | By Form | By Organizatio

**August 23, 2004**   DOL Home > ESA > WHD > Fact Sheets > Fact Sheet #23

## Fact Sheet #23: Overtime Pay Requirements of the FLSA

Printer Friendly Page

This fact sheet provides general information concerning the application of the overtime pay provisions of the FLSA.

## Characteristics

An employer who requires or permits an employee to work overtime is generally required to pay the employee premium pay for such overtime work.

## Requirements

Unless specifically exempted, employees covered by the Act must receive overtime pay for hours worked in excess of 40 in a workweek at a rate not less than time and one-half their regular rates of pay. There is no limit in the Act on the number of hours employees aged 16 and older may work in any workweek. The Act does not require overtime pay for work on Saturdays, Sundays, holidays, or regular days of rest, as such.

The Act applies on a workweek basis. An employee's workweek is a fixed and regularly recurring period of 168 hours -- seven consecutive 24-hour periods. It need not coincide with the calendar week, but may begin on any day and at any hour of the day. Different workweeks may be established for different employees or groups of employees. Averaging of hours over two or more weeks is not permitted. Normally, overtime pay earned in a particular workweek must be paid on the regular pay day for the pay period in which the wages were earned.

The regular rate of pay cannot be less than the minimum wage. The regular rate includes all remuneration for employment except certain payments excluded by the Act itself. Payments which are not part of the regular rate include pay for expenses incurred on the employer's behalf, premium payments for overtime work or the true premiums paid for work on Saturdays, Sundays, and holidays, discretionary bonuses, gifts and payments in the nature of gifts on special occasions, and payments for occasional periods when no work is performed due to vacation, holidays, or illness.

Earnings may be determined on a piece-rate, salary, commission, or some other basis, but in all such cases the overtime pay due must be computed on the basis of the average hourly rate derived from such earnings. This is calculated by dividing the total pay for employment (except for the noted statutory exclusions) in any workweek by the total number of hours actually worked.

Where an employee in a single workweek works at two or more different types of work for which different straight-time rates have been established, the regular rate for that week is the weighted average of such rates. That is, the earnings from all such rates are added together and this total is then divided by the total number of hours worked at all jobs.

FairPa

Compl
Assist;

Basi
Info
Fair
Star
Mini
Wac
Gari
Fam
Med
Farr
Imm
Lie I
Test
Gov
Con
Fact
Specia
You
Gari
Wor
Hea
Wor
Disa
Inform
New
Busi
State I
Stat
Law
Stat
Offic

Where non-cash payments are made to employees in the form of goods or facilities, the reasonable cost to the employer or fair value of such goods or facilities must be included in the regular rate.

(▲) **Back to Top**

## Typical Problems

Fixed Sum for Varying Amounts of Overtime: A lump sum paid for work performed during overtime hours without regard to the number of overtime hours worked does not qualify as an overtime premium even though the amount of money paid is equal to or greater than the sum owed on a per-hour basis. For example, no part of a flat sum of $90 to employees who work overtime on Sunday will qualify as an overtime premium, even though the employees' straight-time rate is $6.00 an hour and the employees always work less than 10 hours on Sunday. Similarly, where an agreement provides for 6 hours pay at $9.00 an hour regardless of the time actually spent for work on a job performed during overtime hours, the entire $54.00 must be included in determining the employees' regular rate.

Salary for Workweek Exceeding 40 Hours: A fixed salary for a regular workweek longer than 40 hours does not discharge FLSA statutory obligations. For example, an employee may be hired to work a 45 hour workweek for a weekly salary of $300. In this instance the regular rate is obtained by dividing the $300 straight-time salary by 45 hours, resulting in a regular rate of $6.67. The employee is then due additional overtime computed by multiplying the 5 overtime hours by one-half the regular rate of pay ($3.335 x 5 = $16.68).

Overtime Pay May Not Be Waived: The overtime requirement may not be waived by agreement between the employer and employees. An agreement that only 8 hours a day or only 40 hours a week will be counted as working time also fails the test of FLSA compliance. An announcement by the employer that no overtime work will be permitted, or that overtime work will not be paid for unless authorized in advance, also will not impair the employee's right to compensation for compensable overtime hours that are worked.

## Where to Obtain Additional Information

This publication is for general information and is not to be considered in the same light as official statements of position contained in the regulations. Copies of Wage and Hour publications may be obtained by contacting the nearest office of the Wage and Hour Division listed in most telephone directories under U. S. Government, Department of Labor or by calling our toll free number 1-866-4USWAGE.

