UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS


EUGENE LIGER, ET AL          :   CIVIL 05-1969 "C"
                             :
VERSUS                       :
                             :   New Orleans, Louisiana
NEW ORLEANS HORNETS          :   August 17, 2005
NBA LIMITED PARTNERSHIP       :   9:30 a.m.
: : : : : : : : : : : : : : : :


**MOTION**
**HONORABLE HELEN G. BERRIGAN,**
**UNITED STATES DISTRICT JUDGE, presiding.**


APPEARANCES:

For the Plaintiff:       Niles, Salas, Bourque & Fontana, LC
                         BY:  STEWART E. NILES, JR., ESQUIRE
                              DANIEL E. BURAS, JR., ESQUIRE
                              LAWRENCE J. CENTOLA, ESQUIRE
                         909 Poydras Street
                         35th Floor
                         New Orleans, LA  70112


For the Defendant:       Jones, Walker, Waechter, Poitevent,
                         Carrere & Denegre
                         BY:  JENNIFER L. ANDERSON, ESQUIRE
                              JANE HEIDINGSFELDER, ESQUIRE
                         Place St. Charles
                         201 St. Charles Avenue, 50th Floor
                         New Orleans, Louisiana  70170-5100


Reported By:             Arlene Movahed, CSR
                         501 Magazine Street
                         New Orleans, Louisiana  70130
                         (504) 589-7777

Dockets.Justia.com

          Proceedings recorded by mechanical stenography;
transcript produced by dictation.

1                    **P R O C E E D I N G S**

2                         **MORNING SESSION**

3                         **(August 17, 2005)**

4      (The following is a transcript of the motion by plaintiffs

5   to conditionally certify a collective action pursuant to 216(b)

6   of the FLSA and to approve a proposed notification to all

7   putative collective action members (19).)

8      (Open Court.)

9          THE CLERK:   Civil Action Number 05-1969, C, Eugene

10  Liger, et al versus New Orleans Hornets NBA Limited

11  Partnership.

12         MR. NILES:   Good morning, Your Honor.

13         THE COURT:   Good morning.

14         MR. NILES:   Stewart Niles representing the plaintiffs

15  in this matter, Your Honor.  Along with Dan Buras and Lawrence

16  Centola.

17         THE COURT:   Who is with the Hornets?

18         MS. ANDERSON:   Jennifer Anderson and Jane

19  Heidingsfelder.

20         THE COURT:   I know there is some unhappiness from the

21  plaintiff's standpoint about the Hornets taking their shot

22  about they are exempt from the Fair Labor Standards Act, so I

23  will just take that as a shot across the bow that was not

1  intended to hit the vessel.  Sometimes you just can't resist.

2          MR. NILES:    Indeed.  Thank you, Your Honor.

3          THE COURT:    I am going to certify the class.  I do

4  think that it's a lenient standard.  This is my first

5  experience with a collective action so I thought it was a very

6  interesting concept.  I think it's real clear in the Fifth

7  Circuit that it's a pretty broad initial permission that can be

8  challenged later on as the class shapes up.

9          And I guess, Ms. Anderson, maybe I need to be talking

10  with you.  Why don't you come on up.  Because it seems the

11  sensible thing seems to be to go ahead and notify anybody and

12  everybody who is in a non-exempt position.  And I know there is

13  some confusion or some dispute.  And we're not talking about

14  the whole institution is not exempt, we're talking about the

15  job categories.  You objected, I believe, to their sort of

16  second suggestion which was the all non-exempt category

17  designated Exhibit M which was produced by your former

18  Personnel Director.  As I understand she is the one that put

19  that together.  If there really isn't a serious dispute as to

20  what the non-exempt categories are, it seems to me it makes a

21  lot more sense to deal with the whole issue at one time.

22  Because if we end up certifying a narrower class and it turns

23  out that there are other non-exempt classes that should be

1  included, why have another lawsuit or amendment to the lawsuit.

2  So it seems to me it would make sense to include not just the

3  non-exempt categories that you suggest which are the ones that

4  are identifiable by the particular plaintiffs.  I think that's

5  where you got your list because there was a Fan Development

6  Representative plaintiff and a Sponsorship Sales Account

7  Executive plaintiff and Inside Ticket Sales Representative

8  plaintiff and so forth.

