FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 30  AM 11: 53

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EUGENE LIGER, ET AL.** | **CIVIL ACTION NO.  05-1969** |
| **VERSUS** | **SECTION "C"** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | **MAGISTRATE 05** |

### MEMORANDUM IN OPPOSITION TO
### PLAINTIFFS' MOTION FOR APPROVAL OF AMENDED NOTICE TO
### <u>PROSPECTIVE CLASS MEMBERS AND AMENDED CONSENT TO JOIN</u>

**MAY IT PLEASE THE COURT:**

Defendant, New Orleans Hornets NBA Limited Partnership ("Defendant" or "Hornets"),

opposes Plaintiffs' Motion for Court Approval of Amended Notice to Prospective Class

Members and Amended Consent to Join.  Specifically, Defendant opposes the language of the

second paragraph in Section 7 of the Plaintiffs' proposed notice, the provision entitled "NO

RETALIATION PERMITTED," which Plaintiffs do not dispute is intended to protect only

against **unlawful** retaliation under the Fair Labor Standards Act.  *See* Plaintiffs' Request for

Expedited Hearing on Plaintiffs' Motion for Court Approval of Amended Notice to Prospective

Fee_____
Process_____
X  Dktd_____
✓  CtRmDep_____
___ Doc. No._____

Class Members and Amended Consent to Join, p. 2. The language at issue prohibits a broad range of **lawful** conduct and, among other things, subjects Defendants' employees, customers, and others to the potential and needless risk of harm to their health and safety. Defendant proposed corrected language to Plaintiffs' Notice prior to Plaintiffs' filing their Motion (see attached Defendant's proposed notice, Exhibit 1), but Plaintiffs rejected the proposed correction. This Court cannot approve of anti-retaliation language in the notice that not only fails to comport with the purpose of the anti-retaliation provision, or what Defendant understands to have been the intent of the Magistrate Judge in attempting to modify same, but that also presents a substantial risk of personal injury to others because it is so broadly and improperly drafted.

As Plaintiffs have filed their motion seeking approval of the amended notice directly with the Court, they cannot dispute Defendant's right to oppose the motion nor can they dispute the Court's well-settled authority to modify the notice as to which it previously ruled if it finds modification is in order. This Court has the authority and obligation to insure that any notice to be issued in this conditionally certified collective action not only satisfies applicable procedural and legal standards, but that it does not violate the Constitutional or other rights of the parties and third parties it might affect. Plaintiffs' suggestion that this issue could have been raised only under Federal Rule of Civil Procedure 72 is erroneous. First, the Plaintiffs' motion to approve the notice is before this Court, which never referred notice issues to the Magistrate Judge. This Court has the discretion to consider or reconsider any prior ruling regarding the notice at any

time as a matter of federal common law.[1]  Second, even if it could be genuinely argued that this

Court does not have the authority to approve or modify the language of the notice (which is

denied as Plaintiffs have expressly presented the issue to the Court and the Court did not refer

the notice issue to the Magistrate Judge), Defendant can seek correction of the notice from the

Magistrate Judge directly under Federal Rule of Civil Procedure 60.  *Krim v. PCOrder.com, Inc.,*

212 F.R.D. 329 (W.D. Tex. 2002); *In re Ford Motor Co. Bronco II Product Liability Litigation,*

1997 U.S. Dist. LEXIS 5732 (E.D. La. 1997) (see, attached Exhibit 2); *Broadway v. Norris,* 193

F.3d 987 (8th Cir. 1999).  For the reasons explained below, this Court should deny Plaintiffs'

motion and approve the corrected notice attached hereto instead.

## I.    **BACKGROUND**

On July 27, 2005, Plaintiffs filed with this Court their Motion to Conditionally Certify a

Collective Action Pursuant to § 216(b) of the FLSA and to Approve a Proposed Notification to

All Putative Collective Action Members seeking, among other things, approval of a notice to

potential collective action members. (Rec. Doc. 19).  On the same day, Plaintiffs filed their

Motion for Protective Order, Sanctions, and Corrective Action alleging threats of retaliation and

seeking various actions from the Magistrate Judge.  (Rec. Doc. 18). Defendant opposed both

motions.  (Rec. Docs. 26 and 27).

---

[1] Well settled in the law is the principle that a "court may reconsider its own rulings to avoid perpetuating error.  To hold otherwise would be to elevate consistency over justice." *Cajun Electric Power Cooperative, Inc. v. Riley Stoker Corp.,* 781 F.2d 353, 365 (5th Cir. 1986). *See also, Christianson v. Colt Industries Operating Industries Corp.,* 486 U.S. 800, 817 (1988) (holding that a "court has the power to revisit prior decisions of its own… in any circumstance."); *United States v. Horton,* 622 F.2d 144, 149 (5th Cir. 1980) ("the doctrine of the law of the case… does not deprive the trial judge of the power to reexamine and, if necessary, to alter a previous ruling in order to avoid the perpetuation of an error.")

