UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EUGENE LIGER, ET AL, | * | CIVIL ACTION NO. 05-1969 |
|     Plaintiffs in a Collective Action | * | |
| | * | SECTION C |
| | * | |
| versus | * | MAGISTRATE 05 |
| | * | |
| NEW ORLEANS HORNETS NBA LIMITED | * | |
| PARTNERSHIP, | * | |
|     Defendant | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE
FLSA'S AMUSEMENT/RECREATIONAL EXEMPTION IS INAPPLICABLE**

**MAY IT PLEASE THE COURT:**

Plaintiffs have brought this collective action under the Fair Labor Standards Act ("FLSA") seeking unpaid overtime wages and associated remedies due them in connection with their employment by the Hornets, an NBA basketball team. The Hornets have raised as a defense to this claim, *inter alia*, that it is exempt from paying overtime under 29 U.S.C. 213(a)(3), the "amusement/recreational exemption."

### BACKGROUND

In order to meet the amusement/recreational exemption, the Hornets must show that Plaintiffs

- 1 -

and the putative class members (collectively "Plaintiffs" herein)[1] were "employed by an establishment which is an amusement or recreational establishment," if the establishment meets certain other elements showing that it is seasonal in nature.[2] However, Plaintiffs were administrative/sales-type employees working in the organization's business operations, physically and functionally separate from the Hornets' basketball games. As confirmed by a Department of Labor ("DOL") Opinion Letter directly on point, Plaintiffs were not "employed by an establishment which is an amusement or recreational establishment" for purposes of the exemption. There is no dispute regarding the material facts on this issue. Plaintiffs seek a partial summary judgment that the amusement/recreational exemption does not apply to this case.[3]

## FACTS

The Hornets are a professional basketball team, and a member of the prestigious National Basketball Association.[4] Plaintiffs are sales and administrative personnel who were never paid for

---

[1] The positions held by Plaintiffs and the seventeen putative class members as to whom the notice period is still open are the following: Account Executives (sales); Executive Administrative Assistant; Fan Relations; Inside Sales; Corporate Sales Executive; Sponsorship Sales; Receptionist and Sales Assistant; Public Relations Intern; Ticket Sales Office Manager; Ticket Operations Assistant; Ticket Sales Assistant/Receptionist; Video Coordinator. Statement of Undisputed Material Facts, No. 1.

[2] See statutory exemption set out *infra* at page 4. 29 U.S.C. 213(a)(3).

[3] Even if the Hornets could show that Plaintiffs were employed by an establishment subject to the exemption, which Plaintiffs deny, the Hornets still cannot show that they meet the seasonality requirements of the amusement/recreational exemption. However, that issue is not presented in this motion, which addresses only the threshold question of whether Plaintiffs were "employed by an establishment which is an amusement or recreational establishment." The Hornets rely on other defenses in addition to the amusement/recreational exemption, such as, *inter alia*, the retail-commission sales exemption. Such other defenses also are beyond the scope of this Motion.

[4] "The National Basketball Association (NBA) is the world's premier men's professional basketball league and one of the major professional sports leagues of North America." Wikipedia, "National Basketball Association," http://en.wikipedia.org/wiki/National_Basketball_Association. NBA franchises, like the Hornets, with the global reach of their media revenues, sponsorships, merchandising campaigns and other promotional techniques, are no small-time fiscal operations. For example, the NBA's salary cap (the maximum amount each team may allocate to player salaries, subject to exceptions) is based on the total income of all NBA teams, which is called basketball related income (BRI). The players are guaranteed 48.04 percent of the BRI. This season (2006-07) the salary cap is $53.135 million. With 30 teams in the NBA, that equals collective income of well over $3 billion. See NBA Salary Cap, by InsideHoops.com, July 11, 2006 http://www.insidehoops.com/nba-salary-cap.shtml. The Hornets' reported revenue for the 2004-05 season was about $40 million, according to *The Seattle Times*, July 20, 2006.

overtime hours worked, and who now seek recovery of those unpaid overtime wages.

The centralized administrative and sales-type functions were performed by Plaintiffs in business offices physically and functionally separate from the stadium where the public attended games. The administrative and sales operations were housed in business offices in the New Orleans Arena, 1501 Girod Street, New Orleans, LA 70113, and/or in the Freeport-McMoran building, 1615 Poydras St., New Orleans, La. 70112-1254, and/or in a separate regional sales office, such as in Houma, Gulfport, Baton Rouge, Mandeville, Mississippi Gulf Coast. Statement of Undisputed Material Facts, Nos 2 - 6.

