UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| EUGENE LIGER, ET AL. | CIVIL ACTION NO. 05-1969 |
| VERSUS | SECTION "C" |
| NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP | MAGISTRATE 05 |

DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

I.   INTRODUCTION

Defendant, New Orleans Hornets NBA Limited Partnership ("Hornets"), respectfully submits this memorandum in opposition to Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs brought this putative collective action under the Fair Labor Standards Act ("FLSA") alleging they are owed overtime compensation in connection with their employment by the Hornets. Employers subject to the FLSA are generally required, among other things, to pay minimum wage and overtime compensation to certain classifications of employees. However, the FLSA also enumerates various exemptions for employers and employees from the minimum wage and overtime requirements. The Hornets maintain that they are exempt from the minimum wage and overtime requirements of the FLSA because, *inter alia*, they are an amusement and recreational establishment within the meaning of 29 U.S.C. § 213(a)(3).

The FLSA overtime requirements do not apply to "any employee employed by an establishment which is an amusement or recreational establishment" if the establishment also

{N1543303.1}                                  - 1 -

meets other criteria based on the seasonal nature of its business.[1]  29 U.S.C. § 213(a)(3). Plaintiffs[2] seek partial summary judgment on the issue of whether they worked for an "amusement and recreational establishment." Id. Plaintiffs do not present for determination, nor to they appear to dispute, the amusement or recreational nature of the professional sports activities and events engaged in by the Hornets.[3] The Plaintiffs have failed, however, to carry their burden of showing that there is no genuine issue of material fact for trial and that they are entitled to partial summary judgment as a matter of law on the issue of whether they worked for an amusement and recreational establishment. Plaintiffs' motion is not supported by competent summary judgment evidence (in fact, they present the declaration of only one Plaintiff, Chris Stant), and is founded upon erroneous legal propositions and an incomplete statement of applicable law.

Specifically, as a matter of law, the physical separateness of work locations or areas alone does not create "separate establishments" for the purpose of the exemption in § 213(a)(3). In fact,

---

[1] The only issue presented by Plaintiffs in their Motion for Partial Summary Judgment is whether "Plaintiffs were employed by an establishment which is an amusement or recreational establishment."  Plaintiffs do not present the issue of whether the Hornets meet the seasonal requirements of the test, nor do they address the Hornets' other defenses.

[2] Although putative collective action members have had more than six months to opt into this action and the opt in period has not yet expired, to date only sixteen Plaintiffs have elected to join this action: Jessica Berry, Latousha Brown, Kevin Buckel, Chris Carter, Ivan Hinson, Lynn Holmes, Dan Karlsberg, Ken Kliebert, Eugene Liger, Tony Martin, Adam Nash, Marcy Planner-Murray, Amy Smith, Chris Stant, Sam Steinmetz, and Leslie Sumler. With the exception of Smith, all of the Plaintiffs held various sales positions with the Hornets. To the extent the Plaintiffs seek partial summary judgment with respect to positions they did not hold, such as the classifications used to determine who should receive notice, their motion should be denied for that reason alone. The Declaration of Chris Stant, a sales representative, lacks any foundation for the generalized statements made regarding the job duties and work locations of employees in other positions and, thus, is inadmissible in that regard.

[3] Plaintiffs contend they are reserving the issue of the seasonality requirements of the amusement and recreational establishment exemption, however. See Plaintiff's motion, p. 2, n. 3.

as a matter of law, functional unity within a business establishes a "single establishment" for the purpose of the exemption *regardless* of the fact that buildings, offices, or work locations or areas may be physically separate. The Hornets have submitted competent summary judgment evidence establishing such functional unity, including but not limited to common ownership and leadership, a common accounting system, and a common ticketing system, which evidence defeats Plaintiffs' motion.

Plaintiffs' motion also is based on the erroneous assumption that "administrative offices" or "administrative employees" can never be part of a "recreational and amusement establishment" for the purpose of the exemption. This flawed reasoning results from the misplaced reliance on a 1978 opinion letter from the U.S. Department of Labor ("DOL") relating to an undisclosed professional basketball organization that presents only sparse and distinguishable facts, does not address or apply to sales and fan relations representatives such as the Plaintiffs, contains a legal error, and has been criticized by at least one federal court for its lack of reasoning. A more recent DOL opinion letter has specifically held that clerical and administrative employees can be part of an amusement and recreational establishment, and U.S. Fifth Circuit Court of Appeals and other analogous authorities have repeatedly held that multi-unit businesses are single establishments for the purpose of the amusement and recreational exemption. Plaintiffs' flawed reasoning aside, the competent summary judgment evidence submitted by the Hornets establishes that sales and fan relations representatives function as an integral part of the Hornets' amusement and recreational activities and events by promoting and selling those activities and events to the public, and providing customer service, unlike ordinary clerical, secretarial, or similar administrative personnel. Therefore, Plaintiffs are not entitled to partial summary judgment on the narrow issue presented in their motion.

