5 of 5 DOCUMENTS

**ROBERT R. BRIDEWELL, et al., Plaintiffs, vs. THE CINCINNATI REDS, Defendant.**

**Case No. C-1-93-203**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION**

*1997 U.S. Dist. LEXIS 23754*

**March 5, 1997, Decided**
**March 5, 1997, Filed**

**DISPOSITION:** [*1] Judgment entered in favor of the Plaintiffs and against the Defendant. Defendant ORDERED to pay sums of money to the Plaintiffs: $ 660.00 to Robert Bridewell; $ 1,105.00 to Stanley McAlpin; $ 67.75 to Daisy Pearl; $ 660.00 to Melville Walker; and $ 821.00 to Eddie Rogers. Captioned cause terminated.

**COUNSEL:** For ROBERT R BRIDEWELL, STANLEY MCALPIN, DAISY S PEARL, MELVILLE F WALKER, EDDIE C ROGERS, plaintiffs: Peter Mark Fox, Kircher Robinson Newman & Welch, Cincinnati, OH.

For CINCINNATI REDS, defendant: Edward Schmertz Dorsey, Lindhorst & Dreidame, Randolph Harry Freking, Peter A Burr, Freking & Betz, Cincinnati, OH.

**JUDGES:** WALTER HERBERT RICE, CHIEF JUDGE, UNITED STATES DISTRICT COURT.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:**

OPINION; DECISION AND ENTRY FINDING IN FAVOR OF PLAINTIFFS AND AGAINST THE DEFENDANT; JUDGMENT TO BE ENTERED ACCORDINGLY; TERMINATION ENTRY

In this case, Plaintiffs Robert Bridewell, Stanley McAlpin, Daisy Pearl, Melville Walker and Eddie Rogers have sued their employer, Defendant Cincinnati Reds ("Reds"), for failing to pay them overtime wages during the years 1990, 1991, 1992 and 1993, while they were employed as housekeepers in the private boxes at Riverfront Stadium. [*2] Plaintiffs allege that this failure to pay overtime, which is not disputed by the Defen-

dant, constitutes a violation of the Fair Labor Standards Act ("FLSA"), as codified at *29 U.S.C. § 207*(a). Defendant contends that it is exempt from paying overtime wages to its employees because it is a seasonal, amusement establishment and, therefore, comes under the "amusement and recreational exemption" set forth in § 213(a)(3) of the FLSA.

This case was tried to the Court sitting as the trier of fact on March 4, 1997. Pursuant to *Rule 52 of the Federal Rules of Civil Procedure*, the Court hereby sets forth its findings of fact, separate from its conclusions of law. Its findings of fact are taken from several stipulations submitted by the parties, either immediately prior to trial or in the Final Pretrial Order, in the testimony or established by the law of the case.

I. Findings of Fact

1. Defendant Cincinnati Reds is an employer covered by the Fair Labor Standards Act (Stipulations submitted on 3/4).

2. Defendant is in the business of presenting and promoting Major League Baseball games (Final Pretrial Order at 3).

3. Defendant operates more than [*3] seven months during the year.

4. Plaintiffs Robert Bridewell, Stanley McAlpin, Daisy Pearl, Melville Walker, and Eddie Rogers were employed by Defendant as housekeepers at Riverfront Stadium (n.k.a. Cinergy Field) (Final Pretrial Order at 3).

5. Plaintiffs are employees under the FLSA and are entitled to overtime compensation under the Act, unless one


EXHIBIT
2

DocketsJustia.com

1997 U.S. Dist. LEXIS 23754, *

of the FLSA's exemptions applies (Stipulations submitted on 3/4).

6. On occasion during the years 1990 to 1993, Plaintiffs worked more than 40 hours in a week or 80 hours in a two week period but were not paid the overtime premium. (Final Pretrial Order at 3; Stipulations submitted on 3/4).

7. The unpaid amount of overtime wages for the relevant time period is as follows: (1) Robert Bridewell: $ 660.00; (2) Stanley McAlpin: $ 1,105.00; (3) Daisy Pearl: $ 67.75; (4) Melville Walker: $ 660.00; and (5) Eddie Rogers: $ 821.00 (Final Pretrial Order at 3; Stipulations submitted on 3/4).

