UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EUGENE LIGER, ET AL.** | **CIVIL ACTION NO. 05-1969** |
| **VERSUS** | **SECTION "C"** |
| **NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP** | **MAGISTRATE 05** |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR PROTECTIVE ORDER,
TO QUASH RECORDS SUBPOENAS, AND FOR OTHER RELIEF**

**MAY IT PLEASE THE COURT:**

**I.      INTRODUCTION**

The Defendant, New Orleans Hornets NBA Limited Partnership ("Hornets"), moves this Court for a protective order and to quash records subpoenas issued by the Plaintiffs, former Hornets employees, to 42 separate non-parties throughout the country, including the National Basketball Association ("NBA"), twenty-eight other professional basketball teams, other businesses, and government entities.[1] The subpoenas violate Federal Rules of Civil Procedure 26 and 45 because they seek records from non-parties that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and they are overbroad, unreasonable, harassing, oppressive, unduly burdensome, and/or constitute a transparent fishing expedition. In

---

[1] The 42 records subpoenas are organized alphabetically and attached *in globo* to the Defendant's Motion as Exhibit 1.

{B0448742.1}

fact, at least one non-party that received a subpoena already has provided written notice to Plaintiffs' of its objections to the subpoena on similar grounds.[2]

For the reasons explained herein, this Court should enter a protective order that the documents sought by the facially overbroad subpoenas be denied and, to the extent the Hornets have an interest in the records sought, quash the subpoenas. In the absence of this Court's intervention and the relief sought, the Hornets and the subpoena recipients, who have no legal interest in this action, will suffer undue burden and expense in being required to participate in such improper and unnecessary discovery. The Hornets also seek and are entitled to reasonable attorney fees and costs in having to seek relief from this Court as a result of Plaintiffs' improper discovery practices.

## II. BACKGROUND

On May 27, 2005, Jessica Berry, Chris Carter, Eugene Liger, Anthony "Tony" Martin, Adam Nash, Samuel Tobias Steinmetz, and Leslie Sumler, former Hornets employees, instituted this action against the Hornets alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.[3] (Rec. Doc. 1). Plaintiffs allege they were entitled to, but not paid, overtime compensation during their employment by the Hornets. *Id.* The Hornets contend that Plaintiffs were not entitled to overtime because the Hornets or the Plaintiffs were exempt from the

---

[2] See Exhibit 2 to Defendant's Motion, which is the June 8, 2007, letter from counsel for the Dallas Mavericks to Plaintiffs' counsel.

[3] On July 27, 2005, two groups of former Hornets employees, including some who also are Plaintiffs in this action, filed two separate lawsuits in the Civil District Court for the Parish of Orleans. Hinson, *et al.* v. New Orleans Hornets NBA Limited Partnership, 2005-10068, and Liger, *et al.* v. New Orleans Hornets, 2005-10069, Civil District Court for the Parish of Orleans, State of Louisiana. In Civil Action 2005-10068, the Plaintiffs allege they are owed commissions and related sums under Louisiana law. In Civil Action 2005-10069, the Plaintiffs allege the Hornets agreed, but failed to pay, particular salaries. The Hornets have denied the Plaintiffs' allegations in the state court actions and maintain that the Plaintiffs were paid all sums due by law or contract.

{B0448742.1}

overtime requirements of the FLSA pursuant to the amusement and recreational establishment exemption, 29 U.S.C. § 213(a)(3), and/or the retail or service establishment exemption, 29 U.S.C. § 207(i). (Rec. Doc. 15).

Subject to the Hornets' objections and their right to later seek decertification, this action was conditionally certified as a collective action under § 216(b) of the FLSA. (Rec. Doc. 32). Notices were issued to 54 putative collective action members, who following Hurricane Katrina were permitted until July 10, 2006, to take the necessary steps to opt-in to this action. Only one former Hornets employees chose to opt-in to this action after the Notices were issued. (Rec. Doc. 68).

