# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EUGENE LIGER, ET AL,** | * | **CIVIL ACTION NO. 05-1969** |
| **Plaintiffs in a Collective Action** | * | |
| | * | **SECTION C** |
| | * | |
| **versus** | * | **MAGISTRATE 05** |
| | * | |
| **NEW ORLEANS HORNETS NBA LIMITED** | * | |
| **PARTNERSHIP,** | * | |
| **Defendant** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER TO QUASH RECORDS SUBPOENAS, AND FOR OTHER RELIEF

MAY IT PLEASE THE COURT:

On May 25 2007, Plaintiffs had a number of *subpoenas duces tecum* issued to third parties seeking a variety of documents relevant to this case. Defendant, the Hornets, have filed a motion to block those subpoenas. Plaintiffs submit this memorandum in opposition.

The parties have agreed that the subject motion should be heard with Plaintiff's Motion to Compel, filed on July 19, 2007, which raises overlapping issues *See* Motion to Fix Hearing, Doc. No. 95. For many of Plaintiffs' arguments herein, the court is referred to the Memorandum in Support of Plaintiffs' Motion to Compel. *See* attached Exhibit B.

Dockets.Justia.com

## I.    BACKGROUND

Plaintiffs filed this lawsuit on May 27, 2005.   As of May 25, 2007 despite Plaintiffs'

extensive efforts to obtain discovery pertinent to the Hornets defenses, the Hornets' still had not

(and have not) provided the requested information.  In that regard, please see Exhibits 4-9 to the

Memorandum in Support of Plaintiffs' Motion to Compel, at Doc. Nos. 94, 96.[1]

Some of the subpoenas duces tecum were designed to obtain information

requested from, but not supplied by, the Hornets, or to supplement such requests.  Magistrate

Chasez has already rejected many of the objections raised by the Hornets related to the discovery

of information requested by plaintiffs.  In fact, Magistrate Chasez instructed the Hornets during

the last motion to compel filed by Plaintiffs to provide the requested information.  The Hornets

initially objected to producing the information until a protective order was in place.   The

protective order has been in place for over a year, but the information has still not been turned

over by the Hornets.   Others were directed at information which the Hornets would not

necessarily have in their possession.  All of the information requested is discoverable.  The

following entities were served with subpoenas duces tecum:

Banking, Accounting and Tax Related Entities

1.    Capital One;
2.    KPMG (accounting firm);
3.    Internal Revenue Service;
4.    State of Louisiana;
5.    City of New Orleans;

---

[1] Document Nos. 94 and 96 are Plaintiffs' Motion to Compel, filed July 19, 2007 (No. 94) and as corrected on July 23, 2007.

Entities Providing Premises Where Hornets Operated

6. Alario Center;
7. New Orleans Arena;
8. Poydras Louisiana LLC (Freeport-MacMoRan Building);

Cable Television Company

9. Cox Communications;

Individual Ticket Sales Company

10. Ticketmaster;

Certain Promotion Related Entities

11. PepsiCo;
12. Toys for Tots;

Hiring Source

13. Game Face;

National Basketball Association ("NBA")

14. NBA;

NBA Teams

15 - 42. NBA Teams

A follow up letter was sent to the teams on June 4, 2007, clarifying that one of the requests, which could have been read very broadly, was not so intended. Copies of the subpoenas as signed and served, together with the clarifying letters to the teams, are attached as *in globo* Exhibit A.[2]

---

[2] Plaintiffs served the Hornets with and advance courtesy copy of the subpoenas as planned to be filed. The Hornets attached those unsigned subpoenas as exhibits to their Motion for Protective Order. As reflected in the exhibits to the Hornets' Motion for Protective Order, Plaintiffs made some minor changes in the subpoenas prior to signing and

Of note, Magistrate Chasez rejected the Hornets prior objection to producing documents sent to the City of New Orleans and the State of Louisiana. However the Hornets continue to refuse to produce this information. Accordingly, and consistent with Magistrate Chasez's ruling, Plaintiffs now seek this information directly from the City and State.

