UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EUGENE LIGER, ET AL, | * | CIVIL ACTION NO. 05-1969 |
| Plaintiffs in a Collective Action | * | |
| | * | SECTION C |
| | * | |
| versus | * | MAGISTRATE 05 |
| | * | |
| NEW ORLEANS HORNETS NBA LIMITED | * | |
| PARTNERSHIP, | * | |
| Defendant | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Plaintiffs respectfully submit this Memorandum in Support of Motion to Compel, which sets forth the discovery Plaintiffs are seeking, with the foundation for their entitlement to it.

### I.   PLAINTIFFS SEEK UNPAID OVERTIME DUE BY THE HORNETS

Plaintiffs are former employees of the Hornets NBA basketball team. Plaintiffs worked in sales and clerical-type positions. Plaintiffs seek wages which the Hornets have refused to pay. This lawsuit claims the overtime pay which Plaintiffs are due, as well as, *inter alia*, liquidated damages authorized under the governing statute, the Fair Labor Standards Act ("FLSA"). The claimed overtime includes overtime based on commissions and salaries which the Hornets owe

- 1 -

Exhibit B

to Plaintiffs but did not pay.[1]

## II. DISCOVERY TO PLAINTIFFS HAS BEEN LONG OUTSTANDING

This Motion to Compel relates to initial disclosures, Request for Production and Interrogatories. *See* Exhibits 1-3. The Hornets have objected, either in whole or in part, to providing numerous responses. In some instances Plaintiffs are awaiting responses which have been promised as a result of the 37.1 conference, but which have not been received as of this writing. Numerous efforts have been made to amicably resolve these issues, and despite assurances of compliance by the Hornets the outstanding responses have not been provided. *See* Exhibits 4-9. A protective order is in place in the case to protect any allegedly sensitive information.[2]

Moreover, in an effort to get information from other sources, in part because of the delays in obtaining discovery responses from the Hornets, Plaintiffs served subpoenae duces tecum on a number of third-party entities. Many of them have filed objections. As to all of those subpoenas, the Hornets filed a Motion to Quash and for a Protective Order seeking to prevent any of the productions requested by the subpoenas, asserting the bulk of objections raised by some of the third-parties. Many of the issues raised in the Hornets' Motion to Quash and for Protective Order are the same as those addressed in this Motion to Compel, regarding whether certain types of information are discoverable in this case.

## III. THE SCOPE OF DISCOVERY IS BROAD

---

[1] Plaintiffs have filed state court lawsuits to recover those unpaid commissions and salaries under state law. The parties have agreed to conduct discovery on all issues together without limiting discovery in one suit to only the issues arising there. In any event, this federal case incorporates the issues pertinent to the state court claims because the amount of overtime Plaintiffs are owed must be calculated on the correct salaries and commissions they should have been paid.

[2] Plaintiffs are anxious to set a 30(b)(6) deposition and others, but await the requested documentation and information to effectively move forward in that regard. Deadlines are fast approaching in this case, with Plaintiffs' expert report due in mid-August.

In determining whether or not a party must answer a discovery request, courts are governed by Federal Rule of Civil Procedure Rule 26. In meeting this standard, the discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Hebert v. Lando*, 441 U.S. 153, 176 (1979). Requested information should be ordered "if there is any possibility that the information sought may be relevant to the subject matter in the action or if there is any possibility that the information sought may lead to the discovery of admissible evidence. See Fed.R.Civ.P. 26(b)(1); Beach v. City of Olathe, 2000 WL 960808, *2 (D.Kan.2000)." *Garcel V. Hibernia Nat'l Bank*, 2002 WL 100605 (E.D.LA 2002). To determine what should be produced an understanding of the elements of the case is critical.

## IV. ISSUES IN THE CASE AND ASSOCIATED PERTINENT DISCOVERY

### A. Generally

Plaintiffs claim they are entitled to overtime as mandated by the FLSA: if an employee works more than 40 hours in a workweek, the employer must pay the employee 1½ times his or her regular pay for each hour of overtime. Defendants reject this position based on two exemptions[3]: The seasonal/recreational[4] exemption and the retail commission exemption. The law does not require that overtime be paid where an exemption applies.

