UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


EUGENE LIGER, ET AL.                    CIVIL ACTION NO.  05-1969

VERSUS                                  SECTION "C"

NEW ORLEANS HORNETS NBA LIMITED         MAGISTRATE 05
PARTNERSHIP

---

DEFENDANT'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL

---

**MAY IT PLEASE THE COURT:**

Defendant, the New Orleans Hornets NBA Limited Partnership ("Hornets"), submit this Memorandum in Opposition to the Motion to Compel filed by Plaintiffs.  For the reasons set forth below, Plaintiffs' Motion to Compel should be denied.

**I.      INTRODUCTION**

Plaintiffs' Motion to Compel is fundamentally flawed in that it completely ignores the specific objections that the Hornets made in response to Plaintiffs' specific discovery requests. Plaintiffs discuss broad, general categories of information they allege are discoverable, but do not recite the specific discovery requests at issue and do not discuss or even mention the

Hornets' specific responses or objections to the discovery requests (much less indicate whether or how they are inadequate).

Even if some of the broad, general categories of information identified in the Plaintiffs' Motion to Compel bear in some way on the issues in this case, that fact still would not cure the deficiencies of their specific discovery requests to which the Hornets have objected. Most of the Hornets' objections were necessitated by specific discovery requests drafted in such a way that renders them over broad, unduly burdensome, and objectionable on other grounds specific to (and asserted in response to) each request. In fact, most of the Hornets' specific objections could have been resolved simply by rewording the defective requests to tailor them to the issues in this lawsuit, which would have avoided a Motion to Compel. Plaintiffs chose to involve this Court, however, rather than cure their defective requests. For this reason alone, and for the further reasons explained herein, Plaintiffs' Motion to Compel should be denied.

## II.    HISTORY OF DISCOVERY

This case is still in the discovery phase. Plaintiffs have propounded more than 400 individual discovery requests and discrete subparts to the Hornets (and Plaintiffs recently propounded supplemental discovery requests, revising or limiting prior requests and adding new ones).  The Hornets have responded to each and every request in the time required or agreed with information and documents, and, where discovery requests were defective, with the required objections. Plaintiffs' allegation that discovery is "outstanding" is inaccurate—the Hornets have responded to each and every request that has been propounded (with the exception of yet another set of discovery request recently propounded and for which no response is yet due). The Hornets have produced nearly 2,000 pages of documents in this lawsuit, and have offered to make available to Plaintiffs voluminous information regarding ticket sales and revenues. The Hornets

have provided this discovery regardless of the fact that only two months after this lawsuit was filed and while the notice and opt-in process was underway, Hurricane Katrina resulted in an unprecedented evacuation of the City of New Orleans, the closure of this Court, and the Hornets' relocation to Oklahoma. The Hornets are now in the process of relocating their business back to New Orleans.

In spite of these unique circumstances, the Hornets have managed to respond to undeniably voluminous discovery requests, to locate and produce documents, to make additional documents available for inspection and copying in Oklahoma (which offer Plaintiffs did not act upon), and to now offer to make the documents available for inspection and copying upon completion of their relocation to New Orleans. Although the Hornets have advised Plaintiffs that the process of relocating a business and its attendant personnel, records, equipment, and other assets does not occur overnight (which should be obvious), and that the Hornets are currently working to complete the relocation process whereupon documents will be made available to them locally, Plaintiffs have insisted on pursuing this Motion to Compel rather than waiting to review in New Orleans the information they elected not to review in Oklahoma.

Many of Plaintiffs' discovery requests are facially over broad due to their substantive scope and/or terminology and, thus, the Hornets were required to assert objections. During the Rule 37.1 Conference regarding the issues addressed in Plaintiffs' Motion to Compel, the Hornets pointed out the defective language in a detailed review of each specific discovery request at issue. Although the parties spent approximately one full day (in separate conferences) reviewing each of the Plaintiffs' discovery requests at issue and the Hornets' objections thereto, the Plaintiffs failed to reproduce or describe any specific request in their Motion to Compel, much less mention any of the Hornets' specific objections to same. Plaintiffs' Motion to Compel,

as a result, is premature to the extent they have not allowed, under the circumstances, a reasonable opportunity to review documents the Hornets have agreed to make available in New Orleans (and that Plaintiffs could have reviewed in Oklahoma), and is improper to the extent it seeks to compel the discovery of broad categories of information, without regard to the language of any specific discovery requests or the Hornets' legitimate objections in response to same.

