UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EUGENE LIGER, ET AL,<br>    Plaintiffs in a Collective Action | * | CIVIL ACTION NO. 05-1969 |
| | * | |
| | * | SECTION C |
| | * | |
| versus | * | MAGISTRATE 05 |
| | * | |
| NEW ORLEANS HORNETS NBA LIMITED<br>PARTNERSHIP,<br>    Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### PLAINTIFFS' REPLY BRIEF TO
### DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

MAY IT PLEASE THE COURT:

For well over two years, the Hornets have stalled this litigation by refusing to provide documents and witnesses. Plaintiffs have again been forced to compel the Hornets. Plaintiffs require immediate relief because expert reports and other cutoffs are looming. However, Plaintiffs lack necessary documentation and deposition testimony to complete these reports because the Hornets have not provided the requested information or witnesses. Extensions are needed if the Hornets are permitted to maintain their exemption defenses.

I. **THE RECORD CLEARLY DEMONSTRATES THE HORNETS' PATTERN AND PRACTICE OF DISCOVERY AVOIDANCE.**

Plaintiffs filed this collective action claim against the New Orleans Hornets because the Hornets failed to compensate Plaintiffs for overtime hours worked. The Hornets, through

- 1 -

omission or admission, confirmed that Plaintiffs did not receive overtime wages. The Hornets also confirmed that they never tracked the hours worked by Plaintiffs. The former Director of Human Resources for the Hornets confirmed by affidavit that the Hornets knew that Plaintiffs were supposed to receive overtime compensation but that the Hornets' refused to authorize overtime payments. After the Hornets' alleged various exemption benefits to continue avoid paying Plaintiffs overtime, they systematically denied Plaintiffs access to all but the most tangential discovery.

The record confirms that the Hornets have not been diligent in their response to aggressive discovery propounded by Plaintiffs. The established norm in this litigation is that the Plaintiffs propound discovery, the Hornets raise meritless objections and produce nothing or a make a partial production, and then Plaintiffs are forced to compel the production of information.

Most of the documents that Plaintiffs now request are identical to the ones initially requested in Plaintiffs' discovery motions filed during the certification phase – documents the Court ordered the Hornets to produce. The Hornets would not produce the requested documents without a Protective Order. Soon after the matter was certified, but after Hurricane Katrina, Plaintiffs were again forced to compel the Hornets to produce the same documents that Magistrate Chasez ordered the Hornets to produce. Only after Judge Chasez confirmed the language of the Protective Order did the Hornets provide even superficial responses to discovery, and provided only incomplete and partial responses to Plaintiffs' requests.[1]

Plaintiffs issued multiple subpoenas. Not surprisingly, the Hornets moved to quash the subpoenas.

---

[1] The Hornets failed to provide documents as basic as the complete employee files of each Plaintiff. Items that have still not been produced by the Hornets include payroll amounts paid for all Plaintiffs during their tenure, all contracts signed by Plaintiffs, or documents requested by Plaintiffs regarding sales commissions that were paid or should have been paid by the Hornets to Plaintiffs.

The fallacy of the Hornets' attempt to portray themselves as diligent in their production is best demonstrated by summarizing the documents they have produced, including:

- Incomplete personnel, payroll, and commissions records of plaintiffs
- Certain limited documentation reflecting some work schedules
- An e-mail from Paul Mott to the organization regarding this litigation
- Incomplete limited information on Toys for Tots and Pepsi promotions
- A single communication addressing commissions generally
- Limited information from Archtics, which is the program used for ticket sales, regarding certain customer transactions, certain change transactions and "seats sold" information for only certain commissioned plaintiffs
- Limited, incomplete, and unsupported monthly consolidated summary income statements and monthly reports of operating accounts

The Hornets' contention that they offered to produce records in Oklahoma is a red herring. The only records so offered were Archtics records – records originally requested before the team moved. In any event, Plaintiffs were under no obligation to travel to Oklahoma to review data which should have been produced and reviewed in Louisiana.

