UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EUGENE LIGER, ET AL | * | CIVIL ACTION NO. 05-1969 |
| Plaintiffs in a Collective Action | * | SECTION C |
| versus | * | MAGISTRATE 05 |
| NEW ORLEANS HORNETS NBA LIMITED PARTNERSHIP | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR CONTEMPT AND SANCTIONS, INCLUDING MOTION TO STRIKE DEFENSES, ATTORNEY'S FEES AND MOTION TO CONTINUE TRIAL ON THE MERITS AND PRETRIAL DEADLINES

### REPORT TO THE COURT

When a defendant in a civil case openly defies and mocks the power of a Federal Court Magistrate Judge and willfully sabotages the judicial process, it is imperative that the Court impose the most severe sanctions available under the Federal Rules of Civil Procedure. Plaintiffs understand the Court's reluctance to impose what the Court deems the "draconian measure" of striking the Hornets' affirmative defenses and awarding attorney's fees – but the Hornets' persistent dilatory tactics have left the Court with no other choice.

After two years, two Motions to Compel, two hearings on plaintiffs' Motion for Contempt and Sanctions, countless letters and e-mails sent to the Hornets by Plaintiffs, more than six hours of Rule 37(E) conferences, countless other stall tactics, and now two days of Court ordered "chain of evidence" depositions, it is painfully obvious that the Hornets have yet to even identify, much less produce, 30 to 40 file cabinets of documents, more than half of a large

{N0043573.DOC}

storage facility full of documents, and information contained on innumerable computers and/or servers and documents locations yet to be identified. While such prolonged dilatory tactics are per se prejudicial regardless of context, the Hornets continued pattern of delay and avoidance is devastating in this instance, when plaintiffs' case is less than three months from trial and plaintiffs have still not been provided the documents necessary to defeat the Hornets' defenses – despite two years of requests for same.

Prior to August 17, 2007, Hornets' counsel said to this Court, on more than three occasions: "These are no more responsive documents." Wrong. Since then, the Hornets have produced approximately 4200 pages of documents and confirmed the existence of thousands of documents that have not been produced! The Hornets are intentionally withholding evidence related to their financial defenses and have made countless misrepresentations to the Court and to Plaintiffs to mask their contemptuous actions.[1] Countless verbal instructions from Magistrate Chasez have been ignored. At least three written orders have been ignored by the Hornets. The Hornets are out of control and openly challenge this Court to take any steps necessary to punish their contemptuous behavior.

This Court has patiently and respectfully urged, directed and ordered the Hornets to produce all responsive documents, via three separate Orders. The Hornets have repeatedly violated this Court's Orders, continue to do so, and have "argued, argued, argued" to misdirect and attempt to excuse their blatant, admitted and disrespectful contemptuous conduct. The Hornet ignored the Orders by trying to "redefine" each of the Court's findings and Order. Not only did this Court enter those separate Orders, the last order addressed each and every Interrogatory and each Request for Production.

---

[1] See Chilcutt v. U.S., 4 F.3d 1313 (5th Cir. 1993) (withholding documents that the government knew existed and then misrepresenting the existence of those documents to the court is willful and contumacious conduct).

Meanwhile, the astonishing development was that the Hornets admitted that since this lawsuit the Hornets are in compliance with the Fair Labor Standards Act (hereinafter "FLSA") and are now paying overtime. The Hornets failed to disclose compliance with FLSA and limited responses to discovery so that their Admission would not be revealed to the Court.[2]

Anything less than striking the Hornets defenses and awarding attorney's fees in the face of such blatant disregard for the Court's Orders and the integrity of the discovery process only rewards the Hornets for their obstructionist conduct – with devastatingly prejudicial effects to plaintiffs.

I. **THE CORPORATE DEPOSITION OF THE HORNETS CONFIRMS THAT THE HORNETS' INVESTIGATION IS VIRTUALLY NON-EXISTENT.**

The conduct of the Hornets during the recent "Chain of Evidence" depositions confirms that the Hornets are openly daring the Court to impose sanctions. At the Motion for Contempt hearing on September 10, 2007, the Court <u>ordered</u> the 30(b)(6) witnesses of the Hornets to develop a Chain of Evidence regarding the "documents that have thus far been produced in this case, the identity of the person(s) who searched for the documents, when they were given the order to search, the parameters of the search that was undertaken, the results of that search, and the location(s) of any additional responsive documents."

