## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EUGENE LIGER, ET AL** | * | **CIVIL ACTION NO. 05-1969** |
| | * | |
| **Plaintiffs in a Collective Action** | * | **SECTION C** |
| | * | |
| **versus** | * | **MAGISTRATE 05** |
| | * | |
| **NEW ORLEANS HORNETS NBA LIMITED** | * | |
| **PARTNERSHIP** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSED MOTION TO CONTINUE TRIAL AND ALL CUTOFFS

Plaintiffs respectfully request that this Court Continue the Trial and All Cutoff Dates because of the open defiance of the New Orleans Hornets of the judicial process, the Orders of Magistrate Chasez, and the rules of Civil Procedure. Through multiple misrepresentations, omissions of relevant information, and willful disregard of the powers of Magistrate Chasez, the Hornets have sabotaged Plaintiffs trial preparation in this litigation. A Motion for Contempt and Sanctions is currently pending before Magistrate Chasez to address overwhelming evidence of sanctionable and contemptuous behavior of the Hornets and their Counsel. Plaintiffs represent to the Court that the severest of sanctions are called for to address the Hornets' misconduct.

While the Magistrate Court considers Plaintiffs' Motions for Contempt and Sanctions, Plaintiffs must regretfully request a continuance to avoid further harm to their trial caused by the Hornets' misconduct. The Hornets' persistent dilatory tactics have left the Court and Plaintiffs with no other choice. Trial of this matter is scheduled to begin on December 3, 2007. Multiple cutoffs would have passed, but for brief extensions granted by Judge Chasez and the Motion to

Dockets.Justia.com

Continue filed last week. The Hornets have intentionally and willfully misled both the Court and Plaintiffs for over two years to avoid the discovery of information necessary to disprove the defenses asserted by the Hornets. In light of recent developments, it has become painfully clear that all discovery and trial preparation to date has been undermined by the Hornets' misconduct.

## I.     PLAINTIFF CLAIM OVERVIEW.

This is an overtime case involving sixteen Plaintiffs who were former employees of the Hornets. Each Plaintiff was required to work hundreds of hours of overtime each year by the Hornets. The Hornets former Human Resources Director, Ms. Penny Middleton, admitted that the Hornets knew that Plaintiffs were owed overtime prior to the filing of this suit, but the Hornets directed Ms. Middleton to keep this information secreted from Hornets' employees.

In addition to the overtime owed to each Plaintiff, most Plaintiffs are also entitled to thousands of dollars of unpaid commissions and statutory penalties because the Hornets did not pay Plaintiffs all amounts due and owing. Only within the past two weeks, the Hornets disclosed a database that will further substantiate these damage claims.

## II.     DEFENDANT DEFENSES

To avoid paying overtime, the Hornets claimed that they were exempt from overtime law because they were a retail sales establishment and because they were an amusement/recreation establishment. For over two years, the Hornets have violated Court orders, the agreements of counsel, and the rules of civil procedure to avoid producing information supporting these defenses. The Hornets misconduct includes blatant violations of multiple Court Orders, repeated misrepresentations to Plaintiffs, and multiple misrepresentations to both Judge Berrigan and Magistrate Chasez.

### III.  THE HORNETS DEFEATED SUMMARY JUDGMENT BY WITHHOLDING EVIDENCE FROM JUDGE BERRIGAN.

Plaintiffs filed a Motion for Summary Judgment to defeat the frivolous defenses raised by the Hornets. At the Summary Judgment hearing before Judge Berrigan, counsel for the Hornets represented that the Hornets were similar to a golf course, and thus had no obligation to pay overtime. **In fact, the Hornets intentionally failed to advise the Court or Plaintiffs that the Hornets revised their policies and procedures after this suit was filed to bring the Hornets in compliance with federal overtime law, i.e., the Fair Labor Standards Act. Since July of 2005, the employees of the Hornets who worked in similar positions as Plaintiffs have been paid overtime by the Hornets.** This information was not confirmed until a deposition of the Hornets Human Resources Director related to Plaintiffs' Motion for Contempt and Sanctions that was taken on September 12-13, 2007.[1] To date, neither copies of these policies and procedures have been produced, nor payment records – all of which were requested by Plaintiffs in August of 2005.

### IV.  THE HORNETS WITHHELD EVIDENCE THAT THEY RECEIVED MILLIONS OF DOLLARS FROM THE STATE OF LOUISIANA BASED UPON CERTIFICATION THAT EMPLOYEES HOURS WERE TRACKED.

The taxpayers of Louisiana have given the New Orleans Hornets millions of dollars under the Louisiana Quality Job Program since 2002. See La. R.S. 13:1101 et seq. Despite Plaintiffs' requests for all information related to revenue received from State and Local governments first propounded in August of 2005, the New Orleans Hornets denied the existence of this information. These repeated denials were made to both Plaintiffs and to Magistrate Chasez. On September 10, 2007, Plaintiffs received documents under the Louisiana Public

---

[1]  A copy of the deposition is not yet available. This memorandum will be supplemented upon receipt.

