# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **EUGENE LIGER, ET AL** | * | **CIVIL ACTION NO. 05-1969** |
| | * | |
| **Plaintiffs in a Collective Action** | * | **SECTION C** |
| | * | |
| **versus** | * | **MAGISTRATE 05** |
| | * | |
| **NEW ORLEANS HORNETS NBA LIMITED** | * | |
| **PARTNERSHIP** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO CONTINUE TRIAL AND ALL CUTOFFS PENDING

Plaintiffs respectfully request that this Court Continue the Trial and All Cutoff Dates because of the open defiance of the New Orleans Hornets of the judicial process, the Orders of Magistrate Chasez, and the rules of Civil Procedure. A Motion for Contempt and Sanctions is currently pending before Magistrate Chasez to address overwhelming evidence of sanctionable and contemptuous behavior of the Hornets and their Counsel. Through multiple misrepresentations, omissions of relevant information, and willful disregard of the powers of Magistrate Chasez, the Hornets have sabotaged Plaintiffs trial preparation in this litigation. Plaintiffs represent to the Court that the severest of sanctions are called for to address the Hornets' misconduct.

On September 21, 2007, counsel for the Hornets submitted a pleading advising that they do not oppose a continuance of the trial. For the reasons set forth herein, Plaintiffs respectfully submit that the Hornets' misconduct in this litigation forced a continuance that Plaintiffs are forced to request. The Hornets do not want this matter to go to trial so they sabotaged the

Dockets.Justia.com

discovery process to force Plaintiffs to request this continuance. Plaintiffs respectfully request a hearing on this matter to discuss these matters.

While Magistrate Chasez considers Plaintiffs' Motions for Contempt and Sanctions, Plaintiffs must regretfully request a continuance to avoid further harm to their trial caused by the Hornets' misconduct. The Hornets' persistent dilatory tactics have left the Court and Plaintiffs with no other choice. Trial of this matter is scheduled to begin on December 3, 2007. Multiple cutoffs would have passed, but for brief extensions granted by Judge Chasez and the Motion to Continue filed last week. The Hornets have intentionally and willfully misled both the Court and Plaintiffs for over two years to avoid the discovery of information necessary to disprove the defenses asserted by the Hornets. In light of recent developments, it has become painfully clear that all discovery and trial preparation to date has been undermined by the Hornets' misconduct.

## I.    PLAINTIFF CLAIM OVERVIEW

This is an overtime case involving sixteen Plaintiffs who were former employees of the Hornets. Each Plaintiff was required to work hundreds of hours of overtime each year by the Hornets. The Hornets former Human Resources Director, Ms. Penny Middleton, admitted that the Hornets knew that Plaintiffs were owed overtime prior to the filing of this suit, but the Hornets directed Ms. Middleton to keep this information secreted from Hornets' employees.

In addition to the overtime owed to each Plaintiff, most Plaintiffs are also entitled to thousands of dollars of unpaid commissions and statutory penalties because the Hornets did not pay Plaintiffs all amounts due and owing. Only within the past two weeks, the Hornets disclosed a database that will further substantiate these damage claims.

## II.  **DEFENDANT DEFENSES**

To avoid paying overtime, the Hornets claimed that they were exempt from overtime law because they were a retail sales establishment and because they were an amusement/recreation establishment.   For over two years, the Hornets have violated Court orders, the agreements of counsel, and the Rules of Civil Procedure to avoid producing information supporting these defenses.    The Hornets' misconduct includes blatant violations of multiple Court Orders, repeated misrepresentations to Plaintiffs, and multiple misrepresentations to both Judge Berrigan and Magistrate Chasez.

## III.  **THE HORNETS DEFEATED SUMMARY JUDGMENT BY WITHHOLDING EVIDENCE FROM JUDGE BERRIGAN.**

Plaintiffs filed a Motion for Summary Judgment to defeat the frivolous defenses raised by the Hornets.  At the Summary Judgment hearing before Judge Berrigan, counsel for the Hornets represented that the Hornets were similar to a golf course, and thus had no obligation to pay overtime.  **In fact, the Hornets intentionally failed to advise the Court or Plaintiffs that the Hornets revised their policies and procedures after this suit was filed to bring the Hornets in compliance with federal overtime law, i.e., the Fair Labor Standards Act.  Since July of 2005, the employees of the Hornets who worked in similar positions as Plaintiffs have been paid overtime by the Hornets.**

### A.    **The Hornets withheld evidence that they tracked the time of two Plaintiffs after suit was filed.**

On August 2, 2005, Magistrate Chasez ordered the Hornets to produce all time records and other personnel files of all Plaintiffs, including Latousha Brown who was still employed by the Hornets at that time.  The Hornets claimed that they produced all such records. The Hornets supplemented their productions of records after Plaintiff Ken Kliebert joined this litigation.  The

3

Hornets represented in multiple pleadings that all time records for all Plaintiffs had been produced. These time sheets were not produced.