(▲) **Back to Top**          **www.dol.gov/esa**          **www.dol.gov**

**Frequently Asked Questions | Freedom of Information Act | Customer Survey**
**Privacy & Security Statement | Disclaimers | E-mail to a Friend**

**U.S. Department of Labor**                    **1-866-4-USWAGE**
Frances Perkins Building                         TTY: 1-877-889-5627
200 Constitution Avenue, NW                        **Contact Us**
Washington, DC 20210

 **U.S. Department of Labor**

*in the* **21st Century**



**www.dol.gov/elaws**    Searc

By Topic | By Audience | By Top 20 Requested Items | By Form | By Organizatio

**August 23, 2004**    DOL Home > elaws Advisors > FLSA Hours Worked Advisor

**elaws** - FLSA Hours Worked Advisor 

# Suffer or Permit to Work

The FLSA defines the term "employ" to include the words "suffer or permit to work". Suffer or permit to work means that if an employer requires or allows employees to work, the time spent is generally hours worked.

Thus, time spent doing work not requested by the employer, but still allowed, is generally hours worked, since the employer knows or has reason to believe that the employees are continuing to work and the employer is benefiting from the work being done. This time is commonly referred to as "working off the clock." If you would like to review an example of suffer or permit to work, please click here.

## Rework

When an employee must correct mistakes in his or her work, the time must be treated as hours worked. The correction of errors, or "rework", is hours worked, even when the employee voluntarily does the rework.

## Waiting for Work

Time which an employee is required to be at work or allowed to work for his or her employer is hours worked. A person hired to do nothing or to do nothing but wait for something to do or something to happen is still working. The Supreme Court has stated that employees subject to the FLSA must be paid for all the time spent in "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer of his business."

## Place of Work

Hours worked include all the time during which an employee is required or allowed to perform work for an employer, regardless of where the work is done, whether on the employer's premises, at a designated work place, at home or at some other location.

It is the duty of management to exercise control and see that work is not performed if the employer does not want it to be performed. An employer cannot sit back and accept the benefits of an employee's work without considering the time spent to be hours worked. Merely making a rule against such work is not enough. The employer has the power to enforce the rule and must make every effort to do so. Employees generally may not volunteer to perform

| Department Head | Job Description | Employees O.T. Status |
|---|---|---|
| **Sam Russo** | | |
| Russo, Sam | Executive Vice President/Business Operations | X-Executive Exemption |
| Spero, Timothy Casey | Director of Technology | X-Executive Exemption |
| Bowles, Christopher J. | IT Support Specialist | X-Computer Exemption |
| Pierce, Ryan | IT Support Specialist | X-Computer Exemption |
| Dippel, Jessica | Director of Promotions & Special Events | X-Executive Exemption |
| Quintana, Cristobal | Special Events Coordinator | **NON-EXEMPT** |
| Richardson, Lyn Joshua | Director of Game Day Operations | X-Executive Exemption |
| Jason Quintero | Promotions and Events Asst | **NON-EXEMPT** |
| Williams, Andrea | Manager/Choreographer | Contracted |
| Felsen, David | Director of Ticket Operations | X- Executive Exempt |
| BeBout, Josua James | Ticket Operations Assistant | **NON-EXEMPT** |
| Brown, Latousha M. | Ticket Operations Assistant | **NON-EXEMPT** |
| Zerrillo, Michael E. | Mascot | Contracted |
| Wyatt, Sean | Mascot Assistant | **NON-EXEMPT** |
| | | |
| **Jack Capella** | | |
| Capella, Jack | Executive VP/Chief Operating Officer | X-Executive Exemption |
| Shubert, Phyllis | Assistant to Ray Wooldridge | X-Administrative Exemption |
| Silmon, Meredith | Assistant to George Shinn | X-Administrative Exemption |
| Fitzpatrick, Kristy | Assistant to Jack Capella | X-Administrative Exemption |
| MCGraw, Kevin P. | Chief Pilot | X-Executive Exempt |
| Cobb, James A. | Pilot | less than 40 hours |
| Maschio, Michael N. | Flight Engineer | less than 40 hours |
| O'Connor, Phyllis K. | Flight Attendant | less than 40 hours |
| Newton, Marcia Ann | Flight Attendant | less than 40 hours |
| Davis, Francis H. | Flight Attendant | less than 40 hours |
| | | |
| **Kristy McKearn** | | |
| Kristy McKearn | VP Corporate Affairs & Strategic Planning | X-Executive Exemption |
| Brenneman, Douglas Scott | Researcher | X-Administrative Exemption |
| | | |
| **John Lee** | | |
| Lee, John | Senior Vice President of Marketing/Sales | X-Executive Exemption |
| Rutherford, Jo Ann | Media Buyer | X-Administrative Exemption |
| Deese, Brian A. | Director of Creative | X-Creative Professional Exempt. |
| Coe, Edward III | Graphic Designer | X-Creative Professional Exempt. |
| Dupree, Christopher J. | Creative Services | X-Creative Professional Exempt. |
| J L Brooks | Mgr. Fan Development Program | X- Executive Exempt |
| Parenti, Marie | Director of Guest Services | X- Executive Exempt |
| Richard Johnson | Fan Development Representative | **NON-EXEMPT** |
| Sumler, Leslie J. | Senior Guest Relations Rep | **NON-EXEMPT** |
| Spruille, Freddie | Fan Development Representative | **NON-EXEMPT** |
| Donohue, Brendan | Director of Ticket Sales | X- Executive Exempt |
| Robinson, William | Ticket Sales Manager(Senior AE's +AE's) | X- Executive Exempt |
| Kreig, Louis | Senior Account Executive | **NON-EXEMPT** |
| Witmeyer, Richard L. | Senior Account Executive | **NON-EXEMPT** |
| Napoli, Melanie A. | Senior Account Executive | **NON-EXEMPT** |
| Kliebert, Ken | Account Executive | **NON-EXEMPT** |