9          MS. ANDERSON:    Correct.

10          THE COURT:    I would like to include the other

11  possible categories that would be non-exempt as well.  And how

12  serious is this objection to the categories listed in Exhibit

13  M?  I mean, I didn't see a counter list.  The truth is, if

14  there is an exempt category that is thrown in there that's

15  going to come out in the wash anyway.

16          MS. ANDERSON:    That is true.  First of all, I am not

17  sure her classifications were correct and these weren't the

18  classifications of the organization.  She did that on her own.

19  That was her personal assessment.  If we include some of those

20  categories that she has called non-exempt and they are really

21  exempt, then that will necessitate a motion on our part to

22  exclude them.  Our counter proposal was, and I think it's

23  consistent with the third alternative proposed by the

1  plaintiffs, was to use the job classification of the current

2  plaintiffs to the lawsuit.  It's always been our view, and a

3  lot of courts have also agreed, that it's tantamount to court

4  solicitation of plaintiffs to include categories that aren't

5  even represented by the current plaintiffs in the lawsuit or by

6  the allegations in the lawsuit.  That's the objection that we

7  have and it's a serious objection.

8          Ultimately it's the Court's decision as to whether the

9  Court wants to approve it.

10         THE COURT:  Two things I see happening as a practical

11 matter once this notice goes out to these, I guess, seven

12 categories of people, other people who are in, it looks like

13 some of them are pretty related just looking at what these

14 things are called on that Exhibit M, are going to start raising

15 their hands joining in as plaintiffs and then you're going to

16 have to do another notice.

17         MS. ANDERSON:  You could very well  --

18         THE COURT:  I realize, Mr. Niles, you worry about

19 prescription.  I didn't know anything about this case before I

20 looked at these pleadings but I gather the Hornets'

21 organization is pretty familiar with it and the current

22 employees and so forth.  So I think everybody probably had

23 notice there is something out there.

1      MS. ANDERSON:  I think that the media probably took

2  care of that.  But you're correct, you raised a point and I

3  have another lawsuit pending in this district wherein

4  additional plaintiffs did file other lawsuits and they were all

5  consolidated.  So I understand the practical consideration.

6  Our concern is simply that with a notice going out to job

7  categories that aren't currently represented, that is contrary

8  to the current rule and the current jurisprudence.

9      THE COURT:  You say contrary to current

10 jurisprudence.  It's pretty global.

11     MS. ANDERSON:  That was notice in the <u>Donohue</u> case

12 which they relied on.  I am familiar with that.

13     THE COURT:  Says basically anybody and everybody.

14     MS. ANDERSON:  Well the difference in that case was

15 it was at least limited to an hourly group of people who were

16 paid hourly on an hourly basis.  And was also limited to people

17 who did not have certain discretionary bonuses included in the

18 regular raise.  So that was a little more narrow.  But, again,

19 considering that was my case it was another objectionable class

20 definition and one that we objected to and ultimately the Court

21 decided to go with a more global proposition.

22     You know, again, our view is that there is some

23 consistency in the plaintiffs' third alternative class and our

1  class.  I think to rely on the job classifications that are at

2  issue, you know, if the Court  --  ultimately it's the Court's

3  decision to include these other classifications other than Ms.

4  Middleton's personal opinion are non-exempt on Exhibit M.  You

5  know then that would potentially alleviate the practical

6  consideration of possibly another lawsuit being filed.

7           THE COURT:   Mr. Niles, you have any thought about

8  that?

9           MR. NILES:   Yes, Your Honor, I would like to raise

10  four matters to the Court's attention, if I may.

11           THE COURT:   Stay on this particular issue.

12           MR. NILES:   Yes.  First, the fourth classification is

13  a risk because the Hornets are denying that their Human

14  Resource Director properly classified the employees.  And that

15  employee is no longer with the organization and may have

16  labeled or had a job classification test and now it's described

17  as Y or described as C and would not be put on notice they

18  would be a putative class member.  That's problem number one.

19  Number two, with regard to a generalized notice, with all due

20  respect, Your Honor, most of these employees that fall in this

21  category were recruited from out of state and most of these

22  employees have been rehired out of state.