On August 17, 2005, this Court heard oral arguments on Plaintiffs' Motion to Conditionally Certify a Collective action.  At the hearing, the Court decided several issues with regard to the form and content of the proposed notice to potential collective action members. (Hearing Transcript, Rec. Doc. 37).  This Court did not refer any issues with respect to the proposed notice to the Magistrate Judge, nor was the Court made aware that the Magistrate Judge would be asked to decide any issues with respect to the proposed notice.  *Id.*  On the same day, the Magistrate Judge heard arguments on Plaintiffs' Motion for Protective Order. In opposition, Defendant pointed to inadmissible statements in Plaintiffs' affidavits, presented affidavits from numerous Hornets executives and managers denying the allegations, and referred to controlling legal authorities demonstrating that Plaintiffs had not only failed to carry their burden of proving retaliatory threats, but that they were asking the Court to impose a prior restraint on Defendant's right to free speech in violation of the United States Constitution.  (Rec. Doc. 27).  Plaintiffs asked the Magistrate Judge to modify the notice as to which the Court had just ruled. Defendant pointed out to the Magistrate Judge that this issue had just been decided by the Court.  The Magistrate Judge took the matter under advisement, and this action was stayed until late November 2005 as a result of Hurricane Katrina.

On December 16, 2005, the Magistrate Judge held a telephone conference to address "the issue of retaliation and how that shall be treated in the Notice to the class." (Rec. Doc. 40).  The Magistrate Judge stated that she was not prepared to say the Defendant had done anything wrong based on the affidavits presented in connection with the Plaintiffs' Motion for Protective Order. The Magistrate Judge then reviewed with the parties the language in Section 6 of the Notice located as Exhibit G to Plaintiffs' Motion for Protective Order. (Rec. Doc. 18).  The Magistrate

Judge began to address certain issues as to the form and content of the notice.  Defendant pointed

out that the Court had already ruled on such issues on August 17, 2005. (Hearing Transcript,

Rec. Doc. 37).

The Magistrate Judge then concluded that the language in the first paragraph of Section 6

of Exhibit G to Plaintiffs' Motion for Protective Order would remain in the notice, as follows:

> The Fair Labor Standards Act prohibits an employer from discharging you or
> taking other adverse employment action against you for the purpose of retaliating
> against you because you elect to join this lawsuit.

(Rec. Doc. 40).  Notably, this Court had already approved such language, although the Court

ordered that it appear in normal text, without full capitalization and bold emphasis.  (Rec. Doc.

37).  This language includes an important qualification of the prohibition that is essential to the

character of retaliation prohibited by the FLSA -- **"for the purpose of** and **because** you elect to

join this lawsuit."** (emphasis added).[2]

The Magistrate Judge then addressed the subparagraphs underneath the first paragraph

already approved by this Court and decided that subparagraph 2 of Section 6 (Exhibit G to

Plaintiffs' Motion for Protective Order) would remain in the notice.  Subparagraph 2 read:

> No adverse employment action will be taken against any current employee who
> communicates with any former employee of the New Orleans Hornets.

Defendant objected to this language as overly broad because it would prohibit the Hornets from

taking adverse employment action against an employee for communicating with a former

employee about any subject, which is not unlawful retaliation within the meaning of the FLSA.

---

[2] The Fair Labor Standards Act prohibits retaliation against employees for asserting rights under the FLSA, which provides in pertinent part:  "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee **because** such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act."  29 U.S.C. § 215(a)(3).  (emphasis added).

Defendant pointed out that this overly broad language would prohibit it from taking legitimate, non-retaliatory action to enforce work rules and performance standards. For example, a current employee could engage in workplace violence or refuse to perform her duties and avoid the consequences for same if she had simply communicated with a former employee, regardless of the substance of the communication or the legitimate, non-retaliatory grounds for addressing the conduct or performance issue. The Magistrate Judge agreed that the proposed language was overly broad and attempted to limit the prohibition by limiting the communications at issue to those that involve issues in this lawsuit. As the subparagraph at issue was in the anti-retaliation section of the proposed notice and concerned only unlawful retaliation under the FLSA, all parties and the Magistrate Judge understood and agreed that this was the purpose of the language. *See,* Plaintiffs' Motion for Court Approval of Amended Notice to Prospective Class members and Amended Consent to Join, p.7.

On December 20, 2005, the Magistrate Judge issued a minute entry as a result of the December 16, 2005, telephone conference. The language based on Plaintiffs' proposed subparagraph 2 is mistakenly so overly broad that goes well beyond protecting employees from unlawful retaliation within the meaning of the FLSA[3] and, in fact, creates rights in their employment beyond those provided by any law. Further, the language is so overly broad that it actually poses a risk to the health and safety of Defendants' employees, customers, and others. For example, the language purports to prohibit Defendant from suspending, discharging, or otherwise removing from the workplace an employee for attacking another person, despite

---

[3] Defendant does not concede that communications between current and former employees about issues in an FLSA lawsuit constitutes protected activity, and reserves all rights and defenses to any such allegation or claim.

legitimate reason to do so, if the employee had ever communicated with a former employee about issues in the lawsuit.  This obviously goes far beyond advising potential collective members of their rights under the FLSA.  In attempting to finalize the notice, Defendant pointed out this mistake to Plaintiffs and proposed qualifying, corrective language, specifically citing as an example the risk of personal injury others, but Plaintiffs refused to make the correction or to attempt to determine whether there was another solution that would not present this harm and that would address unlawful, rather than lawful, conduct.

## II.    LAW AND ARGUMENT

The Plaintiffs have no legal basis for their assertion that Defendant cannot oppose the current motion.  In fact, that law is well-settled that this Court has the authority to consider the merits of the amended notice, whether in response to Plaintiffs' pending motion or in reviewing any prior ruling regarding the notice.  *Cajun Electric Power Cooperative, Inc.,* 791 F.2d at 365; *Christianson,* 486 U.S. at 817; and *Horton,* 622 F.2d at 149.