## LAW

### Standard For Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings" and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. *See also, Austin v. Johnson*, 328 F.3d 204 (5th Cir., 2003) (affirming in part grant of plaintiffs' motion for partial summary judgment denying certain defense to defendant).

### Exemptions Are Narrowly Construed; The Employer Carries The Burden.

The FLSA is a remedial statute which is to be given the broadest possible effect consistent

with its goal of providing a living wage to every authorized working person in America, and encouraging the availability of employment opportunities to as many persons as possible. All covered employers are obligated to pay their employees minimum wage and overtime in compliance with the FLSA unless a specifically enumerated exemption applies. It is well established that exemptions to the minimum wage and overtime obligations are narrowly construed, consistent with the strong public policy goals of the FLSA.

Where the employer seeks to avoid the obligation of the general rule, it is the employer's burden to prove that it falls under one of the enumerated exemptions from the general broad swath of coverage: "exemptions are to be narrowly construed against the employers." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295, (1959); *Phillips, Inc. v. Walling*, 324 U.S. 490 (1945). The Hornets "'must show that they are plainly and unmistakably within [the] terms and spirit' of the exemption." *Bridewell v. The Cincinnati Reds*, 68 F.3d 136, 138 (6th Cir.1995), *cert. denied*, 516 U.S. 1172 (1996) (quoting *Brennan v. Southern Productions, Inc.*, 513 F.2d 740, 744 (6th Cir.1975), citing *Arnold*, 361 U.S. at 392; *Mitchell*, 359 U.S. at 291).

The Amusement/Recreational Exemption.

The FLSA provides a specific exemption for amusement or recreational establishments, as follows:

> § 213. Exemptions
>
> (a) Minimum wage and maximum hour requirements.
> The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall not apply with respect to— ...
> (3) any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if

(A) it does not operate for more than seven months in any calendar year, or
(B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year, except that the exemption from sections 206 and 207 of this title provided by this paragraph does not apply with respect to any employee of a private entity engaged in providing services or facilities (other than, in the case of the exemption from section 206 of this title, a private entity engaged in providing services and facilities directly related to skiing) in a national park or a national forest, or on land in the National Wildlife Refuge System, under a contract with the Secretary of the Interior or the Secretary of Agriculture....

29 U.S.C 213.

Although legislative history is sparse,

the House Committee Report stated that the amusement and recreational establishment exemption would cover "such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events, parimutel racing, sport boating or fishing, or other similar or related activities...." H.R.Rep. No. 871, 89th Cong., 1st Sess. 35 (1965). ... The Tenth Circuit found that the purpose of the exemption was "to allow recreational facilities to employ young people on a seasonal basis and not have to pay the relatively high minimum wages required by the Fair Labor Standards Act." *Brennan v. Yellowstone Park Lines,* 478 F.2d 285, 288 (10th Cir.), *cert. denied,* 414 U.S. 909, 94 S.Ct. 228, 38 L.Ed.2d 147 (1973). The logical purpose of the provision is to exempt the type of amusement and recreational enterprises listed above, which by their nature, have very sharp peak and slack seasons. These businesses argue that they should not be held to the same wage and hour requirements as permanent, year-round operations. Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards. Congress responded to these concerns by enacting the amusement and recreational exemption.[5]

---

[5] The DOL's regulation addressing the amusement or recreational establishment exemption is as follows:

An amusement or recreational establishment operating on a seasonal basis may qualify as an exempt establishment under section 13(a)(3) of the Act, added by the 1966 amendments, even if it does not meet all the requirements of the 13(a)(2) exemption [repealed]. Section 13(a)(3) exempts from the minimum wage and overtime pay requirements of the Act "any employee employed by an establishment which is an amusement or recreational establishment, if (a) it does not operate for more than seven months in any calendar year or (b) during the preceding calendar year, its average receipts for any 6 months of the year were not more than 33 1/3 percentum of its average receipts for the other 6 months of such year." "Amusement or recreational establishments" as used in section 13(a)(3) are establishments frequented by the public for its amusement or recreation and which are open for 7 months or less a year or which meet the seasonal receipts test provided in clause (B) of the exemption. Typical examples of such are the concessionaires at amusement parks and beaches. (S. Rept. 145, 87th Cong., first session, p. 28; H. Rept. 75, 87th Cong., 1st Sess., p. 10.)

29 C.F.R. 779.385.

*Brock v. Louvers and Dampers, Inc.,* 817 F.2d 1255, 1258-59 (6th Cir.1987). It is evident that the drafters of this exemption did not contemplate the need for its application to the business operations of a powerhouse such as the present Defendant.

"Establishment" Means A Separate Physical Location.