II. **LAW AND ARGUMENT**

A. **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment can only be rendered:

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment is prohibited when there is genuinely conflicting evidence: "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The burden of showing that no genuine issue of material fact exists and that summary judgment is warranted as a matter of law is on the movant. *Condrey v. Suntrust Bank of Georgia*, 431 F.3d 191, 197, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

B. **PHYSICAL SEPARATENESS ALONE IS INSUFFICIENT TO SHOW SEPARATE ESTABLISHMENTS AS A MATTER OF LAW**

The question of what constitutes an "establishment" in any given case is one of law that must be determined from all of the facts. *Gilreath v. Daniel Funeral Home, Inc.*, 421 F.2d 504, 508 (8th Cir. 1970), *citing Acme Car & Truck Rentals, Inc. v. Hooper*, 331 F.2d 442, 444 (5th Cir. 1964). The word "establishment" is used several times in the FLSA, but is not defined in the statute. *Marshall v. Sundial Associates, LTD*, 588 F.2d 120, 122 (5th Cir. 1979).

The DOL has promulgated several regulations defining the term "establishment" for the purpose of the FLSA. See 29 C.F.R. §§ 779.23 and 303-311. The regulations relating to the term establishment, while referring primarily to the retail or service establishment exemption, are

applicable also to the amusement or recreational exemption under the FLSA. *See, Marshall* at 123. Plaintiffs, who base their motion almost exclusively on the alleged physical separateness of work areas or locations, overlook that business units or departments *must be both physically and functionally separate* to be considered separate establishments under the FLSA. The regulations are clear that:

> In order to effect such a result [separate establishments], physical separation is a prerequisite. In addition, the physically separated portions of the business also **must be** engaged in operations which are functionally separated from each other.

29 C.F.R. § 779.305 [emphasis added]. Thus, while an establishment must be a "distinct place of business," that distinct place of business also must be functionally separate from the other distinct places of business within the enterprise. 29 C.F.R. §§ 779.23 and 305.

Courts have generally held that the word "establishment" should be construed as it is normally used in the business and government contexts, but courts likewise have yet to define the term or adopt any bright line rule for determining what constitutes an establishment. *Acme Car & Truck Rentals, Inc.*, 331 F.2d at 444, *citing A. H. Phillips Inc. v. Walling*, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). Therefore, in determining whether an entity constitutes an establishment, there is no bright line rule, and courts consider both (1) whether the entity at issue is a distinct physical place of business and (2) whether there is functional unity within the entity. *Id.* at 445 *citing Mitchell v. T.F. Taylor Fertilizer Works*, 233 F.2d 284 (5th Cir. 1956).

As set forth in Plaintiffs' Statement of Undisputed and Material Facts, the Plaintiffs performed their job responsibilities at offices in the Freeport-McMoRan building, 1615 Poydras Street, New Orleans, Louisiana 70112, a few blocks away at the New Orleans Arena ("Arena"), 1501 Girod Street, New Orleans, Louisiana 70113, and/or at various regional offices. Notably, Plaintiffs (who do not all hold the same position), fail to specify whether each worked at all or

less than all these locations less than all these locations, and when. Plaintiffs also fail to articulate who performed what duties and at which location(s). In fact, based on the single declaration of one Plaintiff, Chris Stant, they attempt to generalize about their job duties and work locations, suggesting that they all worked at multiple locations. The Court must reject this generalization because there is no foundation for Chris Stant's testimony about the job duties and work locations of other Plaintiffs whose jobs he never held. Nonetheless, even if the Court could consider Chris Stant's testimony in this regard, it still would not warrant partial summary judgment as a matter of law because physical separateness of work locations or areas alone does not create separate establishments for the purpose of the exemption.