8. The accrual method of accounting "matches" income with the related event or transaction, so that the income is not recorded as revenue until a related event or transaction occurs.

9. Under the accrual method of calculating receipts, [*4] Defendant meets the receipts test set forth in *29 U.S.C. § 213*(a)(3)(B) (Final Pretrial Order at 3; Stipulations submitted on 3/4).

10. The cash method of accounting recognizes income when it is actually or constructively received, rather than deferring recognition until a related event or transaction occurs.

11. Under the cash method of calculating receipts, Defendant does not meet the test set forth in *29 U.S.C. § 213*(a)(3)(B) (Stipulations submitted on 3/4).

12. The Defendant utilizes the accrual method of accounting. For example, although the Defendant receives money during the off-season, that money is placed in deferred accounts and is not counted as income until the underlying obligation or liability is satisfied.

13. The accrual method of accounting is mandated both by Major League Baseball and by "Generally Accepted Accounting Principles."

II. Opinion

A. Subject-Matter Jurisdiction

This Court has federal question jurisdiction over this action pursuant to *28 U.S.C. § 1331.*

B. Overview of the FLSA and the Pertinent Exemption

The Fair Labor Standards Act was [*5] enacted in 1938 for the purpose of eliminating "labor conditions

detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *29 U.S.C. § 202*(a). To this end, the FLSA requires employers to compensate any employee for hours worked in excess of forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed," unless that entity is covered by a specific exemption. *29 U.S.C. § 207*(a). Given the Act's broad and remedial purpose, the FLSA is to be construed liberally in order to further its purpose, whereas exemptions to the overtime requirement of the FLSA "are to be narrowly construed against employers." *Salyer v. Ohio Bureau of Workers' Compensation, 83 F.3d 784, 786 (6th Cir. 1996).*

The Defendant claims that it is not required to pay overtime wages to the Plaintiffs because it is covered by the following FLSA exemption:

(a) The provisions of section 207 of this title shall not apply with respect to--

...
(3) any employee employed by an establishment which is an amusement or recreational establishment. [*6]  .. if (A) it does not operate more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 and 1/3 per centum of its average receipts for the other six months of such year...

*29 U.S.C. § 213*(a)(3). This exemption was intended to cover "such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events..." H. R. Rep. No. 871, 89th Cong., 1st Sess. 35 (1965), quoted in *Brock v. Louvers and Dampers, Inc., 817 F.2d 1255, 1258 (6th Cir. 1987)* (emphasis added). Based upon this understanding of the "seasonal" nature of the exemption, the Sixth Circuit has stated that "the crucial question for the purpose of determining whether or not a business falls within the exemption is whether or not it is truly seasonal." *Id. at 1259.*

Thus, the crux of the exemption goes to the seasonal nature of the employer. The statute explicitly guides the Court's inquiry as to the Defendant's seasonal nature by defining the concept of seasonality in terms of the prongs set forth in § 213(a)(3), namely, an [*7] amusement or recreational establishment which either operates less than seven months during the year or meets the seasonal receipts test set forth in § 213(a)(3)(B).

1997 U.S. Dist. LEXIS 23754, *

In regard to the applicability of this exemption, two points should be made here. First, the exemption's requirement that the Defendant be an "amusement or recreational establishment" has already been satisfied in this case. Specifically, Magistrate Judge Steinberg held in his Report and Recommendation that the Defendant satisfied this exemption as a matter of law. *Bridewell v. Cincinnati Reds, 1994 WL 854075,* at *3 (S.D. Ohio 1994) ("The Reds' operation of major league baseball games... falls within the realm of an amusement and recreational establishment"). This holding was adopted by Judge Weber in his opinion, see *Bridewell v. Cincinnati Reds, 1994 WL 866091,* at *1 (S.D. Ohio 1994), and was not addressed by the Sixth Circuit in its opinion remanding the case. *Bridewell v. Cincinnati Reds, 68 F.3d 136 (6th Cir. 1995).* Accordingly, this holding constitutes the "law of the case" and must be followed by this Court. See *Hanover Ins. Co. v. American Engineering Co., 105 F.3d 306, 312 (6th Cir. 1997)* [*8] ("The 'law of the case' doctrine precludes a court from reconsideration of identical issues. Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case"). n1

n1 This Court agrees with and adopts the reasoning set forth by Judge Steinberg in regard to whether the Defendant is an "amusement or recreational establishment" within the meaning of the exemption. Given the parties' stipulation that the Defendant is in the business of presenting and promoting Major League Baseball teams, this Court similarly concludes, as a matter of law, that the Defendant is an amusement or recreational establishment.