The parties have exchanged written discovery, and the Hornets have produced more than 1,800 pages of documentation to the Plaintiffs. The Plaintiffs have not taken any depositions to date, although they recently served a copy of a notice of deposition directed to a former Hornets employee. However, Plaintiffs have now issued records subpoenas to 42 non-parties, including the NBA, professional basketball teams, and other third parties possessing financial and other business information about the Hornets. As much as Plaintiffs' counsel would like to make this action a matter of national interest that concerns 42 other private employers and public bodies across the country, it simply is nothing more than an employment dispute between one New Orleans employer and a handful of its former employees. The Plaintiffs have not made any allegations or asserted any claims against the NBA or the other 28 professional basketball teams to which they have issued subpoenas, and there has not been any discovery indicating that any of the subpoena recipients was involved in any way in the decisions affecting Plaintiffs' employment or pay by the Hornets or that they otherwise have documents that are relevant or reasonably calculated to lead to the discovery of admissible evidence.

### III.   LEGAL STANDARD AND BURDEN OF PROOF

Federal Rule of Civil Procedure 26(b) limits the scope of discovery, including discovery by means of a records subpoena under Rule 45(c), to "any matter, not privileged, that is relevant to the claim or defense of any party . . . . [or] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 45(c); *Will-Drill Resources, Inc. v. J.R. Pounds, Inc.,* 2007 U.S. Dist. LEXIS 12877 *10 (S.D.Miss. February 23, 2007) ("Subpoenas issued for discovery purposes . . . are subject to the discovery limitations outlined in Rule 26(b),) citing *Hussey v. State Farm Lloyds Ins. Co.,* 216 F.R.D. 591, 596 (E.D.Tex. 2003) and 9A Wright & Miller, *Federal Practice & Procedure: Civil* 2d § 2459; *Broadmoor Anderson, A Joint Venture v. Reinsurance America, Inc.,* 2006 U.S. Dist. LEXIS 39473 (June 14, 2006) (granting party's motion for protective order and to quash, in part, with respect to another party's records subpoena to a non-party). "[T]here is no practical reason to apply a different rule simply because plaintiff chooses to obtain information about the defendants from third parties via subpoenas rather than by a document request directed to the defendants." *Will-Drill,* at *13.

When discovery is sought from a non-party, a party may challenge the discovery in two ways. First, the party may move for a protective order for good cause under Rule 26(c) seeking "to place reasonable limits on the discovery process" in accordance with Rule 26(b). *Will-Drill Resources,* at *10. The party need not have an interest in the discovery sought from the non-party or be related to the non-party to pursue or obtain a Rule 26(c) protective order. A motion for protective order concerning a non-party subpoena seeks "to vindicate the rights of . . . [the] party with respect to the discovery process." *Arlott v. Arledge,* 2007 U.S. Dist. LEXIS 15113 *4 (S.D.Miss. March 2, 2007) (restricting discovery sought by subpoena to non-party to information relevant to certification issue).

Second, under Rule 45, a court may quash or modify a subpoena if it (1) fails to allow a reasonable time for compliance, (2) requires a person who is not a party to travel more than 100 miles from where the person resides, (3) requires disclosure of privileged or protected matter, or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(i)-(v); *Wiwa v. Royal Dutch Petroleum Company,* 392 F.3d 812, 818 (5th Cir. 2004), citing *Williams v. City of Dallas,* 178 F.R.D. 103, 109 (N.D.Tex. 1998) and *Linder v. Department of Defense,* 328 U.S. App. D.C. 154, 133 F.3d 17, 24 (D.C.Cir. 1984). Whether a subpoena presents an undue burden depends on the following factors: (1) the relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed). *Id.,* citing *Williams,* 178 F.R.D. at 109. If the person to whom the document request is made is a non-party, the court also may consider the expense and inconvenience to the non-party. *Id.,* citing Fed. R. Civ. P. 45(c)(2)(B) ("Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded").

**When a Rule 45 subpoena issued to a non-party is facially overbroad, the subpoena imposes an undue burden and can be quashed on the motion of a party.** *Wiwa,* 392 F.3d at 818; *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 636 (C.D.Ca. 2005), citing *Alexander v. Federal Bureau of Investigation,* 186 F.R.D. 21, 34 (D.D.C. 1998). Specifically, while a party moving to quash the subpoena has the burden of showing that compliance would be unduly burdensome, the Fifth Circuit has noted that "[a] court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa,* 392 F.3d at 818. Furthermore, a party also has standing to challenge a Rule 45(c) subpoena to a non-party when it has a personal right or

privilege with respect to the subject matter of the subpoena, or has some other sufficient interest in it. *Broadmoor,* 2006 U.S. Dist. LEXIS at *7, citing *Hunter v. Copeland,* 2004 U.S. Dist. LEXIS 9356 (E.D.La. 2004), and *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.,* 1998 U.S. Dist. LEXIS 5614 at *11 (E.D.La. 1998).