The objections raised by the Hornets to the subpoenas are not well grounded, and their motion should be denied.

## II.    THE ISSUES IN THE CASE

The issues in this case are set forth in the Memorandum in Support of Plaintiffs' Motion to Compel, pages 3-10. *See* attached Exhibit B.

## III.    THE HORNETS DO NOT HAVE STANDING TO BRING THIS MOTION

Parties do not have standing to object to third party discovery if "they are not in possession of the materials subpoenaed and have not alleged any personal right or privilege with respect to the materials subpoenaed. *See Vogue Instrument Corp. v. LEM Instruments Corp.*, 41 F.R.D. 346, 348 (S.D.N.Y.1967); *Shepherd v. Castle*, 20 F.R.D. 184, 188 (W.D.Mo.1957)" *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979).[3]

According to Wright & Miller, and cases cited therein,

A motion to quash, or for a protective order, should be made by the person from whom the documents or things are requested. Ordinarily a party has no standing

---

issuing them, and sent the Hornets the signed versions as well as a letter detailing the differences from the unsigned version sent the previous day. Plaintiffs attach the signed versions for the court's reference.

[3] *See also Liberty Mut. Fire Ins. Co. v. Ravannack*, 2002 WL 1770936, *2 (E.D.La. Aug 01, 2002) (NO. CIV.A. 00-1209); *Stevenson v. Stanley Bostitch, Inc.*, 201 F.R.D. 551, 555 (N.D.Ga. Mar 21, 2001) and cases cited therein; *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, 1998 WL 186705, *4 (E.D.La.1998); *Garrett v. Blanton*, 1993 WL 262697 (E.D.La. Jul 06, 1993) (NO. CIV. A. 89-4367, CIV. A. 90-0319, CIV. A. 90-0320, CIV. A. 90-0321, CIV. A. 90-0322, CIV. A. 90-0323); *United States of America ex rel. Stinson, Lyons, Gerlin & Bustamente, P.A. v. Blue Cross Blue Shield of Georgia*, 755 F.Supp. 1040, 1054 (S.D.Ga.1990).

to seek to quash a subpoena issued to someone who is not a party to the action [FN15] unless the party claims some personal right or privilege with regard to the documents sought.[FN16]

9A C. Wright & A. Miller, Fed. Prac. & Proc. Civ.2d , § 2459 (2007) (citations in footnotes, which are extensive, omitted). *See also*, 28 Fed. Proc., L. Ed. § 65:256 (citations omitted), stating:

> A motion to quash or modify a subpoena under Fed. R. Civ. P. 45(c)(3) or for a protective order under Fed. R. Civ. P. 26(c)[FN1] may ordinarily be made only by the person to whom the subpoena is directed, because only that person has standing to attack the subpoena.[FN2] However, a party, although not the person to whom a subpoena is directed, nor in possession or control of the requested materials, does have such standing if he or she has a personal right or privilege in respect to the subject matter of the subpoena,[FN3] or a sufficient interest in it, such as a personal interest in receiving adequate notice of depositions,[FN4] or a desire to preserve the effectiveness of protective orders covering the same documents, issued by another federal court. [FN5]

The Hornets' claims regarding the financial records do not relate to a personal right giving rise to standing. In *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426, 429 (M.D.Fla. 2005), the court denied the defendant's efforts to block production of documents from the defendant's bank.

> Defendants argue that the subpoenas seek "extensive and intrusive information about every aspect of the financial relationship between Defendants and the non-parties" and that the information is "confidential and proprietary." Defendants further contend that there are less expensive and more convenient sources from which the information could be obtained, although it is unclear whether Defendants contend that these extra costs create an undue burden on Defendants as opposed to an undue burden on the non-parties.