The goal of the FLSA is to ensure that fair wages are paid to America's working men and women. All covered employers are obligated to pay their employees minimum wage and overtime in compliance with the FLSA unless a specifically enumerated exemption applies. It is well established that exemptions to the minimum wage and overtime obligations are narrowly construed, consistent with the strong public policy goals of the FLSA. The burden is on the

---

[3] Defendant previously suggested that other exemptions might apply, but appear to have dropped this argument.
[4] This also referred to as the amusement/recreational exemption.

- 3 -

employer to prove that an exemption applies. It is well established that an employer seeking to establish an overtime exemption must present evidence that "plainly and unmistakably" brings the employer within the terms of the exemption. *Acme Car & Truck Rentals, Inc. v. Hooper*, 331 F.2d 442, 447 (5th Cir.1964).

### B. The Seasonal/Recreational Exemption And Associated Discovery

To demonstrate that it can avoid paying overtime by relying on the seasonal amusement or recreational exemption,[5] the Hornets team must prove that it was an employer which

(1) was an establishment
(2) that was amusement or recreational in nature **and**
(3) which was seasonal – that is, it
  (a) did not operate for more than seven months in any calendar year,
  **or**
  (b) had average receipts for any six months of the preceding calendar year which were not more than 33 1/3% of its average receipts for the other six months of the year.[6]

#### 1. "Establishment"

"Establishment" refers to "a 'distinct physical place of business' rather than to 'an entire business or enterprise,' which may include several separate places of business." 29 C.F.R. 779.23. A single employer often has multiple establishments. Thus some employees may be subject to the exemption while others are not, depending on where they work.

Plaintiffs' clerical and sales-type functions were performed in business offices physically and functionally separate from the space where the public attended games. The Hornets had business and/or sales offices in the New Orleans Arena (apart from the stadium), the Freeport-McMoran building, and/or in separate regional sales offices, such as in Houma, Gulfport, Baton Rouge, Mandeville, Mississippi Gulf Coast. The players, coaches and associated employees worked out of the Alario Center where they practiced, and they played their season home games

---

[5] This exemption also is often referred to as the recreational/amusement exemption.
[6] See 29 U.S.C 13 (a)(3); 29 C.F.R. 779.385. See Appendix A.

at the Arena.

The Hornets contend they are a single establishment, as they must in order for all their employees to be exempt under this exemption.[7] Broadly speaking, the Hornets rely on other language suggesting that integrated functions can create a single establishment where the facilities are on the same premises. However, Plaintiffs contend that the Hornets are not a single establishment, and that the establishments where Plaintiffs worked are not amusement or recreational.[8]

In September, 2006, Plaintiffs filed a motion for summary judgment on the limited issue of whether the Hornets could show they are an establishment.[9] Judge Berrigan denied the motion "because of a lack of factual development." See Order and Reasons, Dkt. No. 82, p.1.

Issues related to the establishment question include the separateness of facilities, the functions, purposes and operations of facilities and the employees working in each, the times and locations of employees' work, the integration of operations among facilities, etc. Regarding the amusement or recreational nature of the facility, facts related to that question include public access to locations, employee and public functions were performed at the facilities, etc.

Accordingly, discovery directed to the question of establishment clearly is appropriate. However, the Hornets have refused to produce materials and information sought in connection

---

[7] The Hornets also must prove they are an "establishment" to be exempt under the retail commission sales exemption.

[8] This is consistent with a Department of Labor ("DOL") Opinion Letter issued on the subject, Wage & Hour Opinion Letter dated October 11, 1978, 1978 WL 51434, copy attached as Exhibit 12. (The DOL concluded that the exemption did not apply to a professional basketball team, because the team's administrative offices in the City's sports Arena were a separate "establishment" from that part of the Arena "to which the general public has recourse for its amusement or recreation.")

[9] Note that the opinion makes two misstatements, as shown by the following:
  (1) Plaintiffs argued that the Hornets' business and sales offices were separate "establishments" from the organization's amusement or recreational services, not separate "enterprises" (See Order and Reasons [Dkt. No. 82], p.2; Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment [Dkt. No. 74], p.2), and
  (2) Plaintiffs do, in fact, deny that the Hornets meet the receipts test (See Order and Reasons [Dkt. No. 82], p.4; Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment [Dkt. No. 74], fn. 3).

with this issue, and have moved to quash[10] efforts to obtain data on this issue from other sources.