## III. DISCOVERY IS NOT A "BLANK CHECK" AND PLAINTIFFS' BEAR THE BURDEN OF PROOF IN THEIR MOTION TO COMPEL

The legal standard applicable to motions to compel, as a threshold matter, is the familiar dichotomy of Fed. R. Civ. P. 26(b)(1) and (2). *BG Real Estate Services, Inc. v. American Equity Ins. Co.,* 2005 U.S. Dist. LEXIS 10330 at \*4 (E.D. La. May 18, 2005). After the substantial amendment to the discovery rules that became effective December 1, 2000, Fed. R. Civ. P. 26(b)(1) provides that parties may obtain discovery regarding any matter, **not privileged**, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). *Id.* In addition, the Court **may order** discovery of any matter **relevant** to the subject matter involved in the action **only** if the party seeking such discovery makes a **showing of good cause**. *Id.* This standard concerning the scope of discovery is **narrower** than the old, pre-2000, broader standard. *Id.* citing *Seaga Mfg., Inc. v. Fortune Resources Enters., Inc.,* 2002 U.S. Dist. LEXIS 20390, No. 99C50332, 2002 WL 31399408, at \*3 (N.D. Ill. Oct. 24, 2002); *Thompson v. Department of Housing & Urban Dev.,* 199 F.R.D. 168, 171 (D. Md. 2001).

Under Rule 26, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. *BG Real Estate Service,* at \*5. When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. *Id.* citing Advisory Committee Notes to the 2000 Amendments

to the Federal Rules of Civil Procedure, reported in *Federal Civil Judicial Procedure and Rules* at 166 (Thomson West Pamph. 2005 ed.).

In addition to the narrower scope of discovery applicable to this case through amended Rule 26(b)(1), the Court must also consider and apply the limitations imposed on discovery by Rule 26(b)(2). *Id.* at *6. The precursor to current Rule 26(b)(2) was adopted in 1983:

> to deal with *the problem of over-discovery.* The objective is to guard against *redundant or disproportionate discovery* by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The new sentence is intended to encourage judges to be more aggressive in identifying and discouraging *discovery overuse.* . . . The court must apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent. . . . But the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case.
>
> In 1993, the rule was amended further to enable the court to keep tighter rein on the extent of discovery. The information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as *an instrument for delay or      oppression.* . . . The revisions in *Rule 26(b)(2)* are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery . . . .

*Id.* at *7-*8 quoting *Id.* at *7 quoting Advisory Committee Notes, *in Federal Civil Judicial Procedure and Rules* at 157, 162 (emphasis original).

Thus, **"Rule 26(b) is not a discovery blank check."** *Id.* at *8. "It requires balancing and imposes on the Court the obligation to rein in overly broad, potentially abusive discovery like some of plaintiffs' requests in this case." *Id.*

A motion to compel discovery should "both identify **specifically** the portions of the responses that are inadequate, and explain, at least briefly, what is missing or what kind of information would be necessary to make the responses adequate." James WM. Moore, *Moore's Federal Practice* § 37.05[5] (3rd ed. 2007). Furthermore, when a party seeks to compel

discovery, it first has the burden of demonstrating the relevance of the information to the lawsuit. *Alexander v. FBI*, 194 F.R.D. 305, 311 (D.D.C. 2000). Plaintiffs failed to meet this burden in their Motion to Compel. They have not referred to any specific discovery responses of the Hornets that are inadequate, much less explained their alleged inadequacies. Instead, Plaintiffs have argued broad categorical discoverability without discussing either their specific requests or the Hornets' specific responses. Plaintiffs also have not made a showing as to how the information sought by their requests is relevant, and have instead presented only sweeping unsupported statements that it is relevant. Because Plaintiffs have failed to meet their burden, their Motion to Compel should be denied.