## II.   THE HORNETS BREACHED AN AGREEMENT TO PRODUCE DOCUMENTS MADE DURING THE RULE 37.1 CONFERENCE.

On June 27 and 29, 2007, the Hornets agreed to produce many of the documents sought in this Motion to Compel. Exhibit 11 attached to the original Motion to Compel sets forth a full description of the discovery which the Hornets **agreed to produce** in the Rule 37.1 conference which occurred on June 27 and 29, 2007. The list of items set forth in Exhibit 11 represent a summary of the types of documents requested by Plaintiffs since the outset of this litigation.

Although, the document requests have been outstanding since 2005, the Hornets advised that some of the requested information would take more time. The Hornets specifically agreed to provide several categories of documents soon after the conference. However, **none** of the agreed upon discovery has been provided to date. *See* Exhibit 13 attached hereto (July 27, 2007 correspondence to Hornets. Plaintiffs counsel advised the Hornets that their failure to follow

through with this agreement prior to Plaintiffs Motion to Compel would be raised with the Court. See Exhibit 11, p.1. There has been no production by the Hornets.[2]

### III. PLAINTIFFS HAVE SPECIFIED REPEATEDLY SINCE 2005 WHICH DISCOVERY RESPONSES WERE INADEQUATE.

Plaintiffs were adequately specific and identified what they are seeking in the Motion to Compel, why they are seeking it, and in responding to the Hornets' objections. Since 2005, the Plaintiffs have consistently and repeatedly identified the inadequate responses. The record clearly shows that Plaintiffs attached to their Motion to Compel the Hornets' written responses to the outstanding discovery. On pages 10 and 12-16 of the Motion to Compel, Plaintiffs identified the specific discovery responses that they contend should be answered in full, with explanations of why the requested discovery is appropriate to the case. Ironically, after arguing that Plaintiffs' Motion was inadequate because it referred to the Hornets' responses, the Hornets refer the Court to their written responses in defense of this Motion. In any event, the Hornets' written discovery responses attached to the Motion to Compel directly reflect whether and to what degree responsive documents or information were provided.[3]

Many of the specific objections have already been overruled by the Court. Plaintiffs filed the Motion to Compel taking into consideration the objections maintained or dropped by the Hornets in the Rule 37.1 conference. Further, for example, Plaintiffs addressed complaints of overbreadth, privacy, relevance, time frames, and other objections.

---

[2] Plaintiffs note that Interrogatory No. 4 is a specific interrogatory that the Hornets must answer to comply with their agreement to supplement discovery to support defenses. See Exhibit 11, p.2, § II. Interrogatory No. 4 seeks detailed information regarding the jobs performed by each Plaintiff. This information directly relates to the Hornets' argument that all facilities where Plaintiffs worked were recreational or amusement establishments. *See, e.g.,* Judge Berrigan's reference to the degree to which Plaintiffs' work occurred at the games, Order and Reasons, Dkt. No. 82, p. 6 (if Plaintiffs worked in business operations independent of games they might not be exempt). Similarly, the Hornets' complete answer to Interrogatory No. 8, asking the Hornets to identify the number of overtime hours worked by employees, will show the Hornets' information regarding Plaintiffs' overtime hours, as well as falling into the category of V.B.1 of the Motion to Compel, p.11.

[3] Also, attached as Exh. 4 to the Motion to Compel, unnumbered p. 10, is the detailed letter of Plaintiffs' counsel to Hornets' counsel specifying certain discovery deficiencies and their basis.

### A.   **The Hornets Ignored Previous discovery Directives from The Court**

This is not the first time Plaintiffs have sought assistance from the court in obtaining discovery responses from the Hornets. In fact, many if not all, of the objections raised by the Hornets have been rejected by the Court. The Court has already ordered the Hornets to produce many of the same documents that Plaintiffs now seek. The Hornets have refused to comply.

For example, prior to the military leave of Plaintiffs' counsel, Dan Buras, and prior to the issuance of the protective order which now exists in this case, Plaintiffs advised Magistrate Judge Chasez that the veracity and completeness of the Hornets' financial documentation is at issue because of information and belief suggesting that there has been manipulation and alteration of financial data reported. In 2005, Magistrate Chasez agreed with Plaintiffs that the Hornets' disclosure of these materials to the identified third parties removed these materials from any Protective Order and must be produced. The Hornets have not produced these documents.