Less than 2 days after the Court ordered these witnesses produced, the Hornets added one witness to this 30(b)(6) deposition, see exhibit A, but otherwise again disregarded an Order of this Court. Despite Magistrate Chasez' clear and precise instructions to produce witnesses who

---

[2] The Hornets purposefully drafted responses by limiting the response to an arbitrary period of time which terminated before the filing of the lawsuit-although the discovery requests were not limited by such time parameters. Disclosure of Hornets Admission of compliance with the FLSA would have proven persuasive in granting plaintiff's Motion for Summary Judgment.

would definitively establish the Chain of Evidence, the Hornets identified four witnesses, **_none_** of whom could testify on the Chain of Evidence questions.[3]

As the Court is well aware, plaintiffs' Motion for Contempt and Sanctions requests the Court to strike the Hornets' affirmative defenses and award attorney's fees due to the Hornets' continued refusal to adequately search for and produce relevant requested documents. Thus, it is the Hornets' burden to establish the reasonableness of the Hornets' investigation and due diligence. At the hearing on plaintiff's Motion for Contempt and Sanctions the Hornets could not meet their burden of establishing the "chain of inquiry/""chain of evidence." The Court reserved sanctioning the Hornets at that hearing, that instead gave the Hornets a final chance to prove the reasonableness of the Hornets' efforts via a Rule 30(b)(6) deposition at which the Hornets' were <u>ordered</u> to produce corporate representatives to establish the "chain of evidence." The Hornets <u>did</u> <u>not</u>! After conducting two days worth of these 30(b)(6) depositions the "chain of evidence" that has been revealed is virtually non-existent – at best.

The Hornets identified four Chain of Evidence witnesses: Ms. Donna Rochon, the Human Resources Director since August of 2005; Sam Russo, the Sr. Vice President of Operations who has been with the Hornets since 1988; Rich Whitmeyer, the newly appointed Director of Suite Sales who was a non-managerial sales employee until recently, and who was prospective plaintiff in this case; and Dan Crumb, the current CFO, who was reportedly hired by the New Orleans Hornets in the summer of 2007. Just prior to the start of the first Chain of Evidence deposition, the Hornets produced a list with ten names of ex-employees who allegedly helped the Hornets investigate and find information responsive to Plaintiffs discovery requests. None of these ten individuals was produced as a witness by the Hornets.

---

[3] See FRCP Rule 37(b); U.S. v $49,000 Currency, 330 F.3d 371 (5th Cir. 2003) (it is appropriate to impose default judgment when a party violates multiple materials aspects of court orders and repeated attempts by the other party to obtain information).

Of the four witnesses produced, Plaintiffs deposed Ms. Rochon and Mr. Russo on September 12 and 13, 2007, only on "chain of evidence." No other Hornets' witness has yet been deposed. Based on representations made by Ms. Anderson, Plaintiffs contend that further depositions on this topic would be a waste of resources and time because Mr. Whitmeyer and Mr. Crumb were not involved in the investigation of any facts related to this case until the summer of 2007.

A. **DONNA ROCHON CONDUCTED MINIMAL INVESTIGATIONS ON LIMITED TOPICS.**

Donna Rochon was exclusively identified as a "chain of evidence" witness. Ms. Rochon testified that she did not conduct any investigation or speak for any defendants prior to August 2007. She was minimally involved in the investigation and production of responsive information until around Labor Day of 2007, two weeks after this Court ordered the Hornets to produce responsive information.

After deposing Ms. Rochon for portions of two days, this much is clear:[4]

1. Ms. Rochon was never the "point person" in charge of the Hornets investigation and response to plaintiffs' discovery requests.

2. **Ms. Rochon testified that the Hornets have been tracking time and paying overtime to employees the team has considered "non-exempt" employees since July of 2005 and that the Hornets have written policies and procedures related to these issues. Ms. Rochon testified that she was not asked to produce this information. These documents prove Admission against interest. This Admission can not be understated.**

---

[4] A copy of Ms. Rochon's deposition will be provided to the court upon receipt.

3. <u>Ms. Rochon has never seen any of plaintiffs' discovery requests to date</u>.

4. Ms. Rochon was <u>never</u> provided with actual copies or summaries of correspondence from Plaintiffs identifying areas of deficiencies in the Hornets discovery responses or with copy of the Court's Minute Entry which addressed each Interrogatory and/or Request for Productions.