3

Records Act that confirmed that documents existed to evidence revenue received from the State of Louisiana. See Exhibit A.

Review of these records confirms that the Hornets misrepresented to the State of Louisiana that it tracked the hours worked by its employees, although the information reported to the State is not correct. For two years, the Hornets have repeatedly denied that it ever tracked the hours worked by its employees and denied the existence of any records related to this issue. Furthermore, the Hornets misrepresented to the State that all of its employees physically worked at the New Orleans Arena. It is uncontroverted that all business offices are located at the Freeport McMoran building on Poydras Street.

To date, Plaintiffs have been denied the opportunity to further investigate these extremely relevant matters because of the Hornets repeated misrepresentations.

## V.    PLAINTIFFS' MOTION FOR CONTEMPT PENDING BEFORE MAGISTRATE CHASEZ SETS FORTH THE BLATANT MISCONDUCT OF THE HORNETS OVER THE LAST TWO YEARS.

The most egregious misconduct in this matter is not only the gamesmanship, misrepresentations, or posturing that the Hornets have engaged in with opposing counsel – it is the Hornets complete and utter disregard for Magistrate Chasez' verbal and written orders in this matter. The Memorandum in Support of Plaintiffs' Motions for Contempt and Sanctions document in explicit detail the outright refusal of the Hornets to comply with multiple Court Orders. See Memos attached as Exhibits B, C, D.[2]

Overwhelming evidence confirms that the Hornets conducted little or no investigation into the discovery requests propounded by Plaintiffs.

Overwhelming evidence confirms that the Hornets violated Magistrate Chasez's August 2, 2005 Order to produce documents. See Exhibit E. The Hornets conducted only a superficial

---

[2]  Complete copies of these filings and related filings can be found in docket records 113, 114, 118, 122, and 133.

search for documents that directly affected prospective class members and information relevant to identified Plaintiffs in this litigation.

Undisputed evidence confirms that the Hornets made numerous promises to produce information to Plaintiffs for over a year before the Motion to Compel was ultimately filed.

Plaintiffs' Motion to Compel was heard on August 3, 2007. The Hornets denied that entire categories of documents existed. Magistrate Chasez entered an Order dated August 3, 2007 directing the Hornets to respond to multiple categories of documents on or before August 17, 2007. See Exhibit F, Docket Number 109.

August 17, 2007 came and went, and no documents were produced.

On August 24, 2007, Plaintiffs filed a Motion for Contempt and Sanctions related to the Hornets refusal to produce documents in accordance with the Court's August 17, 2007 deadline. See Exhibit B (docket number 114). A hearing was scheduled for August 29, 2007. Approximately 2000 responsive documents were received from the Hornets just prior to the hearing – documents that the Hornets denied the existence of on August 3, 2007 . During the August 29, 2007 hearing, the Hornets again represented to Magistrate Chasez that no other documents existed.

Also at the August 29, 2007 hearing, Magistrate Chasez addressed the Hornets' refusal to produce a 30(b)(6) witness for deposition. Magistrate Chasez asked Plaintiffs to produce three Plaintiffs for deposition and then ordered the Hornets to produce corporate representatives within seven days of Plaintiffs' depositions.  Magistrate Chasez made it crystal clear that no other Plaintiffs would be deposed until the completion of the Hornets corporate representative depositions. Three plaintiffs were deposed. The Hornets have not yet provided dates for their

corporate representative deposition.[3] Nevertheless, and in direct violation of Magistrate Chasez' verbal order, on September 13, 2007, the Hornets threatened to drop notice the depositions of all other Plaintiffs for depositions by September 30, 2007. See Exhibit D.

At Magistrate Chasez' direction, on August 31, 2007, Plaintiffs and the Hornets had a three hour telephone conference to discuss entire categories of documents that the Hornets failed to produce. During this conference call, conducted only two days after the Hornets repeatedly represented to the Court that no other documents existed, the Hornets admitted that no third party documents were ever requested form the Hornets other attorneys, from Hornets accountants, from Hornets consultants, or other third parties with documents responsive to Plaintiffs requests. The Hornets claimed that a computer records search was conducted and located no information. Minutes later, the Hornets admitted that an entire database of information directly relevant to Plaintiffs' unpaid sales commissions had not been disclosed.

On or about September 5, 2007, Hornets counsel advised Plaintiffs that the Hornets found a roomful of documents and financial records in a storage area. Subsequent investigation revealed that these "newly discovered" records could have been easily found in 30-40 filing cabinets located in plain view in the Hornets' corporate offices in the Freeport McMoran building. These documents were not moved to any storage facility until around August 1, 2007.