During the Motion to Compel hearing before Magistrate Chasez conducted on August 3, 2007, the Hornets again represented to Magistrate Chasez that all time records for all Plaintiffs had been produced.

During the Motion for Contempt and Sanctions hearing before Magistrate Chasez on August 29, 2007, the Hornets relied upon their August 17, 2007 discovery responses wherein they again represented that all time records for all Plaintiffs had been produced.

During Court ordered 30(b)(6) chain of evidence depositions of the Hornets' human resources director, Donna Rochon, **the Hornets admitted that the time of all non-exempt Hornets employees had been tracked since July of 2005, including Ken Kliebert, a sales employee, and Latousha Brown, a ticket operations employee.** In addition to tracking the hours worked by these Plaintiffs, the Hornets also admitted that overtime was paid for all hours worked over 40 hours.

During the final installment of Ms. Rochon's 30(b)(6) chain of evidence deposition, defense counsel untimely produced 18 pages of time sheets for Ken Kliebert and Latousha Brown. See Exhibit H. Several of these documents prove that both Mr. Kliebert and Ms. Brown received overtime after this suit was filed. Ms. Rochon testified that this information was found after her deposition on September 13, 2007 and provided to defense counsel shortly thereafter. Had this evidence been timely produced prior to Plaintiffs' Motion for Summary Judgment, the Hornets' opposition to Plaintiffs' Motion for Summary Judgment would have been fatally affected.

B.          **The Hornets withheld evidence that they revised their overtime policies and procedures with the assistance of counsel and admitted overtime liability in these policies**.

In addition to withholding evidence of time records and overtime payments made to Plaintiffs who represent nearly every class of Plaintiff in this litigation, the Hornets also withheld from this Court a written policy that admits that the Hornets owe all Plaintiffs in this litigation overtime payments.[1]   Copies of these policies and procedures were requested by Plaintiffs in August of 2005. The Hornets have repeatedly denied to Magistrate Chasez that policies and procedures existed.[2] They were not produced by the Hornets until September 20, 2007. See Exhibit I.

During to the third and final installment of Hornets 30(b)(6) chain of evidence designee Donna Rochon's deposition,[3] defense counsel produced a copy of the Hornets December 1, 2006 Employee Manual. At the September 10, 2007 hearing, counsel for the Hornets represented that the only documents not yet produced were those recently identified in a storage facility. Ms. Rochon confirmed that there was no excuse for the Hornets' failure to produce this document since December of 2006. Ms. Rochon had a hard copy of this document on her desk, an electronic copy of the document on her computer, and another electronic copy of the document was located on the Hornets' intranet. Ms. Rochon testified that she could have provided a copy

---

[1]   The information was not confirmed until a deposition of the Hornets Human Resources Director related to Plaintiffs' Motion for Contempt and Sanctions that was taken on September 12-13, 2007 and a subsequent document production of the Hornets Employee Manual made on September 20, 2007.  A copy of the deposition is not yet available.  This memorandum will be supplemented upon receipt.

[2]   At hearings before Magistrate Chasez on August 3, 2007, the Hornets denied the existence of any such policies and procedures. In their responses to discovery dated August 17, 2007, the Hornets denied the existence of these policies and procedures.  At the first hearing before Magistrate Chasez on Plaintiffs' Motion for Contempt and Sanctions on August 29, 2007, the Hornets represented that all responsive documents had been produced.

[3]   A copy of the third installment of this deposition is not yet available. This memorandum will be supplemented upon receipt.

of this manual to Plaintiffs at any time after December 1, 2006, but that she was never asked for the manual.

Legal counsel in Oklahoma City helped the Hornets draft the manual and at least ten drafts of the Employee Manual were made before the final version was adopted on December 1, 2006. At no time during the Motion for Summary Judgment did the Hornets or defense counsel represent to this Court that the Hornets overtime policies and procedures were being revised to bring the team into compliance with overtime law. This Court rendered its denial of Plaintiffs' summary judgment motion on October 4, 2006. The final version of the Employee manual admitting liability was finalized less than 2 months later

The Hornets denied this Court the opportunity to review the Hornets' admissions of liability by omitting from any discussion this critical evidence. The Employee Manual admits in explicit detail the Hornets' liability in this overtime litigation on almost each issue where Plaintiffs alleged they were owed overtime.