EXHIBIT

| Department Head | Job Description | Employees OT Status |
|---|---|---|
| **John Lee Continued** | | |
| Vallejos, Julio | Account Executive | NON-EXEMPT |
| Carter, Cardell | Account Executive | NON-EXEMPT |
| Bryant, William | Account Executive | NON-EXEMPT |
| Stant, Chris | Account Executive | NON-EXEMPT |
| Steinmetz, Sam | Account Executive | NON-EXEMPT |
| Zuniga, Cristina | Office Mgr./Receptionist | NON-EXEMPT |
| Burke, David | Inside Ticket Sales Manager | X- Executive Exempt |
| Nash, Adam | Inside Ticket Sales Representative | NON-EXEMPT |
| Martin, Tony | Inside Ticket Sales Representative | NON-EXEMPT |
| Maxwell, Bryan | Inside Ticket Sales Representative | NON-EXEMPT |
| Miller, Robert | Inside Ticket Sales Representative | NON-EXEMPT |
| Tipton, Megan | Inside Ticket Sales Representative | NON-EXEMPT |
| Liger, Eugene | Inside Ticket Sales Representative | NON-EXEMPT |
| Drummond, Garrett | Inside Ticket Sales Representative | NON-EXEMPT |
| Chandler, Tyson | Inside Ticket Sales Representative | NON-EXEMPT |
| Carter, Chris | Regional Account Executive-MS | X-Outside Sales Exemption |
| Holmes, Lynn | Regional Account Executive-Baton Rouge | X-Outside Sales Exemption |
| Planer-Murray, Mandy | Regional Account Executive-Northshore | X-Outside Sales Exemption |
| Zaber, Christopher L. | Group Sales Manager | X- Executive Exempt |
| Berry, Jessica | Group Sales Executive | NON-EXEMPT |
| Granger, Chris | Group Sales Executive | NON-EXEMPT |
| Snider, Patricia Bryan | Group Sales Executive | NON-EXEMPT |
| DiPizzo, Frank | Group Sales Executive | NON-EXEMPT |
| | | |
| **Todd Santino** | | |
| Santino, Anthony Todd | Vice President of Sponsorship Sales | X-Executive Exemption |
| Wyatt, Ward | Manager of Sponsorship Sales | X-Administrative Exempt |
| Hubbell, Nathan | Sponsorship Sales-Account Executive | NON-EXEMPT |
| Jones, Robert Chase | Sponsorship Services | NON-EXEMPT |
| Whitley, Stacy Lynn | Sponsor Services Coordinator | NON-EXEMPT |
| | | |
| **Harold Kaufman** | | |
| Kaufman, Harold | Vice President of Public Relations | X- Executive Exempt |
| Hall, Kenneth Scott | Assistant Director of Public Relations | X-Administrative Exempt |
| Fedders, Kurt T. | Public Relations Assistant | X-Administrative Exempt |
| Rogers, Dennis | Intern | NON-EXEMPT |
| | | |
| **Lew Shuman** | | |
| Shuman, Lewis A. | Director of Broadcasting | X- Executive Exempt |
| McGregor, Gilbert | TV Commentator | X-Creative Professional Exempt |
| Harden, Bryan J. | Videographer/Editor | X-Creative Professional Exempt |
| Stewart, Tracey | Broadcast Coordinator | NON-EXEMPT |
| Vaillancourt, Gerald E. | Broadcaster | X-Creative Professional Exempt |
| Licht, Robert A. | Radio Play-by-Play | X-Creative Professional Exempt |
| | | |
| **Steve Martin** | | |
| Martin, Steven B. | Senior VP of Communication & Public Affairs | X- Executive Exempt |
| Werdann, Suzanne C. | Vice President of Community Relations | X- Executive Exempt |
| Levine, Meredith | Community Relations Assistant | X-Administrative Exempt |
| Turner, Victor | Community Relations Assistant | X-Administrative Exempt |
| Thompson, Michael W. | Director of Public Relations | X-Administrative Exempt |