23           THE COURT:   So are no longer with the Hornets.

1        MR. NILES:   That's correct.  And the majority of them

2   would not have received any notice of what is going on in the

3   local press or otherwise.  Number three, we only learned this

4   after discovery and right before the filing of the defendant's

5   opposition.  But it is clear that the Hornets have no policies,

6   no records for time keeping, no methodology for time keeping,

7   and that's endemic throughout the organization.  So the issue

8   of categorization falls back in terms of what Judge Barbier did

9   in the Donohue case.  The limit had been hourly.  Here the

10  limit is all workers who work over 40 hours.  And that's

11  actually consistent with what both plaintiff and defendant have

12  proposed to the Court even though the recommendation is an

13  alternative for sub-classification.  I suggested this time,

14  Your Honor, because we're dealing with a plethora of out of

15  state people who have now returned out of state or have been

16  hired by organizations out of state and because there's no way

17  to contact them other than through this notice, that in fact

18  the original recommendation presented to the Court which set

19  forth all employees who worked more than 40 hours would be the

20  way to present the notice.  There is no harm at this point

21  because if these persons fall into categories that are exempt,

22  they of course would be weeded out from that standpoint.  And

23  the only harm is to any employee who would properly be a member

1  of this class and the Court would reflect upon that later after

2  we do discovery and the employee stands forth now and says,

3  wait, my claim is prescribed because I was described as an A

4  classification and notice says B classification, I was

5  confused.  I did not understand, therefore, I did not opt in at

6  the time.  Now I understand I should have opted in.

7       THE COURT:   You're arguing now for your first

8  category.

9       MR. NILES:   Yes, Your Honor, I am.  Matter of fact on

10 the notice itself, which is attached as the last exhibit to our

11 moving papers, T, you will find that we have incorporated that

12 definition in our moving papers as the proper notice.

13      THE COURT:   How does that relate to the affidavit of

14 Ms. Middleton on page 5, namely, number 23?  She has A through

15 S categories.  Do those categories include all the moving

16 targets you are referencing?

17      MR. NILES:   If we understand the classification, we

18 believe that it's probably 70 percent of employees, number one.

19 Number two, we have come to understand, since the Hornets have

20 filed their opposition, that there is no vitality to that

21 classification from their standpoint.  And, in fact, in further

22 talking to our existing clients we found actually that labels

23 of categories have changed over the two to three years the

1  Hornets have been here in New Orleans.  So someone could have

2  been here two and a half years ago, an employee labeled X, job

3  classification X, and now that job classification has been

4  reorganized and has a different label attached to it.

5          THE COURT:   Let me just say this.  I am not

6  interested in sending a notice to everybody who has ever worked

7  for the Hornets.

8          MR. NILES:   Nor are we, Your Honor.  We are not

9  either, without a doubt.

10         THE COURT:   And also not every employee has worked

11 more than 40 hours.  Your first category is a little too

12 global.

13         MR. NILES:   We think that the 40-hour limitation

14 impacts about a hundred employees, Your Honor.  So we're not

15 talking about an unmanageable number as the case may be.  So

16 even if the Court were to consider favorably our first

17 recommendation, we believe the notices would go out to about an

18 additional 90 individuals who would fall in the category.

19         THE COURT:   Do you have any idea if that is correct?

20         MR. NILES:   One last statement, Your Honor.  And I

21 apologize for the interruption.  I really do.  If you take the

22 defendant's alternatives with regard to classification, as we

23 did point out in rebuttal very clearly two, if not three of our

1  current plaintiffs would not even fall within the job

2  classifications currently.  So we have current plaintiffs

3  before the Court who would not fall within the job

4  classifications who are suggested by defendants as their third

5  alternative.  That is too restrictive.  I understand the Court

6  is trying to fashion an appropriate class of not too large and

7  not too small, but given the facts we have in discovery and the

8  absence of any documentation of the Hornets because, remember,

9  in their opposition they have given Your Honor no affidavits

10 and no documents for their position although we requested those

11 in discovery.  And I think the only reasonable alternative,

12 Your Honor, is the one that we proposed in our first

13 alternative, with all due respect.