The language in the December 20, 2005 Minute Entry does not accurately reflect the purpose in including standard language reflecting the FLSA's prohibition of unlawful retaliation. In fact, the language at issue is inconsistent with the language already approved by this Court, which relates to unlawful retaliation, not lawful conduct.  The first paragraph of Section 7 of the notice states:

> The Fair Labor Standards Act prohibits an employer from discharging you or taking any other adverse employment actions against you **for the purpose of** retaliating against you **because** you have exercised your rights under that law.

(emphasis added.)  This language makes it clear that retaliatory conduct is conduct taken for the purpose of retaliating, or because of protected activity.  The Magistrate Judge's inclusion of this

anti-retaliation provision of the notice was meant to clarify the more general FLSA retaliation provision. However, the Minute Entry states:

> No adverse employment action will be taken against any current employee who communicated with any former employee of the New Orleans Hornets about this lawsuit.

This language does not include any "for the purpose of" or "because of" language as used in the first paragraph and in the FLSA's prohibition of retaliation. (The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee **because** such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act." 29 U.S.C. § 215 (a)(3); *emphasis added*.) Further, the "Notice" goes beyond purporting to "notify" potential collective action members of their obligations and rights; it actually purports to restrict Defendant's right to conduct its operations, including, for example, taking employment actions with regard to employees who engage in misconduct (even misconduct that presents the risk of harm to others). Suggesting that Defendant cannot take legitimate, non-retaliatory employment actions when employees violate work rules (for example, sexual harassment, theft, workplace violence, etc.) simply because they may have at one time discussed this lawsuit with former employees is neither consistent with the anti-retaliation provision of the FLSA nor the language previously approved by the Court for the anti-retaliation provision of the notice. Further, challenges to legitimate, non-retaliatory employment actions based on the confusion created by such overly broad language stand to place Defendant's employees, customers, and others in harm's way if Defendant is prevented from taking such actions.

Defendant proposes the following language to avoid such potentially harmful confusion about the notice to be approved by the Court:

> No adverse employment action will be taken against any current employee who communicates with any former employee of the New Orleans Hornets about issues in this lawsuit **for the purpose of retaliating against such employee because of such communication.**

(emphasis added.)   This language mirrors the language in the first paragraph of the anti-retaliation section, previously approved by the Court.[4]   The Plaintiffs have refused to agree to such language (even after being warned of the risk of harm to employees, customers, and others). The rules of procedure are not to be used to work an injustice or cause physical harm, but are tempered by the discretion of the Court to insure that justice is achieved.  The language proposed by the Defendant should be adopted because it more accurately reflects the anti-retaliation purpose of the provision and protects individuals from the absurd results and potential harm that the Plaintiffs' proposed language would cause.

## III.   **CONCLUSION**

For the foregoing reasons, Defendant opposes Plaintiffs' motion and respectfully requests that the Court reject their proposed notice in favor of the notice attached hereto as Exhibit 1.

---

[4] Defendant does not concede that such communications constitute protected activity under the FLSA, nor does it concede that the language is Constitutional for reasons expressed in its opposition to Plaintiffs' Motion for Protective Order. (Rec. Doc. 27).

Respectfully submitted,

SIDNEY F. LEWIS, V (Bar No. 17026)
JENNIFER L. ANDERSON, T.A. (Bar No. 23620)
JANE H. HEIDINGSFELDER (Bar No. 28604)
***Jones, Walker, Waechter, Poitevent,***
  ***Carrère & Denègre, L.L.P.***
201 St. Charles Avenue, 50th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8000
Telefax:  (504) 582-8015
e-mail:  slewis@joneswalker.com
e-mail:  janderson@joneswalker.com
e-mail:  jheidingsfelder@joneswalker.com
***COUNSEL FOR DEFENDANT,***
    ***NEW ORLEANS HORNETS NBA L.P.***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a copy of the above and foregoing *Memorandum in Opposition to Plaintiffs' Motion for Approval of Amended Notice to Prospective Class Members and Amended Consent to Join* has been served on all counsel of record below by placing same in the United States mail, postage prepaid, properly addressed and via telefax, this 30th day of January, 2006.

Daniel E. Buras, Jr., Esq.
Daigle Fisse, PLC
109 Northpark Boulevard - Suite 125
Post Office Box 5350 [70434]
Covington, Louisiana  70433
Telefax:  (985) 871-0899

Stewart E. Niles, Jr., Esq.
Niles, Bourque & Fontana LLC
909 Poydras Street - Suite 3500
New Orleans, Louisiana  70112
Telefax:  (504) 310-8590

Alan F. Kansas, Esq.
The Law Office of Alan Kansas, PLLC
5531 Jackwood
Houston, Texas  77096
Telefax:  (484) 210-5800

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EUGENE LIGER, ET AL. | CIVIL ACTION NO. 05-1969 |
| Plaintiffs in a Collective Action | SECTION C |
| VERSUS | MAGISTRATE 05 |
| NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP | |
| Defendant | |

## NOTICE

To:  All current and former employees of The New Orleans Hornets NBA Limited Partnership ("Hornets") who worked for the Hornets at any time between August 2002 to present and, at any time therein, worked over 40 hours per week without being paid time and half for the hours worked over 40 hours per week, as described more specifically in Section 3 of this Notice:

Re:    Fair Labor Standards Act Lawsuit Filed Against the New Orleans Hornets NBA Limited Partnership

**1.      INTRODUCTION**.

The purpose of this Notice is to inform you of the existence of a collective action lawsuit in which you potentially are "similarly situated" to the named Plaintiffs, to advise you of how your rights may be affected by this lawsuit, and to instruct you on the procedure for participating in this lawsuit, if you fit the definition of the class described in Section 3 of this Notice, should you decide that it is appropriate and should you choose to do so.