"The term *establishment* means a *distinct physical place of business* rather than *an entire business or enterprise.*"[6] 29 CFR 779.203 (emphasis in original), citing 29 CFR 779.23, citing *Phillips v. Walling,* 324 U.S. 490 (1945); *Mitchell v. Bekins Van & Storage Co.,* 352 U.S. 1027 (1957); 95 Cong. Rec. 12505, 12579, 14877; H. Rept. No. 1453, 81st Cong., 1st Sess., p. 25;[7] 29 CFR 783.10.

> "The term 'establishment,' ... is not synonymous with the words 'business' or 'enterprise' when those terms are used to describe multiunit operations. In such a multiunit operation some of the establishments may qualify for exemption, others may not. For example, a manufacturer may operate a plant for production of its goods, a separate warehouse for storage and distribution, and several stores from which its products are sold. Each such physically separate place of business is a separate establishment. In the case of chain store systems, branch stores, groups of independent stores organized to carry on business in a manner similar to chain store systems, and retail outlets operated by manufacturing or distributing concerns, each separate place of business ordinarily is a separate establishment.

29 CFR 779.303.

---

[6] When the amusement/recreational exemption was first enacted, it was considered to be part of the retail exemption then found at 29 U.S.C 213(a)(2). While the amusement/recreational exemption does not require compliance with all the elements of the retail exemption, however, it does require a showing of employment by an "establishment," with the same definition of establishment as used in the retail context. *See, e.g., Brennan v. Yellowstone Park Lines, Inc.,* 478 F.2d 285, 290 (10th Cir.), *cert den.,* 414 U.S. 909 (1973); 29 C.F.R. 779.385.

[7] 29 CFR 779.23 - Establishment.
As used in the Act, the term establishment, which is not specially defined therein, refers to a ``distinct physical place of business" rather than to ``an entire business or enterprise" which may include several separate places of business. This is consistent with the meaning of the term as it is normally used in business and in government, is judicially settled, and has been recognized in the Congress in the course of enactment of amendatory legislation (*Phillips v. Walling,* 324 U.S. 490; *Mitchell v. Bekins Van & Storage Co.,* 352 U.S. 1027; 95 Cong. Rec. 12505, 12579, 14877; H. Rept. No. 1453, 81st Cong., 1st Sess., p. 25). As appears more fully elsewhere in this part, this is the meaning of the term as used in sections 3(r), 3(s), 6(d), 7(i), 13(a), 13(b), and 14 of the Act.

Thus, in *Phillips v. Walling* 324 U.S. 490; 65 S.Ct. 807 (1945), where the employer operated "a chain of 49 retail grocery stores," all serviced by a single separate warehouse and office building, each separate location was a separate establishment. *Phillips*, 65 S.Ct at 808. "Employees in the central office, which is located in the same building as the warehouse, perform the usual functions of checking invoices, paying bills, making out payrolls, keeping inventory records, checking store deliveries and the like." *Phillips*, 65 S.Ct at 809. "[T]he warehouse and central office employees ... were not exempted from the wage and hour provisions by reason of Section 13(a)(2) since the warehouse and office building" were separate from the grocery stores and did not meet the criteria of the retail exemption.[8] *Phillips*, 65 S.Ct at 810; *see also*, *Mitchell v. Bekins Van & Storage Co.*, 352 U.S. 1027 (1957) (a central warehouse providing general office services for the entire business was a separate enterprise which could not piggyback on the applicability of the retail exemption to other warehouses).[9]

Separate establishments exist on the same premises, including under the same "roof", where there is clear physical and functional separation of the locations, with generally separate recordkeeping and employees.[10] The regulations distinguish that situation from the single establishment existing where two departments operate as a unit (*e.g.*, if goods are produced in a back room and sold in the adjoining front room, the unit is a single establishment if operated as a single

---

8   "But if, as we believe, Congress used the word 'establishment' as it is normally used in business and in government as meaning a distinct physical place of business - petitioner's enterprise is composed of 49 retail establishments and a single wholesale establishment. Since the employees in question work in the wholesale establishment, Section 13(a)(2) [now-repealed exemption based on retail establishment] is plainly irrelevant." *Phillips*, 65 S.Ct at 809-10 (footnote excluded).

9   "The Supreme Court, in *Phillips*, made it clear that an establishment was a distinct place of business and not a grouping of places of business, and that in applying the retail exemption each place of business must be considered separately." *Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249, n. 6 (5th Cir. 1969).