The Fifth Circuit and other courts in analogous cases overwhelmingly support this conclusion. In *Mitchell v. Gammill,* 245 F.2d 207, 211 (5th Cir. 1957), the Fifth Circuit held that in determining whether an employer is a single establishment, courts must consider the physical place of business **and** the functional unity of the business. The employer in *Mitchell* operated an enterprise consisting of several separate businesses within two buildings. *Id.* at 209. The employer's entire enterprise had the same general manager, and each sub-business had its own manager. *Id.* There was a single bookkeeping system that reflected the operations of each department separately and the enterprise as a whole. *Id.* Taking all of this into account, the Fifth Circuit concluded that the employer was a single establishment based on its functional unity and that all of its employees were covered by the applicable exemption, regardless of the fact that they worked in separate buildings. *Id.* at 211.

Again, in *Acme Car & Truck Rentals, Inc. v. Hooper,* 331 F.2d 442, 443 (5th Cir. 1964), the Fifth Circuit held two separate companies operating as legally separate enterprises to be a single establishment. The two entities at issue maintained separate books and records, filed

separate tax returns, and maintained separate insurance policies. *Id.* However, the companies had the same officers and stockholders, and a common Vice President and General Manager. *Id.* The principal activities of the companies were conducted in the same building and employees performed services for both companies. *Id.* The court held that these factors created functional unity, and therefore the two legally separate entities constituted a single establishment. *Id.* at 445.

Similarly, in *Shultz v. Hasam Realty Corp.,* 316 F. Supp. 1136, 1137 (S.D. Fl. 1970), *affirmed,* 442 F.2d 1336 (5th Cir. 1971), the plaintiff brought a minimum wage and overtime compensation claim against the employer under the FLSA. The employer claimed it was a retail service establishment exempt from the provisions of the FLSA. *Id.* at 1142. The employer owned and operated three hotels and one golf course on physically contiguous parcels of land. *Id.* at 1143. The employer also owned and operated a country club and golf course located five miles from its other buildings. *Id.* All five of the physically separate facilities owned and maintained by the employer used the same books and accounting procedures and records. *Id.* The employees worked at the different facilities, but the hiring was accomplished through a central office. *Id.* The court held this evidence established that the employer was a functional, cohesive unit, and clearly consisted of a single establishment under the FLSA, regardless of the physical separation of its various facilities. *Id.* The Fifth Circuit reasoned that while each facility offered different services to the employer's guests, each was a part of the whole which made the employer a single establishment exempt from the minimum wage and overtime requirements of the FLSA. *Id.*

Plaintiffs have not offered any evidence to suggest that the Hornets lack functional unity. In fact, the competent summary judgment evidence presented by the Hornets establishes

functional unity, which defeats Plaintiffs' motion. Sam Russo, employed by the Hornets since 1988 and currently the Senior Vice President of Special Projects, testified in his declaration that the Hornets provides amusement and recreational activities to the public. (*See* Declaration of Sam Russo, Exhibit 1). He also testified that the Hornets at all times has had only one accounting system and ticketing system, has hired its employees out of a central office, has been under common ownership, has been structured such that there is only one President, and has consisted of and comprised only one legal entity. Id. Plaintiffs have not and cannot dispute these facts. Thus, as a matter of law, any physical separateness of work locations or areas is insufficient to deny the application of the amusement and recreational exemption to the Hornets with respect to the Plaintiffs.

In fact, undermining their "physical separateness" argument, Plaintiffs concede that they worked at the same physical location where the Hornets' basketball games were played – the New Orleans Arena, 1501 Girod Street, New Orleans, Louisiana 70113. While Plaintiffs generally allege that they also worked in other locations, the concession that they worked at the same location where basketball games were played refutes the "physical separation" that is a "prerequisite" for separate establishments. 29 C.F.R. § 779.305. Plaintiffs attempt to use the term "stadium" as distinct from the "Arena," apparently suggesting that although they worked under the same roof where basketball games were played, they would have had to perform their duties on the basketball court, sidelines, or ticket holder seats during games in order to achieve physical unity under the amusement and recreational exemption. This suggestion is neither reasonable nor supported by controlling Fifth Circuit authorities, as explained above.