Second, the Sixth Circuit has already held that the exemption set forth in *29 U.S.C. § 213*(a)(3)(A) does not apply in this case. Specifically, the Sixth Circuit has concluded that the Defendant is in operation for more than seven months per year, given that it employs 120 workers during the entirety [*9] of the year. *Bridewell, 68 F.3d at 139.*

Accordingly, the only issue before the Court is whether the Defendant meets the seasonal receipts test set forth in *29 U.S.C. § 213*(a)(3)(B). Unless Defendant satisfies this prong, it is not exempt from the overtime requirements of the FLSA.

III. Seasonal Receipts Test in § 213(a)(3)(B)

As noted, in order to satisfy the requirements of the exemption set forth in *29 U.S.C. § 213*(a)(3)(B), the Defendant must show that during an applicable year, "its average receipts for any six months of such year were not more than 33 and 1/3 per centum of its average receipts for the other six months of such year." This requirement is referred to as the "seasonal receipts test" in the accompanying regulation, *29 C.F.R. § 779.385,* and will be so referred to by this Court.

Defendant has argued that it meets this seasonal receipts test under the "accrual method" of accounting, which "matches" income with the related event or transaction, so that the income is not recorded as revenue until a related event or transaction occurs. See Accounting Standards: Original Pronouncements 4123 (Exhibit [*10] 7) ("Accrual accounting attempts to record the financial effects of transactions, events, and circumstances that have cash consequences for an organization in the periods in which those transactions, events and circumstances occur rather than in only the periods in which cash is received...."). As an example of the use of this method, the Defendant's Controller, Anthony Wade, testified that although the Defendant receives money in the form of season tickets before a particular game is played, that money is not counted as income until the game is actually played, thus distinguishing between receipts and income. Another witness, Managing Executive John Allen, testified that although the Defendant receives a significant portion of its revenue, i.e., income, from season tickets in the off-season, it deposits this money in a separate account and records only a certain percentage of this money as revenue (i.e., income) on a monthly basis during the season, depending upon the number of home games that were played that month. Thus, although the Defendant receives money during the off-season, that money is placed in deferred accounts and is not counted as income until the underlying obligation [*11] or liability has been satisfied. See Accountants' Handbook 1-85 (Exhibit 7) ("Deferral is concerned with past cash receipts and payments--with prepayments received (often described as collected in advance) or paid: it is the accounting process of recognizing a liability resulting from a current cash receipt (or the equivalent)... with deferred recognition of revenues, expenses, gains, or losses. Their recognition is deferred until the obligation underlying the liability is partly or wholly satisfied...").

As explained by Ward, the accrual method of accounting is the appropriate method for use in the Defendant's general operations because the Defendant is liable for refunding tickets if games are not played, and is well-advised not to record the money as income until the game occurs. Defendant's witnesses have further testified that the accrual method of accounting is mandated both by Major League Baseball and by "Generally Accepted Accounting Principles" ("GAAP"). Although this testimony as to the appropriate use of the accrual method in

1997 U.S. Dist. LEXIS 23754, *

the Defendant's general operations is interesting, the Court concludes, for the reasons given below, that it is not dispositive as to whether [*12] this method is appropriate for purposes of determining the applicability of the FLSA exemption set forth in *29 U.S.C. § 213*(a)(3)(B), i.e., whether, in the language of Brock, it is the method of accounting that accurately reflects the Defendant's receipts for the purposes of the seasonality exemption. *817 F.2d at 1259.*