The subpoenas issued by the Plaintiffs in this action to 42 non-parties each are facially overbroad in numerous respects with regard to time and scope, such that they exceed the bounds of fair discovery under Rules 26 and 45. Thus, this Court should enter a protective order that the discovery not be had under Rule 26 and/or quash the subpoenas under Rule 45 for the following specific reasons.

### IV.    THE SUBPOENAS FACIALLY VIOLATE RULES 26 AND 45, SUCH THAT THE COURT SHOULD ENTER A PROTECTIVE ORDER PRECLUDING THE DISCOVERY THEY SEEK AND/OR SHOULD QUASH THEM.

#### A.    The subpoenas are facially overbroad in time and scope.

Plaintiffs subpoenaed the following records from 28 professional basketball teams who are not parties to this action and against whom they have not made any allegations or claims:

> 1.    All documentation relating to whether or not and to what degree you have applied or currently are applying the amusement/recreational exemption to employees who are neither basketball players nor exempt under the executive, administrative or professional exemptions of the Fair Labor Standards Act ("FLSA"). The documents requested are those existing anytime from January 1, 2000 to the present.
>
> This request covers, but is not limited to, indication of which positions have been considered for the exemption, by whom, under what circumstances, when it was considered and whether it was applied.
>
> 2.    All documentation relating to whether or not and to what degree you have applied, or currently are applying, the retail sales exemption to persons who are neither basketball players nor exempt under the executive, administrative or professional exemptions of the FLSA. The documents requested are those existing anytime from January 1, 2000 to the present.

This request covers, but is not limited to, indication of which positions have been considered for the exemption, by whom, under what circumstances, when it was considered and whether it was applied.

3. All documentation relating to whether or not and to what degree you have provided, or currently are providing, overtime or compensatory time to employees who are neither basketball players nor exempt under the executive, administrative or professional exemptions of the FLSA. The documents requested are those existing anytime from January 1, 2000 to the present.

This request covers, but is not limited to, indication of which positions have been considered for receiving overtime or compensatory time, whether overtime or compensatory time was considered, under what circumstances, when this was considered, whether and when either was provided, and which was provided.

4. All documentation reviewed or generated by you or on you behalf which refers to U.S. Department of Labor Opinion Letter No. WH-472, dated October 11, 1978. The documents requested are those existing anytime from January 1, 2000 to the present.

Plaintiffs also subpoenaed the following records from the NBA, which also in not a party to this action or the subject of any claims or allegations by the Plaintiffs:

1. All documentation relating to whether or not and to what degree any NBA team has applied, or currently is applying, the amusement/recreational exemption to employees who are neither basketball players nor exempt under the executive, administrative or professional exemptions of the Fair Labor Standards Act ("FLSA"). The documents requested are those existing anytime from January 1, 2000 to the present.

This request covers, but is not limited to, indication [sic] of which positions have been considered for the exemption, by whom, under what circumstances, when it was considered and whether it was applied.

2. All documentation relating to whether or not and to what degree any NBA team has applied, or currently is applying, the retail sales exemption to any employees who are neither basketball players nor exempt under the executive, administrative or professional exemptions of the FLSA. The documents requested are those existing anytime from January 1, 2000 to the present.

This request covers, but is not limited to, indication [sic] of which positions have been considered for the exemption, by whom, under what circumstances, when it was considered and whether it was applied.

  3. All documentation relating to whether or not and to what degree any NBA team has provided, or currently is providing, overtime or compensatory time to persons who are neither basketball players nor exempt under the executive, administrative or professional exemptions of the FLSA. The documents requested are those existing anytime from January 1, 2000 to the present.

This request covers, but is not limited to, indication of which positions have been considered for receiving overtime or compensatory time, whether overtime or compensatory time was considered, under what circumstances, when this was considered, whether and when either was provided, and which was provided.

  4. All documentation reviewed or generated by or on behalf of the NBA or the NBA Commissioner referring to the U.S. Department of Labor Opinion Letter No. WH-472, dated October 11, 1978. The documents requested are those existing anytime from January 1, 2000 to the present.