> The financial records sought are business records of non-parties. Defendants have not established any expectation of privacy in their business transactions with other corporations and have not made any factual showing that the records are confidential or proprietary. Therefore, Defendants fail to establish a "personal right" regarding the records. *See Clayton Brokerage Co., Inc. v. Clement,* 87 F.R.D. 569, 571 (D.Md.1980) (bank customer had no legitimate

expectation of privacy in the contents of checks, deposit slips and other banking documents subpoenaed from his bank and, therefore, lacked standing to challenge the subpoena issued to the bank). Therefore, Defendants do not have standing under Rule 45 to quash the subpoenas regarding financial records."

Similarly in the present case financial records should be produced consistent with the subpoena request, particularly as Plaintiffs complied with all procedural requirements to obtain said records (note the absence of any objection by the Hornets on this ground).

Alternatively, the below arguments are presented supporting the production sought by those subpoenas, in case the court nonetheless finds that the Hornets have standing to block their issuance.

## IV.    THE SCOPE OF DISCOVERY IS BROAD

*See* the Memorandum in Support of Plaintiffs' Motion to Compel, page 3. It is generally preferable to modify than to quash a subpoena. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (reversing the grant of a motion to quash).

Note that the Hornets' complaint of overbroad temporal scope is misplaced. Plaintiffs can claim damages from May, 2002 in this case, and are fully entitled to seek information from a reasonable period before that date for discovery purposes. As to financial information, the regulation addressing the receipts issue specifically sets the preceding calendar year as the governing time frame. *See* 29 U.S.C § 213(a)(3). Further discussion regarding this issue as it relates to the subpoenas issued to the NBA and the teams is found at those specific sections below.

## V.    THE INFORMATION SOUGHT BY THE SUBPOENAS IS DISCOVERABLE

The financial and revenue information sought by Plaintiffs is relevant to this litigation

because the Hornets placed these issues before the Court when they alleged that Plaintiffs are not entitled to overtime compensation because the Hornets qualify under an amusement and recreation exemption and/or a retail sales exemption. The financial records and revenue documentation of the Hornets is a necessary element of these defenses. Since the Hornets have refused to produce this information despite Court orders and directions from Magistrate Chasez to produce the information, Plaintiffs request that these defenses be stricken.

Should the Court reject Plaintiffs' request to strike the Hornets' defenses, Plaintiffs' submit the following reasons in support of the production of the subpoenaed information.

A.    **BANKING, ACCOUNTING AND TAX RECORDS**[4]

The Hornets' financial information as requested in the referenced subpoenas relates to the following issues in this case:

> 1.    **Receipts, revenue and income for purposes of satisfying the "receipts" prong of the "seasonality" element of the seasonal/amusement exemption**

The Hornets do not effectively object to producing this information. They have already provided some, *see* Responses to Interrogatories 14-16, Exhibit 3 to Memorandum in Support of Plaintiffs' Motion to Compel, although very incomplete.[5]

Moreover, despite the plain language of the statute requiring an as-paid analysis of when receipts are to be determined, the Hornets are holding on to both the "cash" (when received) and the "accrual" (when the employer decides to show the credit on the books) methods of

---

[4] Many of those entities agreed to comply with the subpoenas, except the IRS contends that either a court order or authorization from the Hornets is required. KPMG was agreeing to provide selected data, when those discussions were put aside (with Plaintiffs' acquiescence) pending the present motion.

[5] *See e.g.*, communications regarding inadequacy of documents produced, Exhibit 4 to Memorandum in Support of Plaintiffs' Motion to Compel (unnumbered pp. 7-8).

determining when receipts are received. *See, e.g.*, Hornets' Motion for Protective Order, etc., p. 5. Case law has adhered to the plain language interpretation of the statute, and applies the cash method. Accordingly, based on the Hornets' position, information encompassing both methods is discoverable.