### 2. "Does Not Operate For More Than Seven Months"

Judge Berrigan in her summary judgment ruling stated, "Regardless of the actual length of the basketball season, the Hornets are clearly a year-round operation." Order and Reasons [Dkt. No. 82], p.4. If this statement is the law of the case, Plaintiffs concede that no discovery is necessary on this issue, and the Hornets are precluded from relying on it as a defense. Thus the only "seasonal" prong of the amusement/recreational exemption which the Hornets will be able to rely on is the receipts test, discussed below.

Otherwise, Plaintiffs are entitled to discovery on this issue. The Hornets stated in the Rule 37.1 conference that the playing season, together with "kick-off" activities should define the period of their operations. Not only is this suggestion intuitively invalid, as recognized by Judge Berrigan in her quoted statement above, there is no authority supporting that position. Rather, the law looks to the common-sensical question of ongoing business operations. *See, e.g., Bridewell v. The Cincinnati Reds*, 68 F.3d 136, 139 (6th Cir.1995), *cert. denied*, 516 U.S. 1172 (1996).

Discovery directed at this issue includes the following: financial activity, employees' activities, promotional and marketing activities, exhibition games and similar functions, employment levels, any conduct directed at generating profits or running the team or business functions of the organization. Defendants may indeed be correct that a single, isolated financial transaction might not rise to the level of "operating", as they stated in a pre-filing conference, but by examining the totality of activities it will be come clear the extent to which the Hornets continue to be in business during the off-season months, or whether they are shut down for that

---

[10] Plaintiffs have no objection to any production requested herein to be incorporated into the coverage of the existing protective order in this litigation.

period. This is the paradigm the exemption is designed to address: amusement parks, for example, open long hours in the summer and shut down in the winter; or ski resorts, which might operate in reverse.[11]

The Hornets have refused to produce materials and information sought in connection with this issue, and have moved to quash efforts to obtain data on this issue from other sources. Plaintiffs request the court for an order compelling production on this issue.

    3.    **"Receipts"**

The receipts prong of the exemption, quoted above, is self-explanatory. The weight of legal authority construes the term "receipts" in its plain meaning of revenue when is received. The Hornets are not prepared to abandon both that definition of receipts as well as the argument that the date of receipts for purpose of this analysis can mean when the sum is accrued on the books. Clearly, Plaintiffs are entitled to discover what receipts the Hornets had, the dates the receipts were actually received by the Hornets, and the dates when the receipts were accrued on the Hornets' books.

    C.    <u>**The Retail Sales Commission Exemption and Associated Discovery**</u>

The Hornets must show the following to claim the FLSA's retail sales exemption as to any employee:

    1)    the claimant must be employed by an establishment;
    2)    which is for retail or service; and
    3)    the regular rate of pay of such employee is in excess of 1½ times the minimum wage and
    4)    more than half the employee's compensation for a representative period (not less than one month) represents commissions on goods or services.[12]

    1.    **"Retail or Service"**

---

[11] *See, e.g.*, 29 C.F.R. 779.385; legislative history, *Brock v. Louvers and Dampers, Inc.*, 817 F.2d 1255, 1258-59 (6th Cir.1987), all quoted in Appendix A.
[12] *See* 29 U.S.C. § 207(i); Appendix B. *See also*, generally, 29 C.F.R. Part 779.

"Retail or service establishment" means "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 U.S.C. § 213(a)(2); *see also* 29 C.F.R. § 779.411.

The DOL regulations state,

> "Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process." 29 C.F.R. §779.318

Further, a "sale [of goods or services] for distribution by the purchaser for business purposes are sales for resale under the 'other disposition' language of the definition of 'sale' even though distributed at no cost to the ultimate recipient." 29 C.F.R. § 779.331.

Pertinent discovery on these issues includes, again, questions related to identification of an "establishment," to the question of the nature, volume and timing of income at any establishment where a Plaintiff worked, the facts surrounding the Hornets' and individual salespersons' ticket sales (*e.g.*, to groups) versus Ticketmaster's ticket sales (*e.g.*, to individuals), the same questions regarding any other goods or services which the Hornets contend are retail, whether the sales or services relied upon by the Hornets as retail are "recognized as retail sales or services in the particular industry," identification of a representative period for purposes of the exemption, rates of pay, compensation and commissions.