## IV. PLAINTIFFS' GENERALIZATIONS ABOUT ALLEGED "PERTINENT DISCOVERY" ARE SO OVER BROAD AND VAGUE THAT THEY CANNOT SUPPORT AN ORDER COMPELLING A RESPONSE TO ANY PARTICULAR DISCOVERY REQUEST

A review of the claims, defenses, and applicable law is generally helpful in identifying discoverable information in any case. However, Plaintiffs' discussion in Section IV of their Memorandum in Support contains inaccuracies that bear correction because they are misleading. Plaintiffs note that the Hornets have asserted two specific exemptions in this case—the amusement or recreational exemption and the retail sales commission exemption—and "appear to have dropped" the argument that other exemptions might apply. This is inaccurate. The Hornets have not abandoned any defense asserted in this case based on any exemption that might apply, and reserves their right to specify any exemption that may become known through the course of discovery in this case.

### A. THE AMUSEMENT OR RECREATIONAL EXEMPTION AND THE RETAIL SALES COMMISSION EXEMPTION

In discussing the amusement or recreational exemption, Plaintiffs contend that a "single employer often has multiple establishments." Such a generalization about all employers covered

by the FLSA is insupportable and, in fact, Plaintiffs offer no authority for this contention. Plaintiffs assert that the Hornets' business offices were "physically and functionally separate from the space where the public attended games" and make other assertions relating to the nature of the Hornets' business in a manner that suggests they are not in dispute. (See pp. 4-5 of Plaintiffs' Memorandum in Support). The Hornets point out that the asserted facts are in dispute, so that the Court is not led to error in deciding the Plaintiffs' Motion to Compel. In fact, Plaintiffs filed a Partial Motion for Summary Judgment on the issue of whether the Hornets can prove they are a single establishment for the purpose of the amusement or recreational exemption, and it was denied. (Rec. Docs. 74). The Hornets have maintained that the Plaintiffs were employed by a single establishment for the purpose of the exemptions at issue.

On page 5 of their Memorandum in Support, Plaintiffs assert, in conclusory fashion and without citing any authority, that vague and broad "issues" are "related to the establishment question" in what appears to be an attempt to broadly define the scope of discoverable information in this case. By way of example, Plaintiffs contend the list of "issues" includes "the functions." Plaintiffs also use "etc." at the end of the list. Even if the Plaintiffs had filed a proper motion to compel and could meet their burden of proof in connection with same, such vague, broad, and/or indefinite terms are so facially defective that they cannot be used to define the scope of discoverable information in any case, much less to compel a response to a specific discovery request.

Plaintiffs' contention on page 6 of their Memorandum in Support that the Hornets "have refused to produce materials and information" sought in connection with the establishment issue ignores the defects in Plaintiffs' discovery requests and the specific objections asserted by the Hornets in response to them. In reality, the Hornets have responded to more than 400 separate

written discovery requests and subparts thereto, and have produced almost 2,000 pages of documents in this lawsuit. The Hornets have not simply "refused" to produce materials and information. Rather, the Plaintiffs have propounded a burdensome number of facially over broad and otherwise improper requests, necessitating the specific objections asserted by the Hornets under the Federal Rules of Civil Procedure. Subject to those objections and where discovery requests were proper, the Hornets have provided a significant amount of information and documents.

Plaintiffs note on page 5 of their Memorandum in Support that their September 2006 dispositive motion involved only "the limited issue of whether the Hornets could show they are an establishment." Then, in footnote 10 of their Memorandum in Support, Plaintiffs contend that the Court's decision denying their motion contains certain "misstatements." Surprisingly, after acknowledging that the dispositive motion addressed only the establishment issue and contending that the Court made misstatements in its decision, the Plaintiffs then postulate whether a comment by the Court bearing on the seasonality issue (*i.e.,* the duration of the Hornets' operations)[1] might constitute "law of the case." Plaintiffs cannot have it both ways and, in any event, dicta is not law of the case. *Herman Hospital v. MEBA Medical and Benefits Plan*, 959 F. 2d 569, 579 (5th Cir. 1992).

Further, while seasonality is an issue in this case, Plaintiffs propose an over broad definition of discoverable information, again relying on expansive, often vague, and indefinite terms such as "financial activity" and "any conduct directed at generating profits or running the team or business functions of the organization." In effect, Plaintiffs assert that all evidence of all business activity of the Hornets is discoverable based on their impermissibly expansive

---

[1] The seasonality prong of the amusement or recreational exemption was not briefed or before the Court in Plaintiffs' earlier dispositive motion.

interpretation of what is pertinent to the seasonality issue. Again, this type of over breadth is precisely the problem with many of the Plaintiffs' discovery requests and the reason that they could not be answered. Further, rather than pursue depositions of Hornets' representatives to discover the extent of their activities during certain periods of time, the Plaintiffs have taken a shotgun approach to the issue through written discovery, contending that all records reflecting business activity by the Hornets is discoverable. There can be no greater discovery burden on any corporate party than to produce every business record in its possession, which is the practical effect of the Plaintiffs' interpretation of discoverable information in this lawsuit.