Various open-source news reports suggest that Plaintiffs suspicious were accurate. For example, the Hornets confidential financial documents (to be brought to the hearing) confirm that the Hornets have reported different revenue figures to Plaintiffs than those reported to Oklahoma City government officials. See Exhibit 16. Plaintiffs are entitled to investigate these inaccuracies.

Further discovery of this matter will likely reveal that the Hornets have made contradictory revenue assertions to Plaintiffs than was disclosed to local, state, and federal authorities as well as the NBA. The relevance of this information becomes painfully apparent – the Hornets have overstated their revenue to Plaintiffs in order to assert an exemption that does not apply. This evidence is clearly relevant to these proceedings and the defenses asserted by the Hornets, yet the Hornets refuse to comply with Magistrate Chasez's instructions.

Specifically, in Defendant's <u>Response to Request for Production Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 22, 46, 47, and 48</u>, the Hornets refused to produce documents, memoranda, e-mails, correspondence, financial, revenue, and ticket sales information exchanged between the Hornets and the National Basketball Association, the State of Louisiana, and the City of New Orleans since 2002.

The Hornets' continued reference to the incomplete and unsupported monthly consolidated summary income statements and monthly reports provided in this litigation is inadequate. The Hornets made contradictory revenue arguments in this matter than were made to public officials. Consequently, Plaintiffs are entitled to receive and review the financial information requested.

**B.**     **<u>The Hornets Failed to Produce All Employee Records.</u>**

This is an employment case. Plaintiffs requested these employment and payment records. The Hornets have provided piecemeal records for Plaintiffs that do not include all periods of employment. The Hornets contend that they have produced all records. Plaintiffs request that the Court enter a judgment prohibiting the Hornets from challenging any employment related income, wage, or commission information related to any Plaintiff for any time period during which they were employed, but for which records were not provided.

**C.**     **<u>The Hornets Failed To Produce The Documents Necessary To Prove Or Disprove Their Exemption Defenses.</u>**

The exemption claimed by the Hornets must be proved by the Hornets. They refuse to prove the information supporting their defense. The Hornets have not segregated any retail sales or revenue information as is required by the exemptions claimed. The Hornets have refused to respond to discovery related to the job functions of the Plaintiffs that would confirm that those particular jobs fell under either of these exemptions. The Hornets have failed to respond to

requests about public accessibility of their business operations. Complaints regarding establishment inquiries are equally unfounded. The Hornets exemption defenses require the team to prove that they are a qualified establishment but no evidence has been provided. The Hornets refused to provide this information in requests no. 5-13, 24-25, 27-36, and 54-56. The parties dispute the Hornets' claim that they are a single enterprise. Plaintiffs are entitled to discovery on this matter, and there is no legal basis to deny the requests associated with this topic. It is time for the Court to strike those defenses.

### D.   The Hornets Have Prevented Plaintiffs From Taking Depositions.

Despite repeated efforts by Plaintiffs since 2005 to depose multiple employees, representatives, and executives with the Hornets, including multiple requests for 30(b)(6) depositions, the Hornets have not made a single witness available for deposition. See Exhibit 15. Magistrate Chasez first addressed Plaintiffs' complaints regarding the non-production of deposition witnesses in the fall of 2005.[4]

Most of the persons that Plaintiffs initially requested deposition dates in 2005 are no longer with the team. It is possible that several of those employees were terminated in part because of the facts and circumstances surround this litigation and related litigation. Whatever the reasons, because of the Hornets' delays, Plaintiffs must now travel across the country to complete the necessary depositions – depositions that could have been taken in New Orleans or Oklahoma City were it not for the delays caused by the Hornets. The Court should use its discretion to require the Hornets to bring those employees or former employees back to New Orleans at the Hornets expense, or to pay Plaintiffs expenses for travel to those depositions.

---

[4] Of note, please be advised that the deposition issue was discussed with the Hornets during a Rule 37.1 conference in 2005, but not before the filing of this Motion to Compel. However, the same problem discussed in 2005 remains constant – the Hornets refuse to produce any of their executives, agents, or employees for deposition.