5. Ms. Rochon conducted <u>no</u> investigation to identify documents responsive to all plaintiffs' discovery requests.

6. Ms. Rochon gathered <u>only</u> plaintiffs' personnel & payroll files in December, 2005, March, 2006, and May, 2006.

7. Ms. Rochon <u>did not</u> conduct any record searches for any complaints related to overtime or commission payments made by any Hornets employee, other than the Plaintiffs in this case, and further testified that she has never been asked to conduct such a search.[5]

8. Ms. Rochon <u>did not</u> conduct or ask anyone else to conduct any e-mail searches or electronic document searches to determine if any of her predecessors in the Human Resources Department received any complaints related to overtime or commission payments.[6]

9. Prior to the Labor Day 2007 time period, Ms. Rochon's involvement in any discovery investigation for this case was limited to specific requests to pull specific plaintiff personnel files and payroll records that were located in the Hornets offices in the Freeport McMoran Building.

---

[5] The Hornets have repeatedly represented to the Court that no such documents exist.
[6] The Hornets have repeatedly represented to the Court that no such documents exist.

{N0043573.DOC}                                6

10.     Ms. Rochon testified that counsel for the Hornets was with her when she retrieved documents from her filing cabinets, but never inquired about the content of any of the other 30-40 filing cabinets located in the area and was not asked to search those 30-40 file cabinets.

11.     On approximately <u>August</u> <u>31</u>, <u>2007</u> - for the <u>first</u> <u>time</u> - Ms. Rochon was requested to search the Hornets' off-site storage facility for other responsive documents.

12.     Ms. Rochon searched the off-site storage facility on Tuesday, September 4, 2007 along with a Jones Walker paralegal.

13.     The Jones Walker paralegal provided a list of documents to limit Ms. Rochon in her search of the off-site storage facility. Plaintiffs' have requested a copy of this list to establish the parameters of defendant's search, but opposing counsel has objected, citing attorney-client privilege.

14.     Neither Ms. Rochon, nor anyone else <u>has</u> <u>ever</u> performed an electronic review of Hornets' servers, work station computers, e-mails, or any other electronic databases.

15.     Ms. Rochon has <u>never</u> requested responsive documents from any other Hornets' manager, executive, or employee.

16.     Ms. Rochon has <u>never</u> seen <u>any</u> of plaintiffs' discovery requests and has <u>never</u> conducted any search to identify what documents in the Hornets possession are responsive to plaintiffs' discovery requests.

17.     Instead, Ms. Rochon has only looked for the specific documents that Hornets' counsel - who has no personal knowledge of the Hornets'

operations, storage facilities, and document retention procedures - directed Ms. Rochon to produce.

18. Ms. Rochon has <u>never</u> requested or produced any documents in this litigation that were not physically housed in either the Human Resources department or the above-mentioned off-site storage facility.

19. Ms. Rochon <u>has not</u> completed a review of the documents contained in the Hornets off-site storage facility to date.

20. Ms. Rochon never spoke with any of the ten individuals identified by Jones Walker who "allegedly" conducted the investigation for the Hornets.

21. Ms. Rochon has never requested responsive documents from third parties, such as the Hornets' accountant, KPMG, the Hornets' attorneys or other third parties in possession of such information (including but not limited to Jones Walker).

### B. MR. RUSSO EXPRESSED ALMOST TOTAL IGNORANCE TO THE HORNETS INVESTIGATION OF ANY DISCOVERY REQUEST.

Damning testimony regarding the Hornets' woeful efforts in responding to discovery was offered by the Hornets Vice President of Business Operations, Sam Russo.[7] Mr. Russo testified that he was the Hornets Vice President in Charge of Special Projects in the summer of 2005. Although he has been with the team since 1988, he testified that he did not conduct any personal investigations into any discovery request made by Plaintiffs except for non-specific instances wherein he may have been asked for information and one other instance around Labor Day of 2007 when he asked the IT department to locate the prospective sales database that was identified by the Hornets after the Court's August 17, 2007 deadline.

---

[7] A copy of Mr. Russo's deposition testimony will be provided upon receipt.

Mr. Russo confirmed in deposition that:

1. Mr. Russo saw plaintiffs' discovery requests for the first time within the last thirty days.

2. Mr. Russo has <u>never</u> conducted any investigation to identify and/or produce any documents responsive to plaintiffs' discovery requests and has never requested that anyone else conduct such an investigation.