On September 7, 2007, Plaintiffs filed a Supplemental Memorandum in Support of their Motion for Contempt and Sanctions. See Exhibit C (docket 122). This memorandum documented the Hornets admissions that entire categories of documents have not been produced, even to the present, and discussed the Hornets' recent "discovery" of a storage facility full of potentially responsive information.

---

[3] On September 10, 2007, Plaintiffs were directed by Magistrate Chasez to use the proposed dates for substantive 30(b)(6) depositions to further investigate the scope of the Hornets violations of the Court's Orders. The Hornets have not provided new dates despite requests made by Plaintiffs.

On September 10, 2007, the Court conducted a second hearing on Plaintiffs Motion for Contempt and Sanctions to discuss the Hornets admission that they have not requested documents from third parties,[4] have failed to conduct a proper electronic investigation, and failed to produce entire databases and categories of documents. The Hornets could not respond to Magistrate Chasez' inquiry into the investigations conducted by defense counsel and by the Hornets in response to the Court's August 17, 2007 Order.  Magistrate Chasez ordered Plaintiffs to conduct Chain of Evidence depositions to establish what investigations, if any, were conducted by the Hornets to respond to Plaintiffs' discovery requests and court orders. Magistrate Chasez ordered the Hornets to produce witnesses who could respond on these topics. Magistrate Chasez ordered Plaintiffs to submit a report documenting the findings made during these depositions.

On September 12 and 13, 2007, the depositions of the Hornets Chain of Evidence witnesses began. The Hornets did not produce a single witness who could answer Chain of Evidence Questions.  Hornets counsel advised Plaintiffs that two remaining witnesses scheduled for deposition on September 20, 2007 would also be unable to provide responsive information.[5]

On September 18-19, Plaintiffs filed a Second Supplemental Memorandum in Support of their Motion for Contempt and Sanctions. See Exhibit D (docket 139).  Plaintiffs established that the Hornets refused to heed Magistrate Chasez's latest warning to produce responsive witnesses who could testify on Chain of Evidence issues.  The witnesses produced had never seen any of the multiple discovery requests submitted by Plaintiffs, were only asked to produce limited information, and otherwise had very limited knowledge of this litigation. After conducting two

---

[4]  The exception is bank records produced two years after they were first requested and documents from the NBA untimely produced in violation of the Court's August 3, 2007 Order
[5]  Plaintiffs have moved for a stay of these depositions to avoid wasting further resources in light of Hornets' counsel's representations that they would not have responsive information.

days worth of these 30(b)(6) depositions, the "chain of evidence" that has been revealed is virtually non-existent – at best.

It is painfully obvious that the Hornets have yet to even identify, much less produce, 30 to 40 file cabinets of documents, more than half of a large storage facility full of documents, and information contained on innumerable computers and/or servers and documents locations yet to be identified. While such prolonged dilatory tactics are per se prejudicial regardless of context, the Hornets continued pattern of delay and avoidance is devastating in this instance, when plaintiffs' case is less than three months from trial and plaintiffs have still not been provided the documents necessary to defeat the Hornets' defenses – despite two years of requests for same.

The record proves that Magistrate Chasez has patiently and properly allowed the Hornets to dig their own grave. The Hornets have mistaken her judicial restraint to immediately sanction defendant to be an invitation to ignore each and every order of the Court. The Hornets are out of control and have clearly challenged this Court to take any steps necessary to punish their contemptuous behavior. Anything less than striking the Hornets defenses and awarding attorney's fees in the face of such blatant disregard for the Court's Orders and the integrity of the discovery process only rewards the Hornets for their obstructionist conduct – with devastatingly prejudicial effects to plaintiffs.

This continuance is already costing Plaintiffs money and expenses that they can ill afford. Plaintiffs are not wealthy individuals, but are hard workers who filed suit to recover wages owed for work that they performed. The Hornets have again attempted to mistreat these former employees through their inappropriate tactics. Pending Magistrate Chasez' ruling on the Motion for Contempt and Sanctions, Plaintiffs have no other choice but to request a continuance of the trial and all cutoffs.

Respectfully submitted,

By: /s/ Daniel E. Buras, Jr.
HOWARD DAIGLE (#4454)
DANIEL E. BURAS, JR. (#26226) (T.A.)
ELVIGE CASSARD RICHARDS (#19386)
DAIGLE FISSE & KESSENICH, PLC
227 Highway 21
Madisonville, LA  70447
Telephone: 985.871.0800
Facsimile: 985.871.0899

**ATTORNEYS FOR PLAINTIFFS**

STEWART E. NILES, JR. #10004)
BRYAN J. KNIGHT (#28640)
NILES, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above motion as been sent to opposing counsel by placing a copy of same in the U.S. mail, properly addressed, postage prepaid, or by any other means authorized by law, this 19th day of September 2007.

/s/ Daniel E. Buras, Jr.
DANIEL E. BURAS, JR.