Plaintiffs alleged that they were non-exempt sales employees entitled to overtime since the day they were first hired. No where in the Employee Manual do the Hornets claim any exemption from federal overtime law. In fact, the Hornets expressly admit that they are covered by the FLSA.

Page 13 of the employee manual states:

**"At the time you are hired, you are classified as either full-time or seasonal/temporary. In addition, you are classified as either non-exempt or exempt. . ."**

Page 14 of the Employee Manual states:

**<u>Non-Exempt and Exempt Employees</u>**
**At the time you are hired, you will be classified as either "exempt" or "non-exempt." This is necessary because, by law, employees in certain types of jobs are entitled to overtime pay for hours worked in excess of forty (40) hours per**

workweek. **These employees are referred to as "non-exempt" in this Employee Manual. This means that they are not exempt from (and therefore should receive) overtime pay.**

**Exempt employees are managers, executives, professional staff, technical staff, outside sales representatives, officers, directors, owners and others whose duties and responsibilities allow them to be exempt from overtime pay as provided by the Federal Labor Standards Act (FLSA) and any applicable state laws. If you are an exempt employee, you will be advised that you are in this classification at the time you are hired, transferred, or promoted.**

Page 17 of the Employee Manual states:

**Overtime Pay**
**If you are a non-exempt employee, you will be eligible to receive overtime pay of one and one-half (1 ½) times your regular hourly wage for approved hours worked over forty (40) in one (1) workweek.**

**All overtime must be approved in advance by your supervisor.**

Page 17 of the Employee Manual further provides:

**Time Records and Break Periods**
**By law, we are obligated to keep accurate records of the time worked by non-exempt employees. The Hornets' method of recording time worked is through time sheets.**

**Each employee is responsible for accurately recording their time worked.** All time sheets must be completed with honesty and integrity. Time should be rounded to the nearest 15 minutes. Paid and non-paid leave should be recorded appropriately. **All time sheets are due in the Payroll Department every Monday morning at 10:00 a.m.** Please make arrangements to ensure your time sheet is approved and received in Payroll in a timely manner. No one may record hours worked on another's time sheet. Tampering with another's time sheet is cause for disciplinary action, up to and including termination of both employees. In the event of an error in recording your time, please report the matter to your supervisor immediately.

**The Hornets believe that every employee functions at a higher level if a lunch break is taken during each workday. If you believe that you will not be able to take a lunch break during the day for some work-related reason, you must have prior approval from your supervisor in order to skip your lunch break.**

Page 18 of the Employee Manual states:

> **Volunteerism**
> **As part of being a good corporate citizen, the Hornets will participate in various community activities coordinated by the Marketing Services Department. No employee will be required to participate in any such activities; however, any employee who volunteers to participate in these activities understands that these hours are nonworking time and are unpaid. In addition, an employee cannot volunteer to do their regularly assigned job tasks.**

See Exhibit I.

Plaintiffs represent that the Hornets' denial that this evidence existed for over two years was either grossly negligent and/or willful and denied both Plaintiff and this Court the opportunity to properly prepare this case for trial and/or dismiss the Hornets' defenses on summary judgment.

## IV.   THE HORNETS WITHHELD EVIDENCE THAT THEY RECEIVED MILLIONS OF DOLLARS FROM THE STATE OF LOUISIANA BASED UPON CERTIFICATION THAT EMPLOYEES HOURS WERE TRACKED.

The taxpayers of Louisiana have given the New Orleans Hornets millions of dollars under the Louisiana Quality Job Program since 2002. See La. R.S. 13:1101 et seq. Despite Plaintiffs' requests for all information related to revenue received from State and Local governments first propounded in August of 2005, the New Orleans Hornets denied the existence of this information. These repeated denials were made to both Plaintiffs and to Magistrate Chasez. On September 10, 2007, Plaintiffs received documents under the Louisiana Public Records Act that confirmed that documents existed to evidence revenue received from the State of Louisiana. See Exhibit A.

Review of these records confirms that the Hornets misrepresented to the State of Louisiana that it tracked the hours worked by its employees, although the information reported to the State is not correct. For two years, the Hornets have repeatedly denied that it ever tracked the hours worked by its employees and denied the existence of any records related to this issue.

Furthermore, the Hornets misrepresented to the State that all of its employees physically worked at the New Orleans Arena.   It is uncontroverted that all business offices are located at the Freeport McMoran building on Poydras Street.

To date, Plaintiffs have been denied the opportunity to further investigate these extremely relevant matters because of the Hornets' repeated misrepresentations.

### V.    PLAINTIFFS' MOTION FOR CONTEMPT PENDING BEFORE MAGISTRATE CHASEZ SETS FORTH THE BLATANT MISCONDUCT OF THE HORNETS OVER THE LAST TWO YEARS.