| Department Head | Job Description | Employee Status |
|---|---|---|
| | | |
| **Barbara Booth** | | |
| Booth, Barbara | Vice President of Finance | X- Executive Exempt |
| Yamamura, Frances | Senior Accountant | X-Administrative Exempt |
| Middleton, Penny | Director of Personnel/Payroll | X-Administrative Exempt |
| Johnson, Adrianna F. | Senior Accountant | X-Administrative Exempt |
| Arteaga, Deina | Staff Accountant | X-Administrative Exempt |
| Virgil, Sheryl Deneen | Accounts Payable Associate | X-Administrative Exempt |
| Ford, Shelly Montague | Receptionist | X-Administrative Exempt |
| Morrow, Shawn M. | Inter-office Courier | **NON-EXEMPT** |
| | | |
| | | |
| **Allan Bristow** | | |
| Scott, Byron | Head Coach | Contracted |
| Walker, Darrell | Assistant Coach | Contracted |
| Gattison, Kenny | Assistant Coach | Contracted |
| Cleamons, Jim | Assistant Coach | Contracted |
| Boff, Marc Harris | Strength & Conditioning | less than 40 hours |
| Manson, Jack | Strength & Core Conditioning | less than 40 hours |
| Kofler, Terry | Trainer | X-Creative Professional Exempt |
| Jovanovic, David S. | Equipment Manager | X-Administrative Exempt |
| Johnson, Kory F. | Assistant Equipment Manager | X-Administrative Exempt |
| Bass, Kip E. | College/Pro Scout | Contracted |
| Bass, Kelly E. | College Scout | Contracted |
| Werdann, Robert | College/Pro Scout | Contracted |
| Bass, Bob | Consultant | Contracted |
| Reed, Willis | VP of Basketball Operations | Contracted |
| Bristow, Allan | General Manager | Contracted |
| Bower, Jeff | Assistant General Manager | Contracted |
| LaCaze, JoAnn | Executive Assistant Basketball Operations | **NON-EXEMPT** |
| Hagen, Brian | Video Coordinator | **NON-EXEMPT** |
| Loomis, Andrew H. | Administrative Assistant Basketball Operations | **NON-EXEMPT** |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

3

**As of August 2004**

This is my view on the status of each employee based on what the state of LA defines as exempted--Penny