14         THE COURT:   Ms. Anderson, how many employees?  Do you

15 have any clue if he is correct that it would be an additional

16 90 people possibly?

17         MS. ANDERSON:   I'm not sure if he means an additional

18 90 people that he believes would fall into the non-exempt

19 category?

20         THE COURT:   No matter what we call all these

21 categories or how we re-name them but in fact it's only going

22 to involve about 90 more people?

23         MS. ANDERSON:   I don't have a precise take on the

1  number.  But there has been a turnover in the last three years.

2  My impression is that it's larger than 90.  But I do have a

3  couple of points to make in response to Mr. Niles' concerns.

4          First of all, there is a solution to the issue of the

5  job title change.  He makes the point that someone who may be a

6  Fan Relations Representative in 2005 which is called a Fan

7  Development in 2004, the Hornets can produce all of the prior

8  job titles or names for a particular position and thereby

9  capturing anybody who would have served in that role if they

10  are identified as a non-exempt position that's at issue in this

11  case now.

12          Second, the global, their first and global definition

13  proposal is entirely too overbroad and practically unwieldly.

14  And that would include the president, all of the executives,

15  the vice-president, people who undeniably should not be

16  receiving a notice.

17          THE COURT:   Presumably the players also.

18          MS. ANDERSON:   Exactly.  But they are contracts.  But

19  anyway it would include a lot of people who really don't have

20  any rights and, therefore, would clutter this case.

21          THE COURT:   What I would like to do, and if it can be

22  worked out between you all that would be great, what I would

23  like to do is include all the possible non-exempt categories

1  and whatever permutation, if that's the right word, you know, A

2  through S on page 5 of Ms. Middleton's affidavit is a good

3  starting point.

4         MS. ANDERSON:   Here's what I would suggest to the

5  Court.  We cannot, we can't accede to that.  You know the

6  standards, and you know I am just quoting from one court, has

7  said that, you know, if the Court defines a class by saying all

8  non-exempt positions that is essentially a standard list.

9         THE COURT:   I am not suggesting that's going to be

10 the class.  What I would like to work out are these categories.

11 In other words, A through S plus their permutations and how

12 they are different.  A through S on page 5 captures each of the

13 categories and then you can say AKA also known as Fan

14 Development Representative, if you can do that, if you have the

15 capacity to do that so we have the various manifestations of

16 each of these categories.  And then I am content with that.

17        MS. ANDERSON:   We can certainly do that.  I do just

18 want to make it clear that it's our view it's not a hundred

19 percent.

20        THE COURT:   Oh, no.

21        MS. ANDERSON:   We offer our objection because we're

22 going to move to be certified.

23        MR. NILES:   I think it's a very very good start.

 1  Remember, we have asked for these documents both on an

 2  expedited basis before this hearing and we asked for them in

 3  discovery.  We received no documents up to this point.  The

 4  Hornets have not supplied to the Court any of the documents

 5  that they say they now can produce for this sort of

 6  consideration.

 7          Putting that aside, the point is this, Your Honor.

 8  What the Hornets are asking the Court and us to do at this

 9  point is to accept their list when they have already challenged

10  the list of the Human Resource Director.  And that's a good

11  start as long as the Court reserves our right to go over the

12  list and come back and then identify for the Court what

13  classifications we think are in error.  I think at least we

14  need to get the notice out to the A through S plus the

15  permutations, get the notice out to that group and if there are

16  disputes we can resolve that with Your Honor in the future and

17  try to protect the rights of those persons as deemed

18  appropriate.

19          THE COURT:  We will start then with point number one.

20  I am going to certify class, if that's correct, certify

21  collective class which would encompass the categories of A

22  through S on page 5 of Ms. Middleton's affidavit, subparagraph

23  23.

1          Plus in addition that any of these A through S titles

2    that have changed and essentially the position has remained the

3    same but the title has changed, that those other titled

4    positions would be included in the class.

5          MS. ANDERSON:   Within the applicable statutory

6    limitations.

7          THE COURT:   And continuing on to that, that have

8    worked.

9          MR. NILES:   Within the applicable prescriptive period

10   means a two year period of time.

11         MS. ANDERSON:   Three years.

12         MR. NILES:   Three years would be fine.

13         THE COURT:   I think you're jumpy and you're a little

14   too paranoid, Mr. Niles.