**2.      DESCRIPTION OF THE LAWSUIT.**

In May 2005, former and current employees of the Hornets brought this lawsuit against the Hornets on behalf of themselves and all other past and present employees of the Hornets in the United States District Court for the Eastern District of Louisiana, alleging that they and other similarly situated former and current employees are owed unpaid overtime under the Fair Labor Standards Act.   After the lawsuit was filed, other current and former employees joined the lawsuit as named Plaintiffs and have asserted the same claims.

{N1446946.1}



The Plaintiffs allege that the Hornets willfully failed to properly calculate overtime for themselves and other similarly situated former and current employees. The Plaintiffs seek overtime pay and an equal amount of pay as liquidated damages, as well as prejudgment interest, attorneys' fees and costs. This lawsuit is currently in the early pretrial stage.

The Hornets deny Plaintiffs' allegations and maintain that all employees were compensated in compliance with the Fair Labor Standards Act.

## 3.    DEFINITION OF THE CLASS.

The named Plaintiffs seek to sue on behalf of themselves and also on behalf of:

All current and former employees of the Hornets who worked in any of the following categories or job classifications at any time between August 2002 to present and who worked, at any time therein, more than 40 hours per week without being paid time and half for all hours worked over 40 hours per week;

1.    Special Events Coordinator;
       Promotions and Events Assistant;
       Ticket Operations Assistants;
       Mascot Assistants;
       Fan Development Representatives and/or Fan Relations Representatives;
       Senior Guest Relations Representatives;
       Senior Account Executives;
       Account Executives and/or Sales Associates;
       Receptionists;
2.    Inside Ticket Sales Representatives and/or Marketing Representatives;
       Group Sales Executives;
       Sponsorship Sales Account Executive;
       Sponsorship Services;
       Sponsor Services Coordinator;
2.    Public Relations Intern;
       Inter-Office Courier;
2.    Executive Assistant Basketball Operations;
       Video Coordinator; and
       Administrative Assistant Basketball Operations.

## 4.    YOUR RIGHT TO PARTICIPATE IN THIS SUIT.

If you fit the definition above, you may join this suit (that is, you may "opt in") by mailing the attached "Plaintiff Consent Form" to Plaintiffs' counsel at the following address:

{N1446946.1}

2

Niles, Bourque & Fontana, L.C.
909 Poydras Street, Thirty-Fifth Floor
New Orleans, Louisiana 70112

as soon as possible and in sufficient time to have Plaintiffs' counsel file it with the federal court on or before _____. If you fail to return the "Consent to Become Party Plaintiff" form to Plaintiffs' counsel in sufficient time to have it filed by the date above, you may not be able to participate in this lawsuit.

If you file a "Plaintiff Consent Form,"  your right to participate in this lawsuit may depend upon a later decision by the District Court that you and the Plaintiffs are actually "similarly situated" in accordance with federal law.

**5.    EFFECT OF JOINING THIS SUIT.**

If you choose to join in the suit, you will be bound by the Judgment, whether it is favorable or unfavorable.  While this suit is proceeding, you may be required to respond to written questions, sit for depositions and/or testify in court.

The attorneys for the class Plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee.  Your interest will be represented by the named Plaintiffs through their attorneys as counsel for the class.  The class could (not would) be liable for costs if there is no recovery. If there is a recovery, the attorneys for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class.  By joining this lawsuit, you designate the named Plaintiffs as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, and all other matters pertaining to this lawsuit.  These decisions and agreements made and entered into by the named Plaintiffs will be binding on you if you join this lawsuit.

**6.    LEGAL EFFECT OF NOT JOINING THIS SUIT.**

If you choose not to join this suit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class.  If you choose not to join in this lawsuit, you are free to file your own lawsuit.  However, because the passage of time may result in part or all of your claim being barred by the applicable statute of limitations, if you wish to participate in this lawsuit, it is important that you sign, date, and mail the attached consent form in sufficient time to have it filed by the date above in Section 4.

**7.    NO RETALIATION PERMITTED.**

The Fair Labor Standards Act prohibits an employer from discharging you or taking any

{N1446946.1}

3

other adverse employment action against you for the purpose of retaliating against you because you have exercised your rights under that law.

No adverse employment action will be taken against any current employee who communicates with any former employee of the New Orleans Hornets about issues in this lawsuit for the purpose of retaliating against such employee because of such communication.

## 8.    YOUR LEGAL REPRESENTATION IF YOU JOIN.

If you choose to join this lawsuit, your interest will be represented by the named Plaintiffs through their attorneys, as counsel for the class.  Counsel for the class are:

> DAIGLE FISSE, PLC
>
> Howard Daigle (LA Bar # 4454)
> Daniel E. Buras, Jr. (LA Bar # 26226)
> Elvige Cassard Richards (LA BAR # 19386)
> 227 Highway 21
> Madisonville, LA  70447
> Telephone:    985.871.0800
> Facsimile:    985.871.0899
>
> Mailing address:
> P.O. Box 5350
> Covington, LA  70434-5350

and

> NILES, BOURQUE & FONTANA, LC
>
> Stewart E. Niles, Jr. (#10004)
> Larry Centola Jr. (#27402)
> 909 Poydras St., Suite 3500
> New Orleans, LA 70112
> Telephone: 504-310-8550
> Facsimile: 504-310-8595

## 9.    FURTHER INFORMATION.

Further information about this Notice, the deadline for filing a "Plaintiff Consent Form," or questions concerning this lawsuit may be obtained by writing or telephoning Plaintiffs' counsel at the numbers and addresses stated above.