10   29 C.F.R. 779.305 <u>Separate establishments on the same premises.</u>

store under common ownership.)[11] *See, e.g., Davis v. Goodman Lumber Co.*, 133 F.2d 52 (4th Cir. 1943) (retail exemption inapplicable to employees working in manufacturing phase in same facility as employer's retail lumber business).

Interpretation of the term "establishment" in accordance with these standards is well accepted among the courts in applying the amusement/recreational exemption. *See, e.g., Brennan v. Yellowstone Park Lines, Inc.*, 478 F.2d 285, 290 (10th Cir.), *cert den.*, 414 U.S. 909 (1973) (court emphasized the narrow construction of exemptions, and held central employees, performing functions serving company's other establishments in park, were not exempt because not employed by amusement/recreational establishment: central accounting office employees; manager's office employees; reservations office employees; advertising and promotion office employees; laundry employees; print shop employees; personnel office employees; warehouse employees; garage employees; ice manufacturing plant employees; central fire watch employees; and central maintenance and repair workers)[12]; *Adams v. Detroit Tigers, Inc.*, 961 F.Supp. 176, 179 (E.D.Mich.,1997) ("An "establishment" is a "distinct physical place of business"- in this case, the

---

11    29 C.F.R. 779.304 <u>Illustrations of a single establishment.</u>
12    The *Yellowstone* case also quoted *Shultz v. Adair's Cafeterias, Inc.*, 420 F.2d 390 (10th Cir. 1969), involving six cafeterias with a central bakery, and which it viewed "as being not only definitive of the term 'establishment', but also as illustrating the broad coverage-narrow exemption approach to this Act:"

> The lower court refused to test the Adair enterprise, for exemption, on an individual establishment basis. Instead, all businesses, including the bakery, were viewed together as being proprietarily united and functionally integrated, and physical separation was considered immaterial. This proposition runs directly contrary to the letter and spirit of the Fair Labor Standards Act and does not comport with the cases interpreting that law. 420 F.2d at 394. ... A company operating numerous food stores cannot include as a part of its retail business its candy kitchens. *Fred Wolferman, Inc. v. Gustafson*, 169 F.2d 759 (8th Cir. 1948). The operator of sandwich counters cannot include as retail its commissary where sandwiches are prepared. *Armstrong Co. v. Walling*, 161 F.2d 515 (1st Cir. 1947). Similarly, a restaurant-cafeteria chain may not include its bakery as part of its retail establishments. 420 F.2d at 394-395.

*Yellowstone Park Lines,* 478 F.2d at 290.

Tigers' establishment at Tiger Stadium, and not the Tigers' organization as a whole. 29 C.F.R. § 779.303); *see also Brennan v. Six Flags Over Georgia, Ltd.* 474 F.2d 18 (5th Cir.), *cert. denied*, 414 U.S. 827 (1973) (maintenance employees performing general contractor-type work not subject to exemption).[13]

The DOL and The Courts Have Negated Application of the Exemption to Plaintiffs.

The DOL has already concluded, in an opinion letter directly on point, that employees such as those bringing this lawsuit are not subject to the amusement/recreational exemption. Responding to a professional basketball team's inquiry regarding application of the subject exemption, the Wage and Hour Administrator confirmed the essential consideration is whether the employing "establishment", as a separate physical location, can be characterized as one for amusement or recreation:

> It is evident that *** Arena is the amusement and recreational establishment and ... would be the establishment entitled to the exemption in section 13(a)(3) provided either of the two tests therein were met.
>
> *It is also evident that the administrative offices of the *** comprise a separate establishment on the premises of the Arena, but it is not an establishment as to which the general public has recourse for its amusement or recreation.* The fact that the *** put on a basketball game 41 nights in the year on the Arena's playing floor does not make it synonymous with the Arena.
>
> Therefore, it is our opinion that the section 13(a)(3) exemption is not applicable to the employees of the *** in its administrative offices.

1978 WL 51434 (DOL WH Opinion Letter, WH-472, Oct. 11, 1978) (emphasis added) (copy attached as Exhibit A).

Year-round administrative personnel who work at administrative offices separate from the hardboard where games are played will not be subject to the exemption. In fact, the Commissioner of

---

13   *See also* cases cited *infra* at pages 10 – 11.