Plaintiffs have not presented any evidence that the Hornets' locations at the Arena and in the Freeport-McMoRan Building functioned or operated separately with separate ownership,

accounting and ticketing systems, or legal structures. Therefore, Plaintiffs are not entitled to partial summary judgment because the evidence supports the conclusion that, contrary to their allegations, Hornets constitute a single establishment for the purpose of the amusement and recreational exemption. Alternatively, at a minimum, on this record at this stage of this action, and as a matter of law, there is a genuine issue of material fact regarding this issue that may be resolved after further discovery or at trial. 29 C.F.R. §779.305.

    C.    **WHILE THE EVIDENCE DOES NOT SUPPORT PLAINTIFFS' CHARACTERIZATION OF THEIR DUTIES AS "ADMINISTRATIVE," THE LAW IS CLEAR THAT ADMINISTRATIVE EMPLOYEES CAN BE PART OF AN AMUSEMENT AND RECREATIONAL ENTERPRISE**

Plaintiffs erroneously argue that they were administrative employees and that they worked in administrative offices and, thus, that they worked in a separate physical establishment unrelated to the amusement and recreational activities and events engaged in by the Hornets. For this proposition, Plaintiffs incorrectly claim that an October 11, 1978, DOL opinion letter is "directly on point" and precludes application of the amusement and recreational exemption.[4] 1978 WL 51434 (DOL WH Opinion Letter, WH-472, Oct. 11, 1978). The 1978 opinion letter addressed an inquiry from an undisclosed entity "operating a professional basketball team" as to whether it satisfied the amusement and recreational exemption. The DOL concluded in that instance that the arena used by the team for basketball games satisfied the exemption, but that the "administrative offices" comprised a separate establishment on the premises of the arena.

A critical flaw in Plaintiffs' argument is that the 1978 opinion letter is devoid of any facts regarding the "functional" unity or separateness of the organization's operations. As the DOL has made clear in its regulations, physically separate locations constitute a single establishment if

---

[4] DOL opinion letters are not binding on a court and are merely persuasive authority. *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000).

there is a functional unity of operations. 29 C.F.R. § 779.305. Further, the 1978 opinion letter makes no reference to sales or fan relations employees, fails to describe the duties of the employees in the "administrative offices," and fails to discuss whether any of those employees were integral to the amusement and recreational activities of the organization. Finally, the 1978 opinion letter cites as support for its conclusion the fact that the general public did not have access to the administrative offices for amusement and recreational activities. However, federal courts have since held that "Congress did not intend a public accessibility requirement in the seasonal exemption." *Adams v. Detroit Tigers, Inc.*, 961 F. Supp. 176, 179 (E.D. Mich. 1997), citing *Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255 (6th Cir. 1987). One federal court has expressly criticized the 1978 opinion letter for reaching its opinion "without providing any reasoning," which only further underscores its lack of persuasive authority in this case. *Bridewell v. Cincinnati Reds,* 1997 U.S. Dist. LEXIS 23754 (S.D. Ohio 1994)(attached as Exhibit 2), *reversed on other grounds,* 68 F.3d 136 (6th Cir. 1995).

Plaintiffs also rely on *Adams v. Detroit Tigers, Inc.*, which considered the 1978 opinion letter, but still held that bat boys, who performed cleaning duties, answered phones, sat in the dugout, and engaged in personal activities while on duty, were not a separate establishment within a professional sports organization. The plaintiffs claimed they did not fit within the exemption because their work was not open to the public. *Id.* The court rejected this argument and held that public accessibility is not a prerequisite for establishing the amusement or recreational exemption because "Congress did not intend a public accessibility requirement in the seasonal exemption."[5] *Id.* citing *Brock,* 817 F.2d 1255. Like Plaintiffs in this case, the bat

---

[5] Plaintiffs allege in their Statement of Undisputed and Material Facts that none of the Hornets offices was a place "where the public would enter and find amusement or recreational

boys worked at home games and in preparation for home games, and were considered an integral part of the organization's amusement and recreational establishment. *Id.* In fact, Sam Russo testified in his declaration that the sales and fan relations representatives for the Hornets (the positions held by the Plaintiffs) promote and sell the Hornets' amusement and recreational activities and events to the public, and provide customer service relative to those activities and events. (*See* Exhibit 1). Sam Russo also testified that the Hornets have never considered sales and fan relations representatives to be clerical, receptionist, secretarial, or similar administrative office employees, nor did they serve in such a capacity for the Hornets. This evidence is undisputed.