Plaintiffs have not disputed any of the above-described testimony. Instead, they have simply focused upon the term "receipts" as it is used in the statute, and argued that this term is not equivalent to "income"--the concept measured by the accrual method of accounting. Rather, Plaintiffs contend that for purposes of this exemption, the Defendant's receipts should be counted at the time at which they are obtained by the Defendant, which is best measured by the cash method of accounting. Importantly, the Plaintiffs have not argued that the Defendant should utilize the cash method for its general operations; instead, they argue only that this is the appropriate method for determining whether the Defendant satisfies the seasonal receipts test in § 213(a)(3)(B) and is, therefore, exempt from paying overtime wages under the FLSA. [*13]

Thus, the Court must focus upon the meaning of the term "receipts" as it is used in the exemption. In so doing, the Court reiterates that it must "narrowly construe" this exemption to the FLSA against the Defendant, which has the burden of proving the applicability of the exemption, and give due regard to the plain meaning of its language. *A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 89 L. Ed. 1095, 65 S. Ct. 807 (1945)* ("Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress"); *Brock v. Louvers and Dampers, Inc., 817 F.2d 1255 (6th Cir. 1987)* (narrowly construing the exemption set forth in § 213(a)(3)).

Importantly, two of the Defendant's witnesses conceded that there is a distinction between "receipts" and "income." Allen testified that whereas the term "receipts" refers to actually receiving something, the term "income" refers to the method of recognizing the receipts from a profit and loss standpoint. Wade testified that the term "receipts" is "closely connected" to the term "received." This testimony is [*14] supported by the definition of "receipt" found in Black's Law Dictionary, as follows: "Act of receiving; also, the fact of receiving or being received; that which is received." Id. at 877 (6th ed. abr. 1991).

Given the lack of any pertinent legislative history on the meaning of the term "receipts," n2 this Court must

look to the plain meaning of that term in order to carry out its mandate of narrowly construing the exemption against the Defendant. As discussed, both the testimony offered by the Defendant and the dictionary indicate that the term "receipts" refers to money which is actually received by the Defendant, during the entire year, in the form of television rights, ticket sales, or other sources of revenue. As has been testified, this term is distinguishable from the "income" which is determined by the accrual method of accounting. Accordingly, the Court concludes that the term "receipts," as it is used in *29 U.S.C. § 213*(a)(3)(B), refers to cash or non-cash revenue which is actually received by the Defendant, and should be counted, for purposes of the exemption in § 213(a)(3)(B), at the time of receipt.

n2 The parties conceded at trial that they have found no applicable legislative history, and this Court's research has also failed to discover any legislative history on this point.

[*15]

Defendant has attempted to stave off this interpretation (and the inevitable conclusion that it is liable for overtime wages), by arguing that the purpose of the exemption is to exempt "seasonal" businesses, and insisting that it is intuitive that the Defendant, whose major activity is indisputably to promote baseball games which occur during approximately six months of the year, is a "seasonal" business. Although the Court is respectful of this intuitive argument, it reminds the Defendant that under the narrow construction which this Court must employ, the requirements of § 213(a)(3) are "explicit prerequisites to exemption, not merely suggested guidelines for judicial determination of the employer's status." *Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 4 L. Ed. 2d 393, 80 S. Ct. 453 (1960)* ("exemptions are to be narrowly construed against the employers... the three conditions of § 13(a)(2) are explicit prerequisites to exemption..."). Therefore, the Court cannot fall back upon vague notions of seasonality, but must instead narrowly construe and apply the requirements which must be satisfied in order to claim this exemption. n3

n3 The Court would further note that merely because the actual baseball games are played during a six-month season does not, ipso facto, mean that the Defendant, which is a business entity rather than an actual baseball team, is a "seasonal" business. Indeed, as was noted by the

1997 U.S. Dist. LEXIS 23754, *

Sixth Circuit in this case, "it seems to us that the parties incorrectly focus on the duration of the Reds' activities at Riverfront rather than on the duration of the Reds' overall operation." *68 F.3d at 138.* To reiterate, although the Defendant is "seasonal" in the sense that baseball is not played all year, the statute sets forth a test to determine within the meaning of the exemption, not just in lay terms, whether a business is truly seasonal. The issue, then, is what method of accounting accurately reflects that test. To this Court, it seems at least as reasonable to obtain a true measurement of the "seasonality" of the Defendant's business by ascertaining when the Defendant, operating as a business entity, actually receives money, as opposed to looking merely at the more limited time during which the Defendant provides its services to consumers.