Each document request seeks documents "existing anytime from January 1, 2000 to the present." The temporal scope of each request is overbroad. This action involves only claims under the FLSA. Under the FLSA, the statute of limitations is two years, unless a plaintiff can prove a willful violation, which extends the statute of limitations to three years. 29 U.S.C. § 255. Thus, regardless of whether Plaintiffs' claims have any merit (which is denied), the maximum potential statute of limitations is three years. Further, the statute of limitations is not tolled until such time as a Plaintiff is named in the action or files a consent to become a party to the action. This action was filed on May 27, 2005. (Rec. Doc. 1). Thus, the earliest possible time for which any Plaintiff could seek damages in this action is May 27, 2002, yet Plaintiffs seek documents dating as much as two and one-half years earlier.[4]

Each of the subpoenas to the NBA and the individual teams seeks documents spanning nearly eight years. In light of the maximum potential statute of limitations of three years, the temporal scope of the subpoenas is facially overbroad. In *Moon,* the district court concluded that

---

[4] Likewise, in its subpoenas to non-parties other than the NBA and other teams, the Plaintiffs seek records dating to as early as January 1, 2001. Again, in light of the maximum potential statute of limitations, the subpoenas are facially overbroad in temporal scope.

{B0448742.1}

8

subpoenas seeking documents during a period of ten years were "overbroad on [their] face and exceed[] the bounds of fair discovery." 232 F.R.D. at 637-638. The district court also concluded that the request for information regarding all types of a particular product, rather than the specific product at issue in the case, was overbroad and exceeded the bounds of fair discovery. *Id. Moon* is analogous to this action in that the Plaintiffs here assert only their own pay claims against their former employer, yet have issued subpoenas regarding the pay practices of 28 other employers with respect their individual employees during a period of nearly eight years. Rules 26 and 45 simply do not authorize the type of facially overbroad discovery as that issued by Plaintiffs to non-parties all over the country in this action.

The subpoenas also seek irrelevant information and are overbroad in scope. Although Plaintiffs have sued their former employer and challenge whether they were exempt under the amusement and recreation and/or retail or service establishment exemptions, Plaintiffs are seeking documents from teams, against whom they have never asserted a claim and who are not parties to this action, as to how those teams classify their employees. How other employers classify their employees is facially irrelevant to the issue of whether the Hornets complied with the FLSA with respect to Plaintiffs. If other teams have ever treated their employees as non-exempt, that fact (if true) is irrelevant to and cannot serve as the basis of liability of any other employer. For instance, if an employee meets the qualifications of an exemption, an employer can choose to pay the employee overtime compensation regardless of the fact that he is exempt or may choose to treat him as exempt. Thus, the fact that the employer pays the employee overtime compensation does not automatically mean the employee does not meet an exemption or that another employer could not treat the employee as exempt under identical circumstances. Therefore, how non-party employers classify their employers is irrelevant to the Plaintiffs'

claims and cannot serve as evidence of, much less prove, FLSA non-compliance or liability. Plaintiffs cannot offer any legal authority to the contrary because it does not exist. Thus, the records sought in each of the requests to the NBA and the teams is overbroad in scope and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

> The Plaintiffs also subpoenaed the following records from the NBA:
>
> 5.    All documentation reflecting any payments which the NBA, the NBA Commissioner or any related entity made to or received from the Hornets from January 1, 2001 to the present.
>
> This request covers, but is not limited to, all agreements or contracts covering any such payments, and documentation indicating what payments were made, by whom, when, for what purpose, in what form, and where ant to whom the payments were directed.
>
> **The documentation in this Item 5 is requested in labeled electronic format. Please call to discuss available formats.[5]**

This action involves Plaintiffs' claims that they allegedly were owed but not paid FLSA overtime by the Hornets. The Plaintiffs cannot establish that any payments by the Hornets to the NBA, Commissioner, or related entity (or any agreements, contracts, or documentation regarding any such payments) has any relevance to the wage and hour claims they assert. Likewise, the Plaintiffs cannot establish that "all documentation reflecting any payments" made by the NBA, Commissioner, or related entity has any relevance to their claims. To the extent such records exist, the Hornets have an interest in them as the payee or payor and, thus, the irrelevant request should be denied under either Rules 26 or 45.

---

[5] Rule 45(c) does not obligate or compel a non-party to call a party issuing a subpoena and to disclose its records management system, electronic or otherwise. Thus, the subpoena is overbroad in this respect as well. Plaintiffs included this "instruction" on other subpoenas as well, to which the Hornets object for the same reasons.