> 2.    **All Financials Relate to "Establishment," Length of Operations, "Retail," Interrelationship of Companies, Damages**

All of the financial information requested by these subpoenas, not just that information associated with receipts, relates to numerous elements of this case and is subject to discovery through the subpoenas. The requested financial records relate to the topics below as follows:

> a.    The Hornets contend they are a single establishment, even though

their facilities occupied separate premises. Plaintiffs seek to defeat the Hornet's contention that the separate business functions performed on separate grounds were functionally integrated. *See*, Memorandum of Plaintiffs' Motion to Compel, pp.4-5.[6]

> b.    For the recreational/amusement exemption to apply, the

establishment where the allegedly exempt employees work must be "an amusement or recreational establishment." 29 U.S.C.§213(a)(3). The Hornets do not qualify for this exemption, and the requested financials will prove this for Plaintiffs.

> c.    The Hornets cling to the seemingly absurd proposition that they are

not in operation "for more than seven months in any calendar year" 29 U.S.C. §213(a)(3). The requested financials will demonstrate the fallacy of this proposition. *See* Memorandum in support of Plaintiffs' Motion to Compel, pp. 6-7; Hornets Motion for Protective Order, pp. 14-

---

[6] The cited memorandum references Judge Berrigan's opinion on the "establishment" issue, holding there was "a lack of factual development" on the issue.

15.

      d.    To meet the retail exemption, the Hornets must show that the 75% of the annual dollar volume of establishment where the allegedly exempt employee works is retail as defined for purposes of the FLSA. *See* Memorandum in Support of Plaintiffs' Motion to Compel, pp. 7-8. The requested documents will disprove this claim. Clearly, the requested records are integral to that showing.

      e.    The question of whether a joint employment relationship exists with an interrelated company requires a review of financial data. This information also will shed light on questions of control for purposes of identifying decision makers, and for purposes of determining the potential liability of any such decision makers. *See* Memorandum in Support of Plaintiffs' Motion to Compel, pp. 8-9.

      f.    The requested financial information will contain data relating to hours worked and identifying or leading to accounts serviced by Plaintiffs through information on reimbursement, expenses, entertainment allocations and accounts, mileage records, office expenses, etc. *See* Memorandum in Support of Plaintiffs' Motion to Compel, pp. 9-10.

## B.    RECORDS OF VARIOUS FACILITIES, PREMISES USED BY THE HORNETS

The Hornets have numerous offices spread out across south Louisiana. Information sought regarding other offices will directly contradict their claim that they are an exempt establishment. Plaintiffs sought information from the New Orleans Arena, Alario Center, and the Freeport-McMoRan Building, which are locations where the Hornets had varying operations. *See* Memorandum in Support of Plaintiffs' Motion to Compel, pp. 4-5.

Each of those entities has complied with the subpoena. The Discovery requests are appropriate, as they clearly relate to

1. "establishment", *see* Section V. A. 2, *supra*;

2. the nature of the establishment, *see* Section V. A. 2, *supra*;

3. the length of the Hornets operations per year, *see* Section V. A. 2, *supra*;

4. "retail" nature of the establishment and of the Hornets; income, *see* Section V. A. 2, *supra*;

5. receipts, *see* Section V. A. 2, *supra*;

6. decision makers and possible joint employers, *see* Section V. A. 2, *supra*; and

7. damages, *see* Section V. A. 2, *supra* (information requested includes data illuminating hours worked).

## C.    TELEVISION ARRANGEMENTS

The Hornets receive much of their revenue from television agreements. This is clearly not retail sales revenue. The Hornets refuse to break down the amount of information received from their television contracts despite numerous requests since 2005 to provide this information. Accordingly, the Plaintiffs are now forced to obtain this information from the payor. The information elicited from Cox Communications, which televised the Hornets regular season games and promotional events sought documentation of financial transactions with the Hornets, including their amounts, dates, and descriptions, and what Hornets accounts, departments and locations were involved. Cox agreed to respond but put the process on hold pending this motion. The requests are discoverable for the same reasons as set forth in Section V.B above.