### D.  Principals Can Be Liable And Associated Discovery

The FLSA defines an employer as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.' 29 U.S.C. § 203(d). It is well established that this definition can include individual corporate officers. *See, e.g., Riordan v. Kempiners*, 831 F.2d

- 8 -

690 (7th Cir. 1987) (supervisor deemed FLSA employer); *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983) (corporate officer with operational control was FLSA employer); *Koster v. Chase Manhattan Bank*, 554 F. Supp. 285 (S.D.N.Y. 1983) (officer/supervisor who made salary and promotion recommendations was FLSA employer within meaning of FLSA); *Brennan v. Whatley*, 432 F. Supp. 465 (E.D. Tex. 1977) (president/treasurer/chairman having operational control was FLSA employer); *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984), cert. denied, 105 S. Ct. 2654 (1985). It is also well established that principles of joint liability apply in the FLSA context.

### E. Calculating the Overtime Claims And Associated Discovery

Lost pay damages under the FLSA equal the difference between what an employee would have been paid for overtime hours had the employer complied with the FLSA and the amount that the employee actually received as payment, if anything, for working overtime. The FLSA requires employers to keep accurate payroll records of employees' work hours and the amounts paid to them.

Accordingly, relevant information in this regard includes all wages which the Plaintiffs were due, including commissions, circumstances surrounding their terms and conditions of employment, information that can assist in determining their hours worked, and Defendant's information undermining such claims by the Plaintiffs.

### F. Issues Related to Liquidated Damages And Associated Discovery

Where there has been a violation of the overtime laws, the FLSA authorizes, *inter alia*, "the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216. In addition to the back pay award, liquidated damages equal to the amount of back pay are owed unless the employer is able to prove that it acted in good faith. If willfulness is present the

recovery can go back three years; otherwise the period is limited to two years.

To avoid a liquidated damages assessment, the employer must be able to show

> (1) that the act or omission giving rise to such action was in good faith and
>
> (2) that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the FLSA.

29 U.S.C § 260. The question is whether the Defendant had an honest intention to ascertain what the FLSA requires and to act in accordance with it. *See, e.g., Dybach v. State of Fla. Dept. of Corrections,* 942 F.2d 1562, (11th Cir. 1991), and cases cited therein.

Relevant information to this inquiry includes information regarding what information the Hornets had or should have had, given their circumstances, concerning the applicability of the FLSA and/or the exemptions it now relies on, the reaction of the Hornets to that information, and the reasonableness of its position under the circumstances.

## V.   THE ANSWERS TO THE DISCOVERY REQUESTS SHOULD BE COMPELLED

### A.   All Financial Data Should Be Provided To Address "Establishment" and "Does Not Operate For More Than Seven Months"

The Hornets object to providing any financial data other than receipts. However, the Hornets contend they do not operate for more than seven months in a year, and also contend they are a single establishment. The Hornets financial data is discoverable on both of these issues: financial activity other than receipts will reflect the Hornets' operational activity for more than seven months per year. The full financial data also will shed light on the separate functions of the Hornets' internal operations. Discovery that should be ordered answered includes all those seeking the basis for the Hornets' claim to the exemptions, and Request for Production Nos. 5-13 (Defendant has refused to provide any financial information other than receipts, which it concedes is relevant to the last prong of this exemption), 21.

**B. Information on Other Employees Besides Plaintiffs Should Be Provided, In Connection With All Issues**

Information which Plaintiffs have requested on employees other than the Plaintiffs includes the following: who was paid overtime, at any time from 2002 to the present; what are the job descriptions or functions of employees who were paid overtime at any time from 2002 to the present; Note that the confidentiality of all such information that would be produced is protected by a protective order in the case.

1. Recording and Payment of Overtime and Comp Time to Present

   a. Recent Practices

It is Plaintiffs' understanding that the Hornets have been recording and paying overtime to employees since the filing of this lawsuit. The issues in this case as to which that information is discoverable includes the applicability of the exemptions in question, the good faith of the Hornets, the decision-making process arriving at those payments, knowledge of and the calculation of damages to the Plaintiffs.