On page 7 of their Memorandum in Support, Plaintiffs contend that the Hornets have "refused to provide any financial information other than receipts." This is false. The Hornets already have produced monthly financial statements, consisting of their Monthly Consolidated Summary Income Statements and Monthly Operating Accounts. The Hornets also have offered to make available, in their prior Oklahoma location and now in New Orleans when their business relocation is complete, ticket sales and receipts records, including bank statements. With regard to the "receipts" issue, Plaintiffs erroneously assert that the "weight of legal authority" construes the term receipts (presumably Plaintiffs mean the term as used in the context of the specific FLSA exemption at issue here) as revenue at the time it is received. However, Plaintiffs do not cite any legal authority in support of their conclusion and, in fact, there is legal authority supporting the use of the accrual method to determine "receipts" for the purpose of this exemption. *Adams v. Detroit Tigers, Inc.,* 961 F.Supp. 176 (E.D. Mi. 1997). In any event, the Hornets already have produced or agreed to make available to Plaintiffs information bearing on this issue.

B.    **PRINCIPAL LIABILITY**

On page 8, Plaintiffs discuss the law regarding principal liability under the FLSA, but do identify any specific discovery request that purportedly seeks information relevant to that issue. Moreover, Plaintiffs have failed to address how the issue of principal liability could possibly be relevant in a case in which no principals have been named as individual defendants, none of the Plaintiffs have made any factual allegations in their Complaint referencing or discussing any such principals, and the deadline for adding parties has long since expired. (See Rec. Doc. 90). This issue is irrelevant in this case and, thus, discovery regarding "principals" or that would bear upon "principal liability" is not proper.

C.    **ALLEGED OVERTIME PAY CALCULATIONS**

Plaintiffs discuss on page 9 of their Memorandum in Support the general need for information regarding the calculation of damages, including records of wages and hours. As the Hornets have already informed Plaintiffs on several occasions, they already have produced all of Plaintiffs' personnel and payroll records, and have offered to make available their ticket sales records (to the extent that Plaintiffs contend those records are needed to determine commissions).

D.    **LIQUIDATED DAMAGES**

Although Plaintiffs generally discuss the law regarding the good faith defense to liquidated damages under the FLSA, they have not articulated with any specificity or in any intelligible way what information they claim they are entitled to and how it is relevant to this case. Plaintiffs assert that they are entitled to "what information the Hornets had or should have had, given their circumstances, concerning the applicability of the FLSA and/or the exemptions it now relies on, the reaction of the Hornets to that information, and the reasonableness of its position under the circumstances." The "information" referenced is vague and unclear, and the Plaintiffs have failed to identify any specific discovery request that seeks relevant information

relating to the good faith defense. Thus, the Hornets are unable to respond in any meaningful way to their assertions and such assertions are inadequate to support a Motion to Compel.

## V.    PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN IN THEIR MOTION TO COMPEL

The Hornets' objections to Plaintiffs' improper requests must stand as a result of Plaintiffs' failure to raise or specifically discuss any specific request at issue, much less the specific objections raised in response thereto. Further, because the primary defect with many of Plaintiffs' discovery requests is that they are over broad and unduly burdensome, Plaintiffs bear the burden of showing that their discovery requests are proper. *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 671-72 (D. Kan. 2003); *Alexander v. FBI,* 186 F.R.D. 21, 40 (D.D.C. 1998) (where court stated that "This request is facially over broad . . . Begala is not required to provide plaintiffs with additional responses to this request for this reason"). Plaintiffs have not done so and, in fact, do not recite and discuss how any particular request is proper.