### IV. THE HORNETS HAVE ADMITTED THEY VIOLATED THE FLSA THROUGH THEIR CONDUCT SINCE THE SUIT WAS FILED.

Compliance with the law is not a subsequent remedial measure. The Hornets erroneously contend that information about their decision to comply with FLSA law after the initiation of this suit is somehow irrelevant to this litigation. In fact, the Hornets' decision to comply with the overtime law since this suit was filed is an admission that they were not in compliance with the law prior to the filing of suit, which is exactly what the Plaintiffs have alleged. Moreover, the evidence will confirm that the Hornets tracked overtime while the team was in Charlotte, briefly followed the FLSA prior to the initiation of suit, intentionally decided to stop following the overtime requirements of the FLSA until the present suit was filed, and then elected to comply with the overtime law following the initiation of this litigation. Finally, ordering the production of information related to Hornets employees who received overtime would not break new legal ground. See *Wright v. AARGO Sec. Services, Inc.*, 2000 WL 264326, *1-2 (S.D.N.Y. Mar 09, 2000) (NO. 99 CIV 9115 CSH). (Plaintiff's request for discovery of overtime hours worked and pay made to non-Plaintiffs was probative and should be ordered). This information directly bears upon the Hornets knowledge of the FLSA overtime requirements and whether any violation was willful.

### V. PLAINTIFFS ARE ENTITLED TO DISCOVERY REGARDING DECISION MAKERS, PRINCIPALS AND POTENTIAL JOINT EMPLOYERS

The Hornets have openly advised the Court that they intend to benefit from their non-disclosure of information. The Hornets specifically referenced the cutoff date for adding parties to this litigation. The information that would specifically identify individuals who may be liable for the non payment of overtime has been withheld by the Hornets and cannot be used to the Hornets benefit. Moreover, should the court elect not to extend the cutoff for amending parties

as defendants, Plaintiffs can always move the court to do so for good reason based on newly discovered. The Hornets should not benefit from their inaction.

### VI. EVIDENCE OF THE HORNET'S INVESTIGATION OF OVERTIME RIGHTS PRIOR TO THE FILING OF SUIT IS AN ESSENTIAL ELEMENT OF PLAINTIFF'S DAMAGE CLAIM.

The Hornets refused to respond to discovery about their investigation of FSLA rights prior to the initiation of suit.[5] The law states that Plaintiffs are entitled to damages for 3 years for the Hornets' bad faith refusal to pay overtime. The Hornets knew that employees were supposed to be paid overtime. Plaintiffs are entitled to investigate what steps, if any, the Hornets took to determine whether any exemptions were applicable to any Plaintiff prior to the filing of suit, including those facts surrounding the investigation of the Hornets' Human Resources Director nearly a year before suit was filed.

Moreover, the Hornets have asserted that documents provided to Jack Capella, the Chief Operating Officer of the Hornets, are privileged because he is also an attorney. Multiple documents confirm that Mr. Capella worked in the business operations of the Hornets. As such, the team cannot issue a blanket statement declaring that incriminating documents provided to Jack Capella are privileged.

Finally, it is likely that Hornets' current counsel may have been consulted by the Hornets regarding FLSA issues in 2004 or earlier. Plaintiffs are entitled to investigate all communications about the FLSA with Jones Walker prior to the filing of this litigation, especially communications in 2002, 2003, and 2004 related to FLSA qualifications. This time period is also important because the Hornets employee manual expressly states that the Hornets

---

[5] As to Request for Production No. 55. Plaintiffs do not need to revise their request to state they are not seeking litigation files and readily concede litigation files cannot be produced. Defendants must respond to the extent they can and raise any objections to the remaining materials.

have employees entitled to overtime pay, and Jones Walker may have helped draft this manual. The information reported to Hornets counsel and/or labor attorneys prior to the creation of this document are entirely relevant to this litigation.

## **CONCLUSION**

The Hornets have brought the broad sweep of the requested discovery upon themselves through their defenses. The Hornets continue to resist production, despite court direction and agreements between counsel. Plaintiffs seek attorneys' fees and costs in connection with their attempts to obtain discovery in this matter. Alternatively Plaintiffs submit that the defenses raised by the Hornets should be stricken. In any event, the Hornets have now jammed Plaintiffs, and extensions of the cutoff dates must be granted to remedy the Hornets' failure to produce the requested information. The Hornets have failed to respond to requests regarding the structure of the organization. All of this and other related requests addressed specific elements of the defenses raised by the Hornets. The Hornets specifically called into question this information.