3. Mr. Russo has <u>never</u> produced any documents responsive to any of plaintiffs' discovery requests.

4. Mr. Russo stated that "allegedly" Ms. McKearn was the designated point of contact for the New Orleans Hornets until around November of 2005 when she stopped working for the Hornets. Mr. Russo did not know who served as the Hornets point of contact after Ms. McKearn, but confirmed that it was not him. There is **<u>NO</u>** testimony in the "chain of evidence" investigation from November 2005 to this present!

5. Mr. Russo was <u>never</u> provided with a request for information from the Hornets or their counsel summarizing any of the information requested by Plaintiffs in their discovery requests.

6. Mr. Russo was <u>never</u> provided with actual copies or summaries of correspondence from Plaintiffs identifying areas of deficiencies in the Hornets discovery responses.

7. Mr. Russo confirmed the existence of 30-40 filing cabinets full of potentially relevant information that has <u>never</u> been investigated or produced.

8. Mr. Russo <u>confirmed</u> the existence of premium seat license agreements <u>that have been requested by plaintiffs</u>, but <u>never produced</u>.

9. Mr. Russo <u>confirmed</u> the existence of calendars of special events at the New Orleans Arena and the Alario Center that <u>have been requested by plaintiffs</u>, but <u>never produced</u>.

10. Mr. Russo testified that he met with Jones Walker in June of 2007 to discuss outstanding discovery issues, <u>but</u> that <u>neither he nor any of the other individuals attending this meeting were asked to conduct any further investigations for any documents or information</u>.

11. Mr. Russo testified that he had responsive information related to ticket and revenue information sent to the NBA in e-mail form. Mr. Russo testified that <u>he was never asked</u> for this information and that he has since deleted these e-mails. To the best of Mr. Russo's knowledge, no electronic searches have ever been conducted to locate this information by the Hornets.[8] Destruction after plaintiff's request is spoliation of evidence."

12. Mr. Russo confirmed that he has <u>never</u> been the "point person" in charge of the Hornets investigation and response to plaintiffs' discovery requests.

13. Mr. Russo confirmed that <u>he does not know</u> what, if any, efforts have been undertaken by the Hornets to respond to any of plaintiffs' specific discovery requests. Mr. Russo never spoke with any of the ten individuals identified by Jones Walker who allegedly conducted the investigation for the Hornets.

---

[8] The Hornets have repeatedly represented to this Court that no such e-mails existed.

14. Mr. Russo has <u>never</u> performed an electronic review of Hornets' servers, work station computers, e-mails, or any other electronic databases or requested that anyone else perform such a search.

15. Mr. Russo testified that all of the information that the Hornets are currently reviewing in the Annunciation Street storage facility was previously located in 30-40 file cabinets located in plain view on the 20th floor of the Hornets offices in the Freeport McMoran building. Mr. Russo testified that he had keys to these file cabinets since late 2005-early 2006, but that no one ever asked him for access to these file cabinets. Mr. Russo further testified that he supervised the transfer of all files in these filing cabinets from the Freeport-McMoran building to the Annunciation Street storage facility in <u>early August, 2007</u>. In this instance, spoliation of evidence was thwarted.

16. Mr. Russo has <u>never</u> requested responsive documents from third parties, such as KPMG or the Hornets' attorneys (including but not limited to Jones Walker).

### C. MS. ANDERSON REPORTED THAT NEITHER RICH WHITMEYER NOR DAN CRUMB WOULD BE ABLE TO PROVIDE INFORMATION ABOUT THE CHAIN OF EVIDENCE PRIOR TO THE SUMMER OF 2007.

There are two remaining witnesses that the Hornets contend will testify on Chain of Evidence issues; Dan Crumb, the CFO, and Rich Whitmeyer, a director in the Hornets sales department. Counsel for the Hornets has already advised that these depositions will not be useful because neither of these employees will be able to shed light on any investigations conducted by the Hornets.

Based on Ms. Anderson's representations, Mr. Crumb is the new CFO and has no information related to investigations that occurred prior to his employment.

Based on Ms. Anderson's representations, Mr. Whitmeyer is a new manager with the Hornets. Ms. Anderson suggested that Mr. Whitmeyer was intentionally kept out of the loop related to any discovery investigations until recently because he was one of the prospective plaintiffs in this case. Based on Ms. Anderson's representations and the facts already available to Plaintiffs, Mr. Whitmeyer was a sales employee for the Hornets before he joined Hornets management.