The most egregious misconduct in this matter is not only the gamesmanship, misrepresentations, or posturing that the Hornets have engaged in with opposing counsel – it is the Hornets complete and utter disregard for Magistrate Chasez's verbal and written orders in this matter.  The Memorandum in Support of Plaintiffs' Motions for Contempt and Sanctions document in explicit detail the outright refusal of the Hornets to comply with multiple Court Orders.   See Memos attached as Exhibits B, C, D.[4]

Overwhelming evidence confirms that the Hornets conducted little or no investigation into the discovery requests propounded by Plaintiffs.

Overwhelming evidence confirms that the Hornets violated Magistrate Chasez's August 2, 2005 Order to produce documents.  See Exhibit E.  The Hornets conducted only a superficial search for documents that directly affected prospective class members and information relevant to identified Plaintiffs in this litigation.

Undisputed evidence confirms that the Hornets made numerous promises to produce information to Plaintiffs for over a year before the Motion to Compel was ultimately filed.

Plaintiffs' Motion to Compel was heard on August 3, 2007.  The Hornets denied that entire categories of documents existed.  Magistrate Chasez entered an Order dated August 3,

---

[4]   Complete copies of these filings and related filings can be found in docket records 113, 114, 118, 122, and 133.

2007 directing the Hornets to respond to multiple categories of documents on or before August 17, 2007. See Exhibit F, Docket Number 109.

August 17, 2007 came and went, and no documents were produced.

On August 24, 2007, Plaintiffs filed a Motion for Contempt and Sanctions related to the Hornets refusal to produce documents in accordance with the Court's August 17, 2007 deadline. See Exhibit B (docket number 114). A hearing was scheduled for August 29, 2007. Approximately 2000 responsive documents were received from the Hornets just prior to the hearing – documents that the Hornets denied the existence of on August 3, 2007. During the August 29, 2007 hearing, the Hornets again represented to Magistrate Chasez that no other documents existed.

Also at the August 29, 2007 hearing, Magistrate Chasez addressed the Hornets' refusal to produce a 30(b)(6) witness for deposition. Magistrate Chasez asked Plaintiffs to produce three Plaintiffs for deposition and then ordered the Hornets to produce corporate representatives within seven days of Plaintiffs' depositions. Magistrate Chasez made it crystal clear that no other Plaintiffs would be deposed until the completion of the Hornets corporate representative depositions. Three plaintiffs were deposed. The Hornets have not yet provided dates for their corporate representative deposition.[5] Nevertheless, and in direct violation of Magistrate Chasez's verbal order, on September 13, 2007, the Hornets threatened to drop notice the depositions of all other Plaintiffs for depositions by September 30, 2007. See Exhibit D.

At Magistrate Chasez's direction, on August 31, 2007, Plaintiffs and the Hornets had a three hour telephone conference to discuss entire categories of documents that the Hornets failed to produce. During this conference call, conducted only two days after the Hornets repeatedly

---

[5] On September 10, 2007, Plaintiffs were directed by Magistrate Chasez to use the proposed dates for substantive 30(b)(6) depositions to further investigate the scope of the Hornets violations of the Court's Orders. The Hornets have not provided new dates despite requests made by Plaintiffs.

represented to the Court that no other documents existed, the Hornets admitted that no third party documents were ever requested form the Hornets other attorneys, from Hornets accountants, from Hornets consultants, or other third parties with documents responsive to Plaintiffs requests. The Hornets claimed that a computer records search was conducted and located no information. Minutes later, the Hornets admitted that an entire database of information directly relevant to Plaintiffs' unpaid sales commissions had not been disclosed.

On or about September 5, 2007, Hornets counsel advised Plaintiffs that the Hornets found a roomful of documents and financial records in a storage area. Subsequent investigation revealed that these "newly discovered" records could have been easily found in 30-40 filing cabinets located in plain view in the Hornets' corporate offices in the Freeport McMoran building. These documents were not moved to any storage facility until around August 1, 2007.

On September 7, 2007, Plaintiffs filed a Supplemental Memorandum in Support of their Motion for Contempt and Sanctions. See Exhibit C (docket 122). This memorandum documented the Hornets' admissions that entire categories of documents have not been produced, even to the present, and discussed the Hornets' recent "discovery" of a storage facility full of potentially responsive information.