| Department Head | Job Description | Employees O.T. Status |
|---|---|---|
| **Sam Russo** | | |
| Russo, Sam | Executive Vice President/Business Operations | X-Executive Exemption |
| Spero, Timothy Casey | Director of Technology | X-Executive Exemption |
| Bowles, Christopher J. | IT Support Specialist | X-Computer Exemption |
| Pierce, Ryan | IT Support Specialist | X-Computer Exemption |
| Dippel, Jessica | Director of Promotions & Special Events | X-Executive Exemption |
| Quintana, Cristobal | Special Events Coordinator | **NON-EXEMPT** |
| Richardson, Lyn Joshua | Director of Game Day Operations | X-Executive Exemption |
| Jason Quintero | Promotions and Events Asst | **NON-EXEMPT** |
| Williams, Andrea | Manager/Choreographer | Contracted |
| Felsen, David | Director of Ticket Operations | X- Executive Exempt |
| BeBout, Josua James | Ticket Operations Assistant | **NON-EXEMPT** |
| Brown, Latousha M. | Ticket Operations Assistant | **NON-EXEMPT** |
| Zerrillo, Michael E. | Mascot | Contracted |
| Wyatt, Sean | Mascot Assistant | **NON-EXEMPT** |
| | | |
| **Jack Capella** | | |
| Capella, Jack | Executive VP/Chief Operating Officer | X-Executive Exemption |
| Shubert, Phyllis | Assistant to Ray Wooldridge | X-Administrative Exemption |
| Silmon, Meredith | Assistant to George Shinn | X-Administrative Exemption |
| Fitzpatrick, Kristy | Assistant to Jack Capella | X-Administrative Exemption |
| MCGraw, Kevin P. | Chief Pilot | X-Executive Exempt |
| Cobb, James A. | Pilot | less than 40 hours |
| Maschio, Michael N. | Flight Engineer | less than 40 hours |
| O'Connor, Phyllis K. | Flight Attendant | less than 40 hours |
| Newton, Marcia Ann | Flight Attendant | less than 40 hours |
| Davis, Francis H. | Flight Attendant | less than 40 hours |
| | | |
| **Kristy McKearn** | | |
| Kristy McKearn | VP Corporate Affairs & Strategic Planning | X-Executive Exemption |
| Brenneman, Douglas Scott | Researcher | X-Administrative Exemption |
| | | |
| **John Lee** | | |
| Lee, John | Senior Vice President of Marketing/Sales | X-Executive Exemption |
| Rutherford, Jo Ann | Media Buyer | X-Administrative Exemption |
| Deese, Brian A. | Director of Creative | X-Creative Professional Exempt. |
| Coe, Edward III | Graphic Designer | X-Creative Professional Exempt. |
| Dupree, Christopher J. | Creative Services | X-Creative Professional Exempt. |
| J L Brooks | Mgr. Fan Development Program | X- Executive Exempt |
| Parenti, Marie | Director of Guest Services | X- Executive Exempt |
| Richard Johnson | Fan Development Representative | **NON-EXEMPT** |
| Sumler, Leslie J. | Senior Guest Relations Rep | **NON-EXEMPT** |
| Spruille, Freddie | Fan Development Representative | **NON-EXEMPT** |
| Donohue, Brendan | Director of Ticket Sales | X- Executive Exempt |
| Robinson, William | Ticket Sales Manager(Senior AE's +AE's) | X- Executive Exempt |
| Kreig, Louis | Senior Account Executive | **NON-EXEMPT** |
| Witmeyer, Richard L. | Senior Account Executive | **NON-EXEMPT** |
| Napoli, Melanie A. | Senior Account Executive | **NON-EXEMPT** |
| Kliebert, Ken | Account Executive | **NON-EXEMPT** |