15         MR. NILES:   I am, Your Honor, because I've asked for

16   documents, I have received nothing that's relevant.

17         MS. ANDERSON:   That is disputed, Your Honor, and I

18   won't bore you with it.

19         THE COURT:   Time out.  Stay on track.  Going back

20   three years, people in that category going back three years who

21   have worked more than 40 hours during the work week.

22         MR. NILES:   We will receive the names?

23         THE COURT:   And who have not been paid overtime

1  already.  What was the other?  I think that was it.

2       Now let's go on.

3       MR. NILES:   We will receive a list of the titles for

4  the permutations?

5       THE COURT:   Ms. Anderson, how long do you think it

6  would take to get that?

7       MS. ANDERSON:   I think, Your Honor, unless we're

8  agreeing to go with categories off Ms. Middleton's affidavit,

9  if he is going to change some of the exemption designations we

10  need those first.

11       THE COURT:   I am confused.

12       MS. ANDERSON:   Are we going with just the categories

13  on Ms. Middleton's affidavit?

14       THE COURT:   A through S, plus any of those positions

15  that have had different titles before.

16       MS. ANDERSON:   We can provide those in ten days.

17       THE COURT:   Ten days to the other side for that.

18       Now let's go on to the notice requirement.  I hate to

19  sort of micromanage things like notices unless you guys really

20  can't work it out.  I think since we're talking about ten days

21  from now, we're talking about something around the first of

22  September.  I think 90 days is plenty of time because 90 days

23  would put us into the Christmas season and no one is going to

1  do anything in that additional month anyway so we will have the

2  period beginning 90 days from  -- does that start to run from

3  when the notices go out, is that how that works?

4         MS. ANDERSON:  Yes.

5         MR. NILES:  Yes, Your Honor, from the date we certify

6  we sent out the notices.

7         THE COURT:  So the opt-in period will be 90 days.

8  You don't need to bold the paragraph about no retaliation, that

9  can go into nice regular print like everything else.  And I

10  think the Hornets, you need to take out your shot across the

11  bow without your defense for exempt status for the organization

12  because that's irrelevant to those people in the class.  You

13  can raise that defense, obviously, but I don't think it needs

14  to be in the notice.  You can certainly have your defense that

15  you don't think you have done anything wrong.

16         MS. ANDERSON:  Our position is we can deny the

17  allegations.

18         THE COURT:  Sure.  You had in there the little shot

19  about we think we're entertainment, whatever, and we're exempt.

20         MS. ANDERSON:  Do you have any other?

21         THE COURT:  No.  I thought that was the main sticking

22  points of the language.  Other than that I thought the two

23  notices looked very much the same.

1          MS. ANDERSON:   They're similar.  I did have one other

2   issue that came to my attention this morning.  It's very brief.

3   On the consent form that the plaintiffs have proposed to use to

4   opt into the collective action there is some extraneous

5   language that I believe is improper.  It says that they consent

6   to opt in to assert claims under the FLSA and then it says

7   State Court Labor Law violations.  There are a few problems.

8   Number one, any state law that provides for overtime or any

9   similar relief is preempted by the FLSA.  Number two, no such

10  claims have been asserted in this case.  Number three, even if

11  there were such a Louisiana law comparable to the FLSA there's

12  no procedure whatsoever compatible to this certification type

13  procedure so I believe that language needs to be struck from

14  the consent form.  I have never seen it before in any

15  collection action that I've ever handled or reviewed.

16          THE COURT:   Mr. Niles, are you ready to answer that?

17          MR. NILES:   Yes.  We would suggest that, Your Honor,

18  because we have employees around the states many may recognize

19  labor laws are not only controlled by federal but state law and

20  also overtime laws would come into play.

21          THE COURT:   You can't represent people of Missouri

22  under this lawsuit.

23          MR. NILES:   No, that's correct, Your Honor.  But, of

 1  course, the violation here is in Louisiana with regard to a

 2  state law claim.  Then the nexus would be here, proper

 3  jurisdiction would be here in Louisiana for state law claims

 4  for employees in Louisiana.  So that's why that has been

 5  included.  If the Court thinks it's confusing, I am fine with

 6  taking it out.  But the purpose was not to confuse but to make

 7  sure that a putative class member would recognize their rights

 8  would be under state or federal law.