{N1446946.1}

THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, HONORABLE HELEN G. BERRIGAN.  THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR OF DEFENDANT'S DEFENSES.

{N1446946.1}

LEXSEE 1997 US DIST LEXIS 5732

**IN RE FORD MOTOR COMPANY BRONCO II PRODUCT LIABILITY LITIGATION**

**CIVIL ACTION MDL 991 SECTION "G"**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*1997 U.S. Dist. LEXIS 5732*

**April 15, 1997, Decided**
**April 17, 1997, FILED; April 18, 1997, ENTERED**

**DISPOSITION:** [*1] Washington plaintiffs' motion DENIED in its entirety.

**COUNSEL:**

For FORD MOTOR CO. BRONCO II, Products Liability Litigation, In re: Colvin Gamble Norwood, Jr., Mark N. Bodin, McGlinchey, Stafford & Lang, New Orleans, LA. John H. Beisner, Brian D. Boyle, O'Melveny & Myers, Washington, DC.

For DOW JONES & COMPANY INC, MILO GEYELIN, intervenors: Jack M. Weiss, Mark Benjamin Holton, Correro, Fishman, Haygood, Phelps, Weiss & Walmsley, LLP, New Orleans, LA.

PATRICIA HOWARD, (added for mailing purposes only), other, Pro se, Washington, DC.

**JUDGES:** MOREY L. SEAR, CHIEF JUDGE

**OPINIONBY:** MOREY L. SEAR

**OPINION:**

MEMORANDUM AND ORDER

Background

The captioned litigation has been pending before me since February 9, 1994, when five actions were transferred to this district by the Judicial Panel for Multidistrict Litigation ("JPML") for consolidated pretrial proceedings. n1 The litigation involves consumer actions asserting claims under the federal Magnuson-Moss Warranty Act and state law. Damages and equitable relief are sought for owners of Ford Bronco II vehicles marketed between 1983 and 1990, based on an alleged design de-

fect that renders the vehicle unduly prone to roll over in normal driving conditions. Recovery is not sought for personal injury or death. The background of the cases has been set forth in detail in numerous prior orders and will be repeated here only as relevant.

n1 Bates, et al v. Ford Motor Co., 94-0537 (M.D.La.); Lewis, et al v. Ford Motor Co., 94-0538 (S.D.Miss); Armistead, et al v. Ford Motor Co., 94-0539 (W.D.N.C.); Luis, et al v. Ford Motor Co., 94-0540 (S.D.Fla.); Vitrano, et al v. Ford Motor Co., 94-2537 (E.D.La.).

[*2]

Subsequent to the transfer of the five actions by the JPML, on May 26, 1995, Roy L. Washington, Sr., on behalf of a nationwide class of Bronco II owners, filed an action in this district seeking relief similar to that sought by plaintiffs in the consolidated matter. n2 On June 20, 1995, the action was amended to name twenty-two additional plaintiffs, among other things. n3 Subsequently, the Washington action was transferred from another section of this court to this section, and by order entered on August 3, 1995 I consolidated the action with the captioned multidistrict proceeding. n4 Since that time, the Washington action, per se, has been referred to as a "tagalong" action. However, to the extent that twenty-one of the plaintiffs named in the Washington complaint have also been named in the Second Consolidated Amended Class Action Complaint, those plaintiffs have become part of the core proceedings. n5

n2 Washington v. Ford Motor Co., CA No. 95-1676. Record Doc. No. 1. Another action, Kloster v. Ford Motor Co., CA No. 95-1966, was



EXHIBIT

**2.**

transferred by the JPML on December 22, 1995 for consolidation.

[*3]

n3 Record Doc. No. 3, CA No. 95-1676.

n4 Record Doc. No. 5, CA No. 95-1676.

n5 Record Doc. No. 241, Exhibit A.

Following considerable discovery and approximately four months of settlement negotiations, on or about January 28, 1997 the parties delivered a proposed settlement to my chambers. I carefully reviewed the terms of the proposed settlement as well as the related orders and documents, including the proposed notice to be disseminated to putative class members. I also reviewed the various public statements made by the parties' counsel and representatives to the press. On January 30, 1997 I conducted a telephone conference with attorneys for plaintiffs and Ford Motor Company, at which time I verbally expressed my dissatisfaction with the proposed settlement. I also met with counsel in chambers to discuss the proposed settlement. n6 By minute entry dated January 31, 1997, I found that the proposed settlement was not sufficiently fair, reasonable and adequate to grant preliminary approval and allow dissemination of the proposed settlement to the class. n7 I did not assign detailed [*4] written reasons for my ruling at that time but subsequently, on request of plaintiff counsel Daniel Becnel, Jr., I did so. n8

n6 Daniel Becnel, Jr. was not present during this conference, but I subsequently conferenced with him in chambers in early February.

n7 Record Doc. No. 351.

n8 Record Doc. No. 358.

Following rejection of the settlement, I addressed the issue of class certification for litigation purposes, which I viewed as the next logical step in the proceedings. Briefing on the motion for class certification had been completed by September 1996 n9 but, at the parties' request, in the Fall of 1996 I had stayed discovery and deferred ruling on class certification while the parties pursued settlement negotiations. n10 Because some time had passed, upon redirecting my attention to the motion I afforded counsel several additional weeks to supplement their briefs and/or request a hearing (which they previously had waived). n11 Only Ford offered a supplemental submission, and I denied leave to file [*5] it because it simply reurged arguments previously advanced. n12

By Memorandum and Order entered on February 27, 1997, I denied plaintiffs' motion for class certification. n13

n9 See Record Doc. No. 343 (Ford's final submission on issue of class certification).

n10 Record Doc. No. 348.

n11 Record Doc. No. 351.

n12 Record Doc. No. 357.

n13 Record Doc. No. 354.