Baseball has similarly concluded that the subject exemption is limited, "beyond stadium cleaners, to any employee whose duties are defined by the seasonal nature of professional baseball and are related to stadium operations, such as ticket takers, ushers, bat boys, clubhouse workers, etc." Quoted in *Adams v. Detroit Tigers, Inc.*, 961 F.Supp. 176, 178 (E.D.Mich.,1997). That court found that the batboys fell under the exemption, but distinguished them from administrative and office personnel:

> The Tigers have shown that the work of batboys exclusively concerns the staging of baseball events. *Unlike administrative or office personnel*, batboys do not work independently of baseball players. Batboys work only at home games or in preparation for home games, and *they do nothing resembling the office duties of administrative personnel.*

*Adams v. Detroit Tigers, Inc.*, 961 F.Supp. at 180 (emphasis added). *See also Bridewell v. The Cincinnati Reds*, 155 F.3d 828, 831-32 (6th Cir.1998) (stadium maintenance staff were employed by amusement/recreational establishment: "the employees at issue here do exactly the kind of intermittent seasonal work for which the seasonality exemption to the FLSA's wage restrictions was designed. They are stadium cleaning crew who may work extremely long hours during weeks when the team is playing a series at home, very few hours during weeks when the team is away, and no hours when the season is over.")[14]; *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 592, 593 (11th Cir.1995) (no dispute that groundskeeper maintaining baseball complex was employed by exempt establishment; moreover, work "is of the same nature as recreational establishment work").

Other DOL opinion letters, quoted below, consistently support the conclusion that Plaintiffs in the present case are not subject to the amusement/recreational exemption:

> Golf courses, swimming pools, summer camps, ice skating rinks, and similar establishments are the types of establishments which may qualify as amusement or

---

14   Exemption not applied because team could not meet seasonality test. *Bridewell v. The Cincinnati Reds*, 155 F.3d at 832.

recreational establishments for purposes of section 13(a)(3) of FLSA. Employees engaged in activities conducted during the summer months (or at other times of the year) in a city's parks and other publicly-operated amusement or recreational establishments, such as playgrounds, arts and crafts programs, sports programs, and other related activities may also come within this exemption, if the requirements for exemption discussed above are met. Playground counselors, scorekeepers, arts and crafts instructors, and games leaders among the types of employees who may qualify for exemption under section 13(a)(3) of FLSA provided they are employed by an establishment that meets the criteria of the exemption. *The exemption is not applicable to central office employees* of a park and recreation department, or to maintenance crews who operate out of a central facility responsible for the maintenance and cleaning of all parks and other amusement or recreational establishments operated by the park and recreation department.

1986 WL 797093 (DOL WH Opinion Letter, Feb. 3, 1986) (emphasis added). *See also* DOL WH Opinion Letter No. 648, August 9, 1967 (employees employed in central office or warehouse performing central functions serving golf course establishments not exempt); 1970 WL 26425 (DOL WH Opinion Letter, WH-56, July 21, 1970) (employees performing "central office or central warehousing functions solely for the various facilities within" national park not exempt).

## CONCLUSION

<u>Plaintiffs Were Employed At Business Offices, Which Were Not An Amusement/Recreational Establishment: The Exemption Does Not Apply</u>

The Hornets' offices where Plaintiffs' administrative and/or sales functions were based were separate establishments from the stadium where the team played, and lacked the requisite amusement/recreational character. The business offices where plaintiffs worked were just that – business offices, and the work performed there was a central office or business function. Those business offices cannot properly be characterized as an amusement/recreational establishment which received the public attending the games (or for any other amusement or recreational purpose). Thus Plaintiffs were not employed by an amusement/recreational establishment and the exemption, which

must be narrowly construed, does not apply to Plaintiffs. Defendant satisfies neither its terms nor its spirit.

                                   Respectfully submitted,

BY: _____
Howard Daigle (#4454)
Daniel E. Buras, Jr. (#26226) (T.A.)
Elvige Cassard Richards (#19386)
227 Highway 21
Madisonville, LA 70447
Telephone: 985.871.0800
Facsimile: 985.871.0899
**ATTORNEYS FOR EUGENE LIGER, IVAN HINSON, ANTHONY MARTIN, ADAM NASH, CHRIS CARTER, MARCY PLANER-MURRAY, LYNN HOLMES, DAN KARLSBERG, CHRISTOPHER STANT, SAM STEINMETZ, AMY NICOLE SMITH, LESLIE SUMLER, LATOUSHA BROWN, KEVIN BUCKEL AND KEN KLIEBERT**

**STEWART E. NILES, JR.
LAWRENCE J. CENTOLA**
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
**ATTORNEYS FOR JESSICA BERRY AND KEVIN BUCKEL**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above has been sent to opposing counsel by placing a copy of same in the U.S. mail, properly addressed, postage prepaid, or by any other means authorized by law, this _24th_ day of August 2006.

_____

F:\905\905-01 (Hornets OT)\Pleadings\Summary Judgment\MSJ - Partial, Amsmt-Recrtnl, Establshmt - Memo in Support.doc