Plaintiffs have not presented any competent summary judgment evidence that they performed clerical, receptionist, secretarial, or similar administrative office duties, and cannot dispute that their sales and fan relations activities relate directly to the amusement and recreational nature of the Hornets' business. The vague, conclusory, and self-serving statement by one Plaintiff that all Plaintiffs "provided administrative and sales support" certainly does not, even if it could be considered by the Court, support the arguments in their brief.[6] In fact, this statement directly contradicts the Plaintiffs' concession in their Statement of Undisputed and Material Facts that they played an integral role of promoting and selling group and season tickets

---

activities." While this statement is specifically denied, it is clear that, as a matter of law, this does not prove that the Hornets are not an amusement or recreational establishment.

[6] Plaintiffs allege for the first time in this motion that they are "administrative" employees. To this point, Plaintiffs have already judicially admitted that they are sales employees and fan relations employees whose jobs are to promote and sell and service customers. Plaintiffs are now estopped from changing their prior representations to this Court for the purpose of attempting to obtain summary judgment. See Plaintiffs' Collective Action Complaint and Jury Trial Request. (See Rec. Doc. 1).

for the Hornets' amusement and recreational activities and events.[7] The Hornets rely heavily on their ticket sales and fan relations employees to sell tickets and service their customers, the general public, in order to provide the amusement and recreational activities and events that comprise their business.

In fact, the DOL in a more recent opinion letter, concluded that the full-time and temporary clerical and other office employees of a sports camp were part of the same establishment for the purpose of the amusement and recreational exemption . 2000 DOL WH LEXIS 5 (DOL WH Opinion Letter, May 23, 2000) (Attached as Exhibit 3). The DOL concluded that the employer's camp was a recreational or amusement establishment, and reasoned that the exemption covered clerical and other office employees as well because their activities were of the same character as those activities for which the establishment was created. Therefore, as a matter of law, even "administrative office" employees can be part of a single amusement and recreational establishment. Thus, Plaintiffs' unsupported assertion that they are "administrative" employees actually undermines their motion for partial summary judgment.

## III. CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment must be denied on this record as a matter of law. They have failed to carry their summary judgment burden, either by proving that they worked for an establishment physically and functionally separate from another establishment providing the Hornets' amusement and recreational activities and events, or by pointing to the absence of evidence in the record to support the Hornets' defense on this narrow

---

[7] Plaintiffs' Statement of Undisputed Material Facts, ¶ 5 (stating that their function was to "promote group sales and season ticket sales"). *See, Chao v. Double JJ Resort Ranch,* 375 F.3d 393, 397 (6th Cir. 2004). **The court noted that if plaintiffs' activities had been "selling recreational activities" they would have fit within the amusement or recreational exemption.**

issue. The competent summary judgment submitted by the Hornets proves the amusement and recreational establishment element of its defense as a matter of law, which warrants denial of Plaintiffs' motion. At a minimum, the Hornets need only point to evidence establishing a genuine issue of material fact for trial to defeat Plaintiffs' motion, and the overwhelming evidence presented by the Hornets on this issue exceeds that obligation. Thus, the Plaintiff's motion must be denied.

        Respectfully submitted,

/s/ Jennifer L. Anderson
SIDNEY F. LEWIS, V (Bar No. 17026)
JENNIFER L. ANDERSON, T.A. (Bar No. 23620)
JANE H. HEIDINGSFELDER (Bar No. 28604)
***Jones, Walker, Waechter, Poitevent,***
  ***Carrère & Denègre, L.L.P.***
201 St. Charles Avenue, 50th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Telefax: (504) 582-8015
e-mail: slewis@joneswalker.com
e-mail: janderson@joneswalker.com
e-mail: jheidingsfelder@joneswalker.com
***COUNSEL FOR DEFENDANT,***
   ***NEW ORLEANS HORNETS NBA L.P.***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** a copy of the above and foregoing *Defendant's Opposition to Plaintiffs' Motion for Partial Summary Judgment* has been served on all counsel of record below by placing same in the United States mail, postage prepaid and properly addressed, this 5th day of September, 2006.

> Elvige Cassard, Esq.
> Daigle Fisse, PLC
> 227 Highway 21
> Madisonville, LA 70447
> Telefax: (985) 871-0899
>
> Stewart E. Niles, Jr., Esq.
> Niles, Bourque & Fontana LLC
> 909 Poydras Street - Suite 3500
> New Orleans, Louisiana 70112
> Telefax: (504) 310-8590

/s/ Jennifer L. Anderson