[*16]

All that remains, therefore, is to determine which method of accounting most accurately reflects the time at which the Defendant obtains its receipts. Significantly, the difference between the accrual method and the cash method is explained in one of the Defendant's exhibits as follows: "Taxpayers using the cash receipts and disbursements method of accounting recognize income when it is actually or constructively received... This is in contrast to accrual basis taxpayers, which generally recognize income when all the events have occurred that create the right to receive the income and the amount of income [from that particular event] is reasonably ascertainable." Wendell, Corporate Controller's Manual G1-3 (Exhibit 7) (emphasis added). This explanation is in accordance with the testimony presented by the Defendant, and indicates that the most accurate method of determining when revenue is actually received is the cash method of accounting. n4

n4 Two points should be noted here. First, the Defendant has argued that the Court should reach the opposite result in view of the 'wealth of case law" which has utilized the accrual method of accounting to determine the "receipts" under this exemption. The Defendant has cited, and the Court has found, only one case which explicitly utilized the accrual method. *Jeffery v. Sarasota White Sox, 64 F.3d 590 (11th Cir. 1995).* Importantly, the Eleventh Circuit did not discuss the relative merits of using one method over the other, and even noted in a footnote that the same result would have been obtained under the cash

method. Accordingly, this Court does not find this case to be persuasive in regard to the issue before it.

Second, the Court expresses no opinion as to whether, as argued by the Defendant, this result will set a precedent for mandating the use of the cash method of accounting in all FLSA cases.

[*17]

As noted earlier, the parties have stipulated that under the cash method of calculating receipts, Defendant does not meet the test set forth in *29 U.S.C. § 213*(a)(3)(B). Accordingly, Defendant has failed to meet its burden of proving that it is exempt from the overtime requirements of the FLSA, and judgment should be entered for the Plaintiffs.

III. Conclusions of Law

1. This Court has subject-matter jurisdiction over this action pursuant to *28 U.S.C. § 1331.*

2. The Fair Labor Standards Act requires employers to compensate any employee for hours worked in excess of forty hours a week "at a rate not less than one and one-half times the regular rate at which he is employed," unless that entity is covered by a specific exemption. *29 U.S.C. § 207*(a).

3. The employer has the burden of proving that a particular exemption applies. Given the Act's broad and remedial purpose, exemptions to the overtime requirement of the FLSA are to be narrowly construed against employers.

4. The Defendant is an "amusement or recreational establishment" as that term is employed in the exemption set forth in [*18] *29 U.S.C. § 213*(a)(3).

5. The Defendant does not satisfy the test set forth in *29 U.S.C. § 213*(a)(3)(A), insofar as it operates more than seven months of the year.

6. The term "receipts," as it is used in *29 U.S.C. § 213*(a)(3)(B), refers to cash or non-cash revenue which is actually received by the Defendant, and should be counted at the time of receipt.

7. The most accurate method of determining when revenue is actually received under the seasonal receipts test is the cash method of accounting.

8. Defendant has failed to prove that when the cash method of accounting is utilized, it satisfies the exemp-

1997 U.S. Dist. LEXIS 23754, *

tion set forth in *29 U.S.C. § 213*(a)(3)(B). Accordingly, the Defendant has failed to prove that it is exempt from the overtime requirements of the Fair Labor Standards Act.

WHEREFORE, based upon the aforesaid, judgment in the above-captioned case is ordered to be entered in favor of the Plaintiffs and against the Defendant.

Defendant is ORDERED to pay the following sums of money to the Plaintiffs: $ 660.00 to Robert Bridewell; $ 1,105.00 to Stanley McAlpin; $ 67.75 to Daisy [*19] Pearl; $ 660.00 to Melville Walker; and $ 821.00 to Eddie Rogers.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

March 5, 1997

WALTER HERBERT RICE, CHIEF JUDGE

UNITED STATES DISTRICT COURT

**JUDGMENT IN A CIVIL CASE**

**Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that Defendant take nothing and that judgment is entered in favor of the Plaintiffs and against the Defendant.

**March 5, 1997**
Date