**B.   The subpoenas are facially overbroad to the extent they directly seek privileged information prohibited by Rule 26.**

Rule 26 limits the scope of discovery to information that is relevant and "not privileged." The Plaintiffs directly seek documents that are privileged in violation of Rule 26, specifically all documents relating to the NBA's or teams' classification of certain employees for FLSA purposes and their review of a particular U.S. Department of Labor Opinion Letter in connection with same. Any such review likely involved the assistance of counsel or the provision of legal advice, giving rise to the attorney-client privilege or work product doctrine. As noted above, other employers' pay practices are irrelevant to any issue raised by Plaintiffs' claims about the Hornets' pay practices. An FLSA plaintiff cannot prove that one employer violated the FLSA by introducing evidence that another employer classified its employees differently. Further, to the extent the requests directly seek the production of documents that would include communications between non-parties and their attorneys, or documents that would reflect their attorneys' impressions or opinions about FLSA classification issues, the requests are facially overbroad such that they impose an undue burden, and this Court may quash them under Rule 45, regardless of whether each non-party asserts the privilege or protection for its information. *Wiwa,* 392 F.3d at 818; *Moon,* 232 F.R.D. at 636, citing *Alexander,* 186 F.R.D. at 34.

**C.   The subpoenas to the NBA and other teams are a transparent fishing expedition.**

It is not uncommon for courts to limit discovery in employment litigation to the site or facility where the employee worked for the employer, concluding that the expansion of discovery beyond the employee's workplace is overbroad, irrelevant, and not likely to lead to the discovery of admissible evidence. *Marshall v. Westinghouse Electric Corporation*, 576 F.2d 588, 592 (5th

Cir. 1978); *Hinton v. Entex Inc.,* 93 F.R.D. 336 (E.D.Tex. 1981). For a stronger reason, the expansion of discovery beyond the employer at issue is impermissible. In this case, the Plaintiffs' efforts to turn this case involving the Hornets into a case involving all professional basketball teams is a transparent fishing expedition. This Court should not condone such improper discovery practices.

In *Hinton,* the plaintiff worked at the employer's office in Jacksonville, Texas, until her discharge for allegedly mishandling company funds. The plaintiff alleged that she was discharged because of her race. *Id.,* 93 F.R.D. at 337. In her lawsuit, the plaintiff purported to represent a class of "all past, present, and future Black employees and Black applicants for employment with Defendant, Entex, Inc., located in the State of Texas." The plaintiff sought to compel discovery from the defendant concerning all of its facilities in the state. *Id.* The plaintiff argued that the information sought was relevant because she "alleged an across-the-board attack on Entex's employment practices within Texas and that the requested information is relevant to the class certification issue." *Id.* The district court rejected the plaintiff's argument, however, explaining that:

> [I]t is significant that nothing in the record indicates whether the administrative investigation conducted by the EEOC uncovered any evidence of discriminatory practices or policies at facilities other than the one at which the Plaintiff was employed. It is also significant that the Plaintiff **has not made any specific factual allegations of discrimination that pertain to any facility of Entex other than the one located at Jacksonville. To burden Entex with having to provide the requested information relating to all its facilities would be to condone the fishing expedition condemned by *Judge Thornberry in Marshall v. Westinghouse Electric Corporation*, 576 F.2d 588, 592 (5th Cir. 1978).**

*Id.* [emphasis added]. Ultimately, the district court concluded that the discovery should be limited to the facility at which most of the employment decisions at issue were made, which in that case was the facility at which the plaintiff had worked. *Id.,* 93 F.R.D. at 338. In this case, the

Plaintiffs seek information, including confidential and privileged information about the employment relationships of other employers and their employees having nothing to do with the claims asserted by Plaintiffs in this action. There are no allegations or claims that any of the non-parties participated in any of the employment decisions at issue. This Court cannot allow the use of the discovery process in this case as an opportunity for Plaintiffs and their attorneys to fish for potential claims or disputes between non-parties for the purpose of stirring or expanding litigation.