## D.    TICKETMASTER

The Hornets had a contract with Ticketmaster whereby the Hornets made the group sales and individual ticket sales were reserved to Ticketmaster. The subpoena requests documents reflecting the agreement(s), and all financial transactions with the Hornets, including their amounts, dates, and descriptions, and what Hornets accounts, departments and locations were involved. The requests are discoverable for the same reasons as set forth in Section V.B above.

## E.    TOYS FOR TOTS AND PEPSI

The amount of commissions owed to Plaintiffs must be determined so that the Court can calculate the overtime owed to Plaintiffs. *See* Memorandum in Support of Plaintiffs' Motion to Compel, pp. 15-16. These entities were named in some Hornets' ticket sales promotions. In addition to the concern addressed in the Memorandum in Support of Plaintiffs' Motion to Compel, Plaintiffs apparently did not receive commissions on these sales. Documents requested are those reflecting all financial transactions with the Hornets, including their amounts, dates, and descriptions, and what Hornets accounts, departments and locations were involved. The requests are discoverable for the same reasons as set forth in Section V.B above.

## F.    GAME FACE

*See* Memorandum in Support of Plaintiffs' Motion to Compel, p. 14. In addition to the standard request for documentation of financial transactions, the subpoena additionally requests data relating to the hiring by the Hornets of certain of the Plaintiffs, and to the actual or potential hiring of any other Game Face candidates. The requests are discoverable for the same reasons as set forth in Section V.B above.

## G.   NATIONAL BASKETBALL ASSOCIATION

In addition to the standard request for documentation of financial transactions, the subpoena additionally requests data relating to the application by any NBA team of the amusement or retail exemptions, to the payment by any NBA team of overtime or comp time, and documentation reviewed or generated by the NBA in connection with the U.S. D.O.L. Opinion Letter finding business people employed by a professional basketball team to be ineligible for the amusement exemption. The requests are discoverable for the same reasons as set forth in Section V.B above.

The Hornets erroneously contend that conduct of other teams is not discoverable. However, the law, including the regulations and legislative history, relies on business categorizations for purposes of illustration and interpretation. *See, e.g.,* Appendix A to Memorandum in Support of Plaintiffs' Motion to Compel. Additionally, this question bears directly on the test for applying the retail exemption (*see* Memorandum in Support of Plaintiffs' Motion to Compel, p. 8) and on the question of the Hornets' good faith (same, pp. 9-10). This latter issue becomes even more important when it is considered with information by the Plaintiffs that the Hornets were aware of what other NBA teams were doing in terms of paying overtime or attempting to avoid such payments through reliance on FLSA exemption.

The Hornets additionally erroneously contend that any views expressed by the NBA or its commissioner are not discoverable. At least one team, or perhaps the NBA itself, sought an opinion from the Department of Labor regarding issues identical defenses currently before this Court. The 1978 DOL Opinion Letter specifically rejected the over broad defense currently raised by the Hornets. The amusement and recreation exemption does not apply in this case.

- 12 -

The underlying law and principles have not changed.

### H.    NBA TEAMS

The subpoenas asked for documents regarding their application of the subject exemptions, their payment of overtime or comp time, and data regarding the DOL Opinion Letter. See Section V.G. above. Upon information and belief, several NBA franchises do not consider themselves to be exempt organizations. Moreover, upon information and belief, several of the executives who made decisions rejecting overtime pay to Plaintiffs either themselves received and/or are elected to pay overtime to the same type of employees involved in this litigation.

## VI.    SIMILARLY, THE HORNETS REMAINING OBJECTIONS ARE NOT WELL GROUNDED.

### A.    PLAINTIFFS DO NOT SEEK DISCOVERY OF PRIVILEGED INFORMATION

The subpoenas exclude privileged information and request a privilege log. The weakness of the Hornets' arguments is undermined by their inclusion of this wholly unfounded argument, Hornets' Motion for Protective Order, p.11.