Despite the Hornets' objection to providing this information, the issue is raised in the context of discovery, not admissibility at trial, and relates to matters other than proof of negligence. Even if, as the Hornets suggest, their current payment of overtime is voluntary and not mandatory under the law, Plaintiffs still are entitled to discover the underlying facts for other purposes than as objected to by Defendant.

   b. Waiver

Further, the Hornets have waived that argument to the extent they have agreed to provide certain information in response to Request for Production No. 40. That request seeks documents

to or from certain named persons regarding overtime or comp time (modified by Plaintiffs to begin with January 2001). Defendant has agreed to produce the requested information not only as to Plaintiffs, and similarly situated persons, any generic or specific reference to the issue, and any persons in the same positions. This concession waives the Hornets' objection to giving at least that information in response to other discovery requests.

    c. Comp Time

The Hornets agreed to answer as to overtime but also object to providing any information regarding compensatory ("comp") time. Plaintiffs seek this information because (1) a common misconception among employers and employees is that comp time (compensatory time off) can be paid in lieu of overtime,[13] and (2) where comp time was given overtime may have been required. Accordingly Plaintiffs are entitled to discover this information as well.

Counsel for the Hornets stated that she did not believe there was any comp time given during the period. A complete and verified answer should be provided and Plaintiffs request an order in that regard.

    d. Withheld Documents

Regarding Request for Production No. 55, seeking documents regarding requests for overtime, the Hornets stated, subject to objections, that there are no "discoverable" documents. Plaintiffs are entitled to know if the privilege log at Exhibit 10 is the only document being withheld in connection with this request.

The following should be ordered answered in full: Requests for Production Nos. 40, 51, 55; Interrogatory Nos. 41-42, 44, 48.

    2. <u>Job Positions, Descriptions To Present</u>

The Hornets refuse to provide this information with respect to any position held by a

---

[13] While this may apply to public employers, the substitution is not allowed for private employers.

Plaintiff after Plaintiffs left. However, this is relevant to Plaintiffs' understanding that certain people in positions previously occupied by Plaintiffs, or similar thereto, have since begun to receive overtime, or else to have their hours limited. Accordingly, this issue would be relevant to determine how the position may or may not have changed. See also discussion above regarding the payment of overtime to non-Plaintiffs. If the duties/responsibilities/descriptions have not changed and there has been no change in the hours worked, the tracking thereof, the need for authorization to work overtime, or the nonpayment of overtime, Plaintiffs will be satisfied with a statement to that effect responsive to the discovery requests. Alternatively, this information is discoverable on the issues of length of operations, retail exemptions, establishments, recreational/amusement exemption, payment of overtime, payment of salaries, payment of commissions, willfulness, admission against interests.

The following should be ordered answered: Requests for Production Nos. 28, 36 as applicable (no personnel manual was produced), 50, Interrogatory No. 5.

3. Commissions Paid to Non-Plaintiffs

Also refused to Plaintiffs is information showing the commissions earned, the calculations base and the transactions justifying those commissions, by other employees in positions comparable to Plaintiffs. Part of Plaintiffs' claim is that the Hornets did not pay commissions fairly, that Plaintiffs are owed commissions on which overtime should have been paid, and that in many cases commissions which should have gone to Plaintiffs were redirected to other employees. Plaintiffs should be allowed to evaluate the payments received by their comparators to identify or be led to evidence of these transactions. In some cases commissions should have been paid to Plaintiffs possibly through the following regular season (*e.g.*, if a Plaintiff generated renewals).

Additionally, Plaintiffs seek information regarding communications by Hornets employee to the NBA regarding group seat sales, which Plaintiffs believe to exist and believe to relate to commissions Plaintiffs should have earned, and other issues such as credibility and good faith. The Hornets and/or certain of their employees were expected to produce so many group seat sales, and Plaintiffs believe that certain practices by the Hornets increased those sales without an adequate basis and/or without proper commission payments.

The following should be ordered answered: Requests for Production Nos. 17, 35, 42, 45, 48; Interrogatory Nos. 39, 46.