In Section V of their Memorandum in Support, Plaintiffs again discuss in a general and categorical way what they contend is discoverable information in this lawsuit. However, aside from a numerical reference to some discovery requests, Plaintiffs fail to recite any specific discovery request, fail to demonstrate that any request seeks "relevant" information, and completely ignore the specific objections asserted by the Hornets in response thereto. Thus, Plaintiffs have not placed any specific request or the Hornets' specific objections at issue.[2] This

---

[2] Although the Hornets are not obligated to identify or reference their specific objections when the Plaintiffs' specific discovery requests have not been reproduced or recited in the Motion to Compel, the Hornets nonetheless incorporate by reference and urge as if restated herein each of their objections to Plaintiffs' discovery requests. More particularly, to the extent Plaintiffs reference the number of any particular discovery request, the Hornets refer the Court to their specific objections in response to same, including but not limited the objections asserted in

fact alone makes Plaintiffs' Motion to Compel insufficient. In the absence of a proper Motion to Compel, the Hornets cannot be called upon to meaningfully respond to to any specific request and are precluded from being able to meaningfully respond to same. It is the Plaintiffs' burden to identify specific requests, to show that they are proper, and, to the extent an objection has been asserted, to identify any objection that they challenge. The Plaintiffs have failed to meet that burden and, thus, their Motion to Compel should be denied.

Although the Plaintiffs have not properly placed any specific requests or any of the Hornets' specific objections at issue, the Hornets will address the generalized assertions made by the Plaintiffs with regard to certain types of information.

A.    **ALL FINANCIAL DATA**

As noted above, Plaintiffs wrongly assert that the only "financial data" the Hornets have agreed to produce is "receipts." The Hornets have produced and/or agreed to produce income statements, ticket sales data, payroll and wage information for Plaintiffs, and other data of a "financial" nature. The Plaintiffs' use of such an over broad term, and their failure to appropriately tailor their discovery requests to the issues in this case, makes their Motion to Compel and any similar underlying request defective. Further, as noted above, Plaintiffs' contention that every piece of "financial data" is relevant in this case is simply absurd. At best, certain information regarding the Hornets' revenues (funds flowing into the organization) during the relevant time period may be discoverable, but Plaintiffs have failed to support their contention that every piece of "financial data" is relevant. Finally, Plaintiffs Motion to Compel is improper to the extent it attempts to shift the burden to the Court and/or the Hornets to sift through the voluminous discovery requests Plaintiffs propounded in order to identify "all those

---

response to: Plaintiffs' Requests for Production 5-13, 17-18, 21, 28, 35-37, 40, 42-43, 45-48, 50, 51, 55, and Interrogatories 5, 27-29, 39, 41-42, 44, 46, and 48.

[requests] seeking the basis for the Hornets claimed exemptions." Again, it is the Plaintiffs' burden (not the Courts' or the Hornets' burden) to identify and demonstrate the propriety of specific discovery requests.

B.     **INFORMATION ABOUT NON-PLAINTIFFS CURRENT OR FORMER EMPLOYEES**

Plaintiffs have not offered any legitimate reason for discovery into the classification of and wages paid to Hornets' employees who chose not to join this lawsuit or are outside the collective action group defined by the Court.. This lawsuit was tentatively certified as a collective action, such that current and former employees claimed to be similarly situated to the Plaintiffs were given notice and an opportunity to join. The opt-in period is now closed. Yet, Plaintiffs now seek discovery regarding the classification of and wages paid to individuals who chose not to opt-in, or to who are outside the collective action group approved by the Court. The only explanation for requesting this information is that Plaintiffs are attempting to circumvent the collective action procedure and to stir litigation. The non-parties whose payroll information is sought have a privacy interest in that information, and should not have their private classification and wage information made part of a public proceeding in which they have no interest and/or in which they declined to participate.

1.     **RECENT/SUBSEQUENT PAY PRACTICES**

Plaintiffs also seek to compel information about the Hornets' recent pay practices (*i.e.,* subsequent to the plaintiffs' employment with the Hornets and the inception of this lawsuit). Plaintiffs have failed, however, to identify any issue to which such information would be relevant or explain how it would be admissible, or likely to lead to the discovery of admissible evidence. Plaintiffs contend that the information "relates to matters other than proof of negligence," acknowledging the inadmissibility of any information that would be used in

violation of Federal Rule of Evidence 407. So, in light of Plaintiffs' acknowledgment that the information would be inadmissible as to the issue of negligence (or liability), it is their burden to identify what other issue as to which the information could be admitted. They have not carried that burden.