Respectfully submitted,

BY: s/ Daniel E. Buras, Jr.
HOWARD DAIGLE (#4454)
DANIEL E. BURAS, JR. (#26226) (T.A.)
ELVIGE CASSARD RICHARDS (#19386)
227 Highway 21
Madisonville, LA 70447
Telephone: 985.871.0800
Facsimile: 985.871.0899

**ATTORNEYS FOR EUGENE LIGER, et al**

STEWART E. NILES, JR. (#10004)
BRIAN J. KNIGHT (#28640)
NILES, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
**ATTORNEYS FOR JESSICA BERRY
AND KEVIN BUCKEL**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Plaintiffs' Reply Brief To Defendant's Opposition To Plaintiffs' Motion To Compel as been sent to opposing counsel by placing a copy of same in the U.S. mail, properly addressed, postage prepaid, or by any other means authorized by law, this 1st day of August, 2007.

s/ Daniel E. Buras, Jr.

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 264326 (S.D.N.Y.)  
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Wright v. AARGO Security Services, Inc.
S.D.N.Y.,2000.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Ernest WRIGHT, Plaintiff,
v.
AARGO SECURITY SERVICES, INC., Defendant.
**No. 99 CIV 9115 CSH.**

March 9, 2000.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, Senior J.
*1 The complaint in this case alleges, *inter alia,* that defendant failed to pay plaintiff overtime in violation of the Fair Labor Standards Act ("FLSA"). A dispute has arisen concerning two of the requests contained in Plaintiff's First Request for Production of Documents to which defendant objects. On February 18, 2000, the Court held a telephone conference with counsel for both parties to resolve the dispute. After hearing arguments by counsel, the Court ruled on the objections during the conference. This Opinion memorializes those rulings.

*Request No. 14*

In this request, plaintiff seeks production of:
Any and all time and wage records related to the payment of overtime compensation to any of the Defendant's employees at its facility during the relevant time period [1996 to 1999].

During the conference, counsel for plaintiff explained that the documents sought are relevant under two theories. First, plaintiff contends that defendant did not keep adequate records of the hours plaintiff worked and, as a result, plaintiff must resort to estimating the number of hours he worked to establish his claim. Plaintiff argues that ascertaining the average overtime worked by other employees during the relevant period will afford plaintiff a baseline for estimating his own overtime hours.

In addition, plaintiff submits that these documents will be relevant to establish the "willfulness" of the defendant's violation of the FLSA, if any, with respect to plaintiff. This is important because if plaintiff can establish that a violation was "willful," the relevant limitations period for plaintiff's FLSA claim increases to three years from two. To show "willfulness" under the FLSA, an employee must demonstrate that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:05-cv-01969-HGB-ALC   Document 108   Filed 08/06/2007   Page 13 of 15

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2000 WL 264326 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*Company,* 486 U.S. 128, 133 (1988). Plaintiff argues that if the documents show that there were violations as to other employees, that fact will bear upon the question of whether defendant knew or showed reckless disregard for the FLSA's requirements when it came to paying plaintiff.

Defendant objects to this request, contending that the documents are irrelevant to the willfulness of any FLSA violation with respect to plaintiff. Defendant maintains that the question of whether the FLSA was violated with regard to any *other* employee does not bear upon whether the defendant either knew of the requirements of the FLSA or intentionally misapplied them in *plaintiff's* case. Defendant also argues that information about hours that other employees worked or overtime compensation they received is irrelevant to plaintiff's case because none of the other employees can be regarded as similarly situated to plaintiff, a field supervisor, in terms of the conditions and requirements of their work.

Having considered the parties respective positions, I overrule defendant's objections to this request. I agree with plaintiff that the time and wage records showing overtime worked by other employees are probative for the reasons asserted by plaintiff. First, the records arguably bear upon Aargo's knowledge of FLSA's overtime requirements and therefore its willful violation thereof. To the extent the records suggest that Aargo violated the FLSA's overtime requirements with respect to numerous other Aargo employees, that evidence is at least arguably probative of whether Aargo recklessly disregarded the FLSA in plaintiff's case. Conversely, if the records show that all other employees were paid correctly under the FLSA, that fact could support an argument that any FLSA violation in plaintiff's case was not willful.