Accordingly, Plaintiffs suggest to the Court that it would be a complete waste of time and resources for Plaintiffs to depose Mr. Crumb and Mr. Whitmeyer on any Chain of Evidence issues. Their own counsel has admitted their ignorance on these issues. Plaintiffs request that further Chain of Evidence depositions of these witnesses be stayed pending this Court's decision on the pending Motion for Contempt and Sanctions.

### D. THE HORNETS HAVE OPENLY VIOLATED THE INSTRUCTIONS OF THIS COURT.

The testimony of Mrs. Rochon and Mr. Russo – the corporate representatives offered by the Hornets to establish the "chain of evidence" – and Counsel's admitted ignorance of the other two witnesses identified by the Hornets, confirms that the Hornets have not searched for nor ordered any other Hornets employee to search for most responsive documents in this litigation. This conclusion is only strengthened by the fact that 60% of the documents produced by the Hornets have been produced within the last thirty days and that huge volumes of documents have never been reviewed by the Hornets at all!  <u>Neither</u> Mrs. Rochon nor Mr. Russo <u>can identify any effort</u> by any Hornets' employee to identify and/or produce any documents responsive to any of plaintiffs' discovery requests – the most Mrs. Rochon can establish is that only some of the limited documents specifically identified by Hornets' counsel were produced. Furthermore, Mr. Russo has confirmed the existence of several categories of documents that plaintiffs have requested but which have <u>never</u> been produced, as well as 30-40 filing cabinets worth of materials that no one has reviewed to date!

The "chain of evidence" here is quite clear – no one from the Hornets exercised any independent thought in reviewing what plaintiffs were asking for and determining whether it existed. Instead, the Hornets' attorneys (who have no idea what responsive documents the Hornets possess) asked the Hornets to pull limited documents unilaterally designated by Hornets' counsel – and that is <u>all</u> the Hornets have looked for to date. Accordingly, the Hornets must be subject to the most severe sanctions available because they have <u>knowingly</u> <u>and</u> <u>intentionally</u> ignored the orders of this court, the rules of discovery and plaintiff's discovery request for over two years.

## II.     THE HORNETS' CANNOT BLAME THEIR CONTEMPTUOUS CONDUCT ON DEPARTED EMPLOYEES.

Although the Court strongly and clearly ordered the Hornets to demonstrate the "chain of evidence" in the 30(b)(6) deposition, the Hornets refused to comply. The Hornets 30(b)(6) designees clearly admitted failure to investigate and no chain of evidence. Yet, the Hornets want plaintiffs' to chase "ghosts" who were identified only after the 30(b)(6) designees admitted contemptuous conduct. The Hornets have delayed this matter long enough by blaming its recalcitrant conduct and persistent failure to respond to discovery on personnel turnover, shoddy record-keeping and limited search requests by Hornets counsel – although Ms. Rochon, HR Director, was (1) employed by the Hornets since November, 2005, and (2) was a 30(b)(6) designee to establish "chain of evidence".

It was the Hornets burden to prove the reasonableness of their investigative efforts at the original hearing of plaintiff's Motion for Contempt. The Hornets could not meet their burden, but were given a final chance. It was then the Hornets burden to prove the reasonableness of their investigative efforts at last week's 30(b)(6) depositions via the representatives of the Hornets choice. The Hornets could not meet their burden. The Hornets cannot excuse these failures by attributing the Hornets' deficiencies to now-departed Hornets' employees. Both Mrs. Rochon and Mr. Russo confirmed in deposition that no effort was made to contact any of the ten individuals listed by opposing counsel to confirm what, if any, search any of the individuals made for relevant documents. None of the ten individuals were offered as 30(b)(6) representatives relative to "chain of evidence" inquiries. No affidavits or statements were submitted by any of the ten named individuals. It remains the Hornets' burden to prove how the Hornets conducted a reasonable search. The Hornets have not, and in fact cannot do so, despite numerous opportunities. Now, the Hornets have introduced ten new "rabbit-trails" for plaintiffs' to run down in the Hornets' never-ending game of "hide the ball." Why? Solely because (1)

Hornets' attorneys did <u>not</u> ask the Hornets to seek the documents requested by plaintiffs and (2) that the Hornets' attorneys did a limited search, without giving the Hornets the Court's Order or plaintiffs' discovery request. The only way this Court can put an end to the Hornets' persistent improper discovery practices is by striking the Hornets defenses and awarding attorney's fees– and plaintiffs request that this Court do just that.