On September 10, 2007, the Court conducted a second hearing on Plaintiff's Motion for Contempt and Sanctions to discuss the Hornets admission that they have not requested documents from third parties,[6] have failed to conduct a proper electronic investigation, and failed to produce entire databases and categories of documents. The Hornets could not respond to Magistrate Chasez's inquiry into the investigations conducted by defense counsel and by the Hornets in response to the Court's August 17, 2007 Order. Magistrate Chasez ordered Plaintiffs

---

[6] The exception is bank records produced two years after they were first requested and documents from the NBA untimely produced in violation of the Court's August 3, 2007 Order

to conduct Chain of Evidence depositions to establish what investigations, if any, were conducted by the Hornets to respond to Plaintiffs' discovery requests and court orders. Magistrate Chasez ordered the Hornets to produce witnesses who could respond on these topics. Magistrate Chasez ordered Plaintiffs to submit a report documenting the findings made during these depositions.

On September 12 and 13, 2007, the depositions of the Hornets Chain of Evidence witnesses began. The Hornets did not produce a single witness who could sufficiently answer Chain of Evidence Questions. Three more chain of evidence depositions completed on September 20, 2007 confirmed that the Hornets produced witnesses who confirmed that the Hornets have produced only limited evidence, directly violation of Magistrate Chasez's' orders in this case.[7]

On September 18-19, Plaintiffs filed a Second Supplemental Memorandum in Support of their Motion for Contempt and Sanctions. See Exhibit D (docket 139). Plaintiffs established that the Hornets refused to heed Magistrate Chasez's latest warning to produce responsive witnesses who could testify on Chain of Evidence issues. The witnesses produced had never seen any of the multiple discovery requests submitted by Plaintiffs, were only asked to produce limited information, and otherwise had very limited knowledge of this litigation. The two depositions conducted on September 20, 2007 confirmed the lack of knowledge of the remaining two Hornets chain of evidence witnesses. After conducting three days worth of these 30(b)(6) depositions, the "chain of evidence" that has been revealed is virtually non-existent – at best.

It is painfully obvious that the Hornets have yet to even identify, much less produce, 30 to 40 file cabinets of documents, more than half of a large storage facility full of documents, and

---

[7]  Copies of relevant portions of these "Chain of Evidence" Depositions will be forwarded to Magistrate Chasez to supplement Plaintiffs' Motion for Contempt and Sanctions upon receipt.

information contained on innumerable computers and/or servers and documents locations yet to be identified. While such prolonged dilatory tactics are per se prejudicial regardless of context, the Hornets' continued pattern of delay and avoidance is devastating in this instance, when Plaintiffs' case is less than three months from trial and Plaintiffs have still not been provided the documents necessary to defeat the Hornets' defenses – despite two years of requests for same.

The record proves that Magistrate Chasez has patiently and properly allowed the Hornets to dig their own grave. The Hornets have mistaken her judicial restraint to immediately sanction defendant to be an invitation to ignore each and every order of the Court. The Hornets are out of control and have clearly challenged this Court to take any steps necessary to punish their contemptuous behavior. Anything less than striking the Hornets' defenses and awarding attorney's fees in the face of such blatant disregard for the Court's Orders and the integrity of the discovery process only rewards the Hornets for their obstructionist conduct – with devastatingly prejudicial effects to plaintiffs.

This continuance is already costing Plaintiffs money and expenses that they can ill afford. Plaintiffs are not wealthy individuals, but are hard workers who filed suit to recover wages owed for work that they performed. The Hornets have again attempted to mistreat these former employees through their inappropriate tactics. Pending Magistrate Chasez's ruling on the Motion for Contempt and Sanctions, Plaintiffs have no other choice but to request a continuance of the trial and all cutoffs while the Court considers whether the Hornets' defenses should be stricken and further sanctioned for their misconduct in this litigation.

Respectfully submitted,

By: /s/ Daniel E. Buras, Jr.
HOWARD DAIGLE (#4454)
DANIEL E. BURAS, JR. (#26226) (T.A.)
ELVIGE CASSARD RICHARDS (#19386)
DAIGLE FISSE & KESSENICH, PLC
227 Highway 21
Madisonville, LA  70447
Telephone: 985.871.0800
Facsimile: 985.871.0899

**ATTORNEYS FOR PLAINTIFFS**

STEWART E. NILES, JR. #10004)
BRYAN J. KNIGHT (#28640)
NILES, BOURQUE & FONTANA, L.C.
909 Poydras Street, 35th Floor
New Orleans, Louisiana 70112
Telephone (504) 310-8550
Facsimile (504) 310-8595
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above motion as been sent to opposing counsel by placing a copy of same in the U.S. mail, properly addressed, postage prepaid, or by any other means authorized by law, this 21st day of September 2007.

/s/ Daniel E. Buras, Jr.
DANIEL E. BURAS, JR.