EXHIBIT

1

| New Orleans Hornets Annual Salary Report | | employee based on what the state of LA |
|---|---|---|
| As of August 2004 | | defines as exempted--Penny |
| • | | |
| | | |
| Department Head | Job Description | Employees O.T. Status |
| | | |
| **Sam Russo** | | |
| Russo, Sam | Executive Vice President/Business Operations | X-Executive Exemption |
| Spero, Timothy Casey | Director of Technology | X-Executive Exemption |
| Bowles, Christopher J. | IT Support Specialist | X-Computer Exemption |
| Pierce, Ryan | IT Support Specialist | X-Computer Exemption |
| Dippel, Jessica | Director of Promotions & Special Events | X-Executive Exemption |
| Quintana, Cristobal | Special Events Coordinator | **NON-EXEMPT** |
| Richardson, Lyn Joshua | Director of Game Day Operations | X-Executive Exemption |
| Jason Quintero | Promotions and Events Asst | **NON-EXEMPT** |
| Williams, Andrea | Manager/Choreographer | Contracted |
| Felsen, David | Director of Ticket Operations | X- Executive Exempt |
| BeBout, Josua James | Ticket Operations Assistant | **NON-EXEMPT** |
| Brown, Latousha M. | Ticket Operations Assistant | **NON-EXEMPT** |
| Zerrillo, Michael E. | Mascot | Contracted |
| Wyatt, Sean | Mascot Assistant | **NON-EXEMPT** |
| | | |
| | | |
| **Jack Capella** | | |
| Capella, Jack | Executive VP/Chief Operating Officer | X-Executive Exemption |
| Shubert, Phyllis | Assistant to Ray Wooldridge | X-Administrative Exemption |
| Silmon, Meredith | Assistant to George Shinn | X-Administrative Exemption |
| Fitzpatrick, Kristy | Assistant to Jack Capella | X-Administrative Exemption |
| MCGraw, Kevin P. | Chief Pilot | X-Executive Exempt |
| Cobb, James A. | Pilot | less than 40 hours |
| Maschio, Michael N. | Flight Engineer | less than 40 hours |
| O'Connor, Phyllis K. | Flight Attendant | less than 40 hours |
| Newton, Marcia Ann | Flight Attendant | less than 40 hours |
| Davis, Francis H. | Flight Attendant | less than 40 hours |
| | | |
| | | |
| **Kristy McKearn** | | |
| Kristy McKeam | VP Corporate Affairs & Strategic Planning | X-Executive Exemption |
| Brenneman, Douglas Scott | Researcher | X-Administrative Exemption |
| | | |
| | | |
| **John Lee** | | |
| Lee, John | Senior Vice President of Marketing/Sales | X-Executive Exemption |
| Rutherford, Jo Ann | Media Buyer | X-Administrative Exemption |
| Deese, Brian A. | Director of Creative | X-Creative Professional Exempt. |
| Coe, Edward III | Graphic Designer | X-Creative Professional Exempt. |
| Dupree, Christopher J. | Creative Services | X-Creative Professional Exempt. |
| J L Brooks | Mgr. Fan Development Program | X- Executive Exempt |
| Parenti, Marie | Director of Guest Services | X- Executive Exempt |
| Richard Johnson | Fan Development Representative | **NON-EXEMPT** |
| Sumler, Leslie J. | Senior Guest Relations Rep | **NON-EXEMPT** |
| Spruille, Freddie | Fan Development Representative | **NON-EXEMPT** |
| Donohue, Brendan | Director of Ticket Sales | X- Executive Exempt |
| Robinson, William | Ticket Sales Manager(Senior AE's +AE's) | X- Executive Exempt |
| Kreig, Louis | Senior Account Executive | **NON-EXEMPT** |
| Witmeyer, Richard L. | Senior Account Executive | **NON-EXEMPT** |
| Napoli, Melanie A. | Senior Account Executive | **NON-EXEMPT** |
| Kliebert, Ken | Account Executive | **NON-EXEMPT** |