 9          THE COURT:   That's not the job of this suit, to give

10  people legal advice.

11          MR. NILES:   That's fine.

12          THE COURT:   If they want to join your lawsuit, that's

13  fine.  But otherwise, they're on their own.  So let's take that

14  out.

15          MR. NILES:   With regard to taking out the defenses

16  that were urged by the Hornets, I take it the language that

17  they included that proposes they could file a claim against the

18  putative class members for cost, that will be taken out as

19  well?  Because I have never seen that in any notices, all the

20  notices that we have gone through.

21          MS. ANDERSON:   Actually it's in the notices of the

22  Camp case, it's in the notices of the Donohue and Lim cases and

23  all those notices have been referenced and those are all

1   Eastern District notices.  That's the standard language.

2         THE COURT:   This is my first experience with a

3   collective action.  Is that true, they are in fact liable?

4         MS. ANDERSON:   No, if we were to, for example,

5   prevail on summary judgment or prevail on the merits after

6   trial, the plaintiffs could be liable for cost and courts

7   specifically included that because they have ended up with

8   situations where you have a bunch of opt-in people who end up

9   holding a bill for cost and they're unhappy about it and get

10  angry that they were not told so the courts assure that these

11  individuals know what the risk is just like any plaintiff who

12  is represented by a lawyer who has access to that lawyer every

13  day, which can be different in class situations, but they

14  understand what the risks are of bringing a case if they do

15  lose.  But that is in all of these cases.

16        THE COURT:   I think it's all right.  The Hornets will

17  seek a dismissal of plaintiff's case and seek costs which they

18  may be entitled to.  I think plaintiffs need to know that.

19        MR. NILES:   That's fine, Your Honor.  Again,the

20  notices that we have seen have not included it because it's a

21  disincentive because, of course, any losing party is always

22  responsible for costs, not attorney fees.  So it's a

23  disincentive and we think it's not appropriate for the notice.

1  It's as to say we're not going to do our job in notifying a

2  putative class member about the pros and cons before they make

3  a decision.  That's our obligation, Your Honor.

4          THE COURT:   When they get in touch with you, you can

5  reassure them.  I will leave that in.

6          MR. NILES:    Thank you, Your Honor.

7          THE COURT:   Are you all clear?  You think you can

8  kind of work it out from here?

9          MR. NILES:    I hope so.  We have one other thing the

10  Court has not addressed.  If the list of the permutations is

11  not provided until ten days, when shall we obtain the list of

12  employees who fall into those categories?

13          THE COURT:   My suggestion is to start with a list,

14  and it may be faster than ten days, but at least get the notice

15  going on that first group because that's going to be the bulk

16  group and get that 90 days running.  You might have to do a

17  supplemental notice.

18          MR. NILES:   So we propose that from ten days from

19  today that the Hornets will provide to us the names of the

20  employees in this instance that fall within the class

21  identified as A through S.  And then after they give us the

22  list, then the permutation another ten days for those?

23          MS. ANDERSON:    We will provide it all at once.

1          MR. NILES:   Within ten days is fine.

2          MS. ANDERSON:   Fine.  Names and addresses.

3          THE COURT:   So I don't have to do anything else?

4          MS. ANDERSON:   Correct.

5          THE COURT:   At this point.

6          MR. NILES:   Thank you, Your Honor.

7          THE COURT:   Nice to meet you all.

8          MR. NILES:   We appreciate it.

9          MS. ANDERSON:   Thank you.

10      (End of proceedings.)

11

12

13

14

15

**REPORTER'S CERTIFICATE**


        I, Arlene Movahed, Official Court Reporter, for the

United States District Court for the Eastern District of

Louisiana, appointed pursuant to the provisions of Title 28,

United States Code, Section 753, do hereby certify that the

foregoing is a full, true and correct transcript of proceedings

had in the within-entitled and numbered cause on the date

herein before set forth and I do further certify that the

foregoing transcript has been prepared by me or under my

direction.

_____
ARLENE MOVAHED
Official Court Reporter
United States District Court
Eastern District of Louisiana