Almost contemporaneously with the issuance of my ruling on class certification, Ford filed a motion for summary judgment seeking dismissal of all plaintiffs' claims. On March 13, 1997, I granted the motion in part, dismissing all plaintiffs' express warranty, contract and fraudulent misrepresentation claims for failure of plaintiffs to produce evidence of any representations, affirmations or promises made by Ford concerning the Bronco II and dismissing the claims of three specific plaintiffs for lack of a genuine dispute of material fact on the issue of whether they sustained an actionable injury. n14

n14 Record Doc. No. 361.

[*6]

The "Washington plaintiffs," represented by Daniel Becnel, Jr., now seek a variety of relief from my rulings on the proposed settlement, plaintiffs' motion for class certification, and Ford's motion for summary judgment. Specifically, the Washington plaintiffs seek (1) reconsideration of the proposed settlement, leave to participate in renewed settlement discussions and appointment of a steering committee to renegotiate a settlement; (2) reconsideration of and leave to amend plaintiffs' motion for class certification; (3) reconsideration of the motion for summary judgment; (4) in the event the court denies reconsideration of the rulings rejecting the proposed settlement and denying class certification, an order granting plaintiffs leave to seek appellate review of those rulings pursuant to 28 U.S.C. § 1292 (b); and (5) in the event the court denies reconsideration of the summary judgment motion, a Rule 54 (b) judgment on the summary judgment ruling. Ford opposes the motion.

Discussion

I. General Standards Governing Motions for Reconsideration

The Washington plaintiffs seek reconsideration of three sets of rulings: those related to the parties' recently [*7] proposed settlement, plaintiffs' motion for class certification, and Ford's motion for summary judgment. The Fifth Circuit recognizes that a motion to reconsider a dispositive pre-trial motion n15 is analogous to a motion to "alter or amend the judgment" under *Rule 59 (e) of the Federal Rules of Civil Procedure* or a motion for "relief from judgment" under Rule 60 (b). *Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990); Charles L.M. v. Northeast Indep. School Dist., 884 F.2d 869 (5th Cir. 1989).* A motion for reconsideration is considered a Rule 59 (e) motion if it is served within ten days of the rendition of the judgment; if it is served after that time, it falls under Rule 60 (b). Id.

        n15 Although it is unlikely that the Fifth Circuit's reference to "dispositive" pretrial motions contemplates proposed settlements or motions for class certification, I find the standards helpful and, in exercising my equitable role, I am mindful of those standards in ruling on the motion for reconsideration of the settlement and certification.

[*8]

Plaintiffs' motion was served more than ten days after entry of the settlement rulings and class certification rulings, but was served within ten days of the ruling on summary judgment. Therefore, as a technical matter the Rule 60(b) standard would govern the former two motions and the Rule 59(e) standard governs the latter motion. As with Rule 59(e), whether relief is warranted under Rule 60(b) is a determination addressed to the sound discretion of the district judge. However, the Rule 60(b) motion is controlled by much more exacting substantive requirements than the Rule 59(e) motion. *Lavespere, 910 F.2d at 174.* Rule 60(b) provides for relief only upon a showing of one of the following: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) the judgment is void, e.g. due to the court's lack of subject matter jurisdiction; (5) the judgment has been satisfied, released or discharged; or (6) any other reason justifying relief. *Fed.R.Civ.P. 60(b).*

A. Reconsideration of Proposed Settlement

Plaintiffs seek reconsideration of the proposed settlement, leave to participate in [*9] renewed settlement discussions, and appointment of a plaintiffs' steering committee in connection with renewed settlement discussions. The basis for this request, as I understand it, is that because I failed to appoint a plaintiffs' steering committee at the inception of this litigation and because I stayed proceedings in the tag-along actions, I have restricted counsel's participation in the discovery and settlement process.

Counsel correctly points out that I have at no time appointed a plaintiffs steering committee, but does not explain how this impacted his ability to represent his clients, who are named in both Washington v. Ford Motor Co. and the Second Consolidated Amended Complaint. Counsel also correctly pointes out that in the past I stayed proceedings related specifically to the tag-along actions until proceedings in the core actions were completed. However, I did so only to the extent that the tag-along plaintiffs were attempting to file separate, out of time motions that I found disruptive of the progress of the consolidated proceedings. I expressly permitted counsel for tag-along plaintiffs to participate in core discovery, and all plaintiffs, even the Alabama [*10] state court plaintiffs, sought to participate in the proposed settlement. n16 Moreover, almost all of the Washington plaintiffs were also named as plaintiffs in the Second Consolidated Amended Complaint.

        n16 Record Doc. Nos. 308 and 311.

I view as completely unfounded counsel's complaint that his participation was somehow restricted. Mr. Becnel participated in each of the settlement conferences before me or sent representatives on his behalf when he was unavailable. n17 To the extent that he felt that other counsel in the case were impinging on his representation of his clients, he voiced no such objection until after I had addressed the proposed settlement. His signature appeared on the proposed settlement and he concedes that he signed it voluntarily. Although he was unable to be present on one occasion when I met with counsel to discuss the proposed settlement and my problems with it, at Mr. Becnel's request I subsequently met with him and counsel for Ford in chambers to discuss the matter.

        n17 See Record Doc. Nos. 346, 350 and Attachment A.