> D. **The subpoenas seeking all documentation reflecting every financial transaction of the Hornets are overbroad, unduly burdensome, and seek confidential information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.**

The Plaintiffs' subpoenas for information about the Hornets' financial transactions are facially overbroad, unduly burdensome, and seek confidential information outside the scope of discovery permitted by Rule 26. Specifically, Plaintiffs seek from Capital One Bank "[a]ll documentation reflecting *all financial transactions with any person or entity* by the Hornets from January 1, 2001 to the present." See Exhibit 1 to Defendant's Motion [emphasis added]. Each and every document reflecting each and every financial transaction to which the Hornets have been a party for the last seven years cannot genuinely be characterized as "reasonably" calculated to lead to the discovery of admissible evidence in this employment dispute. This request is grossly overbroad and would present an undue burden on the subpoena recipient in having to identify, gather, and produce such irrelevant documentation. Plaintiffs have not made any claim in this case that presents an issue about every financial transaction to which the

Hornets has been a party. The Plaintiffs' similar requests to KPMG suffers from the same defects and, thus, this Court should deny such improper discovery.[6]

> **E. The subpoenas seeking all documentation reflecting payments to and from the Hornets and various non-parties are overbroad, unduly burdensome, and seek confidential information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.**

The Plaintiffs seek from numerous non-parties "all documentation reflecting any payments [they]. . . made to or received from the Hornets . . . ." See Exhibit 1 to Defendant's Motion, specifically the subpoenas to: the John A. Alario Sr. Events Center; Cox Communications, LLC; the New Orleans Arena; New Orleans City Hall (the City of New Orleans); PepsiCo, Inc.; Poydras Louisiana, LLC; Game Face; Charles C. Foti Jr.; the Louisiana State Attorney General (the State of Louisiana); Ticketmaster of Louisiana; and the Internal Revenue Service. None of the requests is limited to documents relating to any individual Plaintiff or any particular project on which any Plaintiff worked during any relevant time-frame. Rather, the requests are for all payments made by the Hornets to the recipients and vice versa. Facially, the responsive documents are irrelevant to the Plaintiffs' FLSA claims.

The Hornets anticipate the Plaintiffs' assertion that the documents are being sought in connection with the Hornets' amusement and recreation exemption defense. However, even in light of that defense, the requests are overbroad, unduly burdensome, and seeks confidential and irrelevant information that otherwise is not discoverable under Rule 26. The amusement and recreation exemption defense is recognized in § 213(a)(3) of the FLSA and provides that the

---

[6] The Plaintiffs' subpoena to the Marine Toys for Tots Foundation is similarly improper to the extent it seeks documents reflecting all transactions between the subpoena recipient and the Hornets for the last seven years. The fact that the transactions at issue are limited to those between the Hornets and the subpoena recipient makes it no less overbroad in that it includes "all transactions," which are not reasonably calculated to lead to the discovery of admissible evidence, especially given the overbroad time period of seven years.

overtime requirement does not apply to employees of any amusement or recreational establishment" if (a) it does not operate for more than seven months in any calendar year **or** (b) during the preceding calendar year, its average receipts in any six-month period do not exceed one-third of its receipts for the other six months of the year.

Thus, as a preliminary matter, the Hornets can establish the exemption under the first option (operating for less than eight months in a calendar year), and need not rely on the receipts option. Nonetheless, even if the Hornets were to choose to establish the exemption with the receipts option, the payment information sought by the Plaintiffs is still overbroad. First, payments from the Hornets to the subpoena recipients is irrelevant because it is not a "receipt" by the Hornets; it is a "receipt" to someone else. Second, the non-parties' records of payments to the Hornets will not necessarily reflect when payments actually were "received" by the Hornets. A non-party may have issued a payment by any number of methods, not all of which will be "received" by the Hornets at the same time. Further, if the "cash" method is used to account for "receipts" as opposed to the "accrual" method, then none of the evidence sought could possibly be relevant or reasonably calculated to lead to the discovery of admissible evidence. In short, the overbroad document requests regarding reciprocal payments between the Hornets and various non-parties cannot stand facially under either Rule 26 or 45 and the improper discovery should be denied accordingly.

  **F.**  **The requests for employment records of individuals who are not parties to this action or at issue in this action are overbroad, unduly burdensome, and seek confidential information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.**

The Plaintiffs seek employment records from Game Face that relate to individuals who are not parties to this action. Other individuals and their candidacy for employment at the Hornets or elsewhere have no involvement in this action and their confidential employment

records are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Allowing the production of this information serves only to potentially embarrass such uninvolved individuals and exceed the scope of fair discovery under Rule 26.

### G. The "Instructions" and "Definitions and Rules of Construction" expand the scope of the requests in the subpoena such that they are overbroad and impose obligations beyond those required by Rule 26.