### B.    BURDENS

Although the Hornets claim the subpoenas unduly burden the recipients, the Hornets choose to ignore Plaintiffs' consistent offers to confer with the subpoena recipients for the purpose of crafting responses that were effective yet practical for the entity subpoenaed, and various agreements reached. Moreover, in every case where requested the return date was modified freely by Plaintiffs.

Further, included on the subpoenas was an invitation to discuss possible modes of

response.   This courtesy extended by Plaintiffs has been mischaracterized as an improper demand.

### C.    PLAINTIFFS SEEK NO USE OR DISCLOSURE OF DISCOVERY BEYOND THIS LITIGATION.

Plaintiffs repeatedly have offered to include the production of documents yielded by these subpoenas under the umbrella of the broad protective order already in place. This would protect all confidential, proprietary, trade secret or other sensitive information, and would preclude the use of the discovery in any other litigation.

The court should note that this is the same argument initially used by the Hornets to delay the initial production of documents requested by Plaintiffs. At the Hornet's request, and with Magistrate Chasez's assistance, all parties entered into a Protective Order that specifically contemplated the production of this type of information.  Furthermore, the Hornets have never contacted counsel to specifically request that the Protective Order be extended to include this information. Accordingly, the Hornets' objections on this ground should be rejected.

### D.    THE HORNETS OBJECTIONS BASED ON DISCRIMINATION CASES IS INAPPROPRIATE.

The Hornets support their objection to the subpoenas directed to other NBA teams based on employment discrimination cases limiting discovery to facilities where the alleged discriminatory decisions were made.  Hornets, pp. 11-12.  These cases making completely different claims, based on completely different causes of action, are wholly inappropriate to this case.  Moreover, the cases relied upon by the Hornets do not involve multiple plaintiffs asserting an employer-wide practice, which cases yield different results even in the discrimination context.

**E.    THERE IS NOTHING WRONG WITH THE INSTRUCTIONS AND DEFINITIONS OF THE SUBPOENAS.**

The Hornets claim the "Instructions" and "Definitions and Rule of Construction" sections of the subpoena are impermissible, but fail to identify in what respect. In the absence of any specifics their objection must be disregarded. As further support for the propriety of the included definitions, Plaintiffs request the court to take judicial notice of the fact that U.S. D.O.J. subpoenas frequently include similar guidance.

CONCLUSION

For all the reasons as stated above, Defendant's Motion For Protective Order To Quash Records Subpoenas, And For Other Relief should be denied. Moreover, Plaintiffs request that the Hornets' Amusement and Recreation defense and their Retail Sales Exemption defense be stricken for refusal to produce the requested documentation.

Respectfully submitted,

BY: _____

HOWARD DAIGLE, JR. (#4454)
DANIEL E. BURAS, JR. (#26226) (T.A.)
ELVIGE CASSARD RICHARDS (#19386)
227 Highway 21
Madisonville, LA  70447
Telephone: 985.871.0800
Facsimile: 985.871.0899
**ATTORNEYS FOR EUGENE LIGER,  IVAN HINSON, ANTHONY MARTIN, ADAM NASH, CHRIS CARTER, MARCY PLANER-MURRAY, LYNN HOLMES, DAN KARLSBERG, CHRISTOPHER STANT, SAM STEINMETZ, AMY NICOLE SMITH, LESLIE SUMLER, LATOUSHA BROWN, KEVIN BUCKEL AND KEN KLIEBERT**

STEWART E. NILES, JR. (#10004)
BRIAN J. KNIGHT (#28640)
NILES, BOURQUE & FONTANA, L.C.

909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
**ATTORNEYS FOR JESSICA BERRY
AND KEVIN BUCKEL**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Memorandum In Opposition To Defendant's Motion For Protective Order To Quash Records Subpoenas, And For Other Relief has been sent to opposing counsel by placing a copy of same in the U.S. mail, properly addressed, postage prepaid, or by any other means authorized by law, this 26th day of July 2007.

_____
DANIEL E. BURAS, JR.