4. Game Face Communications

Game Face is a West Coast business that trains persons interested in working in sales in the sports industry. The Hornets hired some people from Game Face, including some of the Plaintiffs. Plaintiffs are requesting information reflecting who at the Hornets was in communication with Game Face or with the persons hired from Game Face. Plaintiffs seek this information for all employees hired since early 2002, not just Plaintiffs. The Hornets agree to provide this information regarding only Plaintiffs.

Plaintiffs want to know what was communicated about the jobs, working for the Hornets and about exempt status and/or payment of overtime. Also, the Game Face Plaintiffs allege that they were not paid the salaries they were promised by the Hornets. Plaintiffs seek this information to determine who said what about the salaries, and what may have been said to other persons involved with Game Face, not just Plaintiffs. It will also lead to information relating to the time period of operations, establishments and "retail in the industry", as well as damages.

The following should be ordered answered: Request for Production No. 37.

C. **Memo Withheld as Legally Privileged Should Be Produced**

The Hornets acknowledge that they do not have enough information to confirm that this memo, attached as Exhibit 10, should be withheld. It was drafted by Penny Middleton, the Human Resources manager, who was not an attorney. Ms. Middleton spoke out to management regarding the nonpayment of overtime, which she contended was legally required. In that connection she drafted a chart of employees to show which ones were entitled to overtime (non-exempt), which Plaintiffs have. The Hornets repeatedly have disavowed the chart as not being the product of any authorized conduct by the Hornets, and have contended that Ms. Middleton was not acting in her authorized capacity in generating the chart, and that her opinion was not binding on the Hornets.

Yet the Hornets have withheld a memo (and have not identified its date) written by Ms. Middleton on the same topic and directed to several managers. Apparently because one of the several recipients was an attorney as well as a corporate officer, the Hornets have withheld the memo as privileged. Counsel for the Hornets stated that it may have asked for a legal opinion but she contends cannot tell from reviewing the memo.

The Hornets cannot simultaneously take the position that Penny Middleton acted independently and did not speak for the company while withholding the memo. Moreover, the Hornets have alleged their good faith as a defense; this opens the door to the specific information that would have been contained in such a memo. Plaintiffs ask the Court to order the memo produced, after an *in camera* review if deemed necessary, in response to Request for Production No. 18.

**D.   Information Regarding Toys For Tots Campaign**

Plaintiffs contend that the Hornets may have solicited ticket sales to benefit Toys for Tots, then used the resulting sales to increase their ticket sales data without giving the tickets to

Toys for Tots. Plaintiffs have made discovery requests in connection therewith. Hornets have refused to produce responsive information, although they have now agreed to produce any information regarding whether commissions were payable or not for these sales. These matters relate to good faith, credibility, hours worked, period of operations, decision-maker, and responses should be compelled to Request for Production No. 43.

### E. NBA Communications Regarding Overtime and Commissions

Clearly if any such communications occurred regarding overtime, they are discoverable on all issues. Responses should be compelled to Request for Production No. 46.

Regarding the same question as to commissions, counsel for the Hornets stated, apparently subject to objections of irrelevance, that she has "not seen any." If there are communications regarding how an NBA team is expected to handle commissions, that is discoverable. Responses should be compelled to Request for Production No. 47.

### G. Hornets Ownership Structure

This Interrogatory, No. 10, should be answered at it relates to decision makers and liable parties or entities, willfulness, good faith and related issues.

### H. Hornets Schedule of Non-Regular Game Events

This Interrogatory, No. 27-29, should be answered as its relevance includes to length of operation and damages calculations.

### CONCLUSION

For the reasons stated, Plaintiffs respectfully request the Court to compel the productions as described above.

Respectfully submitted,

BY: _____
HOWARD DAIGLE, JR. (#4454)
DANIEL E. BURAS, JR. (#26226) (T.A.)
ELVIGE CASSARD RICHARDS (#19386)
227 Highway 21
Madisonville, LA 70447
Telephone: 985.871.0800
Facsimile: 985.871.0899
**ATTORNEYS FOR EUGENE LIGER, IVAN HINSON, ANTHONY MARTIN, ADAM NASH, CHRIS CARTER, MARCY PLANER-MURRAY, LYNN HOLMES, DAN KARLSBERG, CHRISTOPHER STANT, SAM STEINMETZ, AMY NICOLE SMITH, LESLIE SUMLER, LATOUSHA BROWN, KEVIN BUCKEL AND KEN KLIEBERT**

STEWART E. NILES, JR. (#10004)
BRIAN J. KNIGHT (#28640)
NILES, SALAS, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
**ATTORNEYS FOR JESSICA BERRY AND KEVIN BUCKEL**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above <u>Memorandum in Support of Plaintiffs' Motion to Compel</u> as been sent to opposing counsel by placing a copy of same in the U.S. mail, properly addressed, postage prepaid, or by any other means authorized by law, this 19th day of July 2007.