Plaintiffs make the conclusory assertion that this information would relate to "the applicability of the exemptions in question, the good faith of the Hornets, the decision-making process arriving as those payments, knowledge of and calculation of damages to the Plaintiffs." (See Plaintiffs' Memorandum in Support, p. 11). In their discussion of the applicable law, Plaintiffs did not identify subsequent remedial measures or subsequent pay practices as an element of any exemption at issue (the amusement or recreational exemption or the retail sales commission exemption). None of the legal authorities presented in this case thus far indicate that an employer's pay practices subsequent to the period in question is relevant to the issue of whether an exemption applied prior to those pay practices. Indeed, Plaintiffs present no legal support in their Memorandum in Support on this point.

Likewise, the Hornets *recent* pay practices could not possibly relate to the issue of whether the Hornets, *prior to* this lawsuit, had "an honest intention to ascertain what the FLSA requires and to act in accordance with it." *In other words, what the Hornets are doing now could not have been a part of their decision-making process about what they did years ago.* The Plaintiffs' argument that this *current* information relates to the issue of *historical* good faith or lack thereof is simply an attempt to characterize evidence of potential subsequent remedial measures another way in order to avoid the effects of Rule 407. Finally, the Hornets' recent pay practices have nothing to do with either the alleged knowledge of or calculation of damages to the Plaintiffs, each of whom ceased employment with the Hornets a long time ago. The Plaintiffs

have not articulated that this information, even if inadmissible, is likely to lead to the discovery of other admissible information. In fact, it is the subsequent pay practices information itself that they seek and wish to attempt to use in this case (not some other information it might lead to), and it clearly is irrelevant, inadmissible, and beyond the scope of Rule 26 discovery.

## 2.     WAIVER

On page 12 of their Memorandum in Support, Plaintiffs contend that the Hornets have "waived that argument to the extent they have agreed to provide certain information in response to Request for Production No. 40." Plaintiffs fail to identify the "argument" they claim was waived, and their entire discussion in that paragraph of their Memorandum in Support is unclear. The Hornets cannot respond to such a vague assertion. It appears that Plaintiffs are attempting to suggest that the Hornets production of information in response to one request has waived an objection to producing similar information in response to another. If this is Plaintiffs' suggestion (again, it is difficult to discern their position because it is not clearly articulated), it is absurd. A party is free to assert an objection to one discovery request, and withhold the same objection to a different request. A discovery objection would be waived only if it is not timely or properly asserted with in response to a specific request. Plaintiffs make no such allegation in their Motion to Compel and, thus, any suggestion of "waiver" should be rejected.

## 3.     COMP TIME

Plaintiffs fail to identify any specific request they contend should be answered regarding "comp time." Further, Plaintiffs cannot demonstrate that discovery about alleged "comp time" is relevant because the Plaintiffs have not asserted any specific claim regarding comp time or made any specific allegation that comp time was used in lieu of overtime payment. Thus, such discovery would be irrelevant and nothing more than a fishing expedition.

4.    **MISCELLANEOUS**

Plaintiffs attempt to discuss a few specific requests, but still fail to show that the requests are proper or how the Hornets' responses are in any way in adequate. With respect to Plaintiffs' Request for Production 55, the Hornets pointed out to Plaintiffs that as drafted the request is so over broad that it seeks the production of virtually every document in the Hornets' counsel's litigation files. Plaintiffs' counsel acknowledged that they are not seeking counsel's litigation files, but have not revised their request. Thus, as drafted, the request is over broad and Plaintiffs' Motion to Compel must be denied. Plaintiffs also contend that Requests 40, 51 and 55 and Interrogatories 41-42, 44 and 48 should be answered in full.  Plaintiffs give no reason or explanation as to how these requests (again which are not recited in the Memorandum in Support) are proper or why the Hornets' responses are inadequate.

C.    **JOB POSITIONS AND DESCRIPTIONS**

The Plaintiffs assert that the Hornets have failed to provide "this information" with respect to positions held by the Plaintiffs.  The Plaintiffs do not explain what they mean by "this information."   The Plaintiffs then state that "this information" is relevant to Plaintiffs' understanding that individuals who (allegedly) now hold their positions are receiving overtime or are having their hours reduced.  They further state that "this information" would be relevant to show how the job position has changed. Yet Plaintiffs fail to explain or show how a change in a job position or description is relevant to the issue whether Plaintiffs, in their jobs during the relevant time, were exempt.  Plaintiffs offer only their conclusory assertion that the unspecified information would be relevant to the length of operations, retail exemptions establishment, recreational/amusement exemption, payment of overtime, payment of salaries, payment of commissions, willfulness, and admission against interests.  Clearly, the Court cannot grant a

Motion to Compel unspecified "information" based on nothing more than a party's conclusory assertion that it is relevant to certain topics.