*2 In addition, the overtime records of other employees are relevant in quantifying the hours plaintiff worked and therefore the amount of overtime plaintiff is entitled to. The need to reconstruct plaintiff's overtime hours arises because the defendant apparently did not keep adequate records of plaintiff's actual hours. I agree with plaintiff's contention that determining the average amount of overtime hours worked by Aargo employees from 1996 to 1999 may assist plaintiff in establishing a basis for calculating his overtime claim.

For these reasons, I conclude that the documents sought by Request No. 14 are "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Defendant must produce the time and wage records of overtime compensation for defendant's employees that were subject to the FLSA between 1996 and 1999. As discussed at the conference, defendant need produce any such records with respect to employees that were *not* subject to the overtime requirements of the FLSA because it is difficult to see how records of such employees could have any probative value with respect to plaintiff's FLSA claim.

*Request No. 17*

In this request, plaintiff seeks production of:
Any and all wage statements, W-2 forms and other payroll records which reflect the gross and net wages paid to "shadow" employees, i.e., bogus employees/alias employees for each pay period from January 1, 1996 through the date of Plaintiff's termination, and any and all

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:05-cv-01969-HGB-ALC  Document 108  Filed 08/06/2007  Page 14 of 15

Not Reported in F.Supp.2d    Page 3
Not Reported in F.Supp.2d, 2000 WL 264326 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

documents which reflect deductions taken from the "shadow" employees' wages during said time period.

During the conference, counsel for plaintiff explained that she is aware that defendant paid plaintiff and at least one other known employee *regular* wages for overtime hours worked under fictitious names. This request is intended to reach documents that show all payments made under fictitious names to employees who were subject to the FLSA. Plaintiff contends that Aargo utilized this procedure as a means of evading FLSA overtime requirements and therefore bears upon the willfulness of defendant's alleged violation of the FLSA.

Defendant objects to this request, arguing that the "scheme" described by plaintiff involved actually *paying* employees for overtime hours worked. That being the case, defendant argues that it is impossible to see how overtime payments, whether under fictitious names or not, are relevant to plaintiff's claim which involves the defendant's alleged *failure* to pay him overtime.

I sustain defendant's objection to this request. The information sought is arguably probative of defendant's knowing violation of the FLSA with respect to plaintiff and the other known employee because, as defendant conceded at the conference, the payments might show that they were paid for their overtime at an insufficient rate. Nonetheless, because the request broadly seeks to discover whether such fictitious-name payments were made to any other Aargo employee, it goes too far afield and the probative value becomes correspondingly reduced. Moreover, any probative value of evidence showing a fraudulent scheme devised by defendant is arguably outweighed by the serious potential prejudice the evidence might cause defendant. In addition, I am troubled by the real possibility that requiring full compliance with this request could lead to incriminating statements on the part of defendant on an irrelevant matter.

*3 Accordingly, in view of its overbreadth, the low probative value of the evidence it seeks and its high risk of prejudice to the defendant, I sustain defendant's objection to Request No. 17 and strike it as phrased. As I stated at the conference, however, I will allow plaintiff to serve upon the defendant a request to admit which states in substance that on or about the specified dates, defendant used false names to make payments to plaintiff and to the other individual of whom counsel is aware. That having been said, I note that before I would allow such evidence to be admitted at trial or considered on a summary judgment motion, I must be satisfied that the fraudulent scheme alleged was devised for the particular purpose of violating the overtime provisions of the FLSA, rather than aimed at violating some other law.

*Protective Order and Production Mechanics*

Finally, having reviewed the most recent correspondence of counsel I direct that the production of documents pursuant to Request No. 14 must be made under a protective order agreed upon by the parties, or drafted by the Court if they cannot agree. Those documents must be made available for review by plaintiff's counsel at the office of counsel for defendant. Plaintiff need not reimburse defendant for the cost of reproducing any of the documents pursuant to plaintiff's request.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 4
Not Reported in F.Supp.2d, 2000 WL 264326 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

The foregoing is SO ORDERED.

S.D.N.Y.,2000.
Wright v. AARGO Sec. Services, Inc.
Not Reported in F.Supp.2d, 2000 WL 264326 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.