IV. **THE HORNETS HAVE THREATENED TO DROP NOTICE PLAINTIFF DEPOSITIONS IN VIOLATION OF MAGISTRATE CHASEZ'S INSTRUCTIONS.**

That two contempt motions are pending before the Court against the Hornets has not deterred their arrogance towards this Court. The Hornets no longer pay lip service to the Court's Orders.

On August 29, 2007, Magistrate Chasez ordered Plaintiffs to produce three witnesses for deposition and then ordered the Hornets to produce their corporate representatives for deposition before any other depositions are conducted in this matter. Because of the chain of evidence question that the Court ordered Plaintiffs to investigate, no substantive corporate depositions have yet been started. In fact, the Hornets have yet to provide any dates for these depositions.

The Court's order not withstanding, the Hornets advised Plaintiffs counsel on September 12, 2007 that the Hornets intended to drop notice depositions for all Plaintiffs not yet deposed before September 30, 2007. This astonishing request came moments after the Hornets refused to consent to agree to the extension of witness and exhibit list submissions necessitated by their own sanction able behavior throughout the discovery process.

Accordingly, in addition to striking the defenses, Plaintiffs request that this Court enter an order suspending the Hornets from engaging in any further discovery of this matter until all responsive documents and electronic files are produced. <u>See</u> FRCP Rule 37(b)(2). Their

reprehensible conduct should not be rewarded by repeated and persistent requests for information from Plaintiffs and draining plaintiffs' limited resources with objectionable discovery practices.[9]

## CONCLUSION

Based upon the record and the pleadings, Plaintiffs' Motion for Contempt should be GRANTED.

The remedies supported by the jurisprudence include:

1. Enter an Order that all facts necessary to defeat the Hornets' defenses "shall be taken to be established" pursuant to Federal Rule of Civil Procedure 37(b)(2)(A);

2. Enter an Order "refusing to allow" the Hornets "to support" the Hornets' "defenses" and/or "prohibiting" the Hornets from "introducing" evidence to support the Hornets' defenses pursuant to Federal Rule of Civil Procedure 37(b)(2)(B);

3. Enter an Order "striking out" all of the Hornets' defenses, "dismissing" the Hornets' defenses, and/or "rendering a judgment by default" against the Hornets pursuant to Federal Rule of Civil Procedure 37(b)(2)(C);

4. Enter an Order holding the Hornets in contempt pursuant to Federal Rule of Civil Procedure 37(b)(2)(D);

5. Award of attorney's fees not more than $100,000, but not less than $50,000;

6. Awarding reimbursement of expert fees incurred to date;

---

[9] Should the Hornets' defenses not be stricken, then plaintiffs must reluctantly request a continuance of the December 3, 2007 Trial in this matter, as well as all pre-trial cut-offs. While the additional delay occasioned by such a continuance benefits only the Hornets by unjustly depriving plaintiffs of the money they have been entitled to for over three years, the Hornets' persistent failure to produce relevant documents have unfairly prejudiced plaintiffs by precluding plaintiffs from obtaining the information plaintiffs require to attack the Hornets' defenses.

7. Continuing award of attorney's fees for completion of document production by defendant, New Orleans Hornets NBA Limited Partnership, and for review of all subsequent produced documents to be determined by the Court at a later date;

8. Reimbursement of all expenses and costs associated with filing and prosecution of Plaintiffs' Motion for Contempt;

9. Suspension of all discovery by defendant, New Orleans Hornets NBA Limited Partnership; and

10. Any and all other sanctions that the court deems just and reasonable.

Respectfully submitted,

By: /s/ Daniel E. Buras, Jr.
HOWARD DAIGLE (#4454)
DANIEL E. BURAS, JR. (#26226) (T.A.)
ELVIGE CASSARD RICHARDS (#19386)
DAIGLE FISSE & KESSENICH, PLC
227 Highway 21
Madisonville, LA 70447
Telephone: 985.871.0800
Facsimile: 985.871.0899

**ATTORNEYS FOR PLAINTIFFS**

STEWART E. NILES, JR. #10004)
BRYAN J. KNIGHT (#28640)
NILES, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above motion as been sent to opposing counsel by placing a copy of same in the U.S. mail, properly addressed, postage prepaid, or by any other means authorized by law, this 18th day of September 2007.

/s/ Daniel E. Buras, Jr.
DANIEL E. BURAS, JR.