| John Lee Continued | | |
|---|---|---|
| Vallejos, Julio | Account Executive | NON-EXEMPT |
| Carter, Cardell | Account Executive | NON-EXEMPT |
| Bryant, William | Account Executive | NON-EXEMPT |
| Stant, Chris | Account Executive | NON-EXEMPT |
| Steinmetz, Sam | Account Executive | NON-EXEMPT |
| Zuniga, Cristina | Office Mgr./Receptionist | NON-EXEMPT |
| Burke, David | Inside Ticket Sales Manager | X- Executive Exempt |
| Nash, Adam | Inside Ticket Sales Representative | NON-EXEMPT |
| Martin, Tony | Inside Ticket Sales Representative | NON-EXEMPT |
| Maxwell, Bryan | Inside Ticket Sales Representative | NON-EXEMPT |
| Miller, Robert | Inside Ticket Sales Representative | NON-EXEMPT |
| Tipton, Megan | Inside Ticket Sales Representative | NON-EXEMPT |
| Liger, Eugene | Inside Ticket Sales Representative | NON-EXEMPT |
| Drummond, Garrett | Inside Ticket Sales Representative | NON-EXEMPT |
| Chandler, Tyson | Inside Ticket Sales Representative | NON-EXEMPT |
| Carter, Chris | Regional Account Executive-MS | X-Outside Sales Exemption |
| Holmes, Lynn | Regional Account Executive-Baton Rouge | X-Outside Sales Exemption |
| Planer-Murray, Mandy | Regional Account Executive-Northshore | X-Outside Sales Exemption |
| Zaber, Christopher L. | Group Sales Manager | X- Executive Exempt |
| Berry, Jessica | Group Sales Executive | NON-EXEMPT |
| Granger, Chris | Group Sales Executive | NON-EXEMPT |
| Snider, Patricia Bryan | Group Sales Executive | NON-EXEMPT |
| DiPizzo, Frank | Group Sales Executive | NON-EXEMPT |
|  |  |  |
|  |  |  |
| Todd Santino | | |
| Santino, Anthony Todd | Vice President of Sponsorship Sales | X-Executive Exemption |
| Wyatt, Ward | Manager of Sponsorship Sales | X-Administrative Exempt |
| Hubbell, Nathan | Sponsorship Sales-Account Executive | NON-EXEMPT |
| Jones, Robert Chase | Sponsorship Services | NON-EXEMPT |
| Whitley, Stacy Lynn | Sponsor Services Coordinator | NON-EXEMPT |
|  |  |  |
|  |  |  |
| Harold Kaufman | | |
| Kaufman, Harold | Vice President of Public Relations | X- Executive Exempt |
| Hall, Kenneth Scott | Assistant Director of Public Relations | X-Administrative Exempt |
| Fedders, Kurt T. | Public Relations Assistant | X-Administrative Exempt |
| Rogers, Dennis | Intern | NON-EXEMPT |
|  |  |  |
|  |  |  |
| Lew Shuman | | |
| Shuman, Lewis A. | Director of Broadcasting | X- Executive Exempt |
| McGregor, Gilbert | TV Commentator | X-Creative Professional Exempt |
| Harden, Bryan J. | Videographer/Editor | X-Creative Professional Exempt |
| Stewart, Tracey | Broadcast Coordinator | NON-EXEMPT |
| Vaillancourt, Gerald E. | Broadcaster | X-Creative Professional Exempt |
| Licht, Robert A. | Radio Play-by-Play | X-Creative Professional Exempt |
|  |  |  |
|  |  |  |
| Steve Martin | | |
| Martin, Steven B. | Senior VP of Communication & Public Affairs | X- Executive Exempt |
| Werdann, Suzanne C. | Vice President of Community Relations | X- Executive Exempt |
| Levine, Meredith | Community Relations Assistant | NON-EXEMPT |
| Turner, Victor | Community Relations Assistant | NON-EXEMPT |
| Thompson, Michael W. | Director of Public Relations | X-Administrative Exempt |

| Department Head | Job Description | Employee Status |
|---|---|---|
|  |  |  |
| **Barbara Booth** |  |  |
| Booth, Barbara | Vice President of Finance | X- Executive Exempt |
| Yamamura, Frances | Senior Accountant | X-Administrative Exempt |
| Middleton, Penny | Director of Personnel/Payroll | X-Administrative Exempt |
| Johnson, Adrianna F. | Senior Accountant | X-Administrative Exempt |
| Arteaga, Deina | Staff Accountant | X-Administrative Exempt |
| Virgil, Sheryl Deneen | Accounts Payable Associate | X-Administrative Exempt |
| Ford, Shelly Montague | Receptionist | X-Administrative Exempt |
| Morrow, Shawn M. | Inter-office Courier | **NON-EXEMPT** |
|  |  |  |
|  |  |  |
| **Allan Bristow** |  |  |
| Scott, Byron | Head Coach | Contracted |
| Walker, Darrell | Assistant Coach | Contracted |
| Gattison, Kenny | Assistant Coach | Contracted |
| Cleamons, Jim | Assistant Coach | Contracted |
| Boff, Marc Harris | Strength & Conditioning | less than 40 hours |
| Manson, Jack | Strength & Core Conditioning | less than 40 hours |
| Kofler, Terry | Trainer | X-Creative Professional Exempt |
| Jovanovic, David S. | Equipment Manager | X-Administrative Exempt |
| Johnson, Kory F. | Assistant Equipment Manager | X-Administrative Exempt |
| Bass, Kip E. | College/Pro Scout | Contracted |
| Bass, Kelly E. | College Scout | Contracted |
| Werdann, Robert | College/Pro Scout | Contracted |
| Bass, Bob | Consultant | Contracted |
| Reed, Willis | VP of Basketball Operations | Contracted |
| Bristow, Allan | General Manager | Contracted |
| Bower, Jeff | Assistant General Manager | Contracted |
| LaCaze, JoAnn | Executive Assistant Basketball Operations | **NON-EXEMPT** |
| Hagen, Brian | Video Coordinator | **NON-EXEMPT** |
| Loomis, Andrew H. | Administrative Assistant Basketball Operations | **NON-EXEMPT** |