[*11]

Even assuming the accuracy of Mr. Becnel's statements concerning his lack of participation in the settlement process, I decline to reconsider the proposed settlement. Under the terms of the proposed settlement that I rejected, the agreement was extinguished and rendered null and void upon my order denying approval; n18 there is no longer a proposed settlement for me to consider. Further, I decline the invitation to compel the parties to

1997 U.S. Dist. LEXIS 5732, *

renegotiate a settlement and/or to appoint a steering committee for purposes of the confection of a settlement. Although I have always been willing to facilitate settlement discussions in any manner possible, at no time have I purported to require amicable resolution of these proceedings and I will not begin to do so now.

n18 Proposed Settlement at 15.

B. The Class Certification Motion

The Washington plaintiffs seek reconsideration of the motion for class certification, claiming that they have not had an opportunity to address class certification issues. They seek leave [*12] to amend the previously submitted motion with a survey of the laws governing the claims here and a recent ruling issued in the Telectronics litigation in the Southern District of Ohio, n19 and ask that I permit them to submit supplemental briefing by some unspecified future date. Ford opposes the motion.

n19 MDL No. 1057, April 2, 1997 Order Granting in Part Plaintiffs' Renewed Motion for Class Certification.

The Washington plaintiffs' motion for reconsideration is inexcusably tardy. It comes more than a full year after the parties submitted their initial class certification briefs, a year after I denied another tag-along plaintiff's separate motion for class certification as untimely, n20 nearly two months after I afforded the parties opportunity to submit supplemental class certification briefing n21 and nearly a month after I issued my final ruling denying class certification. Plaintiffs offer no explanation for the delay.

n20 On April 1, 1996 I denied leave to plaintiffs in the Kloster tag-along to file a separate motion for class certification, on grounds that such motion was out of time and the class sought to be certified was identical to that sought by the timely-filed motion under the Second Consolidated Amended Complaint. Record Doc. No. 311.

[*13]

n21 Record Doc. No. 351, at p. 2.

Plaintiffs' claim that they have not had an opportunity to address class certification issues is completely unfounded. Mr. Becnel's name appears on each of the class certification submissions filed in the consolidated proceedings. The Washington plaintiffs are not asserting that there are class certification issues unique to their separate tag-along action that must be addressed. Instead, the survey submitted and cryptic line of argument n22 goes toward issues already addressed in connection with the motion filed pursuant to the Second Consolidated Amended Complaint, which names as plaintiffs all but two of the plaintiffs named in the Washington action. This is evidenced, if by nothing else, by the request to "amend" the motion previously filed.

n22 As mentioned, although they have submitted a variety of charts that purport to be a survey of the states' laws on design defect, express warranty, implied warranty and fraudulent concealment, the charts merely cite cases and/or categorize theories; as yet no argument or analysis has been linked to the charts.

[*14]

Finally, plaintiffs' submission of a recent ruling in the Telectronics pacemaker litigation does little to persuade me that class certification deserves a second look in this matter. There are significant factual differences between the Telectronics case and the captioned action, none of which plaintiffs address. n23 Also of import here is the Telectronics court's expression of "strong[] disagreement" with the Fifth Circuit's interpretation of the requirements of Rule 23 in *Castano v. American Tobacco Co., 84 F.3d 734 (5th Cir. 1996).* n24 Even assuming I were at similar liberty to criticize the Fifth Circuit's approach, a further distinction exists which weakens plaintiffs' position: on renewed motions for certification in the Telectronics case the plaintiffs came forward with much more than a survey of state law variations. Among other things, in order to cure the flaws in their prior attempts at certification, they provided an exact definition of subclasses and their representatives and explained how each subclass met the prerequisites of Rule 23 (a) and (b). Even had the Washington plaintiffs' survey been submitted timely, standing alone it would not have [*15] satisfied the parties' burden of analyzing variations in laws so as to support a finding of predominance or superiority under *Federal Rule of Civil Procedure 23 (b) (3).*

n23 Plaintiffs submitted the case under cover letter and a one-page motion for leave to submit the case as additional materials going to the class

certification issue. No analysis or argument, as yet, has been offered.

n24 MDL No. 1057, April 2, 1997 Order Granting in Part Plaintiffs' Renewed Motion for Class Certification, at p. 3.

In sum, I find no demonstration of mistake, inadvertence, surprise or excusable neglect, submission of new evidence, or any other reason that justifies reconsideration of the motion for class certification. I therefore deny plaintiffs' motion for reconsideration of and leave to amend the class certification motion.

C. The Summary Judgment Motion

In the opening paragraph of their motion papers, the Washington plaintiffs seek reconsideration of "the court's order[] entered on . . . March, 14, 1997," the [*16] ruling on the motion for summary judgment. However, they suggest no reason why the motion should be reconsidered, and make no argument justifying reconsideration. Counsel's name appeared on the joint opposition filed by plaintiffs, so I consider unfounded any assertion that he was not afforded opportunity to address Ford's motion.

III. 28 U.S.C. § 1292 (b) Certification

In the alternative, in the event that I deny reconsideration, which I have, the Washington plaintiffs ask me to amend my orders rejecting the proposed settlement and denying class certification to certify the orders for immediate appeal pursuant to 28 U.S.C. § 1292 (b). Ford opposes the motion.