Plaintiffs have only further exacerbated the defects with their already overbroad subpoenas by incorporating a set of "Instructions" and "Definitions and Rules of Construction" that burdens the recipients with an expansive interpretation of their obligations in responding to the subpoenas, which obligations are incompatible with Rules 26 and 45. The non-parties' obligations are governed by Rules 26 and 45, not the Plaintiffs' own instructions, definitions, and rules of construction. The Court should reject the Plaintiffs' own "rules" in favor of the Federal Rules of Civil Procedure and grant the Defendant's Motion because the Plaintiffs' "rules" constitute yet another defect to already overbroad subpoenas.

### H. Financial and other records relating to the Hornets' business are confidential and should be governed by the Protective Order entered in this action.

The parties previously stipulated to a Protective Order to govern their production of documents and information in this case, which they jointly filed and the Court approved. (Rec. Doc. 63). To the extent that any of the financial or other records relating to the Hornets' business are produced by the non-parties pursuant to Plaintiffs' subpoenas, whether voluntarily or otherwise, the Hornets submit that all such documents should be treated by all counsel and parties as "Confidential" under the terms of the existing Protective Order until such time as the Hornets can review them and assess whether to maintain or remove the Confidential designation in accordance with same. The Protective Order concerns documents produced by parties, but in view of the fact that the documents sought by the subpoenas are financial and other records

relating to the Hornets' business and are not generally available to the public, there is no reason to treat those documents differently than if they were obtained directly from the Hornets until such time as the Hornets can assess whether they should be accorded "Confidential" treatment under the Protective Order. Of course, the Hornets maintain that the discovery sought through the subpoenas should denied for the reasons herein, but assert the application of the Protective Order in the event of a production voluntarily or over its objections.

## V.    CONCLUSION AND PRAYER FOR RELIEF

The subpoenas sent by the Plaintiffs (they do not appear to have been properly served) to 42 non-parties are so facially overbroad and directly violate the discovery limits imposed by Rule 26 that Plaintiffs should be compelled to pay the Hornets' reasonable attorney fees and costs incurred as a result of having to pursue relief from the Court. Plaintiffs made no effort to fashion a reasonable request to any of the 42 non-parties, much less to consider the undue burden and expense to those parties in having to consider or respond to such requests. Rule 26(g)(3) authorizes this Court to grant the Hornets relief in the form of reasonable attorney fees and costs because the Plaintiffs did not make a reasonable inquiry before making their non-party requests, nor are the requests consistent with the Federal Rules of Civil Procedure or warranted by existing law or any good faith argument to reconsider same. In fact, the non-party requests are plainly improper, harassing, and have needlessly increased the cost of litigation, and they are unreasonable and unduly burdensome and expensive in light of the circumstances of this case. Thus, the Hornets pray that this Court grant their motion and the relief requested herein.

Respectfully submitted,

**JONES, WALKER, WAECHTER, POITEVENT,
  CARRÈRE & DENÈGRE, L.L.P.**


<u>/s/ Jennifer L. Anderson</u>
JENNIFER L. ANDERSON, T.A. (Bar No. 23620)
Four United Plaza
8555 United Plaza Blvd.
Baton Rouge, LA 70809-7000
Telephone: (225) 248-2000
Facsimile: (225) 248-2010
E-mail: janderson@joneswalker.com

and

SIDNEY F. LEWIS, V (Bar No. 17026)
JANE H. HEIDINGSFELDER (Bar No. 28604)
201 St. Charles Avenue, 50th Floor
New Orleans, LA 70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 582-8015
E-mail:  slewis@joneswalker.com
E-mail:  jheidingsfelder@joneswalker.com
***COUNSEL FOR DEFENDANT,
   NEW ORLEANS HORNETS NBA L.P.***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER, TO QUASH RECORDS SUBPOENAS, AND FOR OTHER RELIEF has been served on all counsel of record below by the Court's EF/CMF system as a result of their registration for e-noticing and service via same:

Elvige Cassard Richards
Daigle Fisse, PLC
227 Highway 21
Madisonville, LA 70447
Facsimile: (985) 871-0899

Stewart E. Niles, Jr., Esq.
Niles, Bourque & Fontana LLC
909 Poydras Street, Suite 3500
New Orleans, LA 70112
Facsimile: (504) 310-8590


/s/ Jennifer L. Anderson