_____
ELVIGE CASSARD

**APPENDIX A**

I. <u>THE SEASONAL AMUSEMENT OR RECREATIONAL EXEMPTION</u>

The FLSA provides a specific exemption for amusement or recreational establishments, as follows:

> § 213. Exemptions
> (a) Minimum wage and maximum hour requirements.
> The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and 207 of this title shall not apply with respect to—
> ...
> (3) any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if
> (A) it does not operate for more than seven months in any calendar year, or
> (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year, except that the exemption from sections 206 and 207 of this title provided by this paragraph does not apply with respect to any employee of a private entity engaged in providing services or facilities (other than, in the case of the exemption from section 206 of this title, a private entity engaged in providing services and facilities directly related to skiing) in a national park or a national forest, or on land in the National Wildlife Refuge System, under a contract with the Secretary of the Interior or the Secretary of Agriculture....

29 U.S.C 213.

**DOL Regulation**

The DOL has promulgated the following regulation addressing the amusement or recreational establishment exemption:

> An amusement or recreational establishment operating on a seasonal basis may qualify as an exempt establishment under section 13(a)(3) of the Act, added by the 1966 amendments, even if it does not meet all the

> requirements of the 13(a)(2) exemption [repealed[9]]. Section 13(a)(3) exempts from the minimum wage and overtime pay requirements of the Act "any employee employed by an establishment which is an amusement or recreational establishment, if (a) it does not operate for more than seven months in any calendar year or (b) during the preceding calendar year, its average receipts for any 6 months of the year were not more than 33 1/3 percentum of its average receipts for the other 6 months of such year". "Amusement or recreational establishments" as used in section 13(a)(3) are establishments frequented by the public for its amusement or recreation and which are open for 7 months or less a year or which meet the seasonal receipts test provided in clause (B) of the exemption. Typical examples of such are the concessionaires at amusement parks and beaches. (S. Rept. 145, 87th Cong., first session, p. 28; H. Rept. 75, 87th Cong., 1st Sess., p. 10.)

29 C.F.R. 779.385.

**Legislative History**

Although legislative history is sparse,

> the House Committee Report stated that the amusement and recreational establishment exemption would cover "such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events, parimutel racing, sport boating or fishing, or other similar or related activities...." H.R.Rep. No. 871, 89th Cong., 1st Sess. 35 (1965). ... The Tenth Circuit found that the purpose of the exemption was "to allow recreational facilities to employ young people on a seasonal basis and not have to pay the relatively high minimum wages required by the Fair Labor Standards Act." *Brennan v. Yellowstone Park* Lines, 478 F.2d 285, 288 (10th Cir.), *cert. denied*, 414 U.S. 909, 94 S.Ct. 228, 38 L.Ed.2d 147 (1973). The logical purpose of the provision is to exempt the type of amusement and recreational enterprises listed above, which by their nature, have very sharp peak and slack seasons. These businesses argue that they should not be held to the same wage and hour requirements as permanent, year-round operations. Their particular character may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards. Congress responded to these concerns by enacting the amusement and recreational exemption.

*Brock v. Louvers and Dampers, Inc.*, 817 F.2d 1255, 1258-59 (6th Cir.1987).

---

[9] In 1989 section a(2) was repealed. It had exempted employees of retail and service establishments. The associated regulations have continued in effect for the interpretive value they hold regarding the terms "retail" or "service" in other exemptions, *e.g.*, commissioned retail salespersons.

**APPENDIX B**

      I.      <u>THE RETAIL COMMISSION SALES EXEMPTION</u>

The FLSA exempts certain retail sales employees at 29 U.S.C. § 207(i), which provides, in relevant part:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.