### D.     <u>COMMISSIONS EARNED BY NON-PARTIES</u>

Plaintiffs assert that they are entitled to discover information relating to the commissions paid to individuals who are not parties to this lawsuit. Plaintiffs allege that they are entitled to such information because they speculate that commissions earned by them were redirected to other employees. Aside from the speculative nature of the Plaintiffs' allegations, the Plaintiffs fail to demonstrate that the records they seek will aid in their search. The Plaintiffs already are in possession of records that relate to the commissions they were paid, yet they fail to describe how that same information for other individuals who are not parties to this lawsuit will reflect any specific sale or commission that is allegedly due to them. Indeed, producing that information risks invading the privacy of other individuals who have no interest in this lawsuit. The Hornets already have provided Plaintiffs with documents reflecting the sales for accounts as to which they made sales, and now Plaintiffs (without any allegation that a specific account or sale was given to another individual) seek all other individuals' accounts and sales information. This puts the cart before the horse and gives the Plaintiffs the right to fish through non-parties' private information without any showing that the information is relevant. Without any specific allegations that a particular account or sale was given to another employee, the Hornets can not be expected to produce information about commissions paid to all of its other employees.

Plaintiffs also seek information relating to communications by an unspecified "Hornets employee" to the NBA regarding group seat sales. However, Plaintiffs have failed to demonstrate how communications by an unspecified Hornets employee on this topic relates to their allegations regarding commissions or how it otherwise is relevant to this case.

### E.    GAME FACE COMMUNICATIONS

Plaintiffs persist in request information relating to the identity of the Hornets' employee who communicated with Game Face about recruits. However, the Hornets have already informed Plaintiffs that Brendan Donohue was the individual who worked with Game Face to interview and hire the Plaintiffs. Plaintiffs also seek the substance of communications about jobs and salaries offered to the Plaintiffs, even though the Hornets have already produced all of the personnel and payroll information that relates to their salaries and compensation. The type of information Plaintiffs are seeking is more appropriately sought through a deposition. The discovery rules do not require a party to detail ongoing, day-to-day verbal communications between individuals in a narrative interrogatory response. The Hornets have identified witnesses and produced documents relating to the subject matter at issue.

### F.    DEFENDANTS HAVE PROPERLY ASSERTED THE PRIVILEGE BASED ON AN INTERNAL MEMO FROM A MANAGER TO GENERAL COUNSEL AND PLAINTIFFS' MOTION TO COMPEL ITS PRODUCTION IS PREMATURE

In response to Plaintiffs' discovery requests, the Hornets identified a single document in a privilege log, indicating that the document is a memorandum prepared by the Hornets' former human resources representative to its former general counsel. The Hornets have informed Plaintiffs that they do not have sufficient information in their possession to indicate that this document is not privileged, and thus have asserted the privilege until such time as the individuals who are parties to the communication provide the information needed to make that determination. The parties to the communication are no longer employed by the Hornets, although Plaintiffs are clearly able to communicate with the former human resources representative because they obtained an affidavit from her in connection with their pleadings in this case. Additionally, Plaintiffs noticed the deposition of the former general counsel to occur

today, Friday, July 27, but just yesterday provided notice that the deposition would need to be rescheduled. Thus, Plaintiffs' Motion to Compel the production of this document is premature in the absence of information from the parties to the communication as to the circumstances surrounding it. Only at that time can a determination as to whether it is privileged be made. If the facts conclusively show that the document is not privileged, the Hornets will produce it, but the issue is premature at this time.

### G.    TOYS FOR TOTS

Plaintiffs assert that they are entitled to information regarding a Toys for Tots campaign because it purportedly is relevant to the issue of good faith. Plaintiffs' assertion is illogical. Good faith is a defense asserted by an employer regarding its "intention" or belief in deciding whether an employee is exempt. The Plaintiffs have failed to demonstrate how the Toys for Tots campaign has anything to do with the decision by the Hornets regarding Plaintiffs' status as exempt or non-exempt. Plaintiffs also assert, again generally and categorically, that the information sought would relate to hours worked, credibility, decision-makers, and period of operation. Plaintiffs fail to explain how the information sought is relevant to these issues, however, which is a burden they bear as the movants.