Section 1292 (b) provides for interlocutory appeal in exceptional circumstances, where an order not otherwise appealable satisfies three distinct criteria: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion as to that question; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292 (b). All three of these requirements must be met before an order is properly certified for interlocutory [*17] appeal, as the basic rule of appellate jurisdiction strongly disfavors piecemeal appeals. Clark-Dietz & Assoc. v. Basic Constr. Co., 702 F.2d 67, 69 (5th Cir. 1983); Aparicio v. Swan Lake, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981).

Plaintiffs attempt to identify a controlling issue of law on which there is substantial ground for difference of opinion by citing conflicting cases on the issue of whether the standard for certifying a settlement class is the same as that for certifying a class for litigation purposes. Plaintiffs then state that "clearly, if the settlement in this case were approved, then the ultimate termination

of this litigation would be materially advanced [and] the same is true of the class certification." n25

n25 Plaintiffs' Memorandum at p. 7.

With regard to my order(s) rejecting the proposed settlement, plaintiffs obviously are under the impression that I applied a standard they consider legally improper, i.e., the standard applied by the Third Circuit in Georgine v. Amchem Prods., [*18] 83 F.3d 610 (3d Cir.), cert. granted sub nom., Amchem Prods. v. Windsor, 136 L. Ed. 2d 297, 117 S. Ct. 379 (1996). Despite what might have been suggestions on my part, during settlement conferences, that I found the Third Circuit's approach logical, the standard I applied when considering the proposed settlement was the one followed by the Fifth Circuit, i.e., the six-factor standard for assessing the fairness and adequacy of a proposed class settlement. n26 Unlike the Third Circuit's standard, the Fifth Circuit's standard permits consideration of the settlement itself when the court is deciding whether a proposed settlement should be approved under Rule 23 (e). n27 This is clear from my reasons assigned on March 6, 1997, in which I explain that I declined to approve the recent proposed settlement for the same reasons I rejected the first proposed settlement in 1995, i.e., primarily due to the appearance of fraud or collusion in the confection of the settlement. n28

n26 See Reed v. General Motors Co., 703 F.2d 170, 172 (5th Cir. 1983); Parker v. Anderson, 667 F.2d 1204, 1209 (5th Cir. 1982).

[*19]

n27 In re Asbestos Litigation, 90 F.3d 963, 975 (5th Cir. 1996).

n28 See Memorandum and Order entered on March 7, 1997 (Record Doc. No. 358); Memorandum and Order entered on march 20, 1995 (Record Doc. No. 160).

Moreover, assuming I had used the standard applied by the Third Circuit, the result likely would not have been different, although the reasons would have been, i.e., the reasons would have been the same that prompted me to find class certification inappropriate for purposes of litigation. Because the result would have been the same under either standard, I fail to see how the outcome of the Supreme Court's ruling in the Georgine case will affect these proceedings. In any event, appeal is unneces-

sary to address the issue. The Fifth Circuit's standard is clear, I have applied it, and in the event that the United States Supreme Court changes the standard, I am as bound by such a change as the Fifth Circuit. For these reasons, plaintiffs fail to establish that there is a controlling question of law on which there is a substantial difference of opinion so as to justify appeal [*20] at this time.

With respect to my ruling on class certification for trial purposes, the issue involved in the cases cited by plaintiffs -- what standard should be used to certify a class for settlement purposes -- was not before me when I rejected plaintiffs' bid for class certification. Accordingly, plaintiffs fail to identify a controlling issue of law on which there is substantial basis for difference of opinion.

IV. Rule 54 (b) Judgment on Partial Summary Judgment

Finally, the Washington plaintiffs move pursuant to *Federal Rule of Civil Procedure 54 (b)* for entry of final judgment on the claims I dismissed in connection with Ford's motion for summary judgment. Ford opposes the motion.

Rule 54 (b) provides that "the court may direct the entry of final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon express direction for the entry of judgment." *Fed.R.Civ.P. 54 (b).* The purpose of this rule is to avoid piecemeal appeals from orders that adjudicate less than all of the claims or the rights and liabilities of fewer than all of the parties. *PYCA Indus., Inc. v. Harrison County* [*21] *Waste Management, 81 F.3d 1412, 1421 (5th Cir. 1996)* (citations omitted). "A district court should grant certification only when there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal; it should not be entered routinely as a courtesy to counsel." Id.

The Washington plaintiffs fail to point out or demonstrate any injustice or hardship that will result from postponement of any appeal until the entire case is adjudicated. For this reason, I deny their motion for entry of a Rule 54 (b) judgment.

Accordingly,

IT IS ORDERED that the Washington plaintiffs' motion IS DENIED in its entirety.

MOREY L. SEAR

CHIEF JUDGE

ATTACHMENT A

---

| 10/2/96 MDL 991 Conference | |
|---|---|
| John F. Harris | Ford Motor Company |
| John Beisner | Ford Motor Company |
| G.G. NORWOOD | FORD |
| David Donaldson | Plaintiffs |
| Stephen B. Murray | PLAINTIFFS |
| Nyle A Politz | TTS |
| Richard L. West | Plaintiffs |
| JOHN L. STEWART | PLAINTIFFS |
| LAWRENCE G. GETTYS | PLAINTIFFS |
| DANIEL E BECNEL III | PLAINTIFFS |
| FREDERICK T. KUYKENDALL III | PLAINTIFF CLASS |
| Stephen B Murray, Jr. | [checkmark] [checkmark] |
| MICHAEL H. ELLIS | [checkmark] [checkmark] |
| Bob Ates | " " |

---

[*22]