### H.    NBA COMMUNICATIONS

Plaintiffs seek to compel the production of documents relating to communications between the Hornets and the NBA with respect to overtime or commissions. Plaintiffs fail to discuss their specific requests or the specific objections asserted by the Hornets in response to those requests which, as drafted, are improper. For instance, the Plaintiffs have failed to show that every possible communication regarding overtime or commissions is relevant. In particular, any document that might contain an NBA reference overtime or commissions relating to any

organization other than the Hornets, or relating to jobs not at issue in this lawsuit, is not relevant in this case. Plaintiffs' requests as drafted are so over broad that they are objectionable.

### I.    HORNETS OWNERSHIP STRUCTURE

With respect to Plaintiffs' Interrogatory 10, they have failed to demonstrate how the information requested relates to "decision makers and liable parties or entitles, willfulness, good faith and related issues." Indeed, "related issues" is so open-ended that it cannot serve as the basis for any discovery request, much less a motion to compel. As noted above, the deadline for adding parties has expired, and Plaintiffs have not asserted a claim against any individual or entity other than the Hornets. Thus, to the extent they seek a response to Interrogatory 10 for this issue, it is nothing more than a fishing expedition. If Plaintiffs really seek information regarding decision makers, then the interrogatory should ask for information about decision makers (not the "ownership" of the Hornets). They also fail to explain how the "ownership" of the Hornets has anything to do with the issues of willfulness or good faith. Plaintiffs simply have failed to demonstrate that their request seeks relevant information.

### J.    HORNETS SCHEDULE OF NON-REGULAR GAME EVENTS

This topic and the numbered interrogatories were not discussed at the discovery conferences between counsel for the parties. However, the Hornets have provided all of the relevant information in their possession or control in response to Interrogatories 27-29, so Plaintiffs' Motion to Compel should be denied in this respect also.

### V.    CONCLUSION

The Plaintiffs have brought a Motion to Compel that is non-specific, premature, and/or fails to satisfy their burden of proof. Neither the Court nor the Hornets should be burdened with attempting to identify which discovery requests are at issue based on Plaintiffs generalized and broad categories of allegedly discoverable information, or what Plaintiffs mean by unspecified

"information" or such non-specific terms as "financial data" and "functions." The Plaintiffs have failed to address or identify any specific objection raised by the Hornets, much less explain in what way it is inadequate. And, with respect to their over broad and unduly burdensome requests to which the Hornets objected, Plaintiffs bear the burden of proving that they are proper and seek relevant information. They have not carried that burden. Thus, their Motion to Compel should be denied and the Hornets should be awarded all their reasonable fees and expenses incurred in having to respond to this Motion.

Respectfully submitted,

**JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE, L.L.P.**


/s/ Jennifer L. Anderson
JENNIFER L. ANDERSON, T.A. (Bar No. 23620)
Four United Plaza
8555 United Plaza Blvd.
Baton Rouge, LA 70809-7000
Telephone: (225) 248-2000
Facsimile: (225) 248-2010
E-mail: janderson@joneswalker.com

and

SIDNEY F. LEWIS, V (Bar No. 17026)
JANE H. HEIDINGSFELDER (Bar No. 28604)
201 St. Charles Avenue, 50th Floor
New Orleans, LA 70170-5100
Telephone: (504) 582-8000
Facsimile: (504) 582-8015
E-mail:  slewis@joneswalker.com
E-mail:  jheidingsfelder@joneswalker.com
***COUNSEL FOR DEFENDANT,***
    ***NEW ORLEANS HORNETS NBA L.P.***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL has been served on all counsel of record below by the Court's EF/CMF system as a result of their registration for e-noticing and service via same on this 27th day of July, 2007:

Elvige Cassard Richards
Daigle Fisse, PLC
227 Highway 21
Madisonville, LA 70447
Facsimile: (985) 871-0899

Stewart E. Niles, Jr., Esq.
Niles, Bourque & Fontana LLC
909 Poydras Street, Suite 3500
New Orleans, LA 70112
Facsimile: (504) 310-8590

/s